UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X

Joint Stock Company "Channel One Russia Worldwide,"
Closed Joint Stock Company "CTC Network," Closed                    Index No.
Joint Stock Company "TV DARIAL,"  Closed Joint
Stock Company "New Channel", Limited Liability
Company "Rain TV-Channel," Limited Liability
Company "Veriselintel," Open Joint Stock Company
"ACCEPT", and Limited Liability Company "Comedy TV."

                              Plaintiffs,

        -against-                                          **VERIFIED COMPLAINT**

INFOMIR LLC ( www.infomirusa.com),
PANORAMA TV (www.mypanorama.tv),
GOODZONE TV  (www.gudzon.tv),
MATVIL CORPORATION d/b/a eTVnet (www.etvnet.com),
MIKHAIL GAYSTER
ACTAVA TV, INC. (www.actava.tv),
MASTER CALL COMMUNICATIONS, INC.,
MASTER CALL CORPORATION ,
ROUSLAN TSOUTIEV, and
John Does 1-50.


                              Defendants.
-------------------------------------------------------------------X

        Plaintiffs Joint Stock Company "Channel One Russia Worldwide" ("Channel ONE"),

Closed Joint Stock Company "CTC Network" ("CTC"), Closed Joint Stock Company "TV

DARIAL"  Closed Joint Stock Company "New Channel" ("New Channel"), Limited Liability

Company "Rain TV-Channel", Limited Liability Company "Veriselintel", Open Joint Stock

Company "ACCEPT" and Limited Liability Company "Comedy TV" (each a "Plaintiff" or

collectively "Broadcasters"),[1] by their attorneys, Dunnington Bartholow & Miller LLP

("Dunnington"), as and for their complaint against Limited Liability Company Defendants

---

[1] A reference to a Plaintiff or Plaintiffs shall be deemed to include its or their parents, subsidiaries, licensees and
affiliates.

Infomir LLC, ("Infomir"), Panorama TV, "Goodzone TV", Matvil Corporation ("Matvil") d/b/a Ethnic Television Network ("eTVnet") , Mikhail Gayster ("Gayster"), Actava TV Inc. "Actava TV," Master Call Communications, Inc. ("Master Call"), Master Call Corporation ("Master Call Corp"),  Rouslan Tsoutiev  ("Tsoutiev ") and John Does 1-50  (each of the foregoing a "Defendant" and collectively "Defendants") for violations of the Federal Communications Act, trademark and copyright infringement and related claims aver as follows:

## PRELIMINARY STATEMENT

1.     This is an action to restrain the unauthorized interception and re-broadcasts of valuable foreign language television programming over the internet in violation of federal and state law.

2.      Broadcasters produce and distribute Russian-language television programming and licensed content ("the Programming") that is primarily first broadcast in the Russian Federation.

3.     Broadcasters distribute the Programming worldwide via cable and satellite.

4.     The Programming is encrypted such that only authorized recipients may lawfully access it.

5.     Broadcasters own and operate numerous famous television channels (each a "Channel" and collectively the "Channels"). Each Channel bears a prominent trademark or trademarks and contains repeated identifications of the source of the Programming.

6.     This action involves Defendants' unauthorized interception, copying and distribution of encrypted transmissions of these Broadcasters' famous Channels and Programming to paying consumers in this judicial district and throughout the United States in violation of, among other things, Section 605 of the Federal Communication Act 42 U.S.C. §605; the Lanham (Trademark) Act 15 U.S.C. §1501 *et seq.,* Copyright Act 17 U.S.C. §101 *et*

*seq*., and Section 349 of the New York General Business Law, each of which provides for injunctive relief and damages.  Section 605 of the Federal Communication Act provides for the award of all costs and reasonable attorneys fees to a prevailing party.

7.      Defendants' infringement is accomplished through the use of interactive websites www.infomirusa.com;  www.mypanorama.tv; www.gudzon.tv; www.etvnet.com; and www.actava.tv ("the Websites") registered, hosted and operated in the United States, including in this judicial district.

8.      Broadcasters are "aggrieved parties" within the meaning of Section 605(d) of the Federal Communication Act because Broadcasters have proprietary rights in the initial transmissions of their Channels and Programming, as well as in their capacities as wholesale and retail distributors of the transmissions. 42 U.S.C. § 605 (d)

9.      Section 605(a) of the Federal Communication Act forbids unauthorized rebroadcasts in the United States of foreign satellite transmissions. 42 U.S.C. § 605 (d)

10.      Additionally, Broadcasters' Channels and Programming are protected by the intellectual property laws of the Russian Federation and are therefore entitled to the protection of United States copyright and trademark laws pursuant to international conventions.

11.      Section 1201 of the Copyright Act (as amended by the Digital Millenium DCopyright Act ("DMCA")) includes both anti-circumvention and anti-trafficking provisions which prohibit the circumvention of any technological measure designed to control access to a work subject to the protection of the Act including the Programming.  17 U.S.C. § 1201

12.      Upon information and belief, Defendants knowingly and purposefully hack into or otherwise circumvent and intercept Broadcasters' encrypted satellite signals in violation of the DMCA.

13.     Upon information and belief, Defendants then download, copy or otherwise utilize the Plaintiffs encrypted signals and rebroadcast and/or store them via equipment, including computer servers, located in the United States.

