```
 1                    UNITED STATES DISTRICT COURT
                     SOUTHERN DISTRICT OF NEW YORK
 2

 3   ------------------------------------X
                                        :
 4   JOINT STOCK COMPANY CHANNEL ONE    :
     RUSSIA WORLDWIDE, et al.,          :
 5                                      : 16-CV-1318 (GBD)
                          Plaintiffs,   :
 6                                      : July 22, 2016
                    v.                  :
 7                                      : 500 Pearl Street
     INFOMIR LLC, et al.,               : New York, New York
 8                                      :
                          Defendants.   :
 9   ------------------------------------X

10         TRANSCRIPT OF CIVIL CAUSE FOR DISCOVERY HEARING
                 BEFORE THE HONORABLE BARBARA MOSES
11                 UNITED STATES MAGISTRATE JUDGE

12   APPEARANCES:

13

     For the Plaintiff:        SAMUEL BLAUSTEIN, ESQ.
14                             Dunnington, Bartholow & Miller LLP
                               1359 Broadway
15                             New York, New York 10018

16
     For Defendant/Panorama:   ALAN FRAADE, ESQ.
17                             Mintz & Fraade P.C.
                               271 Madison Avenue
18                             New York, New York 10016

19   For Defendant/Infomir:    STEWART LEVISS, ESQ.
                               Berkowitz, Lichstein, et al.
20                             75 Livingston Avenue
                               Roseland, New Jersey 07068
21
     For Defendant/Goodzone:   MARCUS NUSSBAUM, ESQ.
22                             POB 245599
                               Brooklyn, New York 11224
23

24   Court Transcriber:        SHARI RIEMER, CET-805
                               TypeWrite Word Processing Service
25                             211 N. Milton Road
                               Saratoga Springs, New York 12866


     Proceedings recorded by electronic sound recording,
     transcript produced by transcription service
```

2

1          THE CLERK: <u>Joint Stock Company, et al. v. Infomir,</u>

2 <u>et al.</u>

3          Counsel, please state your name for the court -- for

4 the record.

5          MR. BLAUSTEIN:  Good morning, Your Honor.  Samuel

6 Blaustein, Dunnington, Bartholow & Miller for the plaintiff

7 Broadcasters.  With counsel at counsel table with me today is

8 Hardin Rawley who's a new associate at the firm and he's

9 admitted to practice in the State of New York but has not yet

10 been admitted to practice in the Southern District.  With Your

11 Honor's permission I'd like for him to sit with me.

12          THE COURT: Welcome, Mr. Rawley.  You are -- you are

13 very welcome to join us.  Good morning, Mr. Blaustein.  Be

14 seated.

15          Who have we got for the defendants?

16          MR. FRAADE:  Alan P. Fraade from Mintz & Fraade law

17 firm on behalf of the defendant Panorama.

18          THE COURT: We'll get back in a moment to what

19 Panorama actually is but thank you.

20          MR. LEVISS:  Good morning, Your Honor.  Stewart

21 Leviss, L-E-V-I-S-S, Berkowitz Lichstein.  I'm here with my

22 partner John Messina who represents Infomir LLC.

23          THE COURT: Good morning, Mr. Messina, Mr. Leviss.

24 And we have counsel on the phone I believe for the remaining

25 defendant Goodzone; is that correct?

1          MR. NUSSBAUM:  That's correct, Your Honor.  Good

2    morning.  My name is Marcus Nussbaum for defendant Goodzone

3    TV.  Good morning, Your Honor.

4          THE COURT: Good morning, Mr. Nussbaum, or good

5    evening perhaps where you are.  Thank you for joining us by

6    phone.

7          MR. NUSSBAUM: Thank you, Your Honor.

8          THE COURT: Thank you all for coming.  I scheduled

9    this conference as a discovery conference because there is

10   among other things a letter motion pending for jurisdictional

11   discovery with respect to the defendant named as Panorama TV

12   but I also thought it was a good opportunity since I have this

13   case for general pretrial and for report and recommendation on

14   dispositive motions I thought it would be a good opportunity

15   to get my arms around what is pending in other corners of the

16   case as well.

