1

2

              UNITED STATES DISTRICT COURT
            SOUTHERN DISTRICT OF NEW YORK

3

-----------------------------------X
JOINT STOCK COMPANY CHANNEL ONE   :

4

 RUSSIA WORLDWIDE, et al.,
                          : 16-CV-01318 (GBD)

5

          Plaintiffs,     :

6

        v.            : September 8, 2016
                          :

7

INFOMIR LLC, et al.,          : 500 Pearl Street
                         : New York, New York

8

           Defendants,    :
-----------------------------------X

9

    TRANSCRIPT OF CIVIL CAUSE FOR TELEPHONE CONFERENCE
      BEFORE THE HONORABLE BARBARA C. MOSES

10

         UNITED STATES MAGISTRATE JUDGE

11

APPEARANCES:

12

13

For the Plaintiff:      SAMUEL A. BLAUSTEIN, ESQ.
                    Dunnington, Bartholow & Miller, LLP

14

                    1359 Broadway
                    New York, New York 10018

15

16

For the Defendant:      ALAN P. FRAADE, ESQ.
                    Mintz & Fraade, PC

17

                    271 Madison Avenue, 12th Floor
                    New York, New York 10016

18

19

20

21

22

Court Transcriber:      MARY GRECO
                    TypeWrite Word Processing Service

23

                    211 N. Milton Road
                    Saratoga Springs, New York 12866

24

25

Proceedings recorded by electronic sound recording,
transcript produced by transcription service

1          THE COURT:  This is Judge Moses.

2          MR. DOWD:  Good afternoon, Judge Moses.  This is Sam

3   Blaustein with my colleague Hardin Rowley.  We are colleagues

4   for the plaintiff in the action.

5          MR. FRAADE:  And this is Alan Fraade, attorney for

6   the defendant Panorama.

7          THE COURT:  Okay.  I'm going to ask -- do we have

8   anyone else on the line?

9          MR. BLAUSTEIN:  As far as I know, those were the only

10  participants.

11          THE COURT:  All right.  So for the plaintiff, Mr.

12  Blaustein and excuse me, give me your colleague's name again.

13          MR. ROWLEY:  Hardin Rowley, R-O-W-L-E-Y.

14          THE COURT:  And for defendant Panorama, Mr. Fraade,

15  correct?

16          MR. FRAADE:  Right.

17          THE COURT:  All right.  Try to keep your voices up.

18  We do not have a court reporter since this is an informal

19  status conference, or some kind of a conference anyway, in

20  chambers.  But we are trying to make an audio recording, so

21  keep your voices up if you can.

22          The reason I asked you to call in this afternoon is

23  that I received the September 5th letter from plaintiff's

24  counsel seeking a two week extension on the briefing schedule

25  for the Rule 12(b)(2) motion, but since the underlying problem

3

1   seems to be a disagreement regarding discovery as to which I

2   understand you met and conferred yesterday.  I thought it might

3   be more efficient to get everyone on the phone and see whether

4   that dispute has been resolved and what I can do to help you

5   resolve it because I don't want you coming back to me every

6   week saying we're still quarreling about discovery.  So let me

7   get a report perhaps from plaintiff because you wrote me the

8   letter as to whether you were able to resolve the dispute

9   yesterday and if not, what the issues are.

10          MR. BLAUSTEIN:  Very good, Your Honor.  Again, this

11  is Sam Blaustein for plaintiffs.

12          As Your Honor may recall, an order was issued on July

13  22nd requiring the production of jurisdictional discovery in

14  advance of the filing of Panorama's 12(b)(2) motion asserting a

15  lack of personal jurisdiction over it.

16          THE COURT:  Well, what it actually required was that

17  you served that discovery by July 29th and that Panorama respond

18  by August 19th before your opposition papers were due.

19          MR. BLAUSTEIN:  So let me address those points.  We

20  timely served discovery requests and Panorama timely served its

21  response on August 19th, so there's no issue with respect to the

22  timeliness of the response.  The issue has to do more with the

23  quality and the quantity of the response.

