**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
---------------------------------------------------------------------X
Joint Stock Company "Channel One Russia Worldwide,"
Closed Joint Stock Company "CTC Network," Closed          Index No.  16-cv-01318
Joint Stock Company "TV DARIAL,"  Closed Joint
Stock Company "New Channel", Limited Liability
Company "Rain TV-Channel," Limited Liability
Company "Veriselintel," Open Joint Stock Company
"ACCEPT", and Limited Liability Company "Comedy TV."

       Plaintiffs,

  -against-

INFOMIR LLC ( www.infomirusa.com),
PANORAMA TV (www.mypanorama.tv),
GOODZONE TV  (www.gudzon.tv),
MATVIL CORPORATION d/b/a eTVnet (www.etvnet.com),
MIKHAIL GAYSTER and
John Does 1-50.

       Defendants.
---------------------------------------------------------------------X


  **MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION FOR**
**SANCTIONS PURSUANT TO RULE 37 OF THE FEDERAL RULES OF CIVIL**
**PROCEDURE**

## <u>TABLE OF CONTENTS</u>

INTRODUCTION ..................................................................................................................1

FACTS ....................................................................................................................................2

   I.    Panorama Challenges The Verified Complaint's Allegations of Personal Jurisdiction
       By Denying Ties To Brooklyn..................................................................................2

   II.   Broadcasters Have Incurred Large Fees Uncovering Evidence Panorama Was
       Ordered By This Court to Produce .........................................................................4

   III.  Panorama And Its Counsel Ignore Specific Court Orders Directing Production of
       Documents And Refuse To Amend And Withdraw Improper Discovery Responses ........6

STANDARD OF REVIEW ....................................................................................................8

ARGUMENT ..........................................................................................................................9

   I.    This Court Should Reinstate Panorama's Default And Impose Discovery Sanctions on
       Panorama and Award Reasonable Attorneys' Fees Against Panorama And Its Counsel
       For Discovery Abuses Pursuant To Rule 37 Because Panorama Has Mischaracterized
       Its Relationship With Asaf and Refused To Correct Its Discovery Responses .................9

      A.  Panorama Failed to Provide Documents or Interrogatory Responses Identifying Its
          Partners ....................................................................................................13

      B.  Panorama Has Failed to Provide Documents or Interrogatory Responses
          Concerning the Website and the Brooklyn Operation .................................14

      C.  Panorama Has Failed to Provide Information Related to Mr. Zeltser's Presence in
          New York....................................................................................................16

      D.  Panorama Has Filed to Provide Documents Concerning Its Admitted Ownership
          of the Website and a Toll-Free Number ...................................................17

CONCLUSION......................................................................................................................18

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*200,000 Towers Inv'rs Restitution Victims v. U.S. ex rel. U.S. Prob. Office New York City Staff Breach of Crime Victims Act*,
No. 13 CIV. 8563 PKC, 2013 WL 6673612 (S.D.N.Y. Dec. 18, 2013) ...................................6

*Allstate, et al. v. Imaging Associates of Five Boroughs, LLC, Five County Imaging Holdings, LLC, Asaf Yevdayev et al.*
(10-CV-03986) ........................................................................................................................6

*CutCo Indus., Inc. v. Naughton*,
806 F.2d 361 (2d Cir. 1986) ................................................................................................16

*DeCastro v. Kavadia*,
309 F.R.D. 167 (S.D.N.Y. 2015) ............................................................................................6

*First Am. Corp. v. Price Waterhouse LLP*,
988 F. Supp. 353 (S.D.N.Y. 1997) ........................................................................................8

*Geico, et al. v. Imaging Associates of Five Boroughs, LLC, Five County Imaging Holdings, LLC, Asaf Yevdayev et al.*
(10-CV-02671) ........................................................................................................................6

*Int'l Mining Co. v. Allen & Co.*,
567 F. Supp. 777 (S.D.N.Y. 1983) ......................................................................................10

*Jordan v. Verizon Corp.*,
No. 08 CIV. 6414 (GEL), 2008 WL 5209989 (S.D.N.Y. Dec. 10, 2008) .............................17

*Kingsway Fin. Servs., Inc. v. Pricewaterhouse-Coopers LLP*,
No. 03 CIV. 5560 ......................................................................................................9, 10, 11

*Medina v. Gonzalez*,
No. 08 CIV 01520 BSJ KNF, 2010 WL 3744344 (S.D.N.Y. Sept. 23, 2010) ........................9

*Optimum Worldwide Ltd. v. Klebener*,
No. 95 CIV. 1359 (HB), 1996 WL 71500 (S.D.N.Y. Feb. 16, 1996) .....................................17

*Rait v. Jacobs Bros.*,
49 Misc. 2d 903, 268 N.Y.S.2d 750 (Sup. Ct. 1966) .......................................................8, 13

*Topps Co. v. Gerrit J. Verburg Co.*,
961 F. Supp. 88 (S.D.N.Y. 1997) ........................................................................................16

ii

**Statutes**

Copyright Act....................................................................................................................3

Federal Communications Act ............................................................................................2

Lanham Act.......................................................................................................................3

Rule 37 of the Federal Rules of Civil Procedure ................................................ *passim*

