UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| Joint Stock Co. "Channel One Russia Worldwide," Closed Joint Stock Company "CTC Network," Closed Joint Stock Company "TV DARIAL," Closed Joint Stock Company "New Channel," Limited Liability Company "Rain TV-Channel," Limited Liability Company "Veriselintel," Open Joint Stock Company "ACEPT," and Limited Liability Company "Comedy TV,"<br><br>Plaintiffs,<br><br>- against-<br><br>INFORMIR LLC, PANORMA ALLIANCE LP, GOODZONE TV, MATVIL CORPORATION d/b/a eTVnet, MIKHAIL GAYSTER, ACTAVA TV, INC., MASTER CALL COMMUNICATIONS, INC., MASTER CALL CORPORATION, ROUSLAN TSOUTIEV, and JOHN DOES 1-50,<br><br>Defendants. | 16 Civ. 01318 (GBD) (BCM)<br><br>**DECLARATION OF JONATHAN A. MALKI** |

I, Jonathan A. Malki, Esq., declare pursuant to 28 U.S.C. § 1746 as follows:

1.      I am an associate of the law firm of Gottlieb, Rackman & Reisman, P.C.  I represented Actava TV, Inc., Master Call Communications, Inc., Master Call Corporation, and Rouslan Tsoutiev (collectively, "Actava") in two actions before this Court: *Closed Joint Stock Co. "CTC Network" et al. v. Actava Inc.*, No. 15 Civ. 8681, and *Joint Stock company Channel One Russia Worldwide et al. v. Infomir LLC et al,* No. 16 Civ. 1318.

2.      I respectfully submit this declaration to provide the Court with documents and information relevant to Actava's opposition to the above-captioned plaintiffs' (collectively, "Plaintiffs") motion for civil contempt and sanctions (the "Motion") (ECF No. 149–151).

3.     On June 3, 2016, the Court entered a Stipulation, Order & Permanent Injunction vacating the default judgment entered against Actava in and terminating the action captioned *Closed Joint Stock, Co. "CTC Network" et al. v. ActavaTV, Inc.,* 15 Civ. 8681. (*See* 15 Civ. 8681, ECF No. 74.)

4.     On June 6, 2016, Judge Daniels entered a virtually identical Stipulation, Order & Permanent Injunction, terminating the action captioned *Joint Stock Company Channel One Russia Worldwide et al. v. Infomir LLC et al,* No. 16 Civ. 1318. (*See* 16 Civ. 1318, ECF No. 70.)

5.     Parallel to jointly signing on to the orders releasing Actava in the 2015 and 2016 Actions (collectively, the "Injunctions"), on April 26, 2016, Actava and the Plaintiffs entered into a confidential settlement agreement (the "Settlement Agreement").[1]

6.     Each of the Plaintiffs has voluntarily dismissed their various allegations against Matvil Corporation d/b/a eTVnet and Mikhail Gayster (collectively, "Matvil") (*see* 16 Civ. 1318, ECF. Nos. 28, 29, 41, 86, 122).

7.     On October 19, 2016, Plaintiffs' counsel sent Actava (with a copy to counsel) a "Notice of Suspected Breach of Settlement Agreement and Release" (the "Notice"). A copy of the Notice is attached hereto as <u>Exhibit B</u>. In relevant part, the Notice states "that Actava, in concert with Matvil Corp. . . . is now selling IPTV packages that include Broadcasters' channels. . . . [T]his relationship with Matvil is forbidden by the Settlement and enjoined by [the 'Injunctions]." The Notice further alleges that the Injunctions "enjoin Actava from using Matvil to distribute Broadcasters' channels through IPTV service . . . [.]" The Notice contained no mention of Actava's radio advertisements.

---

[1] A copy of the Settlement Agreement, redacted by Plaintiffs, can be found in the papers supporting Plaintiffs' Motion. (*See* Declaration of Raymond J. Dowd ("Dowd Decl."), Ex. 6 at Exhibit B (16 Civ. 1318, ECF No. 150-6).) For the Court's convenience, a redacted copy of the Settlement Agreement is attached hereto as <u>Exhibit A</u>.

8.      On October 26, 2016, on behalf of Actava, my firm sent a letter to Plaintiffs' counsel responding to the Notice. A copy of this response is attached hereto as Exhibit C. Far from a conclusory rejection of Broadcasters' notice of breach, Actava's October 26 response letter sought to explain the nature of Actava's relationship with Matvil, and to reassure Plaintiffs that in referring subscribers to Matvil's fully licensed services, Actava does not interface with the Broadcasters' transmissions, signals, broadcasts, channels, programming, or streams in any manner whatsoever. This letter also invited further discussions with Plaintiffs' counsel in hopes of promptly resolving the misunderstanding.

