UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------------------X
Joint Stock Company "Channel One Russia Worldwide,"
Closed Joint Stock Company "CTC Network," Closed          Index No.  16-cv-1318
Joint Stock Company "TV DARIAL," Closed Joint             (GBD)(BCM)
Stock Company "New Channel", Limited Liability
Company "Rain TV-Channel,", and Limited Liability Company
"Comedy TV."

                              Plaintiffs,

          -against-

INFOMIR LLC ( www.infomirusa.com), INFOMIR GMBH,
ALEXANDER MARAHOVSKY, EVGENI LEVITIN,
TELECOMMUNICATIONS TECHNOLOGIES LTD.,
PANORAMA ALLIANCE, LP (www.mypanorama.tv),
ASAF YEVDAYEV, DAVID ZELTSER,
GOODZONE TV (www.gudzon.tv),
MOIDOM LLC, TELEPROM, VDALI, MHCOM GmbH and
John Does 1-50.

                              Defendants.
--------------------------------------------------------------------X


**BROADCASTERS' PROPOSED FINDINGS OF FACT AND CONCLUSIONS OF LAW**

**TABLE OF CONTENTS**

INTRODUCTION ....................................................................................................1

PROPOSED FINDINGS OF FACT ........................................................................1

    A.  Parties .........................................................................................................1

        i.  Broadcasters ........................................................................................1

            a.  Joint Stock Company "Channel One Russia Worldwide" .......................1

            b.  Closed Joint Stock Company "CTC Network" .....................................2

            c.  Closed Joint Stock Company "TV DARIAL" .......................................2

            d.  Closed Joint Stock Company "New Channel" ......................................3

            e.  Limited Liability Company "Rain TV-Channel" ...................................3

            f.  Limited Liability Company "Comedy TV" ..........................................3

    B.  Broadcasters' Intellectual Property .............................................................4

        i.  Asaf Yevdayev ....................................................................................6

        ii.  Panorama Alliance, LP ........................................................................8

        iii.  David Zeltser a/k/a David Zeltzer ......................................................9

    C.  The Interception and Retransmission of Broadcasters' Signals ...................9

    D.  Infringement of Broadcasters' Programming and Marks .............................11

    E.  Service of Court Papers on Yevdayev .......................................................13

    F.  Motion to Dismiss and Jurisdictional Discovery Dispute............................13

    G.  Injunction and Default ...............................................................................14

    H.  Violation of Injunction...............................................................................15

    I.  Yevdayev is Not a Credible Witness ..........................................................15

J.   Yevdayev's Misrepresentations Have Prejudiced Broadcasters' Attempts to Obtain Damages Discovery ...........................................................................................16

K.   Subscribers and Devices ........................................................................................17

L.   Damages....................................................................................................................17

PROPOSED CONCLUSIONS OF LAW ......................................................................................18

A.   Legal Standard .......................................................................................................18

B.   Yevdayev Violated the Federal Communications Act ("FCA")........................18

C.   The Programming Is Protected by the Copyright Act .....................................20

D.   The Programming Is Protected by the Digital Millennium Copyright Act ("DMCA") ....20

E.   Yevdayev Infringed Broadcasters' Copyrights..................................................21

F.   Yevdayev Violated the Digital Millennium Copyright Act...............................21

G.   The Programming Is Protected by the Lanham Act..........................................22

H.   Trademark Infringement .......................................................................................22

I.   False Advertising Under the Lanham Act ..........................................................22

J.   Damages Calculations............................................................................................24

K.   Attorneys' Fees Calculations ...............................................................................26

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Au Bon Pain Corp. v. Artect, Inc.*,
   653 F.2d 61 (2d Cir. 1981)...................................................................................18

*Cablevision Sys. New York City Corp. v. Torres*,
   No. 02 CIV.7602 (AJP), 2003 WL 22078938 (S.D.N.Y. Sept. 9, 2003) .........................24, 26

*Channel One Russia v. Infomir*,
   2017 WL 696126 (S.D.N.Y. 2017)...................................................................19, 22, 23

*Circuito Cerrado, Inc. v. Pizzeria y Pupuseria Santa Rosita, Inc.*,
   804 F. Supp. 2d 108 (E.D.N.Y. 2011) ...................................................................19

*Cmty. Television Sys., Inc. v. Caruso*,
   284 F.3d 430 (2d Cir. 2002)...........................................................................24, 25

*Daval Steel Prods. v. M/V Fakredine*,
   951 F.2d 1357 (2d Cir. 1986)..............................................................................26

*DIRECTV, Inc. v. Bates*,
   393 F. Supp. 2d 147 (N.D.N.Y. 2005).....................................................................25

*Int'l Cablevision, Inc. v. Sykes*,
   997 F.2d 998 (2d Cir. 1993) (*Sykes I*). 47 U.S.C. ....................................................19

*Joe Hand Promotions, Inc. v. Elmore*,
   No. 11-CV-3761 KAM SMG, 2013 WL 2352855 (E.D.N.Y. May 29, 2013) .......................25

*Joe Hand Promotions, Inc. v. Maupin*,
   No. 15-CV-06355 (ADS), 2016 WL 6459631 (E.D.N.Y. Oct. 31, 2016) .............................19

*Nat'l Basketball Ass'n v. Motorola, Inc.*,
   105 F.3d 841 (2d Cir. 1997)...............................................................................23

*Seena Int'l, Inc. v. One Step Up, Ltd.*,
   No. 15CV01095PKCBCM, 2016 WL 2865350 (S.D.N.Y. May 11, 2016) ..........................26

*Time Warner Cable, Inc. v. DIRECTV, Inc.*,
   497 F.3d 144 (2d Cir. 2007)...............................................................................23

*Warner Bros., Inc. v. American Broadcasting Co.*,
   654 F.2d 204 (2d Cir.1981).................................................................................21

**Statutes**

15 U.S.C. § 1125 ........................................................................................................................24

17 U.S.C. § 1201(a)(1)(A) ....................................................................................................20, 21

17 U.S.C. § 1201(a)(3) ...............................................................................................................20

47 U.S.C. § 605 ....................................................................................................................19, 20

47 U.S.C. § 605(a) ..............................................................................................................19, 20

47 U.S.C. § 605(e) ..........................................................................................................24, 25, 26

Copyright Act ...........................................................................................................................20

Digital Millennium Copyright Act ................................................................................20, 21, 22

Lanham Act ..................................................................................................................19, 22, 23

Federal Communications Act ...............................................................................................19, 24

Federal Rule 55(b)(2) ................................................................................................................18

## INTRODUCTION

Plaintiff Broadcasters[1] submit these Proposed Findings and Fact and Conclusions of Law pursuant to the Court's July 18, 2017 Order Scheduling a Damages Inquest.  (ECF 321).

