UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
Joint Stock Company "Channel One Russia Worldwide,"
Closed Joint Stock Company "CTC Network," Closed
Joint Stock Company "TV DARIAL," Closed Joint
Stock Company "New Channel", Limited Liability
Company "Rain TV-Channel,", and Limited Liability Company
"Comedy TV."

         Plaintiffs,

  -against-

INFOMIR LLC ( www.infomirusa.com), INFOMIR GMBH,
ALEXANDER MARAHOVSKY, EVGENI LEVITIN,
TELECOMMUNICATIONS TECHNOLOGIES LTD.,
PANORAMA ALLIANCE, LP (www.mypanorama.tv),
ASAF YEVDAYEV, DAVID ZELTSER,
S.K. MANAGEMENT of NEW YORK INC., MOIDOM LLC,
TELEPROM, VDALI, MHCOM GmbH and
John Does 1-50.

         Defendants.
------------------------------------------------------------------X

Index No.  16-cv-1318
(GBD)(BCM)

**DECLARATION OF
ALEXANDER SHPREKHER**

  ALEXANDER SHPREKHER, being physically located outside the geographic boundaries of the United States, Puerto Rico, the United States Virgin Islands, or any territory or insular possession subject to the jurisdiction of the United States, hereby affirm under penalty of perjury:

**A. Background**

  1. I am a citizen of the Russian Federation and resident of Moscow

  2. I am able to speak and write in English.

  3. I am Deputy CEO and Head of Strategy and Business Development for Plaintiff Joint Stock Company "Channel One Russia Worldwide" ("Channel One") and make this affidavit based on personal knowledge and knowledge gained from Channel One company records, and pleadings and motions filed in this matter.

1

4. I am in charge of business development for Channel One Russia Worldwide. I personally negotiated our major contracts in the United States and oversee our staff that engages in renewals and client servicing. I oversee a team that handles all international distribution contracts. Channel One's commercial department that sells advertising for our U.S. programming also reports to me.

5. As such I am fully familiar with our customer complaints about piracy, the damages caused to our legitimate licensees and advertisers by pirates, and the growing problem of piracy in the U.S. and elsewhere.

6. I write in support of Plaintiffs' motion for summary judgment and a temporary restraining order for claims arising under Section 605(a) (unauthorized broadcasting of satellite communications) and 605 (e)(4) (distribution of equipment used primarily for the unauthorized transmission of satellite communications) of the Federal Communication Act.

7. I have reviewed Plaintiffs' Amended Complaint (ECF 211), the Affidavits of Christopher Vidulich (ECF 211-15; ECF 211-17), Channel One's representative programming (ECF 211-20) and the verification of Alexey E. Efimov (ECF 211-21). I affirm that the facts stated therein are true.

8. I have reviewed the excerpt of the Russian Civil Code describing neighboring rights that was attached to the Amended Complaint (ECF 211-14) and it confirms my personal knowledge.

9. I have reviewed Defendant Infomir LLC's Memorandum of Law in Opposition to Plaintiff's Motion for Summary Judgment (ECF 299), the Affidavit of Grigoriy Goldfedib ("Goldfedib") (ECF 300) and the Declaration of Stewart M. Leviss (ECF 301).

10. I have reviewed Broadcasters Rule 54.2 motion (ECF 386; ECF 431) and the accompanying declarations of Raymond J. Dowd (ECF 384; ECF 430) and Hardin P. Rowley (ECF 385) in support of that motion. I affirm that the facts stated therein are true.

11. I have also reviewed a publicly-filed redacted transcript of the January 16, 2018 deposition of Goldfedib. (ECF 527-12).

**B. Channel One**

12. The predecessor of Channel One began broadcasting in Russia on April 1, 1995.

13. Channel One produces its main channel known as "Channel One" ("Perviy Kanal").

14. Channel One also produces thematic TV channels Dom Kino, Muzika Pervogo, Vremya:dalekoe i blizkoe, and Telekafe, which are distributed globally, as well as an international version of Carousel – Carousel International, multiple international versions of Channel One Russia Worldwide including United States. I will refer to the U.S. version as "Channel One-US".

15. Channel One-US differs from Channel One Russia in three main ways.

16. *First,* Channel One-US is time-shifted so that morning shows will be seen in the morning in the U.S. and evening programming in the evening.

17. *Second,* Channel One-US has different programming. For example the Russian version of "The Voice" is licensed only for Russia and cannot be re-broadcast in the U.S. The same is true for certain sporting events and Hollywood films.

18. *Third,* Channel One-US has advertising inserted, most of which are small businesses that cater to Russian immigrants in the United States.

19. In total viewership for its various channels and versions of channels, Channel One broadcasts to over 250 million viewers worldwide.

