UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED:___4/25/2018___

JOINT STOCK COMPANY CHANNEL ONE
RUSSIA WORLDWIDE, et al.,

            Plaintiffs,

        -against-

INFOMIR LLC, et al.,

            Defendants.

16-CV-1318 (GBD) (BCM)

**DISCOVERY ORDER AND REPORT
AND RECOMMENDATION TO
THE HON. GEORGE B. DANIELS**

**BARBARA MOSES, United States Magistrate Judge.**

For the reasons stated on the record at the April 19, 2018 discovery conference, and the further reasons set forth below, the parties' disputes are resolved as follows:

1.      <u>Kartina TV Documents</u>

The application of defendant Infomir, LLC (Infomir) to compel plaintiffs to produce documents responsive to Infomir's Document Requests No. 41-45, relating to Kartina TV (Kartina) (Dkt. No. 535), is GRANTED IN PART. Plaintiffs must promptly produce all non-privileged communications and other documents created by, received from, sent to, or discussed with Kartina concerning the factual allegations set forth in the First Amended Complaint (Dkt. No. 211).

Infomir bases its request for additional Kartina-related documents (including all "contracts, licenses, or agreements" with Kartina, *see* Infomir Doc. Reqs. No. 42-43) on its contention that plaintiffs "are pursuing this lawsuit as a proxy for Kartina," which is licensed to distribute a version of plaintiffs' television programming (Programming) in the United States, and Kartina's business partner Dune HD, which manufactures internet protocol television (IPTV) set-top boxes competing with the Infomir set-top boxes at issue here. *See* Joint Ltr. dated Apr. 16, 2018 (Dkt.

No. 566), at 2. According to Infomir this constitutes "copyright misuse," *id*., as further evidenced by recent deposition testimony confirming that Kartina is paying the legal fees for at least one plaintiff. *Id*. Plaintiffs respond that how they finance their litigation "has no bearing on any legal issue in this action," and that communications relating to "legal strategy and case financing by a licensee are privileged." *Id*. at 3.

The Court disagrees. The fact that persons other than plaintiffs are financing plaintiffs' litigation is not *per se* privileged. *See*, *e.g.*, *Vingelli v. U.S., Drug Enf. Agency*, 992 F.2d 449, 452 (2d Cir. 1993) ("in the absence of special circumstances client identity and fee arrangements do not fall within the attorney-client privilege"); *accord United States v. Zarrab*, 2017 WL 1753466, at *3 (S.D.N.Y. Apr. 5, 2017) (collecting cases). Moreover, plaintiffs' financing arrangements become relevant here because there are pending cross-motions for security pursuant to Local Civil Rule 54.2. (Dkt. Nos. 383, 414.) *See generally Atlanta Shipping Corp. v. Chem. Bank*, 631 F. Supp. 335, 353 (S.D.N.Y. 1986) (ordering plaintiff to post security after noting that plaintiff was bankrupt but that "one of its creditors has agreed to finance up to $300,000 in fees for this and related litigations"), *aff'd*, 818 F.2d 240 (2d Cir. 1987).

However, Infomir is not entitled to broader discovery concerning plaintiffs' relationship with Kartina. Although Infomir has pleaded copyright misuse as one of its 25 affirmative defenses, *see* Infomir Answer (Dkt. No. 253) at 26, it does not allege any tying arrangements or other pre-filing anti-competitive conduct. Nor has it identified any authority for the proposition that the filing of an infringement action – without more – can constitute copyright misuse and thereby furnish the defendant with a defense to the same action. *See generally UMG Recordings, Inc. v. Lindor*, 531 F. Supp. 2d 453, 458-59 (E.D.N.Y. 2007) (striking copyright misuse defense based on record companies' allegedly heavy-handed tactic of filing collective litigation against individual

consumer who used popular music file-sharing software). Absent any factual basis for its copyright misuse defense, Infomir cannot rely on that defense to justify the broad discovery it seeks into plaintiffs' business relationships.

