UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

Ronald D. Coleman (RC 3875)
MANDELBAUM SALSBURG PC
3 Becker Farm Road
Roseland, NJ 07068
973.736.4600
rcoleman@lawfirm.ms

Marcus A. Nussbaum, Esq. (MN 9581)
P.O. Box 245599
Brooklyn, NY 11224
888.426.4370
marcus.nussbaum@gmail.com
*Attorneys for Defendant
SK Management of New York*

| | |
|---|---|
| JOINT STOCK COMPANY "CHANNEL ONE RUSSIA WORLDWIDE," *et al*.,<br><br>*Plaintiffs,*<br><br>- *vs.* -<br><br>INFOMIR LLC, et al., et al.,<br><br>*Defendants*. | CIVIL ACTION NO.<br><br>1:16-cv-01318<br>GBD-BCM |

**SK MANAGEMENT OF NEW YORK, INC.'S RESPONSE
TO PLAINTIFFS' OBJECTIONS TO THE COURT'S
REPORT AND RECOMMENDATION OF APRIL 25, 2018**

Defendant SK Management of New York, Inc. ("SK Management") respectfully submits this Memorandum of Law in response to and in opposition to plaintiffs' Objections to the Court's Report and Recommendations of Magistrate Judge Moses of April 25, 2018 (the "R&R") and concerning the rulings made by the Court during the discovery conference held on April 19, 2018. SK Management urges that, for the reasons set forth below, the Report and Recommendations be adopted in their entirety.

**PRELIMINARY STATEMENT**

The Court is well acquainted with the instant matter, wherein plaintiffs have asserted various claims against defendants arising out of claimed copyright and trademark infringements. Defendants SK Management and Infomir LLC ("Infomir") have both asserted an affirmative defense to the effect that plaintiffs are attempting to use their copyright claims – in creative works which they have, so far, not made a prima facie showing that they own – for the unlawful anticompetitive purpose of forcing SK Management and others from the Russian-language IPTV market in the United States on behalf of plaintiffs' business partners, non-parties Kartina TV and Kartina USA TVs (collectively, "Kartina"), which compete with defendants in those markets.

While Kartina, an entity based in and owned by principals in the Russian Federation, is not a party to this lawsuit, defendants have urged that, for these reasons, the facts would eventually demonstrate that Kartina is the real party in interest on whose behalf the host of plaintiffs named here are acting largely as proxies. The facts developed over a year and a half of litigation have borne this out, to wit:

- On the most fundamental and profound level, despite marching aggressively into court, demanding a wide range of preliminary and permanent relief and creating a rhetorical atmosphere in which it has become a commonplace to refer to the defendants as "pirates" no plaintiff in this matter has identified a single specific work of original authorship that has been infringed, much less produced documentation that it owns any copyright in such a work.

- As SK Management has maintained from the time it answered the claims against it, deposition testimony has confirmed that the programming SK Management is streaming – the gravamen of the claims against it – are not "intercepted,"

1

- "decrypted" or "unscrambled" for streaming by SK Management in the U.S. Rather, they are broadcast domestically in Russia terrestrially – meaning, for free and without restriction. No party, including any plaintiff, licenses this Channel One broadcast in Russia to any U.S. outlet, including Kartina LLC, which – like SK Management – streams this Russian free-to-air Channel One in the U.S., meaning that this "intellectual property" is either not proprietary or, if it is, that it has no economic value.

- After spending months involved in what can only be understood now as a tactical feint regarding the source of payment for SK Management's attorney fees with respect to defense of this action, plaintiffs have admitted that the (clearly considerable) legal fees incurred in prosecuting the claims brought here in their names have been paid by none other than Kartina – the non-party that has the most to gain from preventing the remaining defendants from continuing their lawful conduct.

