UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------x

JOINT STOCK COMPANY "CHANNEL ONE
RUSSIA WORLDWIDE," CLOSED JOINT
STOCK COMPANY "CTC NETWORK,"
CLOSED JOINT STOCK COMPANY "TV
DARIAL," CLOSED JOINT STOCK COMPANY
"NEW CHANNEL," LIMITED LIABILITY
COMPANY "RAIN TV-CHANNEL," and
LIMITED LIABILITY COMPANY "GLOBAL
ENTERTAINMENT TV,"

                Plaintiffs,

-against-

INFOMIR LLC (www.infomirusa.com), INFOMIR
GmbH, ALEXANDER MARAHOVSKY, EVGENI
LEVITIN, TELECOMMUNICATIONS
TECHNOLOGIES LTD., PANORAMA
ALLIANCE, LP (www.mypanorama.tv), ASAF
YEVDAYEV, DAVID ZELTSER, S.K.
MANAGEMENT OF NEW YORK INC.,
MOIDOM LLC, TELEPROM, VDALI, MHCOM
GmbH, and JOHN DOES 1–50,

                Defendants.

------------------------------------x



ORDER

16 Civ. 1318 (GBD) (BCM)

GEORGE B. DANIELS, United States District Judge:

    In this action, Plaintiffs Joint Stock Company "Channel One Russia Worldwide," Closed Joint Stock Company "CTC Network," Closed Joint Stock Company "TV DARIAL," Closed Joint Stock Company "New Channel," Limited Liability Company "Rain TV-Channel," and Limited Liability Company "Global Entertainment TV" assert claims against Defendants Infomir LLC ("Infomir"), Infomir GmbH, Alexander Marahovsky, Evgeni Levitin, Telecommunications Technologies Ltd., Panorama Alliance LP ("Panorama"), Asaf Yevdayev, David Zeltser, S.K. Management of New York Inc. ("SKM"), Moidom LLC, Teleprom, Vdali, MHCOM GmbH, and John Does 1–50 arising from the alleged interception, copying, retransmission, and distribution of

Plaintiffs' programming (the "Programming") to consumers in the United States over the Internet without authorization and without the payment of licensing fees. (*See* Am. Compl., ECF No. 211.) The matter was referred to Magistrate Judge Barbara C. Moses for general pretrial management, including discovery. (ECF Nos. 35.) The order of reference was subsequently amended to include dispositive motions. (ECF No. 64.)

On April 19, 2018, Magistrate Judge Moses held a discovery conference (the "April 19 Conference") to address several outstanding discovery disputes between the parties. Before this Court is Magistrate Judge Moses' April 25, 2018 Discovery Order and Report and Recommendation, (the "Report," ECF No. 569), concerning the matters discussed at the April 19 Conference. In her Report, Magistrate Judge Moses advised the parties that failure to file timely objections to the Report would constitute a waiver of those objections on appeal. (*Id.* at 13.) Plaintiffs filed timely objections. (Mem. in Supp. of Broadcasters' Objs., ("Objs."), ECF No. 581.) Infomir and SKM filed timely responses. (Infomir's Br. in Opp'n to Pls. Objs. ("Infomir Resp."), ECF No. 587; SKM's Resp. to Pls. Objs. ("SKM Resp."), ECF No. 588.) Plaintiffs' objections are overruled.

The Report is ADOPTED in full, and the discovery orders therein are AFFIRMED.

## I. LEGAL STANDARDS

"Dispositive motions, such as motions . . . for summary judgment . . . may be submitted to a magistrate judge for a report and recommendation." *Kiobel v. Millson*, 592 F.3d 78, 84–85 (2d Cir. 2010) (Cabranes, J., concurring) (citing 28 U.S.C. § 636(b)(1)(A)). The district court must review *de novo* those portions of the report to which a party properly objects. *Thomas E. Hoar, Inc. v. Sara Lee Corp.*, 900 F.2d 522, 525 (2d Cir. 1990). Portions of the report to which no or

"merely perfunctory" objections are made are reviewed for clear error. *See Edwards v. Fischer*, 414 F. Supp. 2d 342, 346–47 (S.D.N.Y. 2006) (citation omitted).