14.     Defendants have registered and operate websites marketing the Channels and Programming to U.S. consumers within this judicial district for a monthly fee.

15.     Defendants mislead consumers by making it appear on their Websites that they have the right to rebroadcast Plaintiffs Programing and Channels by, among other things, displaying the Channels famous marks.

16.     Each of Defendants, through the Websites, accepts electronic or telephone payments.  Bank transfer, MasterCard, VISA, Discover, American Express and PayPal are among the most commonly accepted payment methods.

17.     When a U.S. consumer makes a payment, the consumer is typically invited to download an internet protocol television ("IPTV") player or to purchase hardware (i.e. a receiver) similar to a cable box that permits end-user consumers to bypass the Broadcasters' encryption to view the Programming.

18.     Upon information and belief, Defendants use corporations with different names to process payments received from the Websites.

19.     The IPTV player software permits consumers to watch the Channels and Programming on various consumer electronics including televisions, computers and hand-held devices. [2]

---

[2] *See e.g.* Robert Frieden, *The Impact of Next Generation Television on Consumers and the First Amendment*, 24 Fordham Intell. Prop. Media & Ent. L.J. 61, 85 (2013) ("IPTV techniques . . . promote copyright infringement, largely because relatively few content providers and distributors have authorized access through nontraditional media." )

20.     Defendants solicit purchasers in this judicial district to purchase hardware, services and download software that permits the streaming of the Channels and Programming for a fee via IPTV.

21.     A consumer using the IPTV software is permitted to access a unique Internet Protocol ("IP") address from which the consumer can access a livestream of the Programming.

22.     Upon information and belief, IP addresses are administered and maintained by John Does who are contributing to the infringements described herein.

23.     Defendants' interception, decryption and distribution of the Programming violates Plaintiffs' rights, including "neighboring rights" which are those rights that a Russian Federation based broadcaster enjoys concerning broadcast transmissions originating in the Russian Federation.

24.     Unless restrained by this Court, Defendants' actions will cause irreparable harm resulting from Plaintiffs' loss of control over the distribution of Plaintiffs' Channels and Programming, the preemption of Plaintiffs' opportunities to license content over new media, and the continued unlawful conduct contemplated by Defendants threatens Plaintiffs with substantial irremediable losses.

25.     Plaintiffs request that the Court grant expedited discovery sufficient to identify the owners and operators of the Websites, enjoin Defendant's unlawful conduct and award damages arising out of Defendant's unlawful conduct in addition to any and all other relief authorized by statute or at common law, including but not limited to an award of costs and attorneys' fees.

## THE PARTIES

**A.  Plaintiffs**

26.     Plaintiff Channel One is a joint stock company located in and organized under the laws of the Russian Federation with its headquarters located at 19 Akademika Koroleva St. Moscow, 127427 Russian Federation. Channel One produces, among others, "Channel One". The Channel One logo is:



Channel One's television channels have the largest audience in the Russia Federation  and the Commonwealth of Independent States ("CIS.")  Channel One broadcasts a wide range of news, documentary, and feature film productions, as well as entertainment programs attract a greater number of viewers each year. Among the other channels produced by Channel One are a European and U.S. version of Channel One Russia Worldwide,  Dom Kino, Muzika Pervogo, Vremya:dalekoe i blizkoe, Carousel International, and Telekafe. Additionally, Channel One is authorized by its parent corporation to represent its interests relating to unauthorized distribution of the Russian version of Channel One Russia.

27.     The logo of the Dom Kino channel is:



28.     The logo of the Carousel International channel is:



29.     The logo of the Muzika Pervogo channel is:



30.     The logo of the Telekafe channel is:



31.     The logo of the Vremya:dalekoe i blizkoe channel is:



32.     Channel One has entered into license agreements with one or more third parties to distribute its programs via IPTV in the United States.  Because Channel One is obligated to charge at least as much for its programming to any third party pursuant to a "most favored nation" clause, Defendants' actions cause Channel One immediate and irreparable harm.

33.     Defendants are not authorized to broadcast Channel One, Dom Kino, Carousel International, Muzika Pervogo, Telekafe, or Vremya:dalekoe i blizkoe in the United States or elsewhere.

34.     Plaintiff CTC is a closed joint stock company located in and organized under the laws of the Russian Federation.  CTC produces the CTC channel.  The CTC channel logo is:



The CTC channel has been broadcasting continuously since 1996 and features Russian and foreign programming, including but not limited to dramas, sitcoms, humor, music and general entertainment shows and advertising.

35.     CTC has entered into exclusive license agreements with third parties to distribute its programs via IPTV in the United States and around the world.  Defendants are not authorized to broadcast the CTC channel in the United States or elsewhere.

36.     Plaintiff Darial is a closed joint stock company located in and organized under the laws of the Russian Federation.  Darial produces the Che TV channel and previously produced the Peretz channel.  The Che TV channel logo is:



37.     Darial has entered into exclusive license agreements with third parties to distribute its programs via IPTV in the United States and around the world.  Defendants are not authorized to broadcast the Che TV channel in the United States or elsewhere.