17         So let me start if I can just to get an overview of

18   who's doing what.  My understanding, and let me ask Mr.

19   Messina and Mr. Leviss first.  My understand is that Infomir

20   has made a motion to dismiss which I believe became fully

21   briefed as of a couple of weeks ago.  Is that correct?

22         MR. LEVISS: Your Honor is correct.

23         THE COURT: Is that a motion to dismiss as to the

24   entirety of the complaint or the entirety of the complaint

25   which hasn't been voluntarily dismissed by the plaintiffs?

4

1          MR. LEVISS: Correct, Your Honor.  It is to dismiss

2    all remaining exists counts as to Infomir LLC.

3          THE COURT: Goodzone has also filed a motion to

4    dismiss; correct?

5          MR. NUSSBAUM: That's correct, Your Honor.

6          THE COURT: I don't think the reply brief has come in

7    on that one yet.  Is that right?

8          MR. NUSSBAUM: That's correct, Your Honor.

9          THE COURT: My understanding is there's a little bit

10   of procedural messiness with respect to Goodzone because your

11   motion did not challenge every remaining count.  So now

12   there's a cross motion for default as to the counts you didn't

13   move to.  Do I have that right?

14         MR. NUSSBAUM: That's correct, Your Honor.

15         THE COURT: Anything else I need to know about the

16   pending motions to dismiss as to Infomir and Goodzone?

17         Nothing from plaintiffs.  I pretty much got that

18   right?

19         MR. BLAUSTEIN: Correct, Your Honor.

20         THE COURT: Good.  So those motions will be decided

21   in good course and then we will find out whether we need to go

22   ahead with discovery as to those defendants or not.

23         Now, let me talk to plaintiff's counsel and to Mr.

24   Fraade with regard to the entity sued as -- I want to get this

25   right.  Panorama TV (www.mypanorama.tv).  So, Mr. Blaustein,

5

1  let me start with you.  It appears -- I'm getting the feeling

2  as I read through the documents on this issue that the entity

3  you named as the Panorama defendant isn't actually a legal

4  person.  That is, you have essentially sued the name of a

5  website.

6          MR. BLAUSTEIN: Yes, Your Honor.  We have sued My

7  Panorama.  We have sued the website in rem www.mypanorama.tv.

8          THE COURT: You can't sue a website in rem for

9  trademark violation.  I mean I saw that in your letter but

10 let's get real here.

11          MR. BLAUSTEIN: In order to protect ourselves we did

12 name John Doe defendants.

13          THE COURT: So let's try to pick through this

14 procedurally.  What you want to do is sue the person, and I

15 use the person to mean either an individual person or a legal

16 person like a corporation or a partnership or some other

17 fictitious person.  You want to sue the person who is

18 responsible for putting that website on the air so to speak;

19 right?

20          MR. BLAUSTEIN: Yes, Your Honor, it's like peeling

21 back the layers.  We're trying to find the true party.

22          THE COURT: Right now you don't actually know the

23 true names of the persons you want to sue; is that fair?

24          MR. BLAUSTEIN: Yes.  The only basis we have are the

25 representations made by counsel.

6

1          THE COURT: Well, you have a little more than that.

2   So let me begin by asking you to unpeel the union a little

3   bit.  You sent a process server out to an address on Avenue Z

4   in Brooklyn and your process server handed a summons and

5   complaint to an individual whose name I don't remember.  How

6   did you get there?

7          MR. BLAUSTEIN: So in the course of our due diligence

8   we went on to the mypanorama.tv website, and when I say we I

9   mean both myself individually and our investigative team, and

10  we used the Google translate function on the --

11         THE COURT: You don't have anybody who speaks

12  Russian?

13         MR. BLAUSTEIN: We have engaged people that speak

14  Russian including people who may or may not be identified as

15  experts and I don't want to get into the we's on that issue.

16         THE COURT: Fine.  You read the website and somewhere

17  on the website there was a reference to that address?