24          THE COURT:  Okay.

25          MR. BLAUSTEIN:  Specifically, we only received one

4

1    document from Panorama, that being its certificate of

2    incorporation from the British authorities.  There were no

3    other documents produced.  Because we are faced with the

4    predicament of this being a 12(b)(2) motion in connection with

5    jurisdictional discovery, as plaintiffs we will bear the burden

6    of satisfying to the Court that jurisdiction exists under the

7    rules of the foreign state under CPLR 301 or 302.

8             THE COURT:  Okay.

9             MR. BLAUSTEIN:  We believe that the evidence that we

10   have is sufficient to start that showing.  However, we do not

11   want to be put in a predicament where we ask for jurisdictional

12   discovery and have received only one page and have to move

13   forward with that reality.

14            THE COURT:  Now, I also gave you permission, if I

15   recall correctly, to serve [inaudible] subpoena on an internet

16   server.

17            MR. BLAUSTEIN:  That is correct, Your Honor, and that

18   subpoena has been served and we have been contacted by that

19   entity's processing service.  They have represented to me that

20   we were to receive a response approximately two weeks ago.  We

21   have not yet received that response and I have alerted them to

22   the possibility that we will need to make a motion to the

23   court.

24            THE COURT:  All right.  Have they indicated that they

25   are going to resist or is this just a delay as far as you can

5

1  tell?

2          MR. BLAUSTEIN:  It is a delay.  They represented to

3  me in writing that they would be providing us documents by

4  approximately the end of August.

5          THE COURT:  They missed that deadline.

6          MR. BLAUSTEIN:  It was an internal deadline.  I'm not

7  sure how enforceable it is but that's what they've represented.

8          THE COURT:  All right.  Mr. Fraade, anything you need

9  to augment or jump in on so far?

10          MR. FRAADE:  No.  Just in terms of the lack of

11  documents, I did request my client provide me with any

12  documents they have.  They came back with the one document.

13  Then when I questioned it, they said anything they did, whether

14  it was registering for a phone number -- or the website was all

15  done online and they don't have any documents for that, and I

16  took them at face value on that.  I don't think I need -- you

17  know, that's all they have of those documents since I provided

18  the responses in the response to discovery which was provided

19  to plaintiffs.

20          THE COURT:  All right.  So you met and conferred

21  yesterday with defendant's counsel and did you resolve

22  anything?

23          MR. BLAUSTEIN:  Your Honor, this is Samuel Blaustein

24  again.  I think that the only thing that we resolved is that

25  Mr. Fraade would go back to his clients and make the request.

6

1          THE COURT:  All right.  So now you need to get a

2    little more specific with me about what else you asked for that

3    Panorama has not produced.

4          MR. BLAUSTEIN:  I think I can sum that up relatively

5    quickly.  As Your Honor may recall, we did an investigation

6    concerning Panorama's website, and the primary thrust of this

7    case is that Panorama, and indeed the other defendants,

8    complete their nefarious actions through the internet.  We have

9    --

10         THE COURT:  Now, the website that you're talking

11   about is the -- wait a minute, don't tell me; www.panamatv?  Is

12   that it?

13         MR. BLAUSTEIN:  Mypanorama.tv.

14         THE COURT:  Mypanorama.tv.  All right.  Mr. Fraade,

15   is that your company's website?

16         MR. FRAADE:  My client has advised me that they do

17   own that website.

18         THE COURT:  All right.  So that in the --

19         MR. BLAUSTEIN:  That is in the interrogatories.

20         THE COURT:  Pardon?

21         MR. BLAUSTEIN:  The defendant Panorama has admitted

22   in its response to interrogatories that it owns the website.

23         THE COURT:  Okay.  Well, that's helpful because I was

24   a little unclear when we last got together whether even that

25   was being contested.  So they own the website.  What else you

7

1   need to know about the website?

2        MR. BLAUSTEIN:  Well, what we would like to know is

3   who registered it?

4        THE COURT:  What do you mean who registered it?  They

5   said they own it.  Well, they said that they owned it but the

6   website was registered through a United States entity and we

7   believe that it is being hosted by another company that is here

8   in the United States.  Whether the transaction, whether the

9   registration and the current operation of the website is

10  currently undertaken, or was undertaken in the United States,

11  is a question that goes to the issue of jurisdiction.