Local Civil Rule 26.1.......................................................................................................13

Local Civil Rule 26.3(c)(3)..............................................................................................13

## INTRODUCTION

In this action for interception and rebroadcast of stolen satellite signals, Plaintiffs (collectively, "Broadcasters") bring this motion, as permitted by this Court's order dated September 28, 2016 (ECF Doc. 126) for discovery sanctions including a default judgment and attorneys fees pursuant to Rule 37(b)(2)(A) of the Federal Rules of Civil Procedure ("FRCP") because defendant Panorama Alliance, LP ("Panorama") has failed to obey this Court's orders of July 22, 2016 and September 8, 2016 requiring Panorama to disclose documents and respond to the Broadcasters' interrogatories on the question of personal jurisdiction.  In the alternative, Broadcasters seek to strike Panorama's defenses or for the court to deem personal jurisdiction as having been established.

This action was filed on February 19, 2016.  To date, despite having a default voluntarily vacated based on counsel's representations that Panorama has no employees or agents in Brooklyn, and repeated discovery orders from this Court, Panorama has produced only one document and failed to provide adequate responses to interrogatories as instructed by the Court. During this time, Panorama has continued to broadcast illegally intercepted satellite signals to subscribers in New York.  Even when confronted with overwhelming evidence of Panorama's operations in New York and evidence contradicting his client's positions, Panorama's counsel Alan Fraade has refused to provide any explanation for his failure to produce documents.  During this delay, the website www.mypanorama.tv (the "Website") and social media accounts have remained active.  Notably Panorama's Website lists 1702 Avenue Z, Second Floor, Brooklyn, NY 11235 and 718-934-1100 as contact information for Authorized Dealers.  Even today a user can log onto the Website and access the infringing content.  Attached hereto is the Affidavit of Christopher J. Vidulich dated October 17, 2016.  As argued in Points V and VI below, Panorama

1

should be sanctioned for misleading the court as to its relationship with Asaf and its operations in Brooklyn, and for its failures to truthfully respond to interrogatories and document demands despite being directly ordered to do so.

Broadcasters request the following relief: (1) (a) an order reinstating the April 25, 2016 certificate of default judgment (ECF Doc. 45) that was vacated because of misrepresentations made by Panorama and Alan P. Fraade, Esq. or (b) granting a default judgment against Panorama; (2) an order determining that this Court has personal jurisdiction over Panorama and Asaf as an agent or partner of Panorama; (3) prohibiting Panorama from supporting any claims or defenses with facts derived from its responses to Broadcasters' jurisdictional discovery or affidavits from David Zeltser; (4) striking Panorama's motion to dismiss (ECF Doc. 104); (5) awarding reasonable attorneys' fees against Panorama, The Mintz Fraade Law Firm, P.C., and Alan P. Fraade, Esq. incurred by Broadcasters in (a) investigating and responding to Panorama's motion, (b) addressing Panorama's discovery failures, and (c) preparing this motion; and (6) granting such other and further relief as this Court deems just, proper and equitable.

## **FACTS**

### I.   **Panorama Challenges The Verified Complaint's Allegations of Personal Jurisdiction By Denying Ties To Brooklyn**

The relevant facts are summarized in the accompanying declaration of Samuel A. Blaustein dated October 17, 2016 ("Blaustein Dec."). On February 19, 2016 Broadcasters commenced this action by a Verified Complaint. (ECF Doc. 1). The Verified Complaint described how Panorama and other defendants illegally intercept satellite broadcasts and retransmit the broadcasts to subscribers within the United States, and particularly New York. The Verified Complaint relies on three federal statutes to establish Panorama's liability: (1) under the Federal Communications Act, as an illegal interception of satellite communications;

2

(2) under the Copyright Act; and (3) under the Lanham Act.  (ECF Doc. 1).  The Verified

Complaint consists of specific factual recitations supported by admissible evidence including

screenshots, showing that Panorama, through the Website, makes the Broadcasters'

programming available in the United States, particularly New York.  (ECF Doc.1-2).

On May 12, 2016, Broadcasters moved for a default judgment against Panorama.  (ECF

Doc. 54).  The Clerk's Certificate of Default had been previously entered on April 25, 2016

(ECF Doc. 45).  In response, Fraade made the following representations in a letter to the Court

dated May 20, 2016:

> We are advised by our client, Panorama TV UK, that it has no offices in the
> United States and no employees in the United States.  There is no one in the
> United States who is authorized to accept service,  All My Panorama TV UK's
> licensing and programming business is done from through licenses agreements,
> utilizing the trade name Panorama TV.  That a business in Brooklyn, New York,
> which may be an unrelated distributor, uses the banner, Panorama TV does not
> connote that such premises are an office of Panorama TV UK.
>
> Accordingly, service could not have been effected in Brooklyn, New York, as
> proffered by Plaintiffs.  Any individual whom Plaintiffs claim to have served
> could not have been an agent, let alone an officer or director of Panorama TV UK.
> (ECF Doc. 61)

Because Fraade made these representations, and because the Court authorized

jurisdictional discovery, Broadcasters agreed to vacate the Certificate of Default.