9.      Still awaiting Plaintiffs' response, on November 1, my firm re-sent the October 26 letter to Plaintiffs' counsel. Our November 1 email again invited Plaintiffs' counsel to meet and confer in the hopes of reaching an understanding—and avoiding the necessity of Court intervention. A copy of our November 1 email is on page five of the document attached hereto as Exhibit D.

10.      On November 3, Plaintiffs' counsel responded via email that he would likely provide a substantive response on Friday, November 4. A copy of that email is on pages 4–5 of Exhibit D.

11.      However, we did not receive Plaintiffs' promised response until ten days later, on November 14. Counsel's November 14 letter largely rejected Actava's explanation but concluded with the following olive branch: "[I]f Actava provides us with a copy of the "Referral Agreement" [the agreement concluded by Actava and Matvil describing the nature of Actava's services in support of Matvil's licensed broadcasts of the Plaintiffs' content] we will consider it." Plaintiff's November 14 letter is referenced on page four of Exhibit D, and a copy of that letter is attached as Exhibit E.

12.     We replied to Plaintiffs' November 14 letter via email on November 18, 2016, relaying that by agreement with Matvil, Actava would be willing to make the Referral Agreement (redacted as to sensitive commercial details) available to counsel for in-person inspection. We further offered to travel to counsel's offices to accommodate such inspection. A copy of that November 18 email is on pages 2–3 of Exhibit D.

13.     We did not receive a reply to our overture to make the Referral Agreement available for inspection. Accordingly, two weeks later, on Thursday, December 1 we contacted Plaintiffs' counsel once more, seeking to set a time for inspection. A copy of our December 1 request is on page 2 of Exhibit D.

14.     Plaintiffs' counsel replied via email on December 7, nearly one week later, demanding that Actava make the Referral Agreement available *"today or tomorrow"* (emphasis added). A copy of Plaintiffs' December 7 email is on pages 1–2 of Exhibit D.

15.     We responded merely hours later on December 7 that we were in the process of coordinating with Matvil—Plaintiffs' licensees, whose rights and interests are implicated by disclosure of the Referral Agreement—and that we would contact counsel "soon regarding scheduling a mutually convenient time." A copy of our December 7 response is on page one of Exhibit D.

16.     After coordinating with Matvil's attorneys, we contacted Plaintiffs' counsel on Friday, December 9, to suggest an in-person inspection of the Referral Agreement at the offices of Dunnington, Barthalow and Miller LLP on the morning of Monday, December 12, or, in the alternative, the afternoon of Tuesday, December 13. In response, Plaintiffs' counsel rejected such inspection, stating that "[w]e will likely be filing our motion against the Actava Defendants

for contempt on Monday . . . [.]"  A copy of Plaintiffs' December 9 email is attached as Exhibit F.

17.    In response, we sought to confirm that counsel did not wish to set up an in-person inspection of the Referral Agreement.  Rather than receiving such confirmation, however, Plaintiffs' counsel replied by stating that "[y]ou are welcome to come to our offices at 10 am on Monday to make your case . . .  [.]"  *See* Exhibit F.

18.    Consequently, on Monday, December 12, I traveled to Plaintiffs' counsel's offices to present the Referral Agreement for inspection. I met with David J. Hoffman, Esq., another attorney at Dunnington, Barthalow and Miller. At the outset of our meeting, however, Mr. Hoffman rejected my offer to review the Referral Agreement, informing me only then that Plaintiffs' counsel would not consent to the terms for inspection outlined in my email of November 18 to Mr. Dowd.

19.    Paragraph 8 of the Settlement Agreement provides in relevant part that "[i]n the event that Plaintiff suspects that any Defendant is in breach of this Agreement, such Plaintiff shall provide written notice of the suspected breach to the appropriate Defendant(s) . . . [.]"

20.    Both the Memorandum of Law in Support of Plaintiffs' Motion for Civil Contempt and Sanctions (No. 16 Civ. 1318, ECF No. 151 at p. 7) and the Declaration of Raymond J. Dowd (No. 16 Civ. 1318, ECF No. 150, ¶ 25) refer to a Russian language radio advertisement (the "Actava Ad") as grounds for civil contempt.

21.    At no time prior to the filing of the instant motion did any Plaintiff alert Actava to a suspicion of breach stemming from the Actava Ad.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Dated: January 13, 2017
         New York, New York

_____
Jonathan A. Malki