## PROPOSED FINDINGS OF FACT

**A.  Parties**

    **i.  Broadcasters**

        a.   Joint Stock Company "Channel One Russia Worldwide"

1.     Joint Stock Company "Channel One Russia Worldwide" ("Channel One") is a joint stock company located in and organized under the laws of the Russian Federation with its headquarters located at 19 Akademika Koroleva St. Moscow, 127427 Russian Federation. Channel One produces, among others, "Channel One."  (ECF 211 ¶ 6).

2.     Among the other channels produced by Channel One are a European and U.S. versions of Channel One Russia Worldwide,  Dom Kino, Muzika Pervogo, Vremya:dalekoe i blizkoe, Carousel International, and Telekafe. (ECF 211 ¶ 6)

3.     Additionally, Channel One is authorized by its parent corporation to represent its interests relating to unauthorized distribution of the Russian version of Channel One Russia. (ECF 211 ¶ 6)

4.     Channel One has entered into license agreements with one or more third parties to distribute its programs via IPTV in the United States. (ECF 211 ¶ 12)

---

[1]Joint Stock Company "Channel One Russia Worldwide" ("Channel One"), Closed Joint Stock Company "CTC Network" ("CTC"), Closed Joint Stock Company "TV DARIAL" ("DARIAL"),  Closed Joint Stock Company "New Channel" ("New Channel"), Limited Liability Company "Rain TV-Channel" ("Rain TV"), and Limited Liability Company "Comedy TV" ("Comedy TV") (each a "Plaintiff" or collectively "Broadcasters") A reference to a Plaintiff or Plaintiffs shall be deemed to include its or their parents, subsidiaries, licensees and affiliates.

5.      Panorama Alliance L.P. ("Panorama"), Asaf Yevdayev ("Yevdayev"), and David Zeltser ("Zeltser") (collectively "Defendants") are not authorized to broadcast Channel One, Dom Kino, Carousel International, Muzika Pervogo, Telekafe, or Vremya:dalekoe i blizkoe in the United States or elsewhere. (ECF 211 ¶ 14)

b.   Closed Joint Stock Company "CTC Network"

6.      Closed Joint Stock Company "CTC Network" ("CTC Network") is a closed joint stock company located in and organized under the laws of the Russian Federation.  CTC produces the CTC channel.  (ECF 211 ¶ 15)

7.      CTC has entered into license agreements with third parties to distribute its programs via IPTV in the United States and around the world.  (ECF 211 ¶ 16)

8.      Defendants are not authorized to broadcast the CTC channel in the United States or elsewhere.  (ECF 211 ¶ 18)

c.   Closed Joint Stock Company "TV DARIAL"

9.      Closed Joint Stock Company "TV DARIAL" ("TV Darial") is a closed joint stock company located in and organized under the laws of the Russian Federation.  Darial produces the Che TV channel and previously produced the Peretz channel.  (ECF 211 ¶ 19)

10.     Darial has entered into exclusive license agreements with third parties to distribute its programs via IPTV in the United States and around the world.  (ECF 211 ¶ 20)

11.     Defendants are not authorized to broadcast the Che TV channel in the United States or elsewhere.   (ECF 211 ¶ 20)

    d.   Closed Joint Stock Company "New Channel"

12.    Closed Joint Stock Company "New Channel" ("New Channel") is a closed joint stock company located in and organized under the laws of the Russian Federation.  New Channel produces the Domashny channel.  (ECF 211 ¶ 21)

13.    New Channel has entered into license agreements with third parties to distribute its programs via IPTV in the United States and around the world. (ECF 211 ¶ 22)

14.    Defendants are not authorized to broadcast the Domashny channel in the United States or elsewhere.  (ECF 211 ¶ 22)

    e.   Limited Liability Company "Rain TV-Channel"

15.    Limited Liability Company "Rain TV-Channel" ("Rain TV-Channel") is a limited liability company located at 127015, Moscow ul. Bolshaya Novodmitrovskaya 36, str 2 and organized under the laws of the Russian Federation.  (ECF 211 ¶ 26)

16.    Rain TV has entered into exclusive license agreements with third parties to distribute its programs via IPTV in the United States and around the world.  (ECF 211 ¶ 28)

17.    Defendants are not authorized to broadcast Rain TV's channel in the United States or elsewhere. (ECF 211 ¶ 29)

    f.   Limited Liability Company "Comedy TV"

18.    Limited Liability Company "Comedy TV" ("Comedy TV") is a limited liability company located at 129301, Moscow, 10 Troitskaya Str., Building 2 and organized under the laws of the Russian Federation.  (ECF 211 ¶ 23)

19.    Comedy TV has entered into license agreements with third parties to distribute its programs via IPTV in the United States and around the world.  (ECF 211 ¶ 24)

20.      Defendants are not authorized to broadcast TNT-Comedy Channel in the United States or elsewhere.  (ECF 211 ¶ 25)

21.      Channel One, CTC Network, TV Darial, New Channel, Rain TV-Channel, Comedy TV, (collectively "Broadcasters") produce and distribute Russian-language television programming and licensed content ("the Programming") that is first broadcast in the Commonwealth of Independent States ("CIS"), including Russia and associate states Ukraine and Turkmenistan, and Estonia, Lithuania, Latvia and Georgia via satellite.  (ECF 211 ¶ 62)

**B.   Broadcasters' Intellectual Property**

22.      Broadcasters are the owners of the following marks registered in the Russian Federation ("Marks") and associated foreign-language television channels ("Channels") and related programming ("Programming") (collectively Plaintiffs' "Broadcasts") first published in the Russian Federation;