3

20. The collapse of the Soviet Union led many Russian speaking people to emigrate to the United States, particularly New York.

21. As detailed below, Channel One has licensed its Channel One-US content to certain cable and internet protocol television ("IPTV") providers operating in the New York region.

### C. Channel One's Intellectual Property Rights to Programming Broadcast on Its Channels

22. I am personally familiar with Channel One's intellectual property rights to the programming it broadcasts.

23. The Russian Federation ratified the International Convention For The Protection of Performers, Producers Of Phonograms And Broadcasting Organisations ("Rome Convention") on February 26, 2003. *See* **Exhibit 1** attached hereto.

24. Under Article 13 of the Rome Convention, broadcasters, among other rights, "shall enjoy the right" to authorize or prohibit" the rebroadcasting or fixation of their broadcasts. *See* **Exhibit 2** attached hereto.

25. Channel One's programming department arranges the schedule of programming that it later uses to create international versions of Channel One including Channel One-US. (ECF 211-20). There are over 150 people working in Channel One's programming department.

26. Channel One does not own the copyright to every individual program that is broadcast.

27. Under Article 1332 of the Civil Code of the Russian Federation (ECF 211-14), Channel One's programming is protected by "neighboring rights" because of the totality of the programming is a compilation of copyrighted works. (ECF 211-20).

### D. Broadcast of Programming Via Satellite

28. I am personally familiar with Channel One's broadcast technology.

29. Channel One's main channel (Perviy Kanal) is first broadcast in the Russian Federation via satellite (ECF 211-10). This programming is initially transmitted to multiple satellites for retransmission to terrestrial networks and satellites for free-to-air programming in the Russian Federation. This channel is "must carry" in the Russian Federation.

30. In addition to Perviy Kanal, Channel One also produces thematic TV channels Dom Kino, Muzika Pervogo, Vremya:dalekoe i blizkoe, Telekafe, which are distributed globally, as well as international version of Carousel – Carousel International.

31. The thematic channels are never free-to-air and are always encrypted.

32. There is no simultaneous broadcast of Channel One programming intended for exclusive broadcast to the Russian Federation to the United States.

33. For programming that it intends to air in the United States, Channel One creates a modified version that I will refer to as "Channel One-U.S."

34. I have attached a chart showing Channel One's satellite footprints hereto as **Exhibit 3**. The row marked "Channel One Russia Worldwide USA" shows the satellites directed at the US: Express AM44, Galaxy 17, Nimiq 4, Galaxy 3C, Galaxy 16. Exhibit A was derived from public websites easily verifiable: lyngsat.com, kingofsat.net, satsis.info, satbeams.com.

35. The unmodified, original Channel One programming (Perviy Kanal) is not licensed for broadcast in the United States by any means, nor is it available on satellites that have a footprint in the U.S.

5

36. Looking at Exhibit 3, one can see the Channel One (Perviy Kanal) footprint in the top row. None of these satellites have a U.S. footprint, this is verifiable by looking at the sources websites and checking each satellite's publicly-available footprint.

37. Channel One's open signal for its Channel One-U.S. programming modified for a U.S. audience within the United States is *only* available in the standard or format "C-band", and its reception requires a dish bigger than 2 meters as well as special professional equipment.

38. This means that the ordinary consumer in the United States cannot access the Channel One-U.S. content without a professional intermediary broadcaster or cable company which must acquire a license from Channel One to lawfully redistribute Channel One's Channel One-U.S. content.

39. Below is accurate information about the C-band from Wikipedia https://en.wikipedia.org/wiki/C_band_(IEEE)

> *The C-band is primarily used for open satellite communications, whether for full-time satellite television networks or raw satellite feeds, although subscription programming also exists. This use contrasts with direct-broadcast satellite, which is a completely closed system used to deliver subscription programming to small satellite dishes that are connected with proprietary receiving equipment.*
>
> *The satellite communications portion of the C-band is highly associated with television receive-only satellite reception systems, commonly called "big dish" systems, since small receiving antennas are not optimal for C-band systems. Typical antenna sizes on C-band capable systems ranges from 7.5 to 12 feet (2.5 to 3.5 meters) on consumer satellite dishes, although larger ones also can be used. For satellite communications, the microwave frequencies of the C-band perform better under adverse weather conditions in comparison with the $K_u$ band (11.2 GHz to 14.5 GHz), microwave frequencies used by other communication satellites.*

40. All Channel One-U.S. broadcasts in the format "Ku-band" used for standard satellite TV within the territory of the United States are encrypted (encoded) by Channel One's authorized partners.