2.      Cross-Motion for Summary Judgment

Plaintiffs' letter-brief in opposition to Infomir's application asks this Court to grant summary judgment on Infomir's copyright misuse defense. *See* Pl. Ltr. dated March 9, 2018 (Dkt. No. 538), at 3-5. Notwithstanding the lack of factual support for that defense, it is respectfully RECOMMENDED that the District Judge DENY plaintiffs' cross-motion for summary judgment, without prejudice, for failure to comply with Fed. R. Civ. P. 56(c) or Local Civil Rule 56.1(a).[1]

3.      Investigatory Documents

Infomir's application to compel plaintiffs to produce additional documents responsive to its Document Requests No. 54 and 56, relating to plaintiffs' "piracy" investigations, Joint Ltr. at 4, is GRANTED IN PART. Plaintiffs must promptly produce all non-privileged documents concerning any investigation conducted (by plaintiffs or others) prior to the filing of this action into the "piracy" of the Programming at issue herein, including but not limited to documents concerning generic, routine, or preliminary investigations not yet focused on a specific claim against a specific party. *See United States v. Adlman*, 68 F.3d 1495, 1502 (2d Cir. 1995) (noting that the work-product doctrine applies where the material claimed to be non-discoverable focuses on "a specific claim," rather than the "abstract possibility" that the party's intellectual property "may someday become the focus of an as-yet unidentified claim"); *Gould Inc. v. Mitsui Mining &*

---

[1] On March 23, 2018, plaintiff Joint Stock Company Channel One Russia Worldwide (Channel One) filed a formal motion for partial summary judgment, supported by a Local Civil Rule 56.1 Statement and various declarations, seeking judgment "on the issue of liability" as to certain of its claims against Infomir, as well as "summary judgment dismissing Infomir's affirmative defenses." Pl. Mem. in Supp. of Summ. Jdg. (Dkt. No. 552) at 1. That motion is not yet fully-briefed.

*Smelting Co., Ltd.,* 825 F.2d 676, 680 (2d Cir.1987) (work product rule requires the "existence of a real, rather than speculative, concern").

    4.    <u>Vidulich Deposition and Documents</u>

Plaintiffs must also produce Christopher Vidulich, a paralegal in the employ of their counsel, for deposition. Plaintiffs have filed a series of declarations executed by Vidulich – most recently on March 23, 2018 (Dkt. No. 549), in support of Channel One's motion for partial summary judgment against Infomir – in which Vidulich describes the investigations he has conducted into defendants' systems and services. The matters covered by those declarations cannot be protected from discovery by the work product doctrine. *See United States v. Nobles*, 422 U.S. 225, 239-40 (1975) ("Respondent, by electing to present the investigator as a witness, waived the privilege with respect to matters covered in his testimony. Respondent can no more advance the work-product doctrine to sustain a unilateral testimonial use of work-product materials than he could elect to testify in his own behalf and thereafter assert his Fifth Amendment privilege to resist cross-examination on matters reasonably related to those brought out in direct examination."); *Stokes v. City of New York*, 2006 WL 2064976, at *2 (E.D.N.Y. July 24, 2006) ("If and when the affidavit is filed in this action or otherwise publically disclosed, then work product protection clearly will be waived.").

However, "any waiver of work product by disclosing that work product to one's opponent waives the privilege only as to matter[s] covered in the waived documents." *Fullerton v. Prudential Ins. Co.*, 194 F.R.D. 100, 104 (S.D.N.Y. 2000). Vidulich does not claim to be an expert and does not offer any opinion testimony. His declarations are confined to the facts concerning the websites, apps, and software he accessed or utilized, the observations he made when he did so, and the information and data he acquired as a result of these activities. The Vidulich deposition shall

be similarly limited. Defendants may not inquire into the instructions (if any) that Vidulich received, the opinions (if any) he developed, or the reports (if any) he made to plaintiffs' attorneys concerning those activities.

Prior to the Vidulich deposition, plaintiffs must produce any additional documents in their possession, custody, or control (beyond those attached as exhibits to the witness's various declarations) constituting or recording the information and data that Vidulich acquired as a result of his investigatory activities. These documents are responsive to Infomir's Document Request No. 56 and are not themselves privileged. Documents concerning the instructions (if any) that Vidulich received, the opinions (if any) he developed, or the reports (if any) he made to plaintiffs' attorneys concerning his activities need not be produced.

     5.    <u>Rights to Programming under Russian Law</u>

Infomir seeks an order compelling plaintiffs to produce additional documents substantiating their ownership rights, under Russian law, in the Programming at issue in this action, including agreements and licenses concerning the "legal or beneficial ownership by plaintiffs of each work" at issue in this action; agreements and licenses showing that plaintiffs "transferred the right" to broadcast any such work via IPTV in the United States; and documents "sufficient to identify and establish plaintiffs' alleged property rights in each compilation of works in which they claim a protected interest infringed by Infomir." Joint Ltr. at 5-6; *see also* Infomir Doc. Req. No. 17 (seeking all documents "substantiating" plaintiffs' "claim of property rights in each Work").