The R&R is consistent with these developments in the record of the case, though it is fundamentally of a procedural nature.  Plaintiffs' objections, however, are premised on an attempt to rewrite history and mislead the Court regarding supposedly dispositive substantive rulings that have simply never happened.  In particular, plaintiffs place great weight on what they maintain is the impact and effect of a default judgment entered earlier in the case against defendants Panorama Alliance LP and Asaf Yevdayev, claiming inaccurately that the Court "determined that Broadcasters' satellite communications containing copyrighted works and trademarks are entitled to protection under the Berne Convention, the Copyright Act, and the Lanham Act" and that this imagined "determination" is now the law of the case – a damning admission of the bankruptcy of

2

their own proofs with respect to the prima facie elements of their own claims.

It falls to the non-defaulting defendants to correct this serious misrepresentation of the record, despite the Court's explicit guidance concerning this very point addressed during the discovery hearing held on February 9, 2018 before Magistrate Judge Moses during colloquy between Judge Moses and counsel for plaintiffs:

> MR. BLAUSTEIN: There are – we have identified some specific documents. So for instance, Judge Daniels, affirming your order, has already determined that we own the channels and we own the relevant [inaudible] in the network.
>
> THE COURT: Footnote on that, please do not assume that you are entitled to use that default judgment made without any actual litigation of the merits as if it were a merits determination binding on non-defaulting defendants.
>
> MR. BLAUSTEIN: Very good, Your Honor.
>
> ***
>
> THE COURT: Understanding that one of the key elements in whether you get a bond is the strength of your case as to which there have been no judicial rulings. Right?
>
> MR. BLAUSTEIN: Well, bearing in mind Your Honor's comments from earlier today, we do have the default judgments against the defaulted defendants.
>
> THE COURT: I wouldn't count on that for the reasons I previously articulated. You want a ruling?

(See, Transcript of Proceedings re: Discovery Hearing held on 2/9/2018 before Magistrate Judge Barbara C. Moses., Docket # 529 at pp. 129/ln. 12-19; 58/ln. 5-13). Plaintiffs did not accept Judge Moses' invitation to make a substantive ruling on their pending motion for a bond, and at the same time withdrew their motion for summary judgment after considering the obvious implications of her comments suggesting just how great a gap existed between the high burden plaintiffs needed to meet under Red. R. Civ. P. and the actual state of the record.

Despairing of their ability to prevail by litigation of their claims on the merits, plaintiffs then turned to the tactic of attempting to put defendants out of business by forcing them to freeze

3

their limited capital and resources used for day-to-day business operations, by way of plaintiffs' motion for a bond, pursuant to Local Civil Rule 54.2. Plaintiffs premised their motion on a series of wild-eyed and reckless accusations based entirely on speculation that crossed the threshold from surmise into conspiracy theory. Given the outrageous content of this filing and the increasingly erratic nature of plaintiffs' submissions, as well as the establishment of the non-party, overseas party in interest that was financing and managing this litigation, SK Management was well within its rights to cross-move for a bond itself as protection. In light of all this, plaintiffs' cry that more than six months have passed without a ruling on the bond application and that they – in other words, Kartina – have "incurred hundreds of thousands of dollars" on a lawsuit that has involved a voluntarily withdrawn summary judgment motion and innumerable wild good chases initiated by plaintiffs is more than a little hollow. Through all this plaintiffs, even in their latest submission, continue their tawdry recourse to litigation by supposed playground taunt, insulting both the Court and defendants through the use of the term "pirates" despite the Court having admonished them for this unprofessional practice and noting appropriately that, as a legal matter, the term "pirate" means nothing.