For "nondispositive pretrial matters," including discovery disputes, the "magistrate . . . may issue orders." *Thomas E. Hoar, Inc. v. Sara Lee Corp.*, 900 F.2d 522, 525 (2d Cir. 1990). Such discovery orders are also reviewed for clear error. *See id.* Accordingly, when an "[o]bjection is directed to . . . discovery disputes, it must be overruled unless the ruling of the [m]agistrate [j]udge was 'clearly erroneous or contrary to law.'" *Williams v. Rosenblatt Secs., Inc.*, 236 F. Supp. 3d 802, 803 (S.D.N.Y. 2017) (quoting Fed. R. Civ. P. 72(a)). Clear error is present when, "upon review of the entire record, [the court is] left with the definite and firm conviction that a mistake has been committed." *United States v. Snow*, 462 F.3d 55, 72 (2d Cir. 2006) (citation omitted). "An order is contrary to law when it fails to apply or misapplies relevant statutes, case law or rules of procedure." *Frydman v. Verschleiser*, No. 14 Civ. 8084 (JGK) (JLC), 2017 WL 1155919, at *2 (S.D.N.Y. Mar. 27, 2017) (quoting *Thompson v. Keane*, No. 95 Civ. 2442 (SHS), 1996 WL 229887, at *1 (S.D.N.Y. May 6, 1996)).

## II. PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT IS DENIED

On February 23, 2018, Defendant Infomir filed a letter motion (the "February 23 Motion") to compel Plaintiffs to produce certain documents relating to non-parties Kartina TV and Dune HD. (Letter from Stewart M. Leviss to Magistrate Judge Moses dated Feb. 23, 2018, ECF No. 535.) Infomir asserted that its document requests would be "highly probative of Infomir, LLC's stated defense of copyright misuse," which "alleges that [P]laintiffs have . . . attempt[ed] to leverage their (purported) foreign copyrights to control the market for set-top boxes within the

3

United States for the benefit of their partners, Kartina TV and/or Dune HD."[1] (*Id.* at 2.) On March 9, 2018, Plaintiffs filed a letter opposing the February 23 Motion, and "request[ed] that [Magistrate Judge Moses] treat this letter as a cross-motion for summary judgment on Infomir's copyright misuse defense." (Letter from Raymond J. Dowd to Magistrate Judge Moses dated Mar. 9, 2018, ECF No. 538, at 1.)

The Report found that Infomir failed to establish "any factual basis for its copyright misuse defense," because Infomir "does not allege any tying or other pre-filing anti-competitive conduct."[2] (Report at 2.) The Report further found that Infomir had not "identified any authority for the proposition that the filing of an infringement action—without more—can constitute copyright misuse and thereby furnish the defendant with a defense to the same action." (*Id.*) Nonetheless, the Report recommended Plaintiffs' cross-motion for summary judgment be denied, without prejudice, because it failed to comply with Rule 56(c) of the Federal Rules of Civil Procedure and Local Civil Rule 56.1(a). (*Id.* at 3.)

Plaintiffs contend they are entitled to summary judgment because a court may grant such judgment upon "consideration of any facts in the record." (Objs. at 10 (quoting Fed. R. Civ. P. 56(c)(1)(A).) But as the party moving for summary judgment, Plaintiffs bear the burden of directing the court to "particular parts of materials in the record . . . or showing that an adverse party cannot produce admissible evidence to support [a] fact." Fed. R. Civ. P. 56(c). Local Civil Rule 56.1 provides that a motion for summary judgment must be accompanied by "a separate short

---

[1] "[S]et-top boxes" are "receivers . . . designed primarily to facilitate U.S. subscribers of Infomir and others to receive versions of the Programming that have been intercepted from satellite communications without authorization." (Am. Compl. ¶ 36.)