38.     Plaintiff New Channel is a closed joint stock company located in and organized under the laws of the Russian Federation.  New Channel produces the Domashny channel.  The Domashny channel logo is:



The Domashny channel began broadcasting in 2005 and is a specialized Russian language thematic channel that targets a female audience.

39.     New Channel has entered into exclusive license agreements with third parties to distribute its programs via IPTV in the United States and around the world.  Defendants are not authorized to broadcast the Domashny channel in the United States or elsewhere.

40.     Plaintiff ACCEPT  is an open joint stock company  located at Zubovsky Blvd. Bld. 1, 17, Moscow 119847 and organized under the laws of the Russian Federation.  ACCEPT produces the REN TV channel.  The REN TV channel logo is:



ACCEPT is one of the largest private federal TV channels in Russia

41.     ACCEPT has entered into exclusive license agreements with third parties to distribute its programs via IPTV in the United States and around the world.

42.     Defendants are not authorized to broadcast REN TV channel in the United States or elsewhere.

43.     Plaintiff Comedy TV is a limited liability company located at 129301, Moscow, 10 Troitskaya Str., Building 2  and organized under the laws of the Russian Federation. Comedy TV produces the TNT-Comedy channel. The TNT-Comedy channel Logo is:



TNT-Comedy is an international version of the Russian TNT TV channel created for the Russian-speaking population living outside the Russian Federation, as well as Russian and Russian-speaking tourists worldwide.

44.     Comedy TV has entered into exclusive license agreements with third parties to distribute its programs via IPTV in the United States and around the world.

45.     Defendants are not authorized to broadcast TNT TV's channel in the United States or elsewhere.

46.     Plaintiff Rain TV-Channel  is a limited liability company located at 127015, Moscow ul. Bolshaya Novodmitrovskaya 36, str 2 and organized under the laws of the Russian Federation.

47.     The Rain TV-Channel Logo is:



Rain TV focuses on news, discussions, culture, politics, business reports, and documentaries.

48.     Rain TV has entered into exclusive license agreements with third parties to distribute its programs via IPTV in the United States and around the world.

49.     Defendants are not authorized to broadcast Rain TV's channel in the United States or elsewhere.

50.     Plaintiff Veriselintel is a limited liability company located at Akademika Koroleva 13 129515, Moscow, Russian Federation and organized under the laws of the Russian Federation. Veriselintel produces the Nostalgia channel.

51.     The Nostalgia channel logo is:



52.     Nostalgia Channel started broadcasting in 2004.  The  Nostalgia Channel features classic Russian language programs including films and television shows.

53.     Veriselintel has entered into exclusive license agreements with third parties to distribute its programs via IPTV in the United States and around the world.

54.     Defendants are not authorized to broadcast the Nostalgia channel in the United States or elsewhere.

**B.  <u>Defendants</u>**

55.     Defendant Infomir  is an entity organized and existing under the laws of the State of New York with a principal place of business located at 2469 65 St, STE B4 Brooklyn, NY 11204  USA.  Annexed hereto as **Exhibit 1** is the Entity Information concerning Infomir USA maintained by the New York Secretary of State.   Infomir owns and operates the website www.infomirusa.com.

56.     Upon information and belief, Infomir is selling receivers with which it is possible to receive Plaintiffs' channels without authorization.

57.     Upon information and belief, Panorama TV is a for profit organization with a principal place of business located at 1702 Ave Z, Second Floor, Brooklyn, NY 11235. Panorama TV owns and operates the website www.mypanorama.tv.  According to WHOIS.com, a search engine that reveals the registrars of different websites, the registrar of that website is

GoDaddy.com, LLC which is located at 14455 N. Hayden Rd., Ste. 226 Scottsdale, AZ, 85260. Annexed hereto as **Exhibit** 2 is a screenshot of the WHOIS website showing that GoDaddy.com hosts the website www.mypanorama.tv.

58.     Upon information and belief, defendant Matvil Corporation ("Matvil") is a for profit organization doing business as eTVnet with a principal place of business located at Suite 12JK 301 East 48th Street New York, NY 10017.  Annexed hereto as **Exhibit 3** is the Entity information concerning Matvil Corporation maintained by the New York Secretary of State.

59.     Defendant Mikhail Gayster is, according to information maintained by the New York Secretary of State, the CEO of Matvil Corporation with an address of 301 East 48th Street STE 12JK New York, NY 10017.  **See Exhibit 3**

60.     According to Matvil Corporation's website matvil.com, Matvil "founded the website www.etvnet.com (trademark ETVNET) in 2004 as an online provider of Video-On-Demand (VOD) of Russian language television for the Russian-speaking audience worldwide." **See Exhibit 4**

61.     Upon information and belief, Matvil d/b/a eTVnet is a for profit organization with a principal place of business located at 312 Dolomite Dr. Unit 215, Toronto, Ontario, Canada, M3J 2N2.  eTVnet owns and operates the website www.etvnet.com.  According to WHOIS.com, a search engine that reveals the registrars of different websites, the registrar of that website is eNom Inc. which is located at 5808 Lake Washington Blvd, Suite 300 Kirkland, WA, 98119. Annexed hereto as **Exhibit 5** is a screenshot of the WHOIS website showing that eNom hosts the website www.etvnet.com