18         MR. BLAUSTEIN: Yes.  If you look at Exhibit B to our

19  letter which is the Google translate version which is not a

20  certified translation -- we can certainly provide a certified

21  translation should Your Honor request one.

22         THE COURT: I don't think we're there yet.  I'm just

23  trying to follow what you did.

24         MR. BLAUSTEIN: There is this indication that there

25  was a panorama.tv authorized.

7

1          THE COURT: Right.

2          MR. BLAUSTEIN: We believe that's a dealer located at

3   1702 Avenue Z in Brooklyn.

4          THE COURT: Right.  So you handed the summons to your

5   process server and said go there, and then what happened?

6          MR. BLAUSTEIN: They got back to us and provided us

7   with an affidavit of service.

8          THE COURT: Yes, but the affidavit of service says we

9   handed the papers to Mr. --

10          MR. BLAUSTEIN: Alex Yenovar [Ph.].

11          THE COURT: Thank you.  Mr. Yenovar.  And the

12   affidavit of service said and he is an authorized -- he was

13   authorized to accept on behalf of "Panorama TV" which isn't

14   actually a legal entity.  So I'm not sure how much there we

15   have there.  And you still don't know what actual corporations

16   or other legal entities or individuals are committing what you

17   claim to be trademark violations and other violations of the

18   law.

19          MR. BLAUSTEIN: That is correct, Your Honor.

20          THE COURT: Meantime now we -- now I turn to Mr.

21   Fraade.  Meantime Mr. Fraade enters a notice of appearance, a

22   formal notice of appearance on behalf of the same name which

23   appears on the caption of the plaintiff's complaint and

24   initially you write to the court, Mr. Fraade, and you say that

25   your client's true name is My Panorama TV UK and you identify

8

1   My Panorama TV UK as a United Kingdom corporation which was

2   named as a defendant in this case but misnamed.  Then a little

3   while later you write in and say no, actually my client is

4   named Panorama Alliance LP but you still appear to be taking

5   the position that this is the entity.  Your client in other

6   words is the entity that the plaintiffs have sued under a

7   mistaken name.  That's kind of your procedural role in the

8   case at the moment.

9          MR. FRAADE: Your Honor, if I may, just the history.

10  Before we were retained on May 4th in an email to Mr.

11  Blaustein I had offered to accept service provided we were

12  given reasonable time to answer.

13         THE COURT: Yes, but which entity did you offer to

14  accept service on behalf of on?

15         MR. FRAADE: Well, we were going to clarify that once

16  we were in the case and renewed it further once we were -- we

17  appeared made the same request and actually Mr. Blaustein and

18  I spoke I believe on Wednesday because he in an email on

19  Tuesday had raised the question about accepting service and

20  allowing us to put an answer in.  We were willing to accept

21  service under the name Panorama Alliance LP and deal with the

22  merits of the case and avoid this whole issue and we believe

23  our client was not properly served but with time eventually

24  they'll figure out who our client is and serve them and both

25  to cut through all this we're willing to accept service to

9

1  hopefully avoid --

2          THE COURT: I understand.  And they were being

3  unreasonable and they wanted to try and get a default against

4  the name of a website.  I like you am trying to cut through

5  empty procedural machinations that waste people's time and see

6  if we can get to what's really going on here.

7          So are you certain as to the actual identity of your

8  client, Mr. Fraade?

9          MR. FRAADE:  Yes, I've now seen the paperwork and

10 have confirmed it.

11         THE COURT: The actual identity of your client is

12 what?

13         MR. FRAADE: Panorama Alliance LP.  It's a UK based

14 limited partnership.

15         THE COURT: Panorama Alliance LP?

16         MR. FRAADE: Yes.

17         THE COURT: You're sure about that?

18         MR. FRAADE: Yes.

19         THE COURT: Misidentified in the caption as Panorama

20 TV.  Is that correct?

21         MR. FRAADE: Correct.

22         THE COURT: And your client, Panorama Alliance, I'll

23 call it Panorama Alliance for purposes of today's hearing, I

24 take it has a business involving Russian language programming

25 in the United Kingdom.