12        THE COURT:  All right.  So are they not telling you

13  what companies they use to register it or to host it, or are

14  they simply telling you that they can't produce paper documents

15  because it was done online?  Maybe I should ask Mr. --

16        MR. BLAUSTEIN:  I believe it is a little bit of both,

17  Your Honor.  The now named defendants, the LP, admits that they

18  own the website but nothing more.  They claim that it was

19  registered online.  We think that there should be some record

20  of that registration.

21        THE COURT:  Yes, there should be.  Do they claim they

22  don't know who they registered it through?

23        MR. FRAADE:  That question wasn't asked.  The

24  question was do you have any documents I believe with respect

25  to the website and the answer was I guess no, that it was done

8

1   online.

2          THE COURT:  Okay.  Done online with what entity?  I'm

3   trying to cut through --

4          MR. FRAADE:  I don't think that question was raised,

5   so it was --

6          THE COURT:  Well, I'm raising it, Mr. Fraade.  I'm

7   trying to cut through form here.  If it could have been an

8   interrogatory and not a document request, then maybe it needs

9   to get re-served on an expedited basis as an interrogatory that

10  you need to answer.  I assume your client knows who registered

11  it, right?

12         MR. FRAADE:  I would think yes, and I believe that

13  the entity that they've requested the information from, which

14  is the first I've heard now that they haven't responded, would

15  be able to verify that information.

16         THE COURT:  So your view, Mr. Fraade, is that that

17  information should come from domains by proxy?

18         MR. FRAADE:  Right.  They would have that

19  information.  If they didn't provide it --

20         THE COURT:  Yes, but --

21         MR. FRAADE:  -- then I'll go back to my client to

22  confirm.

23         THE COURT:  No, no, no.  It doesn't work that way.

24  You represent the party.  The party in the first instance has

25  the obligation to provide relevant information as a backup, or

9

1   sometimes as necessary as a workaround.  The plaintiff is

2   entitled to serve a Rule 45 subpoena, but that is never the

3   discovery measure of first resort if the same information is in

4   the possession of the party.  So how are you going to get that

5   information to plaintiffs counsel?

6            MR. FRAADE:  I can contact my client and ask him to

7   confirm that that is the entity that they utilized to obtain

8   the website.

9            THE COURT:  Okay.  And then the other question is who

10  hosts it.  Is that correct, Mr. Blaustein?

11           MR. BLAUSTEIN:  Yes.  We would like -- we believe

12  that we know the answer to that.  We believe it's an entity in

13  Washington State but we would like confirmation of that.

14           THE COURT:  All right.  So are there any other

15  outstanding discovery issues?

16           MR. BLAUSTEIN:  Yes, Your Honor.  I think that the

17  issue of the ownership of the website is one issue that needs

18  to be addressed but I think that the most important question

19  that we asked was our interrogatory request number 10, and that

20  request sought documents that mention, concern, and relate to

21  any agreement or contract made between Panorama and Panorama as

22  defined as the LP in the definitions, and its authorized

23  representatives in the United States.

24           Now, as Your Honor recalls, at the last conference we

25  made reference to Exhibit 13 to the complaint which is a

1    translation of the website mypanorama.tv.  That --

2         THE COURT:  Is that the one that gives the address in

3    Brooklyn?

4         MR. BLAUSTEIN:  That is correct, Your Honor.  Now, we

5    have this documentary evidence that we've taken from the

6    website but now in their responsive interrogatories, Panorama

7    the LP admits to owning that indicates that there is this

8    address in Brooklyn.

9         THE COURT:  Got it.  So Panorama owns the website.

10   The website directs US customers to an address, and I believe a

11   couple of individual names if I'm not mistaken in Brooklyn,

12   correct?

13        MR. BLAUSTEIN:  There's a name for someone named

14   Slavo but I believe Slavo may be located in Los Angeles.

15        THE COURT:  Oh, I'm sorry.  Is there a local phone

16   number given on the website or just the 800 number?

17        MR. BLAUSTEIN:  There is a local phone number given

18   on the website as well.

19        THE COURT:  All right.  It's a 718?

20        MR. BLAUSTEIN:  Yes.

21        THE COURT:  Okay.  So what questions have you asked

22   or what documents have you requested regarding the 718 number?

23   I assume you want to know who owns that number, or to be more

24   precise, whom it is at the time.