Because Fraade committed a fraud, we ask that the Court to reinstate the default

judgment or grant a default judgment.

On July 11, 2016, Broadcasters requested that the Court authorize jurisdictional

discovery in order to avoid potential motion practice (ECF Doc. 90).  This Court has issued two

orders pertaining to this request for jurisdictional discovery: (1) an order on July 22, 2016

authorizing the Broadcasters to serve document demands and interrogatories on Panorama (ECF

Doc. 95); and (2) a follow-up order after the conference on September 8, 2016 (ECF Doc. 121),

where the Court ordered Panorama to take further steps to comply with the discovery demands. On August 22, 2016 Panorama moved to dismiss the Verified Complaint for lack of jurisdiction. Broadcasters served document requests (21 categories) and interrogatories (23 questions) upon Defendant on July 27, 2016.  (Blaustein Dec. ¶ 14).  Panorama responded to the document requests by reproducing a sole document, a United Kingdom Limited Partnership registration, and to the interrogatories by providing false, incomplete, or evasive responses.  (Blaustein Dec. ¶ 15).

Panorama claims to be a UK-registered limited partnership.  (ECF Doc. 75).  Panorama admits to owning the Website.  (Blaustein Dec. ¶ 16; ECF Doc. 125-5, Response to Interrogatory 9).  However, Panorama has moved to dismiss the Verified Complaint for lack of personal jurisdiction.  (ECF Doc.104).  As the Court later correctly identified, the only factual issue with respect to whether the Court has personal jurisdiction over Panorama is whether Panorama has ties to the persons operating in Brooklyn.  (July 22, 2016 Transcript; ECF Doc. 125-4 at p. 15:3-4) ("[i]f you can tie them [i.e., those operating the Website,] to the LP [Panorama] then you've got jurisdiction in New York.")

## II.    Broadcasters Have Incurred Large Fees Uncovering Evidence Panorama Was Ordered by This Court to Produce

The Broadcasters have marshaled evidence showing Panorama's ties to New York including a headquarters in Brooklyn and an owner who is a New York resident.  (Blaustein Dec. ¶ 18; ECF Doc. 125 and exhibits).  In particular, Panorama's connections converge on an individual named Asaf Yevdayev ("Asaf").  (Blaustein Dec. ¶ 17).  The undisputed evidence shows that Asaf is an individual tied to both the Brooklyn headquarters and Panorama's ownership.  (Blaustein Dec. ¶ 17, 21, 22; Ex. E).  Business records indicate that Asaf is both the original registrant and is registered as the current owner of the Website.  (Blaustein Dec. ¶ 21;

4

ECF Doc. 125-6).  Furthermore, Asaf is located in Brooklyn (Blaustein Dec. ¶ 25; Ex. E), and

appears in corporate filings connected to both the Brooklyn address and the purported United

Kingdom address of Panorama (Blaustein Dec. ¶ 18).

On August 30, 2016, Broadcasters wrote a letter to Panorama attaching evidence linking

Panorama, Asaf, and the 1702 Avenue Z Brooklyn, New York 11235 ("Avenue Z") address and

requesting withdrawal of Panorama's motion to dismiss.  (Blaustein Dec. ¶ 17; ECF Doc. 125-2).

The evidence included a photograph of a sign at the Avenue Z address displaying the name

"Panorama" and the Internet address www.mypanorama.tv (the "Website") (ECF Doc. 125-2,

Ex. 2).  Broadcasters also gave Panorama business entity filings connecting Asaf to both the

Avenue Z address and Panorama's UK address.  (Blaustein Dec. ¶ 18).

Specifically, two filings with the State of Wyoming, one for the similarly-named

"Panorama Alliance Group, LLC", and a second for "FUBU Labs, LLC" (filed on July 8, 2016),

list the organizer as Asaf with the same Avenue Z address.  (ECF Doc. 125-2, Ex. 5–6).

Additionally, a UK filing for "Panorama Digital Ltd." lists Asaf as the sole director, his

nationality and residence as "United States", but the service address as "1 Lyric Square, London,

United Kingdom W6 0N6".  The London Lyric Square address is the same address claimed

today by Panorama.  (Compare ECF Doc. 125-2, Ex. 7; 125-5, Response to Interrogatory No. 2).

In response to the August 30 letter, Panorama refused to withdraw its motion to dismiss

and Mr. Fraade declared: "None of the additional alleged evidence which you provide changes

anything.  If your case was so good on the existing facts, you would not need additional

discovery. There is nothing tying the documents relating to Asaf to our client."  (Blaustein Dec.

Ex. C).  In a September 6, 2016 letter and proposed order, Broadcasters advised the Court of the

jurisdictional discovery dispute described above and requested an extension to file their reply papers to Panorama's motion to dismiss.  (ECF Doc. 119).