23.      Channel One owns the Channel One Mark (ECF 211 ¶ 6):



24.      Channel One owns the Dom Kino Mark (ECF 211 ¶ 7):



25.      Channel One owns the Carousel International Mark (ECF 211 ¶ 8):



26.      Channel One owns the Muzika Pervogo Mark (ECF 211 ¶ 9):

4



27.    Channel One owns the Telekafe channel Mark (ECF 211 ¶ 10):



28.    Channel One owns the Vremya:dalekoe i blizkoe Mark (ECF 211 ¶11):



29.    CTC Network owns the CTC Mark (ECF 211 ¶ 15):



30.    TV DARIAL owns the TV DARIAL Mark (ECF 211 ¶ 19):



31.    New Channel owns the New Channel Mark (ECF 211 ¶21):



32.    Rain TV-Channel owns the Rain TV-Channel Mark (ECF 211 ¶ 27):



33.     Comedy TV owns the Comedy TV Mark (ECF 211 ¶ 23):



### i.    Asaf Yevdayev

34.     Yevdayev sells IPTV subscriptions under the brand "Panorama" to the
Programming and set-top boxes to unlawfully access the Programming from 1702 Ave Z,
Second Floor, Brooklyn, NY 11235 ("1702 Ave Z"), and potentially other locations.  Yevdayev
sells IPTV subscriptions under the brand "Panorama" and set-top boxes to unlawfully access the
Programming via the now inoperable domain www.mypanorama.tv (the "Website")  (ECF 211
¶¶ 41-42).

35.     Yevdayev does not have license to use the Programming.  (ECF 462-6 Tr. 123:8-
15; 161:5-16).

36.     Yevdayev was served with process at 1702 Ave Z on March 10, 2016.  (ECF 462-
16).

37.     Yevdayev was determined by this Court to be an agent and representative of
Panorama.  (ECF 320 at 43-44).

38.     Yevdayev is listed as the original and current registrant of the domain name
mypanorama.tv. (ECF 125-6)

39.     Yevdayev owned and operated the now inoperable Website which sold Panorama-branded unauthorized access to video streams of pirated versions of the Programming.  (ECF 198; ECF 313 ¶ 6)

40.     Yevdayev has resisted Broadcasters' attempts to obtain damages discovery.  (ECF 372).

41.     Yevdayev has produced eight emails and no other ESI from February 2013 to the present. (ECF 462 ¶5)

42.     Yevdayev is the principal behind unauthorized broadcasts of Panorama-branded versions of the Program. (ECF 462-13)

43.     Yevdayev uses a confusing web of entities, including Media Alliance Inc, Media Alliance, LLC, Buyncom, and Skyper Group, LLC to accept and make Panorama-related payments in connection with providing subscribers unauthorized access to the Programming . (ECF 462-6 Tr. 38:15-22; ECF 462-13; ECF 462-14; ECF 462-24; Dowd Decl Exs. 11,13). (ECF 462-30 Tr. 361:5-10)

44.     Yevdayev conducts business relating to selling Panorama-branded video streams of the Programming through at least three email accounts: a@mypanorama.tv ("Panorama Email"); asafyevdayev@hotmail.com ("Hotmail Account"); a@vsehd.com ("Gmail Account"). (ECF 462 ¶¶ 11, 38, 45,46)

45.     In furtherance of Yevdayev's unauthorized sales and distribution of the Programming to U.S. subscribers, Yevdayev used the Gmail Account to circulate draft and executed copies of a Network Services Agreement ("NSA") between Panorama and Setplex in 2017.  (ECF 462-21, 462-22, & 462-23)

46.     In furtherance of Yevdayev's unauthorized sales and distribution of the Programming to U.S. subscribers, Yevdayev used the Hotmail Account to register the Website domain with non-party Domains by Proxy on December 16, 2010.  (ECF 125-6)

47.     Yevdayev, is the owner and registrant of the Website.  (ECF 125-6)

48.     Yevdayev used the physical address 2812 East 27th Street Suite 3C, Brooklyn, NY 11235 to register the Domain.  (ECF 125-6).

49.     Yevdayev admitted to using the Panorama Email since at least 2013.  (ECF 462-6 Tr. 164:25–165:14).

50.     Yevdayev also used the Panorama Email to seek legal advice from his cousin, Albert Benjamin, on March 10, 2016.  (ECF 462-16)

51.     Yevdayev has made payments pursuant to the NSA to broadcast the Programming to U.S. subscribers under the Panorama brand (ECF 462-24; Dowd Decl Ex. 11)

52.     Yevdayev received invoices in 2017 from Setplex for services related to unauthorized broadcasts of the Programming under Panorama brand (ECF 462-13, 462-14).

53.     Setplex emailed Yevdayev's Gmail Address to inform him of Broadcasters' Injunction and addressed the letter to Panorama Alliance L.P. with the 1 Lyric Square and 1702 Ave Z addresses.  (Dowd Decl Ex. 15).

54.     Yevdayev testified, untruthfully, that he does not have an agreement with Setplex. (ECF 462-30 18-19).

**ii.     Panorama Alliance, LP**

55.     Panorama Alliance is a purported UK limited partnership with an address of 1 Lyric Square, United Kingdom W6 ONB.  (ECF 462-21, 462-22, & 462-23)

56.     Yevdayev has used Panorama Alliance, LP to falsely pretend that his unauthorized use of the  Programming was conducted by an offshore company.  In fact, Panorama Alliance, LP is an empty shell, designed simply to mislead the Court and impede Broadcasters' antipiracy efforts. (ECF 462 ¶¶ 64-66; ECF 75; ECF 462-1 Tr. 79:2- 80:3; 62-6 Tr. 231:5-11; Dowd Decl. ¶12)

57.     Yevdayev and undisclosed principals use the brand "Panorama" in connection with the unauthorized broadcasts of the Programming. (ECF 463)

58.     Yevdayev  has refused to identify any of his partners or undisclosed principals. (ECF 462-6 Tr. 229:4-230:17).

59.     Yevdayev  maintains a principal place of business for Panorama at 1702 Ave Z, Second Floor, Brooklyn, NY 11235.  (ECF 462-6 Tr. 11:7-12; Dowd Decl Ex. 15).