41. Any Channel One-U.S. programming available via IPTV through Channel One's U.S. licensees was first broadcast via satellite in the Russian Federation and later modified for the U.S. market.

### E. Channel One's Licensing Program

42. I am personally familiar with Channel One's digital licensing regime for IPTV in the United States.

43. Channel One has not granted any license to Infomir, LLC, Infomir GmbH, Infomir S.A. or Progressive Technology FZE and related entities or persons ("the Infomir Group") to publish, republish, transmit or stream the programming of Channel One.

44. As described in the Complaint in this action, the Infomir Group pirates Channel One programming that is *never* broadcast in the U.S. It is *only* licensed to be broadcast in Russia.

45. Thus, the Infomir Group has entirely bypassed Channel One's licensing regime.

46. I have reviewed the arguments of Goodzone's attorneys in this action. These arguments seek to confuse the Court by claiming that Goodzone is somehow legitimately re-transmitting in the U.S. a "free-to-air" broadcast.

47. This argument is incorrect. Channel One makes no "free-to-air" broadcasts of its content in the United States.

48. If Goodzone were intercepting satellite communications in the U.S. and streaming those programs to U.S. subscribers, this content would be Channel One-US content, not Channel One programing first broadcast in the Russian Federation.

49. For clarity's sake, this action alleges that the Channel One programming intended *only* for distribution in the Russian Federation has been re-transmitted and re-sold in the U.S. by various defendants.

7

50. Channel One has not authorized Telecommunications Technologies Ltd. or Jabil Circuit to broadcast, stream or retransmit any version of Channel One programming. (ECF 527-12 pp. 68, 72, 77).

51. Channel One has not licensed any of its programming to any Infomir-related limited liability company with operations in Ukraine. (ECF 527-12 pp. 74-75).

52. Channel One owns or licenses all of its content and Infomir, LLC has no right to be selling this content to its subscribers, directly, or through its Stalker/Ministra.

53. In the United States, Channel One has licensed its programming to Charter Communications, DirectTV, Comcast Cable, Verizon, Kartina TV and Matvil TV and over 20 other authorized partners directly or through authorized agents.

54. Channel One's licensees protect its programming by employing conditional access/signal encryption systems to prevent unauthorized redistribution.

55. I have read Infomir, LLC's claim that it does not distribute content. (ECF 299 pp.15-16). However, a review of the Affidavit of Christopher Vidulich dated June 24, 2016 clearly shows an unauthorized Ukrainian source for Infomir's streams to the U.S.: freetvstat.iptv.infomir.com.ua which is distributed through Stalker middleware. (ECF 80 at ¶¶ 25-31).

56. ".ua" is the Internet country code top-level domain (ccTLD) for Ukraine. https://en.wikipedia.org/wiki/.ua.

57. Additionally, one or more members of the Infomir Group is a member of Giganet. *See* **Exhibit 3** attached hereto. *See also* http://giganet.ua. Giganet is a major internet exchange network located in Ukraine that offers services enabling the transfer of the massive data necessary to manage internet protocol television programming. *See* **Exhibit 4** attached hereto.

58. Based on the foregoing, I believe that the defendants in this action are acting in concert to obtain unauthorized access to Channel One satellite communications from a Ukrainian source and distribute this content through boxes and software distributed and promoted by Infomir LLC and Infomir GmbH.

### F. Harm Caused to Channel One by Unauthorized Distribution of Programming by Infomir, LLC

59. When Channel One became aware of the piracy of its programming in the United States, particularly New York, it authorized the filing of the instant lawsuit on February 19, 2016 in the Southern District of New York. (ECF 1).

60. The overwhelming evidence indicates that Infomir brand set-top boxes enable the piracy of Channel One in conjunction with middleware software called Stalker or Ministra by permitting transmissions of Channel One programs to paid U.S. subscribers. (ECF 211-15; 211-17).

61. The Infomir Group distributes Stalker a/k/a Ministra "middleware" that enables unauthorized streaming of pirated Channel One content to U.S. subscribers.

62. The Infomir Group's promotional materials regarding the Stalker a/k/a Ministra middleware show that this software enables industrial scale piracy by creating a content management and billing system. (ECF 300 ¶ 52; ECF 384-3 ¶ 5; ECF 527-12 pp.163-166).

63. The Stalker a/k/a Ministra middleware provided by the Infomir Group enables a U.S. purchaser of an Infomir-brand set-top box to access pirated Channel One programming through an authentication procedure.

64. The Stalker a/k/a Ministra middleware bills the U.S. purchaser for the pirated programming and issues a password enabling a STB to access unauthorized Channel One programming.

65. The Infomir Group retains the power to use the Stalker a/k/a Ministra middleware upgrade the STB's software to block pirates, but instead, the Infomir Group fails to block pirates.