Plaintiffs respond that their copyright claims are based on "neighboring rights" in the Programming as a whole, which rights are protected under Russian law and the Berne Convention, and therefore that they need not establish the actual or beneficial ownership of the copyrights to any particular portion of that Programming. Joint Ltr. at 6; *see also id*. Ex. B (Pl. Ltr. dated

March 6, 2018), at 1 (confirming that plaintiffs "do not intend to base their claims on any particular copyright or trademark registrations"); *id.* Ex. C (Pl. Ltr. dated March 9, 2018), at 8-9 (stating, in response to Document Requests No. 34-39, that plaintiffs "are not making any claims based on trademark registrations" but instead base their claims on "neighboring rights under the Russian Copyright Law").

Since plaintiffs do not base any of their claims in this action on their rights (legal or beneficial) to the individual works comprising the Programming, they need not produce agreements, licenses, or other documents concerning the existence or transfer of their rights in such individual works. But since plaintiffs do claim "neighboring rights" in the Programming as compiled for broadcast, they must promptly produce documents sufficient to show that they possess such rights as to that Programming. If plaintiffs contend that there are no such documents within their possession, custody, and control (and therefore that their proof will consist entirely of witness testimony), they shall henceforth be precluded from relying on documentary evidence to corroborate that testimony or otherwise establish their neighboring rights in the Programming.

6.    Different Versions of the Programming

The parties agree that plaintiffs are not entitled to relief under the Berne Convention with respect to any unregistered "United States work," 17 U.S.C. §§ 101, 411, defined as a work (including a compilation) "first published" either "in the United States" or "simultaneously in the United States and another treaty party or parties, whose law grants a term of copyright protection that is the same as or longer than the term provided in the United States." *Id.* § 101. The parties also agree that the version of plaintiffs' Programming which is broadcast under license in the United States is different from the version broadcast in the Russian Federation, in that the U.S.-licensed version is time-shifted, includes different advertisements, and omits certain content

entirely, such as "Hollywood films and reality shows," which plaintiffs license from U.S. sources but only for use outside of the U.S. Joint Ltr. at 7-8. The parties disagree as to the significance of these differences. Infomir says they are so "minor" as to suggest that "plaintiffs' unregistered content is first or simultaneously broadcast in the United States . . . and may not be enforced in the United States without registration." *Id*. at 7. Plaintiffs call this position "frivolous" and argue that if accepted it would "eviscerate" copyright protection under the Berne Convention. *Id*. Neither side has cited any cases, statutes, or other authorities supporting its position.

Against this backdrop, Infomir seeks an order compelling plaintiffs to produce "all agreements, contracts, licenses," and other documents showing "exactly what content, or versions of their Channels, plaintiffs have authorized their IPTV, cable and satellite distributors to distribute within the United States," as well as "all agreements, contracts, licenses," and other documents sufficient to show that that Programming at issue here was not published first or "simultaneously" in the United States. Joint Ltr. at 7.

Plaintiff resists providing any discovery at all on this point, arguing that Infomir "has access to electronic programming guides in Russia and the U.S. and can simply compare the programming." *Id*. Alternatively, plaintiffs state, Infomir can "subscrib[e] to Matvil TV or Kartina TV," which are licensed to broadcast the U.S. versions of the Programming, and compare the content available from those sources with the "Stalker TV version" that was allegedly "pirated" from their Russian Federation broadcasts. *Id*. at 8.

Infomir is not required to research online programming guides in Russia or subscribe to one of plaintiffs' licensed IPTV providers in order to obtain information which is relevant to this action and within plaintiffs' possession, custody, and control. However, it would be unduly burdensome and not proportional to the needs of the case to require plaintiffs to produce "all

agreements, contracts, [and] licenses" concerning the differences between the Russian and U.S.-licensed versions of its Programming – or indeed any agreements, contracts, or licenses. As plaintiffs point out, the existence and extent of the differences can easily be determined by comparing the actual broadcasts. Each plaintiff shall therefore produce documents sufficient to show, in detail: (a) the content of its Russian Federation broadcast(s) on three dates to be selected by Infomir; and (b) the content of its licensed U.S broadcast(s) for the same three dates. Plaintiffs may (but are not required to) comply with this obligation by producing video copies of the relevant broadcasts themselves.