   Plaintiffs additionally take issue with the Court's ruling requiring them to meet their basic duties in litigation under the Federal Rules of Civil Procedure by producing live witnesses for depositions in the forum of they chose to avail themselves to pursue their claims. They resist as well any suggestion regarding production of documents related to Kartina, the corporate entity which it has now been ascertained is funding their litigation on behalf of plaintiffs. There is no merit in these objections, or to the complaint that Judge Moses set no date certain by which the defendants must produce documents described in the R&R.  Judge Moses acted well within her discretion to tie the timing of that production to the parties' continuing obligations work together

4

to resolve discovery issues, as further reflected in a May 18, 2018 directed the parties to "…submit a joint status letter updating the Court as to the progress of discovery, including any remaining discovery disputes requiring judicial intervention, no later than June 15, 2018." (Docket 585). Similarly, defendant's inaccurate assertions that SK Management "has refused to provide financial records or the identity of its credit card payment processor" and has "exploited" the Court's Protective Order through the use of an Attorney's Eyes Only designation of documents similarly provide no basis for disturbing the Court's directives of April 25, 2018. All of these issues already have been, continue to be, or inevitably will be addressed to the Court "no later than June 15, 2018."

Plaintiffs' accusation that Magistrate Judge Moses has exercised a "pocket veto" of plaintiffs' Local Rule 54.2 bond request is particularly insulting to the Court. The cases are clear that a United States Magistrate Judge is vested with "considerable discretion" in deciding who is entitled to a bond, when, and how much. See, RLS Assocs., LLC v. United Bank of Kuwait PLC, 464 F. Supp. 2d 206 (S.D.N.Y. 2006); Sea Trade Co. v. FleetBoston Fin. Corp., No. 03 CIV. 10254 (JFK), 2008 WL 161239 (S.D.N.Y. 2008). Given Judge Moses' meticulous and exhaustive attention to fact discovery and the numerous procedural disputes among the parties over the course of this litigation, that discretion is well placed in her offices, and plaintiffs have come forward with no reason besides their displeasure with how she has exercised it to justify their objections.

As to plaintiffs' argument regarding defendants' defense of copyright misuse, the Court should not be misled by plaintiffs' convoluted interpretation of the facts and the Court's rulings on this issue. The R&R speaks for itself, explaining that the filing of an infringement action, without more, does not constitute copyright misuse; nor have defendants claimed otherwise. This simplistic trope, however, is quite a long way from the facts involving non-party litigation-funder Kartina, which stands to directly benefit from a market devoid of competition should plaintiffs prevail on

their claims. Again, plaintiffs have admitted in depositions that no one in the United States is licensed to stream the Russian terrestrial version of their programming (as distinct from the international version of said programming), which plaintiffs are suing SK Management for doing despite their awareness that Kartina is doing the very same thing. If plaintiffs' acquiescence to Kartina's conduct is something short of the plaintiffs pirating themselves – because the record does not yet support a finding that plaintiffs are an alter ego of Kartina – it certainly raises questions about plaintiff's initiation of a wide-ranging, aggressive copyright infringement lawsuit in a case where not a single infringement has been identified.

Plaintiffs' insistence that the Second Circuit does not recognize the defense of copyright misuse mischaracterizes the facts as well. As Judge Moses explained on the record at an April 19, 2018 status conference, "there's no reason to believe that the Second Circuit would fail to recognize the copyright misuse defense. No circuit has refused to recognize it. . . . [I]t has been recognized in various ways and shapes by many district courts within the Second Circuit. So that's not the problem." (See, Transcript of Discovery Conference of April 19, 2018, Docket 570 at p. 15). In view of the foregoing it is respectfully submitted that the question remains to be seen whether or not the discovery already obtained as to Kartina, together with that which defendants now seek to obtain, will support the affirmative defense of copyright misuse, and this Court is asked to deny plaintiffs' attempt to close the door on this issue.

## ARGUMENT

### I. KartinaTV Documents Are Likely to Lead to the Discovery of Admissible Evidence and Broadcasters Should Be Compelled to Produce Them.