[2] "Tying" refers to "an agreement by a party to sell one product on the condition that the buyer also purchases a different (or tied) product, or at least agrees that he will not purchase that product from any other supplier." *Eastman Kodak Co. v. Image Technical Servs., Inc.*, 504 U.S. 451, 461 (1992) (citation omitted).

4

and concise statement . . . of the material facts as to which the moving party contends there is no genuine issue to be tried. Failure to submit such a statement may constitute grounds for denial of the motion." Local Civ. R. 56.1(a); *see also, e.g.*, *Golden Archer Invs., LLC v. Skynet Fin. Sys.*, 908 F. Supp. 2d 526, 537 n.5 (S.D.N.Y. 2012) (denying summary judgment where plaintiff "failed to submit a 56.1 Statement in support of th[e] motion, which is a violation of Local Civil Rule 56.1(a)"); *MSF Holding Ltd. v. Fiduciary Trust Co. Int'l*, 435 F. Supp. 2d 285, 304 (S.D.N.Y. 2006) (same). Plaintiffs did not provide the requisite statement here. Thus, the Report correctly found that Plaintiffs are not entitled to summary judgment on Infomir's copyright misuse defense. Because Plaintiffs' motion for summary judgment is denied on procedural grounds, this Court need not address the parties' arguments as to the substantive merits of that motion.[3] (*See* Objs. at 8–10; Infomir Resp. at 8–11; SKM Resp. at 5–6.)

## III. MAGISTRATE JUDGE MOSES' DISCOVERY ORDERS ARE AFFIRMED

### A. Documents Relating to Kartina TV

The Report found that, given the lack of support for Infomir's copyright misuse defense, such a defense could not justify the discovery of the information Infomir seeks regarding Kartina TV and Dune HD. (Report at 3.) However, the Report found that Infomir's request for documents from Kartina TV was also based on Infomir's claim that Kartina TV is financing this litigation, which is supported by deposition testimony confirming Kartina TV is paying the legal fees of at least one of the Plaintiffs. (*Id.* at 2.) The Report further found Plaintiffs' financing arrangements are relevant because the parties have filed cross-motions for bond pursuant to Local Civil Rule

---

[3] As the Report notes, Plaintiff Joint Stock Company Channel One Russia Worldwide has since filed a formal motion for partial summary judgment in compliance with the relevant procedural rules, "seeking judgment 'on the issue of liability' as to certain of its claims against Infomir" and "summary judgment dismissing Infomir's affirmative defenses." (Report at 3 n.1.)

5

54.2.[4] (*Id.*) Accordingly, the Report ordered Plaintiffs to produce "all non-privileged communications and other documents created by, received from, sent to, or discussed with Kartina [TV] concerning the factual allegations set forth in the First Amended Complaint." (*Id.* at 1.)

Plaintiffs object that they should not be required to produce such documents because the documents sought "exceed the scope of the pertinent document[] requests." (Objs. at 11.) However, the Report did not find Infomir was entitled to the production of documents relating to Kartina TV on the basis of its document requests, but because such documents are relevant to the parties' pending cross-motions for bond.[5] Plaintiffs make no argument that the documents sought are irrelevant for that purpose. Nor do Plaintiffs identify any statutes, rules of procedure, or case law that they claim Magistrate Judge Moses misapplied. Because Plaintiffs have not shown that Magistrate Judge Moses' order was clearly erroneous or contrary to law, their objection is overruled.

## B. Investigatory Documents

The Report ordered Plaintiffs to produce "all non-privileged documents concerning any investigation conducted (by [P]laintiffs or others) prior to the filing of this action into the 'piracy' of the Programming at issue herein, including but not limited to documents concerning generic, routine, or preliminary investigations not yet focused on a specific claim against a specific party." (Report at 3.) Plaintiffs object that this Court should "reject and reverse the order to compel

---

[4] Local Civil Rule 54.2 provides, "The Court, on motion or on its own initiative, may order any party to file an original bond for costs or additional security for costs in such an amount and so conditioned as it may designate."