62.     Upon information and belief, Goodzone TV is a for profit organization with a principal place of business located at 2508 Coney Island Avenue, 2nd Floor, Brooklyn, NY 11223.  Goodzone TV owns and operates the website www.gudzone.tv.  According to

WHOIS.com, a search engine that reveals the registrars of different websites, the registrar of that website is GoDaddy.com, LLC which is located at 14455 N. Hayden Rd., Ste. 226 Scottsdale, AZ. 85260.   Annexed hereto as **Exhibit 6** is a screenshot of the WHOIS website showing that GoDaddy.com hosts the website www.gudzone.tv

63.     Defendant Actava is a for-profit corporation organized and existing under the laws of the State of Delaware with a principal place of business located at 50 Broadway, Suite 1205, New York, New York 10004.   Annexed hereto as **Exhibit 7** is the Entity Information concerning Actava maintained by the New York Secretary of State.  Actava owns and operates the website www.actava.tv.

64.     Defendant Master Call is a for-profit corporation organized and existing under the laws of the State of New Jersey with a principal place of business located at 50 Broadway, Suite 1109, New York, New York 10004.   Annexed hereto as **Exhibit 8**  is the Entity Information concerning Master Call maintained by the New York Secretary of State.

65.     Defendant Master Call Corporation is a for-profit corporation organized and existing under the laws of the State of Delaware with a principal place of business located at 39 Broadway, Room 1850, New York, New York 10006.   Annexed hereto as **Exhibit 9**  is the Entity Information concerning Master Call Corporation maintained by the New York Secretary of State.

66.     Defendant Rouslan Tsoutiev is, according to information maintained by the New York Secretary of State, the CEO of Master Call Communications. **See Exhibit 10**.

67.     Defendant John Does 1-50 are persons whose identities are unknown, but who are directing and contributing to the statutory violations and infringements herein.

## JURISDICTION AND VENUE

68.     The Court has exclusive subject matter jurisdiction under 28 U.S.C. §§ 1331 and 1338 with respect to Plaintiffs' federal statutory claims and may assert supplemental jurisdiction over all other claims pursuant to 28 U.S.C. § 1367.

69.     The Court also has diversity jurisdiction pursuant to 28 U.S.C. § 1332 because this controversy is between citizens of a foreign state and citizens of a state and the amount in controversy exceeds $75,000.

70.     Defendants are subject to personal jurisdiction in the Southern District of New York because they are  located in (or within 100 miles of) this judicial district, conduct business in this judicial district, and have engaged in tortious conduct outside the jurisdiction causing damage within the jurisdiction making long arm jurisdiction appropriate under New York law.

71.     Venue is proper in this District pursuant to 28 U.S.C. §§ 1391 (b) and (c) and 1400 (a).

## THE CHANNELS AND PROGRAMMING ARE SUBJECT TO PROTECTION PURSUANT TO THE COMMUNICATIONS ACT

72.     Section 605(a) of the Communications Act expressly provides that the Act's protections extend to any "foreign communication" that is sent from or received in the United States.

73.     The Programming and Channels are both broadcast into the United States from the Russian Federation in the first instance.

74.     Therefore, the Programming and Channels are "foreign communications" subject to protection under the Communications Act.

### THE CHANNELS AND PROGRAMMING ARE SUBJECT TO PROTECTION PURSUANT TO THE BERNE AND PARIS CONVENTIONS

### A. Plaintiffs Have Standing Under The Copyright Act Pursuant To The Berne Convention

75.     Both the United States and the Russian Federation are signatories to the Berne Convention for the Protection of Literary and Artistic Works ("Berne Convention"").[3]

76.     Pursuant to the terms of the Berne Convention and the implementing statutes in the signatory countries thereto, each signatory country is obligated to afford the same protection under its copyright laws to a work originating in another of the signatory countries as it would to a work originating within that country.  Thus, each signatory country of the Berne Convention is obligated to recognize and enforce Plaintiffs' copyrights in the Channels and Programming as they would if the Channels and Programming had originated in that country.  The United States Supreme Court has consistently upheld the Berne Convention and indicated the strong public policy behind the United States accession into it.  *Golan v. Holder*, 33 ITRD 1769, 132 S. Ct. 873, 878, 181 L. Ed. 2d 835 (2012).[4]

77.     The Programming constitutes Berne Convention works as defined in the Copyright Act, Title 17 U.S.C., § 101, as amended, and is subject to the protection of the Copyright Act of 1976, Title 17 U.S.C. §§ 101 et seq.  This is because the Berne Convention extends to cinematic works.  (Art. 2(1)).

---

[3] The Berne Convention came into force in the United States on March 1, 1989 and in the Russian Federation on March 13, 1995.  *See* http://www.wipo.int/treaties/en/ShowResults.jsp?treaty_id=15 (last accessed November 4 2015).

[4] "Members of the Berne Union agree to treat authors from other member countries as well as they treat their own. Berne Convention, Sept. 9, 1886, as revised at Stockholm on July 14, 1967, Art. 1, 5(1), 828 U.N.T.S. 221, 225, 231–233.  Nationals of a member country, as well as any author who publishes in one of Berne's 164 member states, thus enjoy copyright protection in nations across the globe.  Art. 2(6), 3.  Each country, moreover, must afford at least the minimum level of protection specified by Berne.  The copyright term must span the author's lifetime, plus at least 50 additional years, whether or not the author has complied with a member state's legal formalities.  Art. 5(2), 7(1).  And, as relevant here, a work must be protected abroad unless its copyright term has expired in either the country where protection is claimed or the country of origin.  Art. 18(1)–(2)."