10

1          MR. FRAADE: Correct.

2          THE COURT: And your position is that the United

3   Kingdom business done by your client is licensed and legal and

4   does not constitute an infringement of anybody's rights and

5   that what is going on on Avenue Z in Brooklyn is not going on

6   at the behest of your client.

7          MR. FRAADE: That's correct.

8          THE COURT: Okay.  Therefore your motion now that you

9   have entered the case and assuming that I vacate the default

10  will be what?

11         MR. FRAADE: To be honest, Your Honor, I really have

12  focused right now on the issue of service of the wrong party

13  and really have gotten involved for the limited purpose.  I

14  thought that either there would be a hearing on the purpose of

15  process service and either confirmed or rejected and I think

16  it's clear that it was not proper service under the statute

17  and --

18         THE COURT: Are you still willing to accept service

19  in exchange for getting to the more substantive question of --

20         MR. FRAADE: Yes.  I'm not acknowledging any of the

21  allegations.

22         THE COURT: Let me finish the question.  The more

23  substantive question of personal jurisdiction.

24         MR. FRAADE: We're willing to accept service.  I'm

25  not --

11

1          THE COURT: On behalf of Panorama Alliance.

2          MR. FRAADE: I'm not acknowledging that the business

3    being done at that location is our client or that our client

4    does business in New York or the United States.

5          THE COURT: See, here's the problem.  I appreciate

6    you being willing to accept service while still reserving your

7    jurisdictional defenses.  All defenses other than service of

8    process in other words, which I think is a very sensible way

9    to move forward and I commend it to you, Mr. Blaustein.

10          The problem is that if you were to make a motion to

11    dismiss for lack of jurisdiction under Rule 12(b)(2) which I

12    think is the motion you want to make, although you haven't

13    quite made it yet, the merits of Mr. Blaustein's case seem

14    inextricably intertwined with the merits of any motion to

15    dismiss for lack of jurisdiction because what is going to

16    underlie that jurisdictional motion will be who are those

17    folks on Avenue Z and are they you because if you, you meaning

18    Panorama Alliance, are in fact in some sense directing or

19    authorizing these folks on Avenue Z in Brooklyn to broadcast

20    Russian language programming to the New York metropolitan area

21    then you're doing business in New York and then you're subject

22    to personal jurisdiction in New York.

23          MR. FRAADE: Your Honor, I understand that.

24          THE COURT: So it's difficult to separate the merits

25    from the jurisdictional issue.

1          MR. FRAADE: I understand that, yes.

2          THE COURT: Is that how you would like to proceed?

3          MR. FRAADE: Yes, Your Honor.

4          THE COURT: Mr. Blaustein.

5          MR. BLAUSTEIN: Your Honor, I think generally your

6    assessment of the situation is fair.  We certainly --

7          THE COURT: Then the first thing I'll give you once

8    we've struck that deal is some jurisdictional discovery.

9          MR. BLAUSTEIN: Yes, Your Honor.  I think we've

10   presented a rather clear assessment of what we would like in

11   terms of jurisdictional discovery in our most recent letter to

12   the court.

13         THE COURT: So here's what we are going to do.  With

14   the consent of all relevant parties Panorama Alliance LP has

15   entered its appearance through counsel, counsel being Mr.

16   Fraade, and has acknowledged that it is the entity that was

17   sued under the incorrect name of Panorama TV and the caption

18   of the case will be amended to reflect the true name of that

19   entity, namely Panorama Alliance LP.

20          Panorama Alliance LP has not waived any defenses

21   other than service of process.  Panorama Alliance LP may and I

22   take it would like to make a motion to dismiss pursuant to

23   Rule 12(b)(2).  How much time do you need to make that motion,

24   Counsel?

25         MR. FRAADE: Your Honor, 30 days should be

13

1  sufficient.