25        MR. BLAUSTEIN:  Well, Your Honor, the website

1   mypanorama.tv also includes a 1-800 number.

2          THE COURT:  Right.

3          MR. BLAUSTEIN:  And we are convinced beyond a

4   reasonable doubt that the 718 number has been registered in the

5   United States.

6          THE COURT:  Well, it's a Brooklyn area code.  I don't

7   think, you know, the Moscow telephone company gives you a 718

8   area code.

9          MR. BLAUSTEIN:  That is correct, Your Honor.  And

10  that leads me to my next point which is the interrogatory and

11  the corresponding discovery request that we made asks about the

12  1-800 number on the website, that number being 1-800-556-5617.

13  And the reason that we asked about the 1-800 number is there's

14  something called the unified numbering system and those toll

15  free numbers that are assigned a 1-800 beginnings are only

16  available in the United States, Canada, and a select few other

17  North American countries.

18          THE COURT:  And you want to know if this one is a US

19  number.

20          MR. BLAUSTEIN:  That is what we would like to know,

21  Your Honor.  We are of the belief, based upon our research,

22  that a toll free number that would be directed to the Russian

23  Federation would not start with 1-800 but would use the Russian

24  Federation's extension which is 8-800.

25          THE COURT:  I would think so.  But I skipped ahead.

12

1   You were telling me about your interrogatory 10 which has to do

2   with -- well first you said it was an interrogatory but then

3   you said it asked for the production of documents that

4   constituted agreements or contracts with representatives in the

5   United States.

6          MR. BLAUSTEIN:  Yes, that was a document request.

7          THE COURT:  Document request number 10.  So you

8   wanted pieces of paper that constitute some sort of agreement

9   or contract with authorized representatives in the United

10  States.  And Mr. Fraade, what was your response, your client's

11  response to that one?

12         MR. FRAADE:  No such documents exist --

13         THE COURT:  And is that because when your clients --

14         MR. FRAADE:  -- in the possession or custody of

15  Panorama.

16         THE COURT:  And that's because in your client's view

17  those folks manning the office in Brooklyn don't belong to your

18  client?

19         MR. FRAADE:  Correct.

20         THE COURT:  All right.  Do you have the names of the

21  individuals in Brooklyn, Mr. Blaustein?  You gave me the name

22  of somebody who's not in Brooklyn.

23         MR. BLAUSTEIN:  Yes.  Our research has given us the

24  names.  Bear with me for one moment.  I believe there's an Alex

25  Yanovar [Ph.].  And we have asked questions about these

13

1  individuals.  The responses we have received is that there is

2  no formal affiliation.

3          THE COURT:  No formal affiliation.

4          MR. BLAUSTEIN:  No affiliation with those people.

5          THE COURT:  All right.  Well, have you, for example,

6  asked for emails with Mr. Yanovar?

7          MR. BLAUSTEIN:  We have not asked for emails.

8          THE COURT:  Have you asked for emails of anybody

9  doing business in Brooklyn?

10          MR. BLAUSTEIN:  Well, the reason we didn't ask for

11  emails specifically is that we used the southern district's

12  standard definition of documents which encompasses emails.

13          THE COURT:  Okay.  So you did ask for emails?

14          MR. BLAUSTEIN:  Yes.  I guess the answer is yes just

15  by and through the southern district's definition.

16          THE COURT:  Okay.  And Mr. Fraade, your position as I

17  understand it correctly, and I'm going to maybe oversimplify it

18  a bit here, is we don't know who those folks are in Brooklyn,

19  we didn't rent that office, they don't talk to us, they don't

20  speak for us, we don't know who they are.

21          MR. FRAADE:  There was one individual there who, I

22  don't remember his last name, Asaf [Ph.], who apparently has --

23  and I think it did come up in prior documents, has purchased

24  product as anyone else has the right to purchase product on the

25  website and has resold it.  And plaintiffs are aware of his

14

1    name and who -- I think his last name, I don't have it in front

2    of me.  So clearly they -- I believe my client knows that that

3    person exists.  I believe he is listed as one of two dealers,

4    the two people who have been mentioned I think as a list of

5    dealers, but there's no formal dealership or representative

6    agreement or distribution agreement.  I believe these people

7    asked to be listed on the website to facilitate I guess their

8    ability to sell in the United States and not for my client to

9    sell in the United States.