Neither Asaf nor Mr. Fraade are neophytes to litigation in federal court and thus should be well aware of their duties of candor to the Court.  Asaf has been a defendant in two cases in the federal courts that list him as a New York resident who does businesses in New York.  *See Geico, et al. v. Imaging Associates of Five Boroughs, LLC, Five County Imaging Holdings, LLC, Asaf Yevdayev et al.* (10-CV-02671) and *Allstate, et al. v. Imaging Associates of Five Boroughs, LLC, Five County Imaging Holdings, LLC, Asaf Yevdayev et al.* (10-CV-03986).  Also, Mr. Fraade has extensive experience in the federal courts.  *See 200,000 Towers Inv'rs Restitution Victims v. U.S. ex rel. U.S. Prob. Office New York City Staff Breach of Crime Victims Act*, No. 13 CIV. 8563 PKC, 2013 WL 6673612, at *3 (S.D.N.Y. Dec. 18, 2013) and *DeCastro v. Kavadia*, 309 F.R.D. 167, 178 (S.D.N.Y. 2015).

## III.   Panorama And Its Counsel Ignore Specific Court Orders Directing Production of Documents And Refuse To Amend And Withdraw Improper Discovery Responses

The Court on September 8, 2016 convened a teleconference with the parties to resolve the impasse in discovery described in the September 6 letter.  During the September 8 conference, Panorama claimed that it had "nothing to do with" Asaf and the Brooklyn address:

> THE COURT: Let me see if I got this straight, Mr. Fraade.  Your client has nothing to do with these folks except that they know that it resells your client's products and it allows them in effect to put their address and their contact information on your website for that purpose?
>
> MR. FRAADE:        That's correct.

(ECF Doc. 125-7; September 8, 2016 Transcript p. 13–14).

Also during the September 8 conference, counsel and the Court discussed Panorama's obligation to provide the registration information for the Website and emphasized Panorama's discovery obligations.  (ECF Doc. 125-7; September 8, 2016 Transcript p. 15–17).

6

Prior to the September 8 conference, to obtain the Website's registration information that Panorama had failed to provide, the Broadcasters served a subpoena on Domains By Proxy. However, at the time of the conference Domains By Proxy had not responded.  (Blaustein Dec. ¶¶ 14, 21).  During the September 8 conference, Panorama claimed that it would wait for the Broadcasters to obtain that information from Domains By Proxy, then confirm or deny it.  ECF Doc. 125-7; September 8, 2016 Transcript p. 8–9): ("If [Domains By Proxy] didn't provide [the registration information … then I'll go back to my client to confirm.").

The Court specifically corrected counsel's flawed view of the discovery process, noting that "the party in the first instance has the obligation to provide the relevant information" and that a Rule 45 subpoena "is never the discovery measure of first resort if the same information is in the possession of the party."  (ECF Doc. 125-7; September 8, 2016 Transcript p. 13 ).

The September 8, 2016 Order directed Panorama to conduct a further search and produce jurisdictional discovery by September 19, 2016.  (ECF Doc. 121).  Following the September 8 conference, the Broadcasters received the discovery from Domains By Proxy listing Asaf as the original registrant and current owner of the Website.  (Blaustein Dec. ¶ 21; ECF Doc. 125-6). Confronted with this fact, by email dated September 19, 2016, counsel for Panorama, Mr. Fraade, acknowledged that Asaf "purchased [the Website] in 2010" and that Asaf "allowed Panorama[] to take over [the Website]".  (ECF Doc. 125-1).  Other than this admission, Panorama produced no further documentary discovery in response, nor did it correct its previous incorrect or incomplete responses.  (Blaustein Dec. ¶ 15).  During these delays, the Website has continued to list the Avenue Z address and 718-934-1100 as contact information for Authorized Dealers.  (Blaustein Dec. Ex. F).  The Better Business Bureau also lists Avenue Z and 1-800-556-5617 as contact information for Panorama.  (Blaustein Dec. Ex. G).

On September 20, 2016, the Broadcasters outlined these failures and requested certain relief, inter alia, to allow the Broadcasters' time in the briefing schedule to make a motion for sanctions.  (ECF Doc. 125).

## STANDARD OF REVIEW

Because New York provides that a limited partnership has "no residence distinct from the residences of the partners",  *Rait v. Jacobs Bros.*, 49 Misc. 2d 903, 904, 268 N.Y.S.2d 750, 751 (Sup. Ct. 1966), "a partnership is deemed to reside wherever any of its partners reside."  *First Am. Corp. v. Price Waterhouse LLP*, 988 F. Supp. 353, 360 (S.D.N.Y. 1997), on reconsideration in part, 1998 WL 148421 (S.D.N.Y. Mar. 27, 1998), and aff'd, 154 F.3d 16 (2d Cir. 1998), and aff'd, 154 F.3d 16 (2d Cir. 1998).

Where a party fails to obey a discovery order, Rules 37(b)(2)(A)(i)-(vii) provide that the Court may order any of the following relief: (1) deciding the facts embraced by the order for purposes of the action; (2) prohibiting the party from supporting or opposing designated claims and defenses or from introducing evidence; (3) striking pleadings; (4) staying proceedings until the order is obeyed; (5) dismissing the action; (6) rendering a default judgment; or (7) treating such a failure as contempt.

Here, one of the appropriate sanctions would be for the Court to reinstate Panorama's default because Panorama has been untruthful and has failed to cooperate in discovery.  Second, because many of the discovery failures pertain to establishing Panorama's relationship with Asaf, the Court should also determine that Asaf is, at minimum, an agent of Panorama. Furthermore, the Court should award the Broadcasters their attorneys' fees expended in pursuing this action.