### iii.    David Zeltser a/k/a David Zeltzer

60.     According to Yevdayev, David Zeltser ("Zeltser") is the purported managing partner of Panorama.  (ECF 193)

61.     Zeltser's name had different spellings in various filings with the Court.  (Compare ECF 110 & ECF 193).

62.     Yevdayev claims to have never met or spoken with David Zeltser. (ECF 462-1 96:10-19)

63.     Zeltser has not appeared in this action and is an alias of Yevdayev.  (ECF 462-21, 462-22, & 462-23)

### C.  The Interception and Retransmission of Broadcasters' Signals

64.     On May 16, 2016, Yevdayev emailed Ben Reiss, a representative of FilmOn.com to obtain a license for Russian programming.  (ECF 462-28)

9

65.     Defendant offers streaming services as a business model.  It sells, without authority of the Broadcaster who owns the Programming, from their own domain name, the Programming as a streaming service to subscribers in the United States and particularly in this judicial district (ECF 211 ¶ 96).

66.     Yevdayev admitted in 2017 that he learned Panorama did not have the rights to the Russian programming in 2016. (ECF 462-6 Tr. 123:3).

67.     As recently as January 23, 2017, Yevdayev exchanged emails with Setplex regarding the decryption of satellite transmissions. (Dowd Decl Ex. 14).

68.     Yevdayev continued to distribute these transmissions in 2017 with knowledge that that he did not have the rights.  (Dowd Decl Ex. 11).

69.     Yevdayev's unauthorized streaming of the Panorama-branded Programming consists of data intercepted from "over the air" satellite communications belonging exclusively to Broadcasters.  (ECF ¶ 6; ECF 313 ¶ 7)

70.     Yevdayev's infringement is accomplished and facilitated in part by sales to consumers in the United States through the use of interactive websites at which consumers located in this judicial district purchase and receive access to the Programming; www.mypanorama.tv. registered, hosted and operated in the United States.  (ECF 211 ¶ 96)

71.     The IPTV player software provided by Yevdayev to access the Programming with a Panorama brand permits consumers to watch the Programming on various consumer electronics including televisions, computers and hand-held devices.  (ECF 198)

72.     A consumer using the IPTV software (browser) on set-top boxes or downloaded from the Website can, by using a password provided by Yevdayev, access a unique Internet

Protocol ("IP") address from which the consumer can access a stream of the Programming provided by Yevdayev through a CDN.  (ECF 198)

73.    Due to Yevdayev's non-compliance with discovery, the Court concludes that the source of Yevdayev's pirated Panorama-branded Programming is satellite transmissions.  (ECF 211 ¶ 99). (ECF 211 ¶99)

**D.    Infringement of Broadcasters' Programming and Marks**

74.    Yevdayev, using the brand Panorama, markets access to the Programming to U.S. consumers within this judicial district for a monthly fee.  (ECF 1-16)

75.    Yevdayev, using the brand Panorama, misleads consumers by making it appear on its Website that he has the right to rebroadcast Broadcasters Programing and Channels by, among other things, displaying the Channels' respective trademarks.  (ECF 198)

76.    Yevdayev accept payments via credit card.  (ECF 462-6 Tr. 49:4-9)

77.    Yevdayev has a PayPal account that can accept payments from subscribers.  (ECF 409-3)

78.    When a U.S. consumer makes a payment to Panorama, the true recipient is Yevdayev and, the consumer is invited to download an internet protocol television ("IPTV") player or purchase a set-top box that permits end-user consumers to bypass the Broadcasters' encryption to view the Programming. (ECF 198; ECF 462-26)

79.    Yevdayev's unlawful streaming services have been offered at far lower prices than lawfully licensed services to thousands of subscribers.  This has caused Broadcasters a loss of subscriber revenue, market share, and advertising revenues.  (ECF 462-6)

80.    The Panorama-branded streams of the Programming is parasitic on the legitimate outlets for their Russian-language broadcasts.  Having subscribed to the illicit broadcasts, such

customers would be unlikely to simultaneously subscribe to the legitimate ones.  Once a certain month has passed, there is no way to restore demand for a legitimate subscription for that month.  For that reason, Yevdayev uses Panorama to inflict irreparable harm on Broadcasters.  (ECF 211 ¶ 106)

81.     Customers obtain their illicit access to the Programming through the Panorama Websites and domain name.  To the extent that Panorama has "blue sky" in its domain name, that asset has been acquired through an illegal business – selling unauthorized access to the Programming and that asset is therefore an illicitly gained one.  (ECF 211 ¶ 109)

82.     In January 2017, less than a year after the Broadcasters' complaint in this action, Yevdayev entered into an agreement with Setplex, LLC ("Setplex") to provide IPTV support services.  (ECF 462-21, 462-22, & 462-23).

83.     Setplex delivered set-top boxes to Yevdayev on behalf of Panorama in January of 2017 (ECF 462-26).

84.     On Wednesday February 15, 2017, Yevdayev emailed a representative of Setplex a list of 421 channels, including 11 of Broadcasters'.  (ECF 462 ¶ 71; ECF 462-27).  Yevdayev testified that the list of channels was from Panorama (ECF 12/8 Tr 348:16-351:6).

85.     Yevdayev made wire transfers to banks in Cyprus and Lithuania between 2013 and 2017, purportedly to entities controlled by Panorama.  (ECF 462-30; ECF 462-31; Tr. 267:17-268:4; Dowd Decl Exs. 2-9)

86.     In his December 8, 2017 deposition, Yevdayev promised to provide the names of these entities.  (ECF 462-30, Tr. 261:9-17; 263:6-8).  Broadcasters requested this information in a letter to Yevdayev's counsel, Lloyd Eisenberg, on December 11, 2017.  (RJD Decl Ex. 1)

87.     Broadcasters have not received a response by December 15, 2017 (RJD Decl ¶ 5).

12

**E.  Service of Court Papers On Yevdayev**

88.     Broadcasters served "Panorama TV" with the Summons and Verified Complaint on March 10, 2016 by personally delivering the same to an individual identified by the process server as Alex Yenavour. (ECF 40).