66. Thus, the Stalker a/k/a Ministra "middleware" ensures that only U.S. subscribers current on credit-card payments can receive pirated Channel One programming.

67. Thus, the Stalker a/k/a Ministra "middleware" enables large-scale commercial piracy of Channel One programming in the United States.

68. Among other methods, Infomir Group could block pirates from accessing Channel One content via Infomir set-top boxes ("STBs") by doing forced updates to the boxes but the Infomir Group fails to block pirates accessing Channel One content on its boxes.

69. Among other methods, the Infomir Group could require strong, certificated https security and extended validation that would permit blacklisting pirates and incidentally protect consumers by encrypting credit card and password information. See https://en.wikipedia.org/wiki/HTTPS.

70. Pirates of Channel One's programming recommend the use of Infomir-brand boxes because of the lack of security, the lack of ability to trace sources of data, and the ease of setting up an untraceable piracy operation. (ECF 268-8; ECF 268-9; ECF 385-11). Thus, pirates who are blacklisted by the rest of the industry due to HTTPS with extended validation can use Infomir-branded boxes and can harvest consumer data and identity information and resell it illegally.

71. Pirates SK Management d/b/a Goodzone TV and Teleprom advertise compatibility with the Infomir Mag set-top boxes(*Id.*)

72. Registrations in the U.S. Copyright Office show that Infomir, LLC is the United States copyright owner of Stalker middleware. (ECF 385-19).

73. Stalker is sold on the Google Play and iTunes App store. (ECF 385-21; ECF 527-17; ECF 527-18). Channel One does not license nor authorize any programming viewed with the aid of Stalker a/k/a Ministra.

74. The Infomir Group's MAGic Solution, described on its website, shows clearly that the Infomir Group is aiding piracy by enabling a pirate to setup a content distribution system. (ECF 211-13; ECF 300 ¶ 46; ECF 527-12 pp.134-137).

75. Channel One has no authorized licensees using Stalker a/k/a Ministra middleware and does not license nor authorize any programming to be viewed with the aid of the MAGic Solution service.

76. I have reviewed the interrogatory responses of Infomir, LLC President Grigoriy Goldfedib where he certified that Infomir, LLC has imported and sold 550,796 STBs between January 2013 to May 2016. (ECF 384-3 ¶ 3). I have also read that Goldfedib testified that Infomir, LLC currently sells between 10,000-15,000 set-top boxes per month. (ECF 527-12 78:18-81:17). Goldfedib also confirmed what I already knew: Infomir, LLC has no license for Broadcaster's programming. (ECF384-3 ¶ 11).

77. Based on the foregoing evidence and my knowledge of Channel One's licensing and distribution, I believe that Infomir, LLC intentionally sells set-top boxes both directly to consumers and to third-party pirates such as S.K. Management d/b/a Goodzone, Panorama and Teleprom that are marketed and primarily configured with Stalker a/k/a Ministra software to promote the unauthorized viewing of Channel One content by Russian expatriates in the United States for commercial gain.

78. Further, I believe that Infomir's membership in Giganet enables it to transfer the massive amounts of data required to coordinate a pirate IPTV operation through Stalker middleware. (ECF 527 12 p. 134).

11

79.     Pirate IPTV operations cause immediate and irreparable harm to Channel One in the United States in terms of lost customers, lost revenues, smaller subscriber base, a corresponding loss of prestige, damage to goodwill, and damage to Channel One's legitimate distribution channels in the United States.

80.     Money damages are not sufficient to make Channel One whole because defendants are highly unlikely to have the resources to compensate Channel One for the damages that it has suffered and because money damages do not adequately compensate for the loss to Channel One's goodwill and prestige.

81.     Accordingly, in the absence of immediate injunctive relief directing Infomir LLC and its partners and affiliates to block streaming access to Infomir-branded STB's pending further order of this Court, Channel One will continue to be irreparably harmed by the Infomir Group's piracy operations.

82.     Since Channel One filed its lawsuit in February of 2016, Infomir, LLC has, according to Goldfedib's testimony, sold approximately 400,000 set-top boxes. (ECF 384-3 ¶ 3). Each box likely corresponds to the loss of one legitimate Channel One customer causing irreparable harm to Channel One.

83. I affirm under the penalties of perjury under the laws of New York, which may include a fine or imprisonment, that I am physically located outside the geographic boundaries of the United States, Puerto Rico, the United States Virgin Islands, or any territory or insular possession subject to the jurisdiction of the United States, that the foregoing is true, and I understand that this document may be filed in an action or proceeding in a court of law.

Executed at:   Moscow, Russian Federation

March 7, 2018

By: _____
Alexander Shprekher