7.  IPTV Security Specifications

Plaintiffs allege that in manufacturing set-top boxes and distributing software, including the "Stalker" middleware and app, Infomir "fail[s] to take reasonable antipiracy security measures" that are "consistent with industry standards, such as https security, blacklisting and extended validation certificates or implementing other industry-standard antipiracy measures." First Am. Compl. ¶ 1. *See also id.* ¶ 131 ("Infomir has failed to undertake any anti-piracy upgrade"). These allegations underpin plaintiffs' claim under the Federal Communications Act, 47 U.S.C. § 605(e)(4). *See* Pl. Mem. in Supp. of Summ. Jdg.  at 11, 17-23. The same allegations, plaintiffs assert, demonstrate that Infomir cannot avail itself of the "safe harbor" under the Digital Millennium Copyright Act, 17 U.S.C. § 512.  Joint Ltr. at 8.

Infomir argues that it cannot defend itself against plaintiffs' allegations without discovery concerning what plaintiffs believe to be "reasonable antipiracy security measures," and on that basis seeks an order compelling plaintiffs to produce "[a]ll agreements, contracts, licenses," and other documents showing the security specifications that plaintiffs themselves require of their licensees in the United States. Joint Ltr. at 8.

Plaintiffs respond that Infomir has "not shown any evidence that it falls under any 'safe harbor'" and in any event has not (yet) served a document demand specifically seeking this information. Plaintiffs also argue that Infomir's repeated requests for plaintiffs' agreements, contracts, and licenses are motivated not by its need to defend this litigation but rather by its desire to obtain information with which it or its affiliates abroad can "breach the security measures used by legitimate licensees." Joint Ltr. at 9.

On the present record, the Court declines to order the production of all (or any) agreements or contracts between plaintiffs and their U.S. licensees for the purpose of investigating what antipiracy security measures plaintiffs deem "reasonable." Plaintiffs must, however, promptly produce all remaining non-privileged documents in their possession, custody or control concerning the "industry standards" to which they claim Infomir fails to adhere. If plaintiffs contend that there are no such documents, the Court will revisit the question whether Infomir is entitled to see plaintiffs' agreements with its licensees.

8.   <u>Infomir Payments</u>

This Court previously ordered Infomir to produce documents showing "payments made by Infomir to defendant Infomir GmBH (GmBH), Pavil Marakhovski or Dmitri Adamovski, and payments received by Infomir from GmBH, Marakhovski or Adamovski, in each case since January 1, 2014." Discovery Order dated Feb. 13, 2018 (Dkt. No. 524), ¶ 3(c). Thus far no such documents have been produced, although it appears to be undisputed that Marakhovski and Adamovski own 99% of Infomir and a majority interest in GmBH. *See* Pl. 56.1 St. dated March 23, 2018 (Dkt. No. 551) ¶¶ 12-16, 23-30. Prompted in part by the lack of expected financial records in Infomir's production, plaintiffs propose to serve subpoenas *duces tecum* on nonparties Citigroup, Deutsche Bank, HSBC, and Bank of New York Mellon, seeking any and all banking

records "related to" Infomir, Infomir GmbH, Pavil Marakhovski, Dmitri Adamovski, Gregory Goldfedib (Infomir's CEO), and eight additional foreign business entities – all of them non-parties – alleged to be affiliated with Infomir. *See* Pl. Ltr. dated April 6, 2018 (Dkt. No. 557), Exs. A-D.

Before considering the broad and intrusive subpoenas that plaintiffs propose to serve, the Court will give Infomir another opportunity to produce its own financial records showing payments made (directly or indirectly) since January 1, 2014, to and from its co-defendant GmbH and their owners Marakhovski and Adamovski. Infomir must also produce the records showing payments made (directly and indirectly) since January 1, 2014, to or from its CEO, Goldfedib, including his salary or other compensation, however paid. The Court reserves decision on the proposed subpoenas, which shall not be served pending Infomir's supplemental document production and receipt of additional briefing as detailed in paragraph 10(c) below.

9.    S.K. Management Documents

Plaintiffs' application to compel defendant S.K. Management of New York (S.K. Management) to produce documents responsive to plaintiffs' Requests No. 1, 2, 4, 10, 11, 13, 15, 16, 17, and 21 (Dkt. No. 541) is GRANTED IN PART. S.K. Management must promptly produce:

a.  Documents sufficient to show the ownership and control of S.K. Management, including but not limited to documents corroborating Sam Katsman's assertion that he owns 100% of the stock of S.K. Management and 100% of the issued and outstanding stock of Bravo Price Corporation (Bravo Price), which performs certain management functions for S.K. Management.

b.  Documents sufficient to identify the officers, directors, and employees of S.K. Management and Bravo Price.

c.  Documents sufficient to identify any other corporation, partnership, or other business entity owned by, controlled by, or under common control with S.K. Management or Bravo Price.

d.  All documents concerning payments made to, requested by, owed to, or received from Oleh Horbatjuk, including communications with Horbatjuk or others concerning such payments.