The following facts cannot, at this point, be seriously disputed: (1) Kartina is paying the legal expenses for plaintiffs in this litigation; (2) Kartina stands to benefit directly from a market devoid of lawful competition; (3) defendants are of limited means and have been forced to expend

considerable resources in defending the claims brought by plaintiffs herein; (4) as of the time of this writing, plaintiffs have failed to come forward with the name of any specific protectable work that has been infringed, much less documentation that it owns any copyright in such a work; (5) SK Management is streaming programming that is broadcast terrestrially (domestically) in Russia for free and without restriction, and which – contrary to plaintiffs' claims – is not "intercepted" or "unscrambled" for streaming in the U.S.; (6) plaintiffs do not license Channel One, as broadcast in Russia, to any U.S. outlet; and (7) Kartina, like SK Management, also streams the Russian free-to-air Channel One in the U.S., without any license or objection by plaintiffs.

These facts raise significant questions about what, exactly, the goals of the copyright litigation here is, and whether indeed there is a bona fide copyright claim underlying it all – the essence of copyright misuse. Accordingly, and inasmuch as SK Management's discovery demands mirrored those made by Infomir as to discovery regarding Kartina (and inasmuch as SK Management joined in Infomir's argument as to why production of these documents should be compelled), the R&R should remain undisturbed on this point.

**II.   The Court Need Not Order a Date Certain for Defendants to Produce Documents**

On May 18, 2018, the Court directed that the status conference that was tentatively scheduled for May 24, 2018 be adjourned to June 26, 2018 and the parties submit a joint status letter updating the Court as to the progress of discovery, including any remaining discovery disputes requiring judicial intervention, no later than June 15, 2018. Accordingly, the issue of a lack of a deadline for production of documents has been mooted.

**III.   Defendants Attorney-Client Relationship Should Not be Disturbed**

Plaintiffs' continued attempts to pierce the attorney-client relationship between the undersigned counsel and SK Management through a demand for the extraordinary relief of having

7

this Court compel the disclosure of a retainer agreement are not justified by a showing remotely akin to required for such production. This request should also be denied.

Plaintiffs do not meet the appropriately high burden courts place on justifying an intrusion into the attorney-client relationship merely by pounding the table and insisting that they suspect someone besides our client is paying our client's legal fees. No one is doing so, but plaintiffs have yet to demonstrate how it would be probative with respect to the issues in this litigation if someone were. Standing alone, there is no prohibition against the payment of legal fees by a third-party. *See*, "Topic: Conflicts; Fees Paid by Third-Party Payors," NY Eth. Op. 1063 (June 29, 2015) (citing New York Rules of Professional Conduct [the "Rules"], Rule 1.8(f), Cmt. [11] ["Lawyers are frequently asked to represent clients under circumstances in which a third person will compensate them, in whole or in part. The third person might be a relative or friend, an indemnitor (such as a liability insurance company) or a co-client (such as a corporation sued along with one or more of its employees)"].

Plaintiffs' dramatic invocation of conspiracy of "pirates" trading in rights regarding which they have barely enunciated their own ownership is not a justification for their attempt to expand the scope of discovery under Rule 26, which limits the scope of discovery to information likely to lead to admissible evidence relevant to a "claim or defense" and, per its recent amendment, to disclosure that is "proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1). It should not be necessary to repeat the specific proportionality factors disregarded by plaintiffs in making this demand: (1) the importance of the issues at stake in the litigation; (2) the amount in controversy; (3) the parties relative access to relevant information; (4) the parties' resources; (5) the importance of the discovery in resolving the issues; and (6) whether the burden or expense of the discovery is outweighed by the benefit. Nothing in the SK Management retention agreement addresses these.