[5] Because the Report expressly found that Infomir's copyright misuse defense could not be used to "justify the broad discovery it seeks into [P]laintiffs' business relationships," (Report at 3), Plaintiffs' objections that the production of documents related to Kartina TV is not warranted on the basis of Infomir's copyright misuse defense are without merit. (Objs. at 11.) While SKM contends that documents related to Kartina TV establish other facts relevant to this litigation, because the Report does not find the documents are relevant for that purpose, this Court declines to consider SKM's contentions here. (SKM Resp. at 6–7.)

6

production of investigatory documents concerning investigations by [Plaintiffs] and non-parties." (Objs. at 16.) However, Plaintiffs make no argument as to why such production should not be compelled. Plaintiffs' wholly conclusory objection to this aspect of the Report is overruled.

## C. Deposition of Christopher Vidulich and Production of Related Documents

In a joint letter to Magistrate Judge Moses filed in advance of the April 19 Conference, Infomir stated that it had noticed the deposition of Christopher Vidulich, a paralegal employed by Plaintiffs' counsel and sought discovery of documents relevant to that deposition. (Letter from Stewart M. Leviss to Magistrate Judge Moses dated Apr. 16, 2018, ECF No. 566.) As the Report notes, Plaintiffs have filed a series of declarations by Vidulich describing investigations he has conducted into Defendants' systems and services. (Report at 4.) The Report ordered Plaintiffs to produce Vidulich for deposition on the "facts concerning the website, apps, and software he accessed or utilized" to access those systems and services, "the observations he made when he did so, and the information and data he acquired." (*Id.*)

Plaintiffs object that Infomir waived its right to depose Vidulich at a February 9, 2018 discovery conference in which Infomir's counsel stated, "we're not asking for counsel's work product. We're asking for internal investigations that were done by [P]laintiffs." (Objs. at 12 (quoting Tr. of Disc. Conference ("Feb. 9 Tr."), ECF No. 529, at 120:24–121:1).) But the colloquy cited by Plaintiffs relates to the scope of a specific document request by Infomir, and did not purport to limit what Infomir planned to seek through discovery generally. (*See* Feb. 9 Tr. at 119:16–17 (directing Infomir's counsel to "[t]ell me about [Document Request No.] 54"); *see also* Infomir Resp. at 13 & n.56 ("[T]he February 9, 2018 colloquoy . . . was expressly without prejudice to the parties' right to seek additional discovery.").)

7

Plaintiffs also object that Vidulich's deposition is unnecessary because Plaintiffs have provided the log-ins and credentials that Vidulich used, which allow Defendants to confirm the facts in the declarations. (Objs. at 12.) Plaintiffs contend that any other "legitimate questions Defendants might have" could be answered by accepting Plaintiffs' offer to allow a forensic expert to inspect the devices Vidulich used. (*Id.*) However, at the April 19 Conference, Plaintiffs affirmatively acknowledged that they "made Mr. Vidulich a fact witness when [Plaintiffs] commenced this action in 2016." (Tr. of Initial Case Management Conference ("Apr. 19 Tr."), ECF No. 570, at 94:7–8; *see also* Infomir Resp. at 12 (quoting same).) "[F]act witnesses . . . [are] able to testify concerning matters within their personal knowledge." *In re Methyl Tertiary Butyl Ether (MTBE) Prods. Liability Litig.*, 643 F. Supp. 2d 482, 496 n. 122 (S.D.N.Y. 2009) (citing Fed. R. Evid. 701). Here, the declarations submitted by Vidulich state that he has personal knowledge of the investigations he conducted. (*See, e.g.*, Decl. of Christopher Vidulich dated Mar. 23, 2018, ECF No. 549, ¶ 2 (stating his declaration is based on "disclosed research sources" or "direct personal observation").) Thus, Magistrate Judge Moses correctly explained at the April 19 Conference that Vidulich is competent to testify regarding "matters of fact . . . involving his actual investigatory activities" to "allow[] the [D]efendants to determine the full scope of his factual investigation." (Apr. 19 Tr. at 95:8–9, 15–17.) Plaintiffs have not articulated any reason why Magistrate Judge Moses' order that Vidulich should provide such testimony is clearly erroneous or contrary to law. Accordingly, Plaintiffs' objection to producing Vidulich is overruled.[6]