78.     Subject to limited exceptions, the Programming relevant hereto is produced and broadcast in the first instance Russian Federation, and therefore registration of the Programming with the United States Copyright Office is not required for Plaintiffs to assert claims in this Court.  *See Itar-Tass Russian News Agency v. Russian Kurier, Inc.,* 153 F.3d 82, 90 (2d Cir. 1998); *Kuklachev v. Gelfman*, 600 F. Supp. 2d 437, 474 (E.D.N.Y. 2009); http://www.copyright.gov/fls/fl100.html (last accessed November 4, 2015).

79.     Because the alleged infringement is occurring in the United States, domestic law applies to Plaintiffs' infringement claims.  *Dish Network L.L.C. v. TV Net Solutions, LLC*, No. 6:12-CV-1629-ORL-41, 2014 WL 6685351, at *3 (M.D. Fla. Nov. 25, 2014) *citing Itar-Tass.*

80.     Relevant case law provides that the Court may issue preliminary and permanent injunctive relief to stop illegal transmission of Berne Convention works over IPTV.  *WPIX, Inc. v. ivi, Inc.,* 765 F. Supp. 2d 594 (S.D.N.Y. 2011) *aff'd,* 691 F.3d 275 (2d Cir. 2012) *lv. denied* 133 S. Ct. 1585, 185 L. Ed. 2d 607 (2013).

### B. <u>Plaintiffs Have Standing Under The Lanham Act Pursuant To The Paris Convention</u>

81.     Both the United States and the Russian Federation are signatories to the Paris Convention for the Protection of Industrial Property.[5]

82.     Plaintiffs' Channels are identified by the famous marks reproduced under the "Parties" heading of this Complaint.

---

[5] The Paris Convention came into force in the United States on May 30, 1887 and in the Russian Federation on July 1, 1965.  *See* http://www.wipo.int/treaties/en/ShowResults.jsp?lang=en&treaty_id=2 (last accessed November 4, 2015).

83.     Section 44 of the Lanham Act provides foreign nationals the same rights and protections provided to United States citizens by the Lanham Act.  Accordingly, Plaintiffs may seek protection in this Court for violations of the Lanham Act.  *Vanity Fair Mills, Inc. v. T. Eaton Co.*, 234 F.2d 633, 640 (2d Cir. 1956) *cert. denied* 352 U.S. 871 (1956) *rehearing denied* 352 U.S. 913 (1956).

## **FACTS EVIDENCING DEFENDANTS' UNLAWFUL CONDUCT**

84.     Plaintiffs are actively engaged in the production and distribution of the Programming and other copyrighted works primarily in the Russian language on their respective Channels.  Plaintiffs have entered into certain license agreements providing non-parties with the exclusive right to broadcast and re-broadcast their Programming and other copyrighted materials in the United States.  Only the relevant license holders are authorized to broadcast, re-broadcast or otherwise transmit Plaintiffs' protected, copyrighted programming and other  materials in the United States via IPTV or otherwise.

85.     Upon information and belief, IPTV was first developed in or about 1995 and has gained popularity as a broadcast medium.

86.     Upon information and belief, Defendants hack, capture or otherwise acquire without permission the encrypted signals of the Plaintiffs' Channels and transmit those signals to its servers which in turn stream the wrongfully acquired signals over IPTV to paying customers in this judicial district and elsewhere.

87.     Annexed hereto as **Exhibit 11** is a screen shot of a list of channels offered by the website www.actava.tv. Among the channels are Channel One, Carousel International, Muzika Pervogo, and Dom Kino.

88.     Annexed hereto as **Exhibit 12** is a screen shot of the Website www.etvnet.com displaying the Rain TV channel.

89.     Annexed hereto as **Exhibit 13** is a screen shot of the website www.mypanorama.tv showing logos of the channels REN TV, CTC and Channel One as part of their repertoire.

90.     Upon information and belief, to subscribe to Defendants' services, including unauthorized access to the Channels and Programming, an individual with internet access need only (a) access the Defendants' websites, (b) download software (e.g. the VLC Media Player) and/or receive equipment necessary for viewing the pirated content (see, e.g., **Exhibit 14**, Infomir's homepage offering receiver boxes), (c) subscribe to Defendants' service, (d) agree to the terms and conditions listed on the relevant website, and (e) pay the necessary charges and fees to Defendants.

91.      Upon information and belief, Defendants have not obtained authorization from any Plaintiff to stream the Channels or Programming over IPTV or to broadcast or re-broadcast the Channels or Programming through any other method.  Accordingly, in light of Defendants' conduct, consumers will likely be confused in to believing that Defendants  are  authorized to broadcast or re-broadcast the Channels and the Programming.