2          THE COURT: I'll give you 30 days to make the motion

3  but I am going to authorize discovery going to jurisdictional

4  issues which happens between now and then.  So your deadline

5  for making the motion will be August the 22nd which is a

6  Monday.

7          Panorama Alliance LP is deemed served.

8          Now, let's talk about what discovery is appropriate

9  for this purpose.  Let me get out your last communication to

10  me on that issue, Mr. Blaustein.

11                    [Pause in proceedings.]

12          THE COURT: You haven't -- you haven't given me --

13  you've given me some third party subpoenas but you also want I

14  take it to serve some jurisdictional discovery directly on --

15          MR. BLAUSTEIN: The LP.

16          THE COURT: Good, that's a good name.  The LP.  You

17  want to serve some jurisdictional discovery directly on the

18  LP.

19          MR. BLAUSTEIN: Correct.

20          THE COURT: What will that consist of?

21          MR. BLAUSTEIN: Well, the most important thing would

22  be discovering the true owner and registrant of the website

23  www.mypanorama.tv.

24          THE COURT: Okay.

25          MR. BLAUSTEIN:  Certainly subscriber information in

14

1   the United States.

2           THE COURT: What does that mean, subscriber

3   information?

4           MR. BLAUSTEIN: So our understanding is that a user

5   in New York or somewhere else in the United States can access

6   www.mypanorama.tv.  I may refer to it simply as the website.

7           THE COURT: Fine.

8           MR. BLAUSTEIN: And purchase access in U.S. dollars.

9           THE COURT: Okay.

10          MR. BLAUSTEIN: Yesterday there is an option to

11  purchase in U.S. dollars.

12          THE COURT: You don't need discovery for that I don't

13  think.

14          MR. BLAUSTEIN: No, but we would -- to the extent

15  that there are subscribers accessing the web page that is

16  controlled by the LP in the United States and there is an

17  ability to produce that information we think that that

18  certainly goes to the subject of jurisdiction.

19          THE COURT: You're going to win or lose jurisdiction

20  not on whether they have subscribers in the New York

21  metropolitan area.  Of course they have subscribers in the New

22  York metropolitan area.

23          MR. BLAUSTEIN: Okay.

24          THE COURT: The question is who are they and who runs

25  them; right?

1          MR. BLAUSTEIN: That is the pressing question.

2          THE COURT: I mean they, whoever the they are, have

3   an office in Brooklyn.  If you can tie them to the LP then

4   you've got jurisdiction in New York.  You don't have to prove

5   that they have 100 subscribers or 1,000 subscribers.

6          MR. BLAUSTEIN: We would certainly in that regard

7   like any license agreement or other agreement as between the

8   LP and the alleged authorized dealer in Brooklyn.

9          THE COURT: So you may serve the LP with written

10  discovery, document demands and interrogatories going to the

11  issues of personal jurisdiction.  I'm going to hold you to the

12  straight and narrow on that, Mr. Blaustein.  I know you're

13  going to be tempted to want to sneak in merits discovery while

14  you're at it, do you have a license, how many subscribers do

15  you have, how much money do you process.  That's not what

16  we're doing at this stage of the case.

17         You can ask them for documents and information

18  concerning the relationship of the LP to the website, the

19  relationship of the LP to the office in Brooklyn, the

20  relationship of the LP to the individual who was handed the

21  paperwork and that kind of question.  Certainly you can ask

22  the LP for information concerning the registration of the

23  website but please don't take this as free reign to get an

24  early peak at merits discovery.

25         MR. BLAUSTEIN: Very good, Your Honor.  In terms of

1  the timing of discovery we would intend to serve next week.

2          THE COURT: Okay.

3          MR. BLAUSTEIN: In terms of the turnaround time in

4  light of the briefing schedule it appears that it might be

5  somewhat tight.

6          THE COURT: And that also puts a premium on you

7  keeping that discovery itself tight because if you serve 157

8  categories of document requests on the LP they're not really

9  going to be able to turn that around before the August 22nd

10 filing deadline.

11         MR. BLAUSTEIN: Certainly.

12         THE COURT: So assuming that this is limited and

13 streamlined jurisdictional discovery, sir, how much time do

14 you think you need?