10            THE COURT:  All right.  Let me see if I got this

11   straight, Mr. Fraade.  Your client has nothing to do with these

12   folks except that they know that it resells your client's

13   products and it allows them in effect to put their address and

14   their contact information on your website for that purpose?

15            MR. FRAADE:  That's correct.

16            THE COURT:  Now, have the document requests

17   previously served been sufficient to cover communications

18   including email communications to or from these folks or

19   concerning them?

20            MR. BLAUSTEIN:  Your Honor, we have in our requests

21   of the term documents --

22            THE COURT:  I understand.  Documents means emails.

23   Have you asked roughly enough to make discoverable, for

24   example, an email from one of the principals of the company in

25   Russia to Mr. Yanovar or Mr. Asaf or concerning them and their

1  activities in Brooklyn?

2          MR. BLAUSTEIN:  Yes, Your Honor.  Document request

3  numbers 2 and 3 specifically asked for documents that mention,

4  concern, relate to, and/or pertain to any agreements or

5  contract made between Panorama LP and both Mr. Yanovar and

6  Slova who's the individual referenced on the website.

7          THE COURT:  I see.  So Mr. Fraade, you're taking the

8  position that you don't have to produce anything because you

9  don't have a contract with these guys?

10         MR. FRAADE:  Well, there's no agreement responding to

11 those.

12         THE COURT:  Well there must've been some agreement if

13 you agreed to put the Brooklyn address on your website.  That's

14 an agreement.  It doesn't have to be gold plated.  Do you have

15 any emails that discuss these matters?

16         MR. FRAADE:  I could obviously raise that with my

17 client.

18         THE COURT:  I think you'd better.

19         MR. FRAADE:  My client didn't have anything in

20 response to what was requested.

21         THE COURT:  Let me be clear.  An agreement does not

22 have to be a written signed contract.  An agreement can be an

23 informal oral agreement.  If you have documents, even if they

24 don't say contract at the top, that reflect the existence of

25 whatever agreement is in place that allows those fellows to do

16

1  whatever it is in Brooklyn, you need to produce those.

2          MR. FRAADE:  I will clarify that with my client and

3  make the request.

4          THE COURT:  And if I continue to hear, because you

5  have to admit, Mr. Fraade, the version of the facts here, not

6  the most plausible I've ever heard.  So if this goes on and

7  there continues to be nothing, you have no explanation for why

8  that address and that phone number and those individuals

9  operating out of Brooklyn are on your website and what they're

10 doing there, then I'm probably going to have to require one of

11 your principals to sit for depositions.  And I think you'd

12 probably rather avoid that.

13         MR. FRAADE:  All right.  I will clarify with my

14 client and make sure they provide the proper information.

15         THE COURT:  Okay.  Any other categories that we need

16 to get?  And this would include also incidentally going back to

17 Mr. Blaustein's original report, even if your client did all of

18 this registration and web hosting arrangements, made all of

19 those arrangements online, it will have some electronic

20 documents reflecting what those arrangements were and when and

21 by whom they were made.  They may be in the form of emails,

22 they may be in the form of data which was retrievable from your

23 client's account electronically at the web hosting service or

24 the company that it used to register the website.  Keep in mind

25 that electronic data counts as documents under the --

1          MR. FRAADE:  I understand, Your Honor.

2          THE COURT:  So you've got to find that stuff, emails,

3    electronic data, whatever it is, and you've got to produce it.

4    And if you keep coming back and saying we don't know what those

5    guys are doing in Brooklyn and we don't have anything, the next

6    request I get I'm sure is going to be for a deeper and more

7    painful level of discovery.  Is there anything else, Mr.

8    Blaustein?

9          MR. BLAUSTEIN:  Your Honor, I think that you've

10   expressed what is the most critical aspect of these things at

11   the moment.  I would only like to advise the Court that there

12   is a slim chance that we will have to seek some type of relief

13   with respect to domains by proxy.  I'm hoping to avoid that,

14   however.

15         THE COURT:  The domains by proxy [inaudible]?

16         MR. BLAUSTEIN:  Yes.  They're based in Arizona.  Or

17   at least the entity that's responding to the subpoena is.