## ARGUMENT

**I.  This Court Should Reinstate Panorama's Default And Impose Discovery Sanctions on Panorama and Award Reasonable Attorneys' Fees Against Panorama And Its Counsel For Discovery Abuses  Pursuant To Rule 37 Because Panorama Has Mischaracterized Its Relationship With Asaf and Refused To Correct Its Discovery Responses**

The record shows that Panorama and its counsel have knowingly engaged in dilatory, dishonest behavior warranting severe discovery sanctions and attorneys fees.  Specifically, the Court should sanction Panorama under Rule 37 for its failure to comply with this Court's July 22, 2016 and September 8, 2016 discovery orders.  Fed. R. Civ. P. 37(b)(2)(A) grants the Court the power to impose severe sanctions for non compliance with a discovery order.  *See Medina v. Gonzalez*, No. 08 CIV 01520 BSJ KNF, 2010 WL 3744344, at *15 (S.D.N.Y. Sept. 23, 2010):

> The United States Court of Appeals for the Second Circuit has emphasized the importance it places on a party's compliance with discovery orders, and has warned that a party who flouts such orders does so at his peril.  The imposition of severe sanctions under Rule 37 is necessary to discourage dilatory tactics and to avoid a situation where compliance with discovery orders comes only when the backs of counsel and the litigants are against the wall.  (internal quotation marks and citations omitted)

The Court may impose sanctions under Rule 37 without a finding of bad faith.  Sanctions may be appropriate under Rule 37(b)(2) if there is noncompliance with an order, "notwithstanding a lack of willfulness or bad faith, although such factors are relevant ... to the sanction to be imposed for the failure."  *Kingsway Fin. Servs., Inc. v. Pricewaterhouse-Coopers LLP*, No. 03 CIV. 5560 RMB/HBP, 2008 WL 5336700, at *7 (S.D.N.Y. Dec. 22, 2008) (internal quotes and cites omitted).  For sanctions under Rule 37, the Court should be "guided by the goals of specific deterrence, general deterrence, and achieving compliance with the underlying discovery order."  *See Kingsway Fin. Servs., Inc. v. Pricewaterhouse-Coopers LLP*, No. 03 CIV. 5560 RMB/HBP, 2008 WL 5336700, at *10 (S.D.N.Y. Dec. 22, 2008) citing *Cine Forty-Second St. Theatre Corp. v. Allied Artists Pictures Corp.*, 602 F.2d 1062, 1066 (2d Cir.1979).

9

This Court long ago determined that imposition of sanctions under Rule 37 "has special significance in the case of interrogatories", because "[i]f parties are allowed to flout their obligations…the effect will be to embroil trial judges in day-to-day supervision of discovery… contrary to the overall scheme of the federal discovery rules." *Int'l Mining Co. v. Allen & Co*., 567 F. Supp. 777, 789 (S.D.N.Y. 1983) quoting *Dellums v. Powell*, 566 F.2d 231, 235 (D.C.Cir.1977). Here, the Broadcasters have been forced to engage in Rule 45 practice, gather evidence, write to counsel and the court repeatedly, and even after the Court's direct order, Panorama has still failed to comply.  Panorama's failures to provide document discovery and provide truthful interrogatory responses should be deterred by meaningful sanctions for the reasons set forth in *Int'l Mining Co*.  Rule 37 allows Broadcasters the opportunity to recover the costs and attorneys' fees incurred as a "direct result of the misleading interrogatory response[s]". *Kingsway Fin. Servs., Inc. v. Pricewaterhouse-Coopers LLP*, No. 03 CIV. 5560 RMB/HBP, 2008 WL 5336700, at *11 (S.D.N.Y. Dec. 22, 2008).  Under Rule 37(a)(5)(A), Panorama, Mr. Fraade, and Mintz Fraade are liable for the costs incurred by Broadcasters because "the party or attorney advising that conduct, or both [can be required] to pay the movant's reasonable expenses incurred in making the motion, including attorney's fees[.]" Such costs and attorneys' fees include those incurred through the Broadcasters' efforts to obtain additional discovery, including from Domains By Proxy, engaging in litigation before the Court with respect to the discovery responses, and submission of the September 20, 2016 letter.  (ECF Doc. 125).  In addition, the Broadcasters' entire opposition to Panorama's motion to dismiss is another set of costs directly flowing from Panorama's untruthful discovery responses.  Had Mr. Fraade been truthful in his representations to the court in his letter dated May 20, 2016, Broadcasters never would have vacated the default.  Had Panorama answered Broadcasters' narrowly tailored jurisdictional

discovery truthfully, Panorama could not have submitted its motion.  Furthermore, Broadcasters should also be liable for the prospective costs to be incurred in connection with remediating the many misleading interrogatory responses, namely the costs and legal fees incurred in deposing Asaf. *Pricewaterhouse-Coopers* at *11.