89.     Yevdayev emailed a copy of the complaint to his cousin, Albert Benjamin on March 11, 2016. (ECF 462-25).

90.     Yevdayev claims to have never met or spoken with Alex Yenavour.  (ECF 462-1)

91.     Panorama did not answer or otherwise respond to the Verified Complaint.  A clerk's certificate of default was issued on April 25, 2016. (ECF 45).  On May 12, 2016 Broadcasters filed a motion for a default judgment. (ECF 54).

92.     Yevdayev  was served with a copy of the summons and amended complaint on May 12, 2017 at 115 Langham Street, Brooklyn, NY 11235 (ECF 257).

93.     Attorney Alan Fraade appeared as counsel for "Panorama TV," and later clarified in a letter to the Court, clarifying that the defendant's true entity name is Panorama Alliance LP formed under the laws of the United Kingdom.  (ECF 62).

**F.  Motion to Dismiss and Jurisdictional Discovery Dispute**

94.     Panorama defaulted on June 12, 2017 (ECF 305)

95.     At a Court conference on July 22, 2016 Broadcasters agreed to vacate the certificate of default against Panorama and the Court granted Broadcasters' request for jurisdictional discovery.  (ECF 95)

96.     Panorama did not produce a single document other than a Certificate of Incorporation in response to Broadcasters' document requests.  (ECF 128-2)

97.     Panorama filed a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(2) on August 25, 2016 for lack of jurisdiction. (ECF 108)

98.     By letter to attorney Fraade dated August 30, 2016, plaintiffs requested that Panorama withdraw its motion to dismiss based on overwhelming evidence that Panorama does indeed do business in the United States.  (ECF 125-2)

99.     Broadcasters again requested that Panorama withdraw its motion to dismiss after receiving its discovery response from Domains by Proxy on September 9, 2016. (ECF 128-4)

100.    On October 20th, 2016, Fraade represented Yevdayev at his first deposition where he testified that he lived in Brooklyn and worked for a company called "Media Alliance" and that he was not an officer or director of Panorama and had no ownership interest in Panorama. (ECF 462-1 31:24).

101.    On March 2nd, 2017, the Court found that Broadcasters had made a *prima facie* showing that Panorama was subject to the Court's jurisdiction and recommended that the District Judge deny the Rule 12(b)(2) motion to dismiss..  (ECF 197)

102.    On March 30th, 2017, the District Judge adopted the recommendations in full and denied the motion to dismiss. (ECF 205)

**G.  Injunction and Default**

103.    On April 4, 2017, attorney Fraade moved for leave to withdraw as counsel for Panorama (ECF 209).

104.    Attorney Fraade's motion was conditionally granted on May 9th, 2017, and Panorama's time to respond to Broadcasters' Amended Complaint was extended until June 12, 2017.  (ECF 255).

105.     Neither Panorama nor Yevdayev answered or otherwise moved with respect to the Amended Complaint by June 12, 2017.  Certificates of default for Yevdayev and Panorama were entered on June 28, 2017 (ECF 304 & 305).

106.     Broadcasters' moved for a Default Judgment and Permanent Injunction against Panorama and Yevdayev on June 30, 2017.  (ECF 309)

107.     A Default Judgment and Permanent Injunction against Yevdayev and Panorama was entered by the District Judge on July 10, 2017 (ECF 313).

**H.  Violation of Injunction**

108.     Yevdayev has received and paid for services from non-party Setplex related to "Panorama TV" from July 2017 to November 2017 (ECF-462-13, 462-14).

109.     After the Court issued the Injunction, Yevdayev made payments to Discover Card for a Google account that appears connected to the Website.  (ECF 462-10).

**I.  Yevdayev is Not a Credible Witness**

110.     Yevdayev has made misrepresentations in three depositions.  (ECF 462-1, ECF 462-6, ECF 462-30)

111.     Yevdayev  testified that "I haven't sold Panorama in a long time."  (ECF462-6, Tr. 188:6–9).

112.     In fact, Yevdayev continued to sell "Panorama TV" through November 2017 (Dowd Decl Ex. 11).

113.     Yevdayev has claimed that the appearance of "Panorama TV" on Setplex invoices addressed to him is also a "typo." (ECF 462-30)

114.     Yevdayev claims that his name's appearance on two draft NSAs with Setplex is a "typo" (ECF 462-30)

**J.      Yevdayev's Misrepresentations Have Prejudiced Broadcasters' Attempts to
Obtain Damages Discovery**

115.    Yevdayev's refusal to provide jurisdictional discovery led Broadcasters to file a
Rule 37 motion. (ECF 127).

116.    Yevdayev produced zero documents before his November 9, 2017 deposition.
(ECF 409).

117.    Yevdayev produced 349 documents after the November 9, 2017 deposition.  (ECF
462 ¶ 39)

118.    Yevdayev produced eight emails, only after Broadcasters confirmed their
existence via a third party production.  (ECF 462-15).

119.    Yevdayev has produced no ESI except for the eight emails. (ECF 462-15)

120.    In two depositions Yevdayev admitted that he had not produced responsive
documents.  (ECF 462-7; ECF 462-30 Tr. 254:20)

121.    Yevdayev paid for a Google Web Service called "GOOGLE*SVCAPPS MYPAN
CC*GOOGLE.COMCA" from February 2016 to October 2017.  (ECF 462-10)

122.    Yevdayev paid for an Amazon called Amazon Web Services from February 2016
to October 2017.  (ECF 462-10)

123.    Yevdayev paid for Cloudflare servers from February 2016 to October 2017.
(462-10)

124.    A 2016 WHOIS search of the Website listed two Cloudflare servers.  (ECF 110-
2).

125.    Yevdayev paid for Stamps.com services to ship set-top boxes to customers from
February 2016 to October 2017.  (ECF 462-30 Tr. 364:22-365:14; ECF 462-10).

126.     Asaf has admitted having an account with FORTE Payment Systems but has not produced any agreement or statements.  (ECF 462-30, Tr. 254:20; Dowd Decl Ex. 1)

127.     Asaf's refusal to produce Google, Amazon, Cloudflare, Stamps.com, and FORTE Payment Systems ESI or records has limited Broadcasters' ability to calculate his (1) costs, (2) vendors, and (3) subscribers. (ECF 462 ¶ 6)

**K.     Subscribers and Devices**

128.     Yevdayev's failure to produce ESI has limited Broadcasters' ability to calculate the number of subscribers to Panorama.  (ECF 462-6, 462-30).