10

    e.   Documents concerning the "signal" provided by Horbatjuk, including communications with Horbatjuk or others concerning such signal.

    f.   Documents sufficient to show the complete menu of channels or other programming available to gudzon.tv subscribers from January 1, 2014 to the present.

    g.   A complete set of customer orders, subscriptions, invoices, and payments concerning an exemplar customer, to be selected by plaintiff from the numbered list previously provided by S.K. Management. S.K. Management may redact the responsive documents so as to protect the name and any individually-identifiable contact information of the selected customer.

    h.   All documents concerning the acquisition, registration, and transfer of the domain name "gudzon.tv."

If S.K. Management is unable to produce documents responsive to each of subparagraphs (a)-(h) above, its counsel of record shall provide a declaration, made under oath on personal knowledge, describing the efforts made to locate and produce responsive documents. In addition, the Court will entertain an application by plaintiffs for an order compelling S.K. Management, Bravo Price, and/or Mr. Katsman to produce the relevant portions of their tax returns.

10.    <u>Additional Letter-Briefing</u>

The parties may submit supplemental letter-briefs on or before **April 27, 2018**, no longer than six pages, limited to the following issues:

    a.   The impact of recent discovery, including discovery concerning the source of plaintiffs' litigation funding, on the pending Local Civil Rule 54.2 motions;

    b.   Whether television programming may be deemed "first" or "simultaneously" published in the United States where the version licensed for U.S. distribution is time-shifted, includes different advertisements, and omits certain programs altogether;

    c.   Whether plaintiffs are entitled, on the present record, to the broad discovery it seeks from non-party banks concerning the finances of (i) Infomir; (ii) its non-party officers, directors, and/or owners; and (iii) various non-party business entities alleged to be affiliated with Infomir.

Responding briefs, no longer than two pages, may be submitted on or before **May 2, 2018**.

11.     <u>Fact Discovery Extension; Additional Depositions</u>

The parties' joint request to extend certain discovery deadlines, made by letter-application dated April 12, 2018 (Dkt. No. 565), is GRANTED to the extent that the deadline for completing all remaining fact discovery is EXTENDED to **May 31, 2018**. During the extended fact discovery period the parties may conduct or complete:

a.   the previously-scheduled depositions of Infomir (by Goldfedib) and Joint Stock Company "Channel One Russia Worldwide" (by Alexander Shprekher);

b.   the deposition of Dmitry Dudkin, an employee of Bravo Price; and

c.   the deposition of Christopher Vidulich, discussed in paragraph 4 above.

If and to the extent counsel for plaintiffs and S.K. Management have not agreed on a mechanism for ensuring Dudkin's appearance at deposition **by April 27, 2018**, S.K. Management is directed to promptly provide Dudkin's home and work addresses to plaintiffs' counsel for the purpose of serving him with a subpoena.

12.     <u>Privilege Logs</u>

Documents that are withheld from production based on a claim of attorney-client privilege, work product protection, or similar privilege or immunity from production must be listed and described on a log which is prepared in accordance with Local Civil Rule 26.2 and served promptly after the production to which the log relates.

The Clerk of Court is respectfully directed to close the motions at Dkt. Nos. 535, 541, and 565.

Dated:   New York, New York            **SO ORDERED**
        April 25, 2018

_____

**BARBARA MOSES**
**United States Magistrate Judge**

### NOTICE OF PROCEDURE FOR FILING OF OBJECTIONS
### TO REPORT AND RECOMMENDATION

The parties shall have fourteen days from this date to file written objections pursuant to 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b) to the Report and Recommendation contained in paragraph 2 of this Order. Any such objections shall be filed with the Clerk of the Court, with courtesy copies delivered to the Hon. George B. Daniels at 500 Pearl Street, New York, New York 10007, and to the chambers of the undersigned magistrate judge. Any request for an extension of time to file objections must be directed to Judge Daniels. Failure to file timely objections will preclude appellate review. *See Thomas v. Arn*, 474 U.S. 140 (1985); *Wagner & Wagner, LLP v. Atkinson, Haskins, Nellis, Brittingham, Gladd & Carwile, P.C.*, 596 F.3d 84, 92 (2d Cir. 2010).