Because payment of legal fees by a third party is not improper and there is no issue in this case that would be affected by revelation regarding the payment of SK Management's fees, plaintiffs' obsession with tracing payments from SK Management to the undersigned does not provide a basis for compelling disclosure of our retainer agreement or payment of fees.  Nor do vague references to conspiracies involving the "[o]perators of the Goodzone TV Website" which have no specific connection to a theory of recovery, defense or properly joined party.  Mr. Sam Katsman – "SK" – appeared as SK Management's designee under Rule 30(b)(6), where he testified under oath that he is the sole owner and shareholder of SK Management (as well as Bravo Price Corp.) and that SK Management owns and operates the "Goodzone TV website" found at www.gudzon.tv.  While, of course, as a general proposition the testimony of a witness, even a 30(b)(6) witness, regarding the ownership of a company is not irrebuttable, plaintiffs have come forward with *nothing* factual that could cast doubt on the veracity of that testimony.

The law is clear that plaintiffs' failure to connect imaginary dots does not justify the continuation of their fishing expedition in quest of some unknown additional officer of SK Management or of some other corporation not a party to this action merely in the hope of identifying an individual who may be personally liable for copyright infringement − much less a distracting, intrusive deep dive into the sacrosanct attorney-client relationship.  For example, in Mackenzie Architects, P.C. v. VLG Real Estates Developers, LLC, No. 115CV1105TJMDJS, 2017 WL 4898743, at *2 (N.D.N.Y. Mar. 3, 2017), the Court addressed defendants' demands that the plaintiff produce retainer agreements, letters of engagement, and sources of funding for the litigation. In denying defendants' request to compel the production of these materials, the court noted that defendants justified this intrusion into the attorney-client relationship on plaintiff's claim for an award of attorney's fees as part of the relief sought. Because that particular issue had not yet

9

arisen, the court concluded that these discovery demands were not proportionally relevant to the needs of the case at that time and denied a request for their production.

Here the issue of a corporate officer's personal liability for damages is not an issue currently before the Court. Plaintiffs, represented by leading experts on copyright law, are well aware of the standard for pleading personal liability for copyright infringement performed by organizations of which they are principled. They did not name any individual party as a defendant, have not moved to amend the pleadings to do so, have not come forward with evidence justifying further discovery on that question and, by relying on the red herring of who is paying SK Management's fees, have not justified their demand for a deep dive into the attorney-client zone of confidentiality and the demotion of one party to this litigation to second-class status.

It is because of that last consideration that SK Management respectfully submits that these arguments should be sufficient to resolve the issue of its retainer agreements and fee payments, and believes they must be made as a matter of principle with respect to that issue. Plaintiffs' demand that the Court thrust aside the attorney-client relationship to satisfy their fevered speculation is of a piece with their relentless campaign to obscure the fact that *they* are the claimants here and *they* are the ones tasked with the burden of proof through a fusillade of tactics meant to paint defendants as rogues and scoundrels, no better than purveyors of counterfeit handbags and CD's on the platform of the 7 train. Based on the Court's past discovery rulings, we do not expect that effort to bear fruit; we are nonetheless duty bound not to let it pass – time and time again – unremarked.

Having said that, however, SK Management has nothing to hide and, if the Court deems it necessary to put an end to this recurring distraction, has no objection to making proof of payment of legal fees in this matter for SK Management, by SK Management, for *in camera* inspection in order to demonstrate that the undersigned, an Officer of this Court, has not repeatedly lied to it, as

alleged by plaintiffs.

## CONCLUSION

In light of the foregoing, it is respectfully requested that the Court afford no consideration to plaintiffs' Objections to the Court's Report and Recommendation of April 25, 2018, which should remain undisturbed.

Dated:   Brooklyn, New York  
        May 23, 2018

Respectfully submitted,

*/s/ Marcus A. Nussbaum*

Marcus A. Nussbaum, Esq. (MN 9581)

P.O. Box 245599  
Brooklyn, NY 11224  
888.426.4370  
marcus.nussbaum@gmail.com  
*Attorneys for Defendant*  
*SK Management of New York*

Ronald D. Coleman (RC 3875)  
MANDELBAUM SALSBURG PC  
3 Becker Farm Road  
Roseland, NJ 07068  
973.736.4600  
rcoleman@lawfirm.ms

11