---

[6] The Report also ordered that, prior to the deposition, Plaintiffs must produce "documents in their possession, custody, or control (beyond those attached as exhibits to [Vidulich's] declarations) constituting or recording the information and data that Vidulich acquired as result of his investigatory activities." (Report at 5.) Plaintiffs do not object to this portion of the order.

### D. Documents Concerning Neighboring Rights in and Different Versions of the Programming

As the Report notes, Plaintiffs assert that their copyrights are based on "neighboring rights" in the Programming protected under Russian law and the Berne Convention.[7] (Report at 5; *see also* Am. Compl. ¶¶ 75–76.) The Report ordered Plaintiffs to produce "documents sufficient to show that they possess such rights." (Report at 6.)

The Report further explains that Plaintiffs cannot invoke the Berne Convention to recover for any work "'first published' either 'in the United States' or 'simultaneously in the United States and another treaty party or parties, whose law grants a term of copyright protection that is the same or longer than the term provided in the United States.'" (Report at 6 (quoting 17 U.S.C. § 101).) The parties disagree as to whether the differences between versions of the Programming broadcast in the Russian Federation and the United States are significant enough to prevent Plaintiffs from invoking the Berne Convention. (Report at 6–7.) Thus, the Report correctly found that the differences between the two versions of the Programming are relevant to Plaintiffs' claims, and ordered each Plaintiff to produce "documents sufficient to show, in detail, . . . the content of its Russian Federation broadcast(s)" and "the content of its licensed U.S. broadcast(s)" on "three dates to be selected by Infomir." (*Id.* at 8.)

### E. Documents Concerning Industry Standards

The Report ordered Plaintiffs to produce "non-privileged documents in their possession, custody or control concerning the 'industry standards' to which they claim Infomir fails to adhere."

---

[7] "Neighboring rights" refer to a "[b]roadcaster's right under Russian law to the totality of the content, including the selection and arrangement[,] of . . . [p]rogramming, regardless of whether certain copyrightable elements have been licensed from a third party." (Am. Compl. ¶ 76.) The Berne Convention is an "international agreement protecting literary and artistic works." *Carter v. Helmsley-Spear, Inc.*, 71 F.3d 77, 82 (2d Cir. 1995).

(*Id.* at 9.) Such documents are clearly relevant to Plaintiffs' claims, because the Amended Complaint alleges that Defendants "sell[] set-top boxes, servers and software to known infringers" and "fail to take reasonable antipiracy security measures in manufacturing the device[s] and in distributing software consistent with industry standards." (Am. Compl. ¶ 1.)

Plaintiffs object that "[i]nternet security specifications are within the ambit of expert testimony." (Objs. at 6, 14.) But Plaintiffs' argument is belied by Plaintiffs' counsel's statements at the April 19 Conference that information about internet security standards is available "on Wikipedia, for example," and that Plaintiffs "looked at . . . [h]ow . . . other people protect [set-top] boxes" to determine if Infomir's set-top boxes were adequately protected. (Apr. 19 Tr. at 44:4–16.)