## CAUSES OF ACTION

### COUNT ONE

### UNAUTHORIZED PUBLICATION OR COMMUNICATION UNDER THE COMMUNICATIONS ACT

92.     Plaintiffs hereby re-allege each and every allegation of the foregoing paragraphs as if fully set forth herein.

93.     Plaintiffs own the rights to, among other things, broadcast, re-broadcast, market and distribute within the United States and elsewhere their encrypted programs which are currently de-encrypted and distributed through the websites and software distributed by Defendants.

94.     Plaintiffs license the rights to broadcast and re-broadcast their programs to certain third parties in exchange for a fee.

95.     Defendants have not received a license from any Plaintiff to de-encrypt broadcast or re-broadcast its programs, nor has it received any other permission, express or otherwise, to do so.  Through their Websites, Defendants have and continue to intentionally pirate, retransmit and publish Plaintiffs' programs for the sole purpose of their own economic gain and to the detriment of Plaintiffs and their licensees.

96.     The foregoing willful and intentional actions of Defendants constitute the unauthorized publication or use of communications for commercial advantage in violation of 47 U.S.C. § 605(a), which is applicable to satellite and other cable communication pursuant to subparagraphs (b) – (e) of that section.

97.     Without the express permission of any Plaintiff or Plaintiffs collectively, Defendants are receiving, transmitting or assisting in transmitting interstate foreign broadcast communications by wire or radio, causing said communications, their contents and substance to be divulged and published through unauthorized channels of transmission or reception.

98.     The foregoing willful and intentional actions by Defendants constitute the unauthorized publication or use of communications for commercial advantage in violation of 47 U.S.C. § 605(a).

99.     "Any person aggrieved by a violation of subsection (a) may bring a civil action for actual or statutory damages for each violation."  47 U.S.C. § 605(e)(3)(C).  "Any person aggrieved" includes "any person with proprietary rights in the intercepted communication."  47 U.S.C. § 605(b)(6).

100.    As a direct and proximate result of Defendants wrongful actions, Plaintiffs have sustained and will continue to sustain damages and irreparable harm such that monetary, preliminary and permanent injunctive relief is warranted as authorized by 47 U.S.C. § 605(e) along with an award of any such other relief the Court deems just, proper and equitable.

101.    The Communications Act provides that the Court "shall direct the recovery of full costs, including awarding reasonable attorneys' fees to an aggrieved party who prevails."  47 USC § 605 (e)(3)(B)(iii).  Accordingly, the Court should also award costs to Plaintiffs, together with reasonable attorneys' fees.

## COUNT TWO

## CIRCUMVENTION IN VIOLATION OF THE DIGITAL MILLENIUM COPYRIGHT ACT

102.    Plaintiffs hereby re-allege each and every allegation of the foregoing paragraphs as if fully set forth herein.

103.    The Copyright Act, as amended by the Digital Millennium Copyright Act, provides that "[n]o person shall circumvent a technological measure that effectively controls access to a work protected under this title."  17 U.S.C.A. § 1201.

104.    The Channels and Programming are subject to the protections of the Copyright Act by virtue of the Berne Convention.

105.    The Programming is encrypted by Broadcasters and only authorized viewers may lawfully access the Programming.

106.     Defendants have hacked or otherwise circumvented Broadcasters technological measures, including the encryption, in order to access, market, sell, profit and otherwise benefit from the Programming to the detriment of Plaintiffs.

107.     A violation of the anti-circumvention rules under the DMCA is actionable even in the absence of a finding of infringement.

108.     Accordingly, Defendants are in violation of the DMCA and Plaintiffs are entitled to injunctive relief and damages in an amount to be determined at trial together with any such other and further relief as deemed just, proper and equitable.

## COUNT THREE

## TRADEMARK INFRINGEMENT UNDER § 43 OF THE LANHAM ACT

109.     Plaintiffs hereby re-allege each and every allegation of the foregoing paragraphs as if fully set forth herein.

110.     Plaintiffs' marks are protected pursuant to the laws of the Russian Federation and therefore entitled to protection under the Lanham Act by virtue of the Paris Convention.

111.     Defendants' use of the Channels' trademarks, including but not limited to the logos, to promote, market or sell products and services on the moidom.tv website constitutes trademark infringement pursuant to Section 43 of the Lanham Act, 15 U.S.C. § 1125.

112.     Defendants' infringement of Plaintiffs'' trademarks is intentional and willful and has caused and will continue to cause irreparable damage to Plaintiffs for which there is no adequate remedy at law.

113.     Accordingly, the Court should grant injunctive relief barring Defendants from intercepting, broadcasting, re-broadcasting or otherwise displaying Plaintiffs' Channels and Programming or otherwise infringing upon Plaintiffs' marks as well as an award of damages along with any other relief that the Court deems just, proper and equitable.

**COUNT FOUR**

**FALSE ADVERTISING UNDER § 43 OF THE LANHAM ACT**

114.     Plaintiffs hereby re-allege each and every allegation of the foregoing paragraphs as if fully set forth herein.

115.     Defendant's advertisements and statements concerning their authority to broadcast Plaintiffs' programming are literally and/or implicitly false, misleading, and in direct violation of Section 43(a) of the Lanham Act, which provides in relevant part that "[a]ny person who, in connection with any goods or services . . . uses in commerce any . . . false or misleading description of fact or misleading representation of fact, which . . . in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities, shall be liable to a civil action by any person who believes that he or she is likely to be damaged by such act."