15         MR. FRAADE: The question is do they need the

16 responses before our papers, I don't think so.  So I would

17 like the same 30 days just to -- obviously they need to --

18         THE COURT: Well, they need the responses before

19 their papers.

20         MR. FRAADE: To reply to our papers.  To reply to our

21 papers and the same 30 days would be helpful.

22         THE COURT: I'm going to give you 21 days from

23 whenever they serve.  So you're going to serve by the end of

24 next week, Mr. Blaustein.

25         MR. BLAUSTEIN: Certainly, Your Honor.

17

1          THE COURT: Which is July the 29th and responses are

2    going to be due three weeks after that which is August 19th.

3          Then, Mr. Blaustein, how much time -- I'll get back

4    to the subpoenas in a moment.  How much time are you going to

5    need for your opposition to the 12(b)(2) motion?

6          MR. BLAUSTEIN: Two weeks would likely be sufficient.

7    We would ask for three just to make sure.

8          THE COURT: Two weeks would be Labor Day which is

9    probably not a good day to make your opposition papers due.

10          MR. BLAUSTEIN: I concur.

11          THE COURT: So let me give you to the end of that

12    week, September 9th.

13          MR. BLAUSTEIN: Very good, Your Honor.

14          THE COURT: And the LP can have another week after

15    that until September the 15th for a reply.

16          Now, in terms of third party subpoenas, the timing

17    of which is not as much under my control, let me take a look

18    at what you say you want.  A number of your subpoenas are

19    going to the identities of acquiring banks.  Explain to me how

20    that's relevant to jurisdiction.

21          MR. BLAUSTEIN: We have encountered in the past that

22    it's not the credit card companies that have the information

23    regarding sources of payments and things of that nature but

24    instead the merchant to bank that has the information

25    regarding their true client, who it is that's accepting and

1   receiving the money.  So to the extent that that entity is

2   located in the United States where the money is being

3   transferred somewhere within the United States that would

4   speak to the question --

5        THE COURT: Please keep your voice up a little bit,

6   Mr. Blaustein.

7        MR. BLAUSTEIN: That would speak to the question of

8   jurisdiction if there was a merchant bank account registered

9   in the United States.

10        THE COURT: All right.  So educate me here.  Explain

11   to me what the merchant bank -- what the function is of the

12   merchant bank account.

13        MR. BLAUSTEIN: My understanding generally is that if

14   I'm a company I have an account at a bank and it is that bank

15   that receives deposits from whatever credit card payments that

16   I may receive.

17        THE COURT: So if your customers are paying for

18   access to this programming by credit cards those payments flow

19   through your merchant bank?

20        MR. BLAUSTEIN: That is my understanding.

21        THE COURT: And the merchant bank therefore has on

22   file some information as to who you are?

23        MR. BLAUSTEIN:  That is correct.

24        THE COURT: Because they presumably have to open some

25   account opening documents with the merchant bank.

19

1          MR. BLAUSTEIN: Yes, and I believe there are some

2    other banking -- pertinence banking regulations.

3          THE COURT: All right.  Why are you sending these

4    subpoenas?  You have specific banks listed.  Discover Bank,

5    Visa, American Express.

6          MR. BLAUSTEIN: Yes.  Your Honor, these are the --

7          THE COURT: These are the credit card companies.

8          MR. BLAUSTEIN: Yes, these are the credit card

9    processors that we understand are accepted on the Panorama

10   website.

11         THE COURT: So I see.  So you're working up the

12   chain.  You're going to the credit card companies and saying

13   who's the merchant bank?

14         MR. BLAUSTEIN: That is correct.

15         THE COURT: Then you're going to go to the merchant

16   bank and say who's the client?

17         MR. BLAUSTEIN: That is what our intention would be.

18         THE COURT: What's an acquiring bank?

19         MR. BLAUSTEIN: An acquiring bank I believe is

20   synonymous -- rather identical to the merchant bank.  I think

21   that those terms are similar.

22         THE COURT: Mr. Fraade, do you have any objection to

23   the plaintiff sending third party subpoenas to the credit card

24   companies for this limited purpose?