18         THE COURT:  Okay.  Well, my experience is, generally

19   speaking, companies operating lawfully in the United States do

20   respond to Rule 45 subpoenas.

21         MR. FRAADE:  Yes.

22         THE COURT:  They may not respond as quickly as you

23   and I might like them to, but they do respond.  So here's what

24   I'm going to do I think.  I am going to extend for three weeks,

25   not two, I'm going to extend for three weeks the briefing

18

1    schedule.  And that is going to make the opposition brief due

2    on the 30th I think.  Is that right?

3          MR. BLAUSTEIN:  That's correct by my -- well, it

4    would -- yes.  Yes, Your Honor.

5          THE COURT:  All right.  And that is going to make the

6    reply paper a week later.  Hold on.  Now I have to look at my

7    calendar if I can find my calendar.

8                    [Pause in proceedings.]

9          THE COURT:  All right.  So it's September 30th which

10   is a Friday.  The opposition, and that makes it October the 7th,

11   the following Friday for reply.

12         In the meantime, the defendant will once again search

13   its documents including the electronic documents that we

14   discovered for items which are responsive to the plaintiff's

15   pending requests keeping in mind the broad definition of

16   documents and the generous definition of agreement that we

17   discussed during the course of this call.  And when are we

18   going to have a response from Panorama next, Mr. Fraade?

19         MR. FRAADE:  I'm thinking, Your Honor.  There's a

20   time difference and it's always a little complicated to

21   communicate with my client but I'll get an email out to them by

22   if not later today, by tomorrow.  I guess give me a week from

23   Monday because I think I have to go through the computers.  My

24   client seems to travel quite a bit to Russia and Europe so I

25   assume he has to be in his office at his computer to be able to

1  do the search.  So assuming that he will be available -- if

2  not, I will get back to plaintiff's counsel to tell him if

3  there's any delay.  But if you can give me until a week from

4  Monday --

5          THE COURT:  That would be the 19th, correct?

6          MR. FRAADE:  That's correct.

7          THE COURT:  All right.  So to the extent that

8  responsive documents are found now that we've had this chat,

9  you'll produce them by the 19th.

10          MR. FRAADE:  Yes.

11          THE COURT:  Now, should I send a follow-up conference

12  date so that the parties can let me know if there's still a

13  problem or there's not still a problem after the 19th?

14          MR. BLAUSTEIN:  Plaintiffs have no objection to

15  scheduling another conference if the Court thinks it's

16  necessary.

17          THE COURT:  Well, let's plan for success.  So I will

18  not schedule that conference now.  But if there is a problem, I

19  want to hear about it by the 20th, Mr. Blaustein.  Okay?

20          MR. FRAADE:  Okay.

21          MR. BLAUSTEIN:  Absolutely, Your Honor.

22          THE COURT:  All right.  So write me a letter by the

23  20th if you think there is a need for further court intervention

24  and outline in the letter what you think that need is.  I can

25  see scenarios where you might want to write me a letter and not

20

1  need court intervention yet.  For example, if Mr. Fraade calls

2  you up and says we have documents for you but we can't produce

3  them until the 21st, well you can just tell me that.  But tell

4  me something by the 20th.  Okay?

5          MR. FRAADE:  We will certainly provide you an update

6  by the 20th, Your Honor.

7          THE COURT:  All right.  Excellent.  Anything else

8  that we need to do on today's conference?

9          MR. BLAUSTEIN:  Nothing from plaintiff's perspective.

10          THE COURT:  Mr. Fraade?

11          MR. FRAADE:  Not from our end.

12          THE COURT:  All right.  And you're clear on what you

13  need to do, right?

14          MR. FRAADE:  Yes, I am.

15          THE COURT:  Good.  Thank you very much, gentlemen.

16          MR. FRAADE:  Everyone have a good day.

17          MR. BLAUSTEIN:  Thank you.

18                    *  *  *  *  *  *

19

20

21

22

23

24

25

21

1   I certify that the foregoing is a court transcript from an

2   electronic sound recording of the proceedings in the above-

3   entitled matter.

4

5   _____

6                        Mary Greco

7   Dated:  September 14, 2016

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25