The progress of this litigation has brought one key issue to the foreground:  the relationship between Panorama and Asaf or others in New York.  Broadcasters supplied to Panorama photographic and other evidence linking the Website to the Avenue Z address in Brooklyn.  The Broadcasters' discovery was tailored in part to elicit information concerning Panorama's relationship with certain individuals presumably located in Brooklyn, including Asaf.  Panorama has now changed its story three times regarding its relationship with Asaf, without once amending its responses to the interrogatories.  In the August 30 letter, Broadcasters showed the lack of merit in Panorama's motion.  (ECF Doc. 125-2).  At the time of September 8 conference (after receiving the Broadcasters' August 30 letter), Mr. Fraade then went further and confirmed the Court's characterization of Panorama's argument that it has "nothing to do with these folks except that they know that it resells your client's products and it allows them in effect to put their address and their contact information on your website".  (ECF Doc. 125-7, September 8, 2016 Transcript p. 14).  Confronted with the evidence from Domains By Proxy, Panorama's counsel admitted in the September 19 letter that Asaf "purchased the website" and "subsequently allowed Panorama [] to take over the domain site and has had nothing to do with it since." (ECF Doc. 125-1, p. 2).  At a minimum, Fraade's May 20, 2016 letter to the Court denying Panorama's connections to Brooklyn was dishonest.  As discovery progressed, Panorama has changed its explanation of Asaf's connections to Panorama, yet has failed to

amend its misleading interrogatory responses, provide any documentation, or withdraw

misleading statements made in a pending motion to dismiss.

## II.   <u>Panorama Has Failed to Answer Document Requests and Interrogatories Relevant to the Issue of Personal Jurisdiction</u>

The facts concerning the ownership and registration of the Website surely were within

the control of Panorama from the outset of this case – Panorama knew how it got access to the

Website.  Panorama's grudging, inch-by-inch admissions – each in response to incontrovertible

third-party evidence contradicting Panorama's discovery responses, frustrates the efficient

exchange of discoverable information that the Federal Rules of Civil Procedure require.

Furthermore, Panorama's dishonest dilatory tactics have forced Broadcasters to repeatedly seek

Court intervention.

Both the discovery and the admissions contained in Panorama's September 19 letter show

that Panorama has disobeyed the September 8 order.  In contrast to its current position,

Panorama's August 19, 2016 responses to Broadcasters' document requests and interrogatories

failed to disclose or denied a relationship between Asaf and Panorama.  The materials received to

date not only conclusively connect the Website to New York, but also contradict Panorama's

discovery responses.  (Blaustein Dec. ¶¶15–16).  For example, Panorama's response to

Plaintiffs' Interrogatories No. 3, Panorama denied any business relationship with "…any other

persons or entities present in the United States."; No. 7, Panorama declared that it had "no

written or formal relationship [with] 'Asaf'"; and No. 11, Panorama stated that

"Panorama…does not have any agents…" (ECF Doc. 125-5).  This self-contradicting evidence

establishes that the Court has jurisdiction over Panorama and that Panorama has been untruthful.

Panorama's obfuscations are just the type of behavior that threatens to turn the discovery

here into a fully judicially-supervised proceeding, which the Court cautioned against at the

September 8 conference.  (September 8, 2016 Transcript p. 3:5-6) ("I don't want you coming back to me every week saying we're still quarreling about discovery.").   All of this intransigence has caused the Broadcasters to incur expenses to pursue what it is entitled to under the Federal and Local Rules and the orders of this Court.  By their own contradictory admissions, Panorama has shown that its discovery responses are both misleading and incomplete.

### A.  Panorama Failed to Provide Documents or Interrogatory Responses Identifying Its Partners

Although Panorama contests personal jurisdiction, Panorama failed to provide proper responses to the most basic questions pertaining to personal jurisdiction.  The Broadcasters' Interrogatory No. 8 asked Panorama to "[i]dentify each of Panorama's limited partners, officers and directors."  To that interrogatory, Panorama responded only that "David Zeltser is Panorama's only Partner and its Managing Director."  Panorama's response here is insufficient because it did not provide Mr. Zeltser's address nor did it comply with Local Civil Rule 26.1.

Local Civil Rule 26.3(c)(3) defines "Identify."  The rule requires the responding party to provide "the person's full name, present or last known address… and the present or last known place of employment."  As a limited partnership, Panorama's ownership is relevant to establish personal jurisdiction.  Under Local Rule 26.1(a) and (b), a partnership is to provide the "residence and domicile" for "all its partners or members".  Panorama failed to do that. Panorama provided Asaf's address-the Avenue Z address - though claimed that he is not a partner or agent of Panorama.  (Blaustein Dec. ¶ 25; Ex. E).