129.     Setplex produced a chart that purports to list approximately 6,250 subscribers of Panorama.  (ECF 462-33)

130.     Asaf testified that orders set-top boxes from Setplex.  (ECF 462-30 Tr. 362:11-363:15)

131.     Benjamin testified that Yevdayev  is in possession of 2,000 IPTV boxes at the Avenue Z address in Brooklyn. (ECF 462-6 Tr: 60:8-61:6)

132.     A June 1, 2017 Setplex invoice, emailed to Yevdayev's Gmail Account reveals that Panorama had 4,241 subscribers on Invoice No. 1130 dated June 1, 2017.  (ECF 462-13 (Y000330).

**L.     Damages**

133.     On October 17, 2016, Broadcasters filed a motion pursuant to Rule 37(b)(2)(A) seeking discovery sanctions against Panorama arguing that Panorama had failed to produce Court ordered discovery.  (ECF 127)

134.     On October 28, 2016, Broadcasters filed a motion pursuant to Rule 11 seeking sanctions against attorney Fraade and Panorama for advancing "certain objectively unreasonable

factual contentions and unreasonably denied others relating to Panorama's activities in New York." (ECF 135).

135.    On July 18, 2017 the Court entered a Memorandum and Order and Report and Recommendation Regarding Sanctions (ECF 320) granting Broadcasters' motion for sanctions pursuant to Federal Rule of Civil Procedure 37(b) and recommending that the District Judge grant Broadcasters' motion for sanctions pursuant to Federal Rule of Civil Procedure 11.

136.    On August 1, 2017, Broadcasters' submitted a Declaration setting forth attorneys' fees and expenses in connection with their application for sanctions pursuant to Rule 37(b) seeking recovery of $81,505.91.  (ECF 330).

137.    On September 28, 2017, Judge George B. Daniels entered a Memorandum Decision and Order granting Broadcasters' motion for sanctions pursuant to Rule 11. (ECF 361).

138.    On November 2, 2017, Broadcasters' entered a second declaration setting forth attorneys' fees and expenses in connection with their application for sanctions pursuant to Rule 11 seeking recovery of an additional $39,562.37. (ECF 396)

## PROPOSED CONCLUSIONS OF LAW

Based upon the forgoing Findings of Fact, and application of the law to such Findings, I reach the following Conclusions of Law:

A.  Legal Standard

1.    [A]t the inquest, the court should have accepted as true all of the factual allegations of the complaint, except those relating to damages.  *Au Bon Pain Corp. v. Artect, Inc.,* 653 F.2d 61, 65 (2d Cir. 1981)

2.    "In determining damages not susceptible to simple mathematical calculations, Federal Rule 55(b)(2) gives courts discretion to determine whether an evidentiary hearing is

necessary or whether detailed affidavits or documentary evidence are sufficient. *Circuito Cerrado, Inc. v. Pizzeria y Pupuseria Santa Rosita, Inc*., 804 F. Supp. 2d 108, 114 (E.D.N.Y. 2011) (quoting *Action S.A. v. Marc Rich and Co., Inc.,* 951 F.2d 504, 508 (2d Cir.1989)).

    B.  <u>Yevdayev Violated the Federal Communications Act ("FCA")</u>

       3.      The FCA applies to "interstate or foreign communications by wire or radio." 47 U.S.C. § 605. The Programming originates in the Russian Federation and is transmitted by satellite. Therefore, the FCA applies to the Programming.

       4.      The FCA "generally prohibits the unauthorized use or publication of wire or radio communications." *Channel One Russia v. Infomir*, 2017 WL 696126, at *8 (S.D.N.Y. 2017)(quoting *Int'l Cablevision, Inc. v. Sykes*, 997 F.2d 998, 1007 (2d Cir. 1993) (*Sykes I*). 47 U.S.C. § 605(a) contains four prohibitions: (1) divulging or publishing the contents of stolen interstate or foreign wire or radio transmissions to unauthorized parties, (2) intercepting radio communications and publishing them to any person, (3) receiving radio transmissions and using them for their own benefit and (4) publication or use of radio transmissions with the knowledge that such communication was intercepted. *Channel One Russia v. Infomir*, 2017 WL 696126, at *8 (S.D.N.Y. 2017).

       5.      Each of the prohibitions of 47 U.S.C. § 605(a) apply to "radio," which includes satellite transmissions, *Id.*; *Sykes I*, 997 F.2d at 1008, and apply regardless of whether or not there was an interception, even if the initial receipt of those communications was legal. WL 696126 at *9. 47 U.S.C. § 605(a) prohibits rebroadcasting and reselling satellite communications regardless of how or when the signals are obtained so long as the signal is "at one point transmitted by satellite." WL 696126 at *10.  The FCA is a strict liability statute. *Joe Hand Promotions, Inc. v. Maupin*, No. 15-CV-06355 (ADS), 2016 WL 6459631, at *6 (E.D.N.Y. Oct. 31, 2016).

6.      Yevdayev and Panorama do not have authority to display the Programming on the Website or through any other medium.  Yevdayev registered the Website and continues to receive invoices for services related to Panorama programming through November 2017. The Website publishes, displays and divulges the Programming without authorization, in violation of sentences two, three, and four of 47 U.S.C. §605.  Yevdayev's actions are with knowledge that the signals were intercepted in violation of 47 U.S.C. §605(a) sentence four.  In fact, Yevdayev  sought to obtain a license for Panorama's Russian programming after the filing of the complaint.  Therefore Yevdayev has violated 47 U.S.C. § 605.

C.   The Programming Is Protected by the Copyright Act

7.      The Programming is valuable content produced in the Russian Federation and available, under license agreement, from reputable domestic sources like DirecTV and DISH Network that pay Broadcasters a license fee.   Broadcasters programming is protected by the copyright act through the Berne Convention.  (ECF 313 )

D.   The Programming Is Protected by the Digital Millennium Copyright Act ("DMCA")

8.      The DMCA provides that "[n]o person shall circumvent a technological measure that effectively controls access to a work protected under this title." 17 U.S.C. § 1201(a)(1)(A). A technological measure is defined as one which "effectively controls access to a work if the measure, in the ordinary course of its operation, requires the application of information, or a process or a treatment, with the authority of the copyright owner, to gain access to the work." 17 U.S.C. § 1201(a)(3).