The Report further states that, if Plaintiffs "contend there are no such documents, [Magistrate Judge Moses] will revisit the question whether Infomir is entitled to see [P]laintiffs' agreements with [their] licensees." (Report at 9.) Plaintiffs assert that they have waived their claim for damages from license fees, and that Magistrate Judge Moses "promise[d]" Plaintiffs that such a waiver "would enable [Plaintiffs] to keep [the license agreements] private." (Objs. at 14 (citing Feb. 9 Tr. at 110:7–16).) But Plaintiffs are incorrect. Magistrate Judge Moses stated at a hearing that if Plaintiffs chose "not . . . to waive damages on a foregone license fee theory, then [Plaintiffs] must . . . show what kind of license fees you have allegedly foregone." (Feb. 9 Tr. at 110:13–16.) Magistrate Judge Moses did not say that waiving damages would enable Plaintiffs to avoid disclosing their license agreements. And, indeed, such a statement would not be logical, because the fact that Plaintiffs are no longer pursuing a "reasonable license" theory does not render their license agreements irrelevant to this action. As Magistrate Judge Moses explained at the April 19 Conference, "look[ing] to [Plaintiffs'] own practices in the industry, what they require of

others" with whom they have license agreements could provide a basis to "determine what is and isn't reasonable" to protect against piracy. (Apr. 19 Tr. at 37:3–11.) Because Plaintiffs have not shown that Magistrate Judge Moses' order regarding the production of documents relating to "industry standards" was clearly erroneous or contrary to law, the order is affirmed.[8]

### F. Subpoenas of Non-Party Banks

On February 5, 2018, Plaintiffs' counsel issued subpoenas to four non-party banks—specifically, Citigroup, Inc., Deutsche Bank Trust Corp., HSBC USA Inc., and Bank of New York Mellon—seeking account information relating to personal and corporate bank accounts of Infomir, its shareholders and officers, and other entities Plaintiffs believed to be related to Infomir. (Apr. 16 Letter at 4; *see* Letter from Evan Silagi to Magistrate Judge Moses dated Apr. 6, 2018, Exs. A–D, ECF No. 557 (subpoenas).)

The Report found that prior to considering the subpoenas, Infomir should be given another opportunity to produce financial records showing payments made (directly or indirectly) to and from Infomir GmBH and their owners Marakhovski and Adamovski" and "to or from [Infomir's CEO, [Grigory] Goldfedib" since January 1, 2014. (Report at 10.) Plaintiffs object to this finding, arguing that Plaintiffs should be permitted to issue the subpoenas because "the record is clear that Infomir has refused to provide records or testify truthfully." (Objs. at 4.) However, Plaintiffs' objections do not describe what records Plaintiffs believe Infomir has refused to provide or its basis for believing that Infomir has been untruthful. Because Magistrate Judge Moses correctly declined to issue the subpoenas, Magistrate Judge Moses' order directing Infomir to produce its financial records is affirmed.

---

[8] Because this Court finds that Magistrate Judge Moses' order was not clearly erroneous, it declines Infomir's invitation to "expand[] the scope of Magistrate [Judge] Moses' [o]rder to include *all* documents, including license agreements, which reflect or refer to . . . anti-piracy security measures utilized by [P]laintiffs and their licensees." (Infomir Resp. at 15.)

11

### G. Goodzone TV's Retainer Agreement

At the April 19 Conference, Magistrate Judge Moses stated that Plaintiffs are not entitled to the retainer agreement between SKM and its counsel, Marcus Nussbaum. Though Plaintiffs argued at the April 19 Conference that the retainer agreement was relevant to determine "the true entity which controls [the Goodzone TV] website," a website that Plaintiffs allege is operated by SKM, Magistrate Judge Moses found that "who pays Mr. Nussbaum is [not] a direct enough line to who controls the website" to warrant discovery of the retainer agreement. (Apr. 19 Tr. at 147:6–10; Objs. at 15.)