116.     As set forth in **Exhibits 15-16**, Defendants have misappropriated the logos and other protected marks of Plaintiffs' Channels for their own commercial gain and to the detriment of Plaintiffs.

117.     Pursuant to 15 U.S.C. § 1125, 1117, Plaintiffs are entitled to injunctive relief, damages for Defendants' Lanham Act violations, an accounting of profits made by Defendants on revenues relating to Plaintiffs' Programming, recovery of costs and reasonable attorney's fees incurred in this action along with any other relief that the Court deems just, proper and equitable.

**COUNT FIVE**

**TRADEMARK TARNISHMENT**

118.     Plaintiffs hereby re-allege each and every allegation of the foregoing paragraphs as if fully set forth herein.

119.    Numerous consumer complaints have been made concerning Defendants, and said consumers are and will likely continue to be confused into believing that Defendants are authorized to display Plaintiffs' Channels and Programming.

120.    By displaying Plaintiffs' logos, other marks and related content in the same lineup as adult-only programming and broadcasting them together with adult content, Defendants create an association between Plaintiffs' trademarks and  explicit content.

121.    Certain of Plaintiffs' Channels are intended for and marketed to a general audience and the associated logos are used to designate such generally appropriate content. Association of Plaintiffs' logos and other marks with adult content, including pornography irreversibly and irreparably harms the carefully maintained reputation of the Channels and the trademarks signifying them, utterly devaluing the trademarks and in the process irreparably harming Plaintiffs and their goodwill.

122.    Pursuant to 15 U.S.C. § 1125, 1116, Plaintiffs are entitled to injunctive relief along with any other relief that the Court deems just, proper and equitable.

## COUNT SIX

## COPYRIGHT INFRINGEMENT

123.    Plaintiffs hereby incorporate and re-allege each and every allegation of the foregoing paragraphs as if fully set forth herein.

124.    The Berne Convention requires member states, including the United States, to recognize the copyrights issued with respect to works created in other member states.

125.    Art. 2 of the Berne Convention provides that the Berne Convention applies to cinematic works.

126.    The Programming need not be registered with the United States Copyright Office in order to be eligible for protection under the Copyright Act as applicable here through the Berne Convention.

127.    Plaintiffs (and/or their parents, subsidiaries, licensees or affiliates) are the legal or beneficial owners of the copyrights in the Channels and Programming that have been or will be distributed via encrypted satellite transmissions to be exhibited over broadcast or internet television stations in the United States or abroad as well as through a variety of other media outlets.

128.    Each Program is an original audiovisual work that has been or will be fixed in a tangible medium of expression and constitutes copyrightable subject matter within the meaning of Section 102 of the Copyright Act, 17 U.S.C. § 102.

129.    Each Program has been created or licensed for exhibition by Plaintiffs (and/or their parents, subsidiaries, licensees or affiliates), the transmissions of which Defendants are broadcasting or re-rebroadcasting by, among other methods, streaming them over IPTV, without authorization on their websites.  Upon information and belief, Defendants have streamed and will continue to  stream, as part of their unauthorized service via their websites and/or hardware, the Channels and Programming.

130.    Under Section 106 of the Copyright Act, 17 U.S.C. § 106, Plaintiffs own the exclusive rights, among others, to reproduce in copies their copyrighted works, to distribute copies to the public of their copyrighted works, to publicly perform their copyrighted works, to publicly display their copyrighted works, and to make derivative works based upon their copyrighted works.

131.     Under Section 106 of the Copyright Act, 17 U.S.C. § 106, Plaintiffs (and/or their parents, subsidiaries, licensees or affiliates) also own the exclusive right to authorize others to exercise the rights set forth in the preceding paragraph 54.

132.     Neither any of Plaintiffs nor any other person or entity authorized by Plaintiffs has granted any license, permission or authorization to Defendants to exercise any of the rights as set forth in this Complaint or to authorize others to exercise such rights with respect to the copyrighted Programs or any other works in which Plaintiffs (and/or their parents, subsidiaries, licensees or affiliates) own copyrights.

133.     In offering their infringing  services, Defendants have exercised and will exercise (or has authorized or will authorize others to exercise) one or more of Plaintiffs' exclusive rights set forth in this Complaint with respect to the Programming and other works in which Plaintiffs (and/or their parents, subsidiaries, licensees or affiliates) own copyrights.

134.     Defendants have committed and will continue to commit each act of copyright infringement with the knowledge that it was not authorized to exercise any of the rights (or to authorize others to exercise any of the rights) set forth in this Complaint with respect to Plaintiffs' Programming and other works in which Plaintiffs own copyrights.  Defendant's conduct thus has constituted and will constitute willful copyright infringement.

135.     By facilitating and aiding these infringements, John Does are contributing to copyright infringements and are thus vicariously liable under the Copyright Act 17.U.S.C. §101 et seq.

136.     As a result of Defendants willful copyright infringement, Plaintiffs have been and are being irreparably harmed.

137.     The Copyright Act provides for, among other things, injunctive and monetary relief to remedy such instances of infringement.  17 U.S.C. §§ 502, 504.