25         MR. FRAADE: I guess my original concern was that it

20

1   wouldn't be necessary to be doing jurisdictional discovery

2   once we've agreed to accept service.  My concern is what

3   information they're getting from the banks in terms of either

4   customer names, customer information.  I don't know what

5   information they're going to get from the --

6           THE COURT: Right now the only question before me is

7   can they send a subpoena to the credit card company asking for

8   the identity of -- and let me sharpen it up for you because

9   the way you've written the sample subpoenas now you keep

10  talking about defendant Panorama TV.

11          MR. BLAUSTEIN: We would certainly need to update

12  that.

13          THE COURT: But what you really want to know from the

14  credit card companies is the identity of the acquiring banks

15  maintaining merchant accounts for -- do you know who to name?

16  Are you going to call it the LP?  Because the acquiring banks

17  also don't do business with the name of a website.  They do

18  business with a legal entity of some sort which --

19          MR. BLAUSTEIN: That is right, Your Honor, which is

20  why there's another subpoena in there to the domain name

21  posting service.

22          THE COURT: Why don't we start with that?

23          MR. BLAUSTEIN: Very good, Your Honor.

24          THE COURT: And you also need to explain to me a

25  little bit why Domains by Proxy LLC is the right company to

21

1    tell you who really owns the website.  I thought the

2    registrant was GoDaddy.

3            MR. BLAUSTEIN: The registrant appears to be GoDaddy

4    but in the -- I don't have -- there's a mistake here but this

5    is Exhibit 2 to the complaint.  According to Who Is which is a

6    search you can run online it reveals that the registrar, so

7    the company that someone went to register this website is in

8    fact GoDaddy.com.

9            THE COURT: Right.

10           MR. BLAUSTEIN: But the actual registrant is Domains

11   by Proxy LLC.

12           THE COURT: I see.  And they're a service whose name

13   you can rent for this purpose?

14           MR. BLAUSTEIN: That's exactly right, Your Honor.

15           THE COURT: It's like all of those fancy people who

16   buy multi-million dollar apartments in the name of an LP so

17   you can't tell who's moving in upstairs?

18           MR. BLAUSTEIN: Well, certainly.  That's how I buy

19   all my property.

20           THE COURT: So you may send the subpoena to Domains

21   by Proxy for information concerning who's really behind the

22   website that you're complaining about and you can send

23   targeted party jurisdictional discovery to the LP.  And you're

24   obviously going to want to get that subpoena out sooner rather

25   than later.

22

1          MR. BLAUSTEIN: Very good, Your Honor.  We're hoping

2     that that will be sufficient.

3          THE COURT: All right.  Is there anything else that

4     we ought to be doing today?

5          MR. FRAADE: Not on behalf of my client, Your Honor.

6          THE COURT: Okay.  Is there -- is there anybody else

7     in this case?  Everybody else has settled out and been

8     dismissed; is that correct?  The Actava entities and so forth,

9     they're gone?

10          MR. BLAUSTEIN: Your Honor, the Actava entities which

11     consist of Actava, Mr. Tsoutiev and Master Call entities,

12     there has been a settlement in that action.

13          THE COURT: And you settled with or dismissed out

14     some other group as well, right, Matvil Corporation?

15          MR. BLAUSTEIN: I believe that is the case, at least

16     as to certain defendants.

17          THE COURT: So we're all clear on what we're doing

18     and what schedule we're doing it on?  I will issue a written

19     order hopefully by the end of the day today.

20          Thank you very much, gentlemen.  Thank you for

21     coming in and thank you, Mr. Nussbaum, for tuning in.

22          MR. NUSSBAUM: Thank you, Your Honor.

23          THE COURT: All right.  We're adjourned.

24                         * * * * *

23

1        I certify that the foregoing is a court transcript from

2   an electronic sound recording of the proceedings in the above-

3   entitled matter.

4                                   _____

5

6                                       Shari Riemer, CET-805

7   Dated:  August 23, 2016