Under New York law, the residence of a limited partnership's owner(s) gives rise to personal jurisdiction.  *See Rait v.Jacobs Bros.*  While Panorama has asserted that Mr. Zeltser is the only owner of Panorama, the Broadcasters must be permitted to contest that assertion. Therefore, the Broadcasters' Document Request No. 8, for documents "pertaining to Panorama's

ownership", and Document Request No. 15, for documents "sufficient to identify Panorama's partners, officers and directors", are highly relevant to the issue of personal jurisdiction. Panorama should be in possession of documents that would reflect the identity of its owners, if not direct documentation, such as a partnership agreement or the like, then also indirect documentation, such as correspondence, records of payments or the like. As evidenced by the Domains By Proxy production, not only do documents exist that show ownership of the Website, but those documents also show Asaf as the owner. Panorama's limited partnership documents do not identify a partner. (Blaustein Dec. ¶ 12). Panorama's argument for a lack of personal jurisdiction relies on the highly suspect affidavits of Zeltser whose name has not appeared in any of the jurisdictional evidence uncovered by Broadcasters. (Blaustein Dec. ¶¶ 12, 17–18). By refusing to produce any documents that would reflect its claim that Zeltser is the owner, Panorama prejudices the right of the Broadcasters to litigate this matter. Therefore, Panorama's refusal to respond to both the interrogatory and the document request should be sanctioned by reinstating Panorama's default.

### B. Panorama has Failed to Provide Documents or Interrogatory Responses Concerning the Website and the Brooklyn Operation

The Broadcasters issued several discovery demands seeking to probe the relationship between Panorama and the Brooklyn operation or the Website. Exploring ties to Brooklyn is a core issue with respect to jurisdiction. Among the requests directed at these issues was Interrogatory No. 9, which required Panorama to: "Describe Panorama's ownership (or other interests) and control (or other rights) of the Website", to which Panorama responded: "[t]he Website is owned and controlled by Panorama". Although this response contains an important admission, it is inadequate because it did not describe Panorama's ownership of the Website. Namely, simply reading the response to this interrogatory, it appears that Panorama would have

owned the Website outright, and appear in the records of Domains By Proxy as the owner and registrant of the Website.  Instead, once confronted with the discovery obtained from Domains By Proxy, revealing Asaf as the owner of the Website, Panorama concocted a different version of events.  Through Mr. Fraade's email of September 19, 2016, Panorama is now claiming a much more detailed description of Panorama's ownership, that Asaf originally registered the Website, then let Panorama use it.  (ECF Doc. 125-1).  This information should have been revealed by Panorama's response to the Broadcasters' interrogatories.

Interrogatory No. 11 inquired about Panorama's "agent(s)…and business operations in the United States".  While Panorama claimed that it had no "agents, distributors or affiliates", the relationship between Asaf and Panorama as described by Panorama's counsel in conference before the Court or in correspondence contradicts this answer.   (Blaustein Dec. ¶ 16–18, 22, 25).  Panorama conceded that it knows that the operation in Brooklyn "resells your client's products and it allows them in effect to put their address and their contact information on your website for that purpose" and that, at minimum, Panorama has some kind of relationship with Asaf in the Website.  (ECF Doc. 125-7, September 8, 2016 Transcript p. 14).

Panorama's current position reflects a relationship with Asaf that would come within the categories, as reflected in the Broadcasters' Document Request No. 13, which requested documents related to "any agreement or contract made between Panorama and any New York resident or New York business" or that described by Document Request No. 16, which requested documents identifying "any subsidiary, affiliate, partner, join[t] venture or other associated business in the United States."  According to the Domains By Proxy discovery, Asaf is a New York resident and according to Panorama's admissions through counsel, Asaf is conducting business in New York.  (Blaustein Dec. ¶ 25; Ex. E).  The relationship described during the

15

September 8 conference, i.e., that Panorama allowed Asaf to resell and put the Avenue Z address on its website, even without knowing the precise details of that alleged arrangement, comes within at least one of the descriptions provided in Document Request No. 16.

Even if Asaf is merely an agent of Panorama, his admitted ties to Brooklyn are sufficient for personal jurisdiction.  "New York courts have customarily interpreted the term 'agent' rather broadly."  *See Topps Co. v. Gerrit J. Verburg Co.*, 961 F. Supp. 88, 91 (S.D.N.Y. 1997).  The Second Circuit has held that "[t]o be considered an agent for jurisdictional purposes, the alleged agent must have acted in the state 'for the benefit of, and with the knowledge and consent of' the non-resident principal." *CutCo Indus., Inc. v. Naughton*, 806 F.2d 361, 366 (2d Cir. 1986) (citations omitted).  If Asaf merely registered the Website, the primary method to access the infringing content, he has acted for the benefit of Panorama.  In a September 19 letter, Panorama admitted that Asaf "purchased the domain site MYPANORAMA.TV in 2010."  (ECF Doc. No 125-1).  All the jurisdictional evidence uncovered by Broadcasters links Asaf and not Zeltser to Panorama and the Avenue Z address.  Therefore, Asaf likely has more than a mere agency relationship with Panorama.

### C.  Panorama has Failed to Provide Information Related to Mr. Zeltser's Presence in New York

Interrogatory No. 10 required Panorama to "describe Zeltser's presence, including temporary visits, to the United States and New York specifically".  In response, Panorama only stated that "Mr. Zeltser made no trips to the United States on behalf of Panorama".  The interrogatory did not ask about trips, it asked about Mr. Zeltser's presence in New York.  Panorama did not deny that Mr. Zeltser is or has been present in the New York.  Under the amended Rule 26(b)(1), the Broadcasters are entitled to discovery "regarding any nonprivileged matter that is relevant to any party's claim or defense".  Mr. Zeltser's presence in New York is

obviously relevant to the question of personal jurisdiction, an issue interposed by Panorama.