9.      The Programming is protected by copyright and is therefore "protected under this title." The Programming is protected by "a technological measure that effectively controls access" to it.  Therefore, the provisions of the DMCA apply.

E.  Yevdayev Infringed Broadcasters' Copyrights

10.     To establish copyright infringement under federal law, Broadcasters must establish a (1) valid copyright and (2) the unauthorized copying of the copyrighted work. *Warner Bros., Inc. v. American Broadcasting Co.,* 654 F.2d 204, 207 (2d Cir.1981). Broadcasters have valid copyrights originating in the Russian Federation which are entitled to protection in the United States pursuant to the Berne Convention. (ECF 313).

11.     The Programming in its totality as a compilation of copyrighted works is protected by Russian "neighboring rights" under the Civil Code of the Russian Federation Article 1332 irrespective of whether or not a Broadcaster owns the underlying copyrighted works forming the Programming.  (ECF 211 ¶ 75)

12.     "Neighboring rights" refers to a Broadcaster's right under Russian law to the totality of the content, including the selection and arrangement of the Programming, regardless of whether certain copyrightable elements have been licensed from a third party, such as a Hollywood film that a Broadcaster may have licensed for the Footprint only. (ECF 211 ¶ 76)

13.     Yevdayev d/b/a Panorama operated the for-profit Website.  Neither Yevdayev  or Panorama pay a license fee or otherwise have authorization from Broadcasters.  Yevdayev continues to show the copyright-protected Programming on Panorama TV and upon information and belief other IPTV platforms, like Vista TV or Omniverse.

F.  Yevdayev Violated the Digital Millennium Copyright Act

14.     The DMCA provides that "[n]o person shall circumvent a technological measure that effectively controls access to a work protected under this title." 17 U.S.C. § 1201(a)(1)(A). Circumvention of a technological measure is defined as "to descramble a scrambled work, to

decrypt an encrypted work, or otherwise to avoid, bypass, remove, deactivate, or impair a technological measure, without the authority of the copyright owner[.]"

15.     The Digital Millennium Copyright Act ("DMCA") specifically targets "the circumvention of digital walls guarding copyrighted material[.]" *Channel One Russia v. Infomir*, 2017 WL 696126, at *18 (S.D.N.Y. 2017)(quoting *Universal City Studios, Inc. v. Corley*, 273 F.3d 429, 443 (2d Cir. 2001)).

16.     Yevdayev and Panorama  are liable for copyright infringement for selling access to the Programming to consumers in New York because the Programming has been decrypted and re-sold to consumers behind new paywalls.  Yevdayev has continued to discuss decrypting channels with Setplex in 2017.

G.  The Programming Is Protected by the Lanham Act

17.     The Programming is entitled to protection in the United States under the Paris Convention, to which the United States and Russian Federation are signatories.

18.     Yevdayev registered and owned the Website, which uses plaintiffs' marks, for promotional purposes, in a manner that is misleading because neither Panorama nor Yevdayev have the right to stream plaintiffs' programs to the public.  *See Channel One Russia v. Infomir*, 2017 WL 696126, at *22 (S.D.N.Y. 2017).

H.  Trademark Infringement

19.     To establish an infringement claim under Lanham Act § 43(a), "a plaintiff must demonstrate that it has a valid trademark entitled to protection and that the defendant's use of it is likely to cause confusion of an appreciable number of ordinarily prudent purchasers as to the source of goods or services in question." *Channel One Russia v. Infomir*, 2017 WL 696126, at *20 (S.D.N.Y. 2017)(quoting *Info. Superhighway, Inc. v. Talk Am., Inc.*, 395 F. Supp. 2d 44, 50

(S.D.N.Y. 2005)). Panorama and Yevdayev displayed Broadcasters' famous marks on the Website without authorization.

20.     The use of Broadcasters' marks on the Website would confuse subscribers into thinking that Panorama had a license to broadcast the programming.

I.   Underline False Advertising Under the Lanham Act

21.     The Lanham Act § 43(a) also prohibits unauthorized use "in commercial advertising or promotion" where such use "misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities." A claim of false advertising may be based on at least one of two theories: "that the challenged advertisement is literally false, i.e., false on its face, or that the advertisement, while not literally false, is nevertheless likely to mislead or confuse consumers." *Channel One Russia v. Infomir*, 2017 WL 696126, at *20 (S.D.N.Y. 2017)(quoting *Tiffany (NJ) Inc. v. eBay Inc.*, 600 F.3d 93, 112 (2d Cir. 2010)).

22.     Panorama's promotional materials are (1) literally false and (2) likely to deceive or confuse customers. *Nat'l Basketball Ass'n v. Motorola, Inc.*, 105 F.3d 841, 855 (2d Cir. 1997). When advertising is literally false, the Court may grant relief without reference to the actual impact on the buying public. *Time Warner Cable, Inc. v. DIRECTV, Inc.*, 497 F.3d 144, 153 (2d Cir. 2007). The Court has determined that the Website "is arguably misleading if Panorama does not have the right to stream plaintiffs' programs to the public." *See Channel One Russia v. Infomir*, 2017 WL 696126, at *22 (S.D.N.Y. 2017).

23.     Broadcasters have proven Panorama does not have the right to use the Programming. Accordingly, Panorama's deception is material. *Nat'l Basketball Ass'n v. Motorola,*

*Inc.*, 105 F.3d 841, 855 (2d Cir. 1997).  Therefore, Panorama is liable for false advertising under 15 U.S.C. § 1125.

J.  Damages Calculations

24.    The Federal Communications Act and Copyright Act provide a three year statute of limitations for violations.  Broadcasters filed their Complaint against Panorama on February 19, 2016.  (ECF 1).  As a result of Asaf's piracy, Broadcasters are entitled to damages from February 19, 2013 to the present.