Plaintiffs object to this finding, arguing that SKM's situation is analogous to that of Panorama, another defendant in this action, whose retainer agreement Plaintiffs were able to review. (Objs. at 15.) Plaintiffs argue that SKM's principal, Sam Katsman, "contradicted his own sworn prior declaration when he testified th[at] SKM operates th[e] Goodzone [TV] website and not [a] foreign entity, Lebrai Management LP. This ambiguity is exactly the same as Panorama." (*Id.*) But Panorama's situation is readily distinguishable from SKM's. In support of a motion to withdraw as counsel, Panorama's former counsel disclosed a retainer agreement that stated "Panorama TV has its office in the State of New York," which contradicted the former counsel's prior declaration that Panorama was formed under the laws of the United Kingdom and had no office in New York. *Joint Stock Company Channel One Worldwide v. Infomir LLC*, No. 16 Civ. 1318 (GBD) (BCM), 2017 WL 3671036, at *2 (S.D.N.Y. July 18, 2017). However, that apparent contradiction alone was not what made Panorama's retainer agreement relevant to the litigation. The contradiction—and thus, the retainer agreement—was relevant because Panorama had previously moved to dismiss Plaintiffs' claims for lack of personal jurisdiction on the basis of Panorama's lack of any ties to New York. *Id.* SKM, by contrast, has not filed such a motion.

Plaintiffs also assert that "if a foreign entity . . . is paying Mr. Nussbaum's legal fees," such information "affects [Plaintiffs' bond] motion and [Plaintiffs'] ability to obtain a judgment against the operator of the Goodzone [TV] website." (Objs. at 15.) But Plaintiffs provides no explanation of how the identity of the person paying SKM's legal fees would have any impact on SKM's ability to pay any bond or judgment that may be imposed against SKM. Similarly, while Plaintiffs assert that "[w]ithout the retainer, [Plaintiffs] will have to burden the court . . . with discovery to determine how to enjoin the Goodzone [TV] Website," Plaintiffs do not explain why or how the retainer agreement would provide them with any information as to how to enjoin the website. (*Id.*) Absent a clear connection between the retainer agreement and the information Plaintiffs seek, Magistrate Judge Moses' denial of Plaintiffs' request was not clearly erroneous or contrary to law.

## H. Discovery Schedule

In their objections to the Report, Plaintiffs object that the "failure to provide a date certain for" Infomir's and SKM's document productions "will delay the adjudication of the case on the merits."[9] (Objs. at 14.) Subsequent to the filing of Plaintiffs' objections, Magistrate Judge Moses issued an order directing the parties to file a joint letter setting forth "any remaining discovery disputes requiring judicial intervention, no later than June 15, 2018" and scheduling a discovery conference for June 26, 2018. (*See* Memo Endorsement, ECF No. 585, at 2.) Infomir asserts that, after Plaintiffs' objections were filed, Infomir supplemented its document production and filed a declaration from its counsel describing its supplemental production and further searches for documents that Magistrate Judge Moses ordered Infomir to produce. (Infomir Resp. at 16 (citing

---

[9] In addition to ordering Infomir to produce documents reflecting certain payments, as discussed above, the Report also ordered SKM to produce eight enumerated categories of documents. (Report at 10–11.) The Report also ordered that, for any categories of documents for which SKM is unable to produce responsive documents, its counsel shall provide "a declaration, made under oath on personal knowledge, describing the efforts made to locate and produce responsive documents." (*Id.* at 11.) This aspect of the Report is not objected to.

13

Decl. of Stewart M. Leviss dated May 14, 2018, ECF No. 583-1).) SKM asserts that, in light of Magistrate Judge Moses' order scheduling the June 26, 2018 conference, no further schedule for document production is necessary. (SKM Resp. at 7.) "It is well within a magistrate judge's discretion to set a schedule for the resolution of pretrial discovery disputes," and this Court finds no abuse of that discretion here. *WestLB AG*, 2012 WL 3135773, at *3 (citing *Jiggets v. AlliedBarton Sec. Servs.*, 423 F. App'x 24, 25 (2d Cir. 2011)). Accordingly, this Court declines to alter the discovery schedule set by Magistrate Judge Moses.

## IV. CONCLUSION

Plaintiffs' objections are OVERRULED. Magistrate Judge Moses' Report is ADOPTED in full, and the discovery orders therein are AFFIRMED.

Dated: New York, New York
June 12, 2018

SO ORDERED.

*George B. Daniels*
GEORGE B. DANIELS
United States District Judge