138.     Unless restrained by the Court, Defendant will continue to engage in such willful copyright infringement.

139.     Accordingly, the Court should grant injunctive relief barring Defendants from intercepting, copying, broadcasting, re-broadcasting or otherwise displaying the Channels and Programming as well as an award of damages along with any other relief that the Court deems just, proper and equitable.

**COUNT SEVEN**

**SECONDARY COPYRIGHT INFRINGEMENT**

140.     Plaintiffs hereby re-allege each and every allegation of the foregoing paragraphs as if fully set forth herein.

141.     Through the creation, maintenance and operation of their unauthorized Websites and providing streaming services and credit card processing for www.infomirusa.com, www.mypanorama.tv, www.etvnet.com, www.actava.tv, and www.gudzone.tv;   Defendants induce, contribute to, and are vicariously liable for any copyright infringement committed by their subscribers or other persons that are provided access to the Defendants' infringing services.

142.     Accordingly, the Court should grant injunctive relief as requested above along with any such other relief the Court deems just, proper and equitable.

**COUNT EIGHT**

**NEW YORK GEN. BUS. LAW § 349**

143.     Plaintiffs hereby re-allege each and every allegation of the foregoing paragraphs 1 as if fully set forth herein.

144.     New York General Business Law § 349 prohibits "[d]eceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service . . ."

145.     Subsection (h) of General Business Law § 349 provides that "any person who has been injured by reason of any violation of this section may bring an action . . . to enjoin such unlawful act or practice . . ." in addition to the right to recover "actual damages."

146.     Defendants have, through their Websites, deceived consumers and paying customers in New York into believing it has the legal right or authority to broadcast or re-broadcast Programs over which Plaintiffs have exclusive rights.  The Websites are misleading in a material way by representing that the services to be provided are authorized despite the infringements set forth above.  Plaintiffs have suffered and continue to suffer irreparable injury as a result of  Defendants' conduct, including their interception, broadcast and re-broadcast of Plaintiffs' Programming.  Such injuries are not limited to financial injury and include damage to Plaintiffs' worldwide reputations, goodwill and relationships with licensees, among others.

147.     Accordingly, Plaintiffs are entitled to injunctive relief against Defendants as well as all actual damages caused by Defendants conduct under Gen. Bus. Law § 349 any such other relief the Court deems just, proper and equitable.

**COUNT NINE**

**UNFAIR COMPETITION AND COMMON LAW INFRINGEMENT (ACCOUNTING)**

148.     Plaintiffs hereby re-allege each and every allegation of the foregoing paragraphs as if fully set forth herein.

149.     The conduct of Defendants constitutes unlawful, unfair, and fraudulent business practices in violation of the general business, trade regulation, and unfair competition laws of the State of New York.

150.     Plaintiffs are therefore entitled to injunctive relief against the injury Defendants have caused to Plaintiffs by misappropriation of the Channels, Programming, trademarks are other rights belonging to the Plaintiffs.

151.    Defendants' wrongful acts have proximately caused and will continue to cause Plaintiffs substantial injury, including loss of customers and advertising, confusion of existing and potential customers, injury to their reputations, and diminution of the value of the Programming and of all the works which Plaintiffs create and market.  The direct damages, lost profits, and other losses sustained by Plaintiffs due to Defendants' unlawful conduct are substantial.

152.    Plaintiffs are therefore entitled to a full and accurate accounting of all the profits the Defendant has obtained as a result of its unfair competition practices with respect to Plaintiffs' Programming.

153.    Plaintiffs are also entitled to an injunction, under principles of equity, restraining Defendants and their officers, agents, servants, employees, and all persons acting in active concert or privity with them from engaging in any further such unlawful conduct along with any such other relief the Court deems just, proper and equitable.

## COUNT TEN

## DECLARATORY JUDGMENT

154.    Plaintiffs hereby re-allege each and every allegation of the foregoing paragraphs as if fully set forth herein.

155.    A case of actual controversy exists regarding Defendants' broadcasts or re-broadcasts of Plaintiff's Channels and Programming.

156.    Therefore, a judgment declaring Plaintiffs' exclusive rights to the Programming and Channels in the United States is warranted pursuant to the Declaratory Judgment Act 28 U.S.C. § 2201, *et. seq.*

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs request that the Court enter judgment in their favor and against Defendants as follows:

A.      An order enjoining Defendants and their officers, agents, servants, and employees and all those in active concert or participation with them, including but not limited to payment processors, from infringing upon Plaintiffs' exclusive rights to the Channels and Programming;

B.      A declaration adjudging that Plaintiffs own all rights, titles and interests to the Channels and Programming and that Defendants have no rights, title or interest to the Channels and Programming

C.      An award to Plaintiffs of monetary damages, costs and attorneys' fees;

D.      An award to Plaintiffs of exemplary damages;

E.      An award of any such other and further relief as the Court deems just, proper and equitable.

Dated: New York, New York
February 12, 2016

DUNNINGTON, BARTHOLOW & MILLER LLP
*Attorneys for Plaintiffs*

By: /s Raymond J. Dowd_____
Raymond J. Dowd
Samuel A. Blaustein
250 Park Avenue, Suite 1103
New York, New York 10177
(212) 682-8811
rdowd@dunnington.com
sblaustein@dunnington.com