Broadcasters have made more than a "sufficient start" at discovering this info on their own. *See*

*Optimum Worldwide Ltd. v. Klebener*, No. 95 CIV. 1359 (HB), 1996 WL 71500, at *4 (S.D.N.Y.

Feb. 16, 1996) (*quoting Peterson v. Spartan Indus., Inc.,* 33 N.Y.2d 463, 354 N.Y.S.2d 905, 908

(1974)):

> "[If] the plaintiffs have made a sufficient start, and shown their position not to be
> frivolous ... [t]hey should have further opportunity to prove other contacts and
> activities of the defendant in New York as might confer jurisdiction under the
> long-arm statute, thus enabling them to oppose the motion to dismiss."

Therefore, Broadcasters are entitled to know whether or on what occasions Mr. Zeltser has been

present in New York, regardless of the supposed purpose of his presence here. This type of

qualification is not permissible under the Rules and this information is necessary to determine his

presence in New York. *See Jordan v. Verizon Corp.*, No. 08 CIV. 6414 (GEL), 2008 WL

5209989, at *5 (S.D.N.Y. Dec. 10, 2008) (listing indicia of physical presence in a state with

intent to remain in a state indefinitely). Such concerns are especially relevant here, where

Panorama has taken steps to conceal Mr. Zeltser's whereabouts and true identity. None of the

purported affidavits of Zeltser have indicated where he executed them and have inconsistent

spellings of his name. (Blaustein Dec. ¶ 12). Combining the answer to Interrogatory No. 10

with that to Interrogatory No. 9, Panorama's attempted evasions leave open the possibility that

Mr. Zeltser is or has been present in the United States or New York, without the necessity of

making "trips to" the United States.

### D. Panorama Has Failed to Provide Documents Concerning its Admitted Ownership of the Website and a Toll-Free Number

Furthermore, Panorama's responses to the Broadcasters' document requests suggest that

Panorama believes that it can avoid production by asserting the documents requested are

electronic. (Compare Blaustein Dec. Ex B, Responses to Document Request No. 4 to September

17

8, 2016 Transcript p. 16-17).  As the Court reminded Panorama, the word "document", when used in discovery requests, is broad enough to encompass electronic documents.  (September 8, 2016 Transcript p. 16-17).  Broadcasters Document Request Nos. 4 and 5 requested documents concerning Panorama's ownership of the Website and a certain 1-800 telephone number, respectively.  (Blaustein Dec. Ex. B).  Notwithstanding the fact that Panorama admitted to owning each of these, see responses to Broadcasters' Interrogatories Nos. 9 and 16, Panorama produced no documents because each was acquired by an "online registration".  (Blaustein Dec. ¶¶ 15–16).  Panorama's continues to list the Website address, the Avenue Z address and the 718-934-1100 number.  (Blaustein Dec. Ex. F).  The Better Business Bureau also lists the Avenue Z address and provides the 1-800-556-5617 number as contact information.  (Blaustein Dec. Ex. G).  The Federal Rules of Civil Procedure require the party to move for a protective order to interpose such an objection and Rule 26(b)(2)(B) requires a party resisting the production of electronic documents to "show that the information is not reasonably accessible because of undue burden or cost".  Panorama has made no such showing.  Plainly, any documents reflecting bills or payments made in connection with the Website registration or the maintenance of the toll-free number would relate to the ownership of either one.  Despite two court orders, none have been produced by Panorama.

## **CONCLUSION**

As described above, Panorama has evaded jurisdictional discovery for an improper purpose, namely to collect subscription fees from the pirated Russian language channels of Broadcasters.  Broadcasters have uncovered convincing evidence connecting Panorama to the Avenue Z address and Asaf.  The avoidable months of motion practice and research that have

cost the Court and Broadcasters' time and money are the type of behavior that Rule 37 sanctions. Panorama has willfully engaged in this behavior and should be sanctioned.

For the foregoing reasons, Plaintiffs respectfully request that the Court grant the relief requested: (1) (a) an order that reinstates the April 25 default judgment against Panorama or (b) order a default judgment against Panorama; (2) designate Panorama a New York resident for purposes of personal jurisdiction and Asaf as the partner or agent of Panorama; (3) prohibit Panorama from supporting any claims or defenses with facts derived from its responses to Broadcasters' jurisdictional discovery or affidavits from David Zeltser; (4) strike Panorama's motion to dismiss (ECF 104); (5) award attorneys' fees against Panorama The Mintz Fraade Law Firm, P.C., and Alan P. Fraade, Esq. incurred by Broadcasters in (a) investigating and responding to Panorama's motion, (b) addressing Panorama's discovery failures, and (c) preparing this motion; and (6) such other and further relief as this Court deems just, proper and equitable.

DATED:    New York, New York
           October 17, 2016

                                Respectfully submitted,


                                DUNNINGTON BARTHOLOW & MILLER LLP
                                Attorneys for Plaintiffs


                           By: /s Raymond J. Dowd_____
                                  Raymond J. Dowd
                                  Samuel Blaustein
                                  250 Park Avenue
                                  New York, NY 10177
                                  Tel: (212) 682-8811
                                  rdowd@dunnington.com