25. The FCA provides as follows:

> (4)  Any person who manufactures, assembles, modifies, imports, exports, sells, or distributes any electronic, mechanical, or other device or equipment, knowing or having reason to know that the device or equipment is primarily of assistance in the unauthorized decryption of satellite cable programming, or direct-to-home satellite services, or is intended for any other activity prohibited by subsection (a), shall be fined not more than $500,000 for each violation, or imprisoned for not more than 5 years for each violation, or both. For purposes of all penalties and remedies established for violations of this paragraph, the prohibited activity established herein as it applies to each such device shall be deemed a separate violation.

47 U.S.C. § 605(e)(4).

26.    Under the FCA, a Court may award up to $10,000.00 in damages for every infringing device.  *Cmty. Television Sys., Inc. v. Caruso*, 284 F.3d 430, 435 (2d Cir. 2002) *citing* 47 U.S.C. § 605(e)(3)(C)(i)(II).  That amount may be increased to $100,000 upon a finding of willfulness.  *Cablevision Sys. New York City Corp. v. Torres*, No. 02 CIV.7602 (AJP), 2003 WL 22078938, at *3 (S.D.N.Y. Sept. 9, 2003).

27.    Yevdayev has willfully infringed Broadcasters programming and concealed evidence of his continuing infringement so he may continue to profit and impeded Broadcasters' damages discovery.

28.     The Court may consider both testamentary and documentary evidence in assessing the level of damages. *Joe Hand Promotions, Inc. v. Elmore*, No. 11-CV-3761 KAM SMG, 2013 WL 2352855, at *6 (E.D.N.Y. May 29, 2013).  The interception and re-sale of a broadcast is a "deliberate act" and therefore willful. *Id.* at 8.  (citations omitted).

29.      As explained in *DIRECTV, Inc. v. Bates*, 393 F. Supp. 2d 147, 149–50 (N.D.N.Y. 2005):

> Here, DIRECTV alleges that Gofmanas purchased one or more PADs. DIRECTV seeks a default judgment for statutory damages in the amount of $10,000. DIRECTV also argues that the statutory damages are proper because its actual damages cannot be calculated due to Gofmanas' failure to file an answer and provide discovery. It is undisputed that Gofmanas has neither appeared before nor provided the court with any reasonable inference, fact or defense to invalidate DIRECTV's entitlement to statutory damages under the statutes.  Accordingly, DIRECTV is entitled to a default judgment for statutory damages in the amount of $10,000 as to each individual defendant

30.     The Court concludes that an award of statutory damages together with reasonable attorneys' fees against Yevdayev in an amount of at least twenty-million dollars $20,000,000.00. Benjamin testified that Asaf is in possession of 2,000 IPTV boxes at the Avenue Z address in Brooklyn.  The FCA authorizes the Court to award not less than $10,000 and up to $100,000 for every infringing device and between $1,000 and $10,000 for each violation thus a range of $20,000,000 to 200,000,000.  *Cmty. Television Sys., Inc. v. Caruso*, 284 F.3d 430, 435 (2d Cir. 2002) *citing* 47 U.S.C. § 605(e)(3)(C)(i)(II).

31.     A June 1, 2017 Setplex invoice, emailed to Asaf's Gmail Account reveals that Panorama had 4,241 subscribers on Invoice No. 1130 dated June 1, 2017.  The FCA permits statutory damages of "not less than $1,000 or more than $10,000 per violation. 47 U.S.C. § 605(e)(3)(C)(i)(II).  Because each subscription is a violation, this would entitle Broadcasters to additional damages of, at minimum $4,241,000 to a maximum of $42,410,000.

32.     Asaf has also willfully violated the Court's July 10, 2017 Injunction (ECF 313) which entitles Broadcasters to damages of $100,000 per device. *See Cablevision Sys. New York City Corp. v. Torres*, No. 02 CIV.7602 (AJP), 2003 WL 22078938, at *3 (S.D.N.Y. Sept. 9, 2003). Asaf's meager production shows that he had 2,029 Subscribers in July, 3,912 in August, 1,794 in September and 1,688 in October of 2017.

33.     The Court may reasonably infer from Asaf's silence that Asaf  knowingly "imported, exported, sold or distributed" at least 1,688 infringing IPTV boxes or apps to purchasers seeking to illegally access Broadcasters' programming in violation of 47 U.S.C. § 605(e)(4).  This would entitle Broadcasters to damages of between $16,800,000 and $168,000,000.

34.     It is due to Asaf's perjurious and evasive testimony and other misconduct including repeated violations of this Court's Orders, including its Writ of Assistance, that Broadcasters lack additional evidence of their actual damages.  Accordingly, the Court determines that it is fair and reasonable to assess statutory damages in an amount of twenty million dollars ($20,000,000.00), together with reasonable attorneys fees.

K.   Attorneys' Fees Calculations

35.     In the southern district, "Monetary sanctions are the norm, not the exception, when a party is required to engage in motion practice in order to obtain the discovery to which it is entitled."  *Seena Int'l, Inc. v. One Step Up, Ltd.*, No. 15CV01095PKCBCM, 2016 WL 2865350, at *11 (S.D.N.Y. May 11, 2016).  *See also Daval Steel Prods. v. M/V Fakredine*, 951 F.2d 1357, 1365 (2d Cir. 1986) ("When a party seeks to frustrate [the purpose of the discovery provisions of the Federal Rules of Civil Procedure] by disobeying discovery orders, thereby preventing disclosure of facts essential to an adjudication on the merits, severe sanctions are appropriate.").

36.     Yevdayev has refused to comply with Court ordered discovery and continues to admit his noncompliance at successive depositions.

37.     Broadcasters are directed to submit a proposed judgment and an application for legal fees and costs within fifteen days of this memorandum.

Dated: New York, New York
         December 15, 2017

                                   DUNNINGTON, BARTHOLOW & MILLER LLP
                                   *Attorneys for Broadcasters*


                              By: /s Raymond J. Dowd_____
                                   Raymond J. Dowd
                                   Samuel A. Blaustein
                                   Hardin P. Rowley
                                   250 Park Avenue, Suite 1103
                                   New York, New York 10177
                                   (212) 682-8811
                                   rdowd@dunnington.com
                                   sblaustein@dunnington.com
                                   hrowley@dunnington.com