USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: Sep 11 2018

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| JOINT STOCK COMPANY CHANNEL ONE RUSSIA WORLDWIDE, et al., | |
| Plaintiffs, | |
| -against- | 16-CV-1318 (GBD) (BCM) |
| INFOMIR LLC, et al., | **REPORT AND RECOMMENDATION TO THE HON. GEORGE B. DANIELS** |
| Defendants. | |

**BARBARA MOSES, United States Magistrate Judge.**

Now before the Court, for report and recommendation, is a motion to dismiss for lack of personal jurisdiction and inadequate service of process. (Dkt. No. 482.) The motion was originally made by defendants Infomir GmbH, Alexander Marahovsky (A. Marahovsky), Evgeni Levitin, and Telecommunications Technologies, Ltd. (Teletec), but remains pending only as to Infomir GmbH, a German corporation headquartered in Frankfurt. Also before the Court, for decision, is plaintiffs' cross-motion for additional jurisdictional discovery. (Dkt. No. 497.) For the reasons that follow, I recommend that Infomir GmbH's motion be granted, and I deny the cross-motion.

I.      BACKGROUND

Plaintiffs are a group of Russian television broadcasters (the Broadcasters) suing to redress what they characterize as the "pirating" and resale of their programming (the Programming) to consumers in the United States, over the internet, without authorization or license fees.[1] Plaintiffs

---

[1] The factual background and procedural history of this action are described in more detail in several prior decisions, including *Joint Stock Co. Channel One Russia Worldwide v. Infomir LLC*, 2017 WL 696126, at *12 (S.D.N.Y. Feb. 15, 2017), *report and recommendation adopted*, 2017 WL 2988249 (S.D.N.Y. Mar. 27, 2017); *Joint Stock Co. Channel One Russia Worldwide v. Infomir LLC*, 2017 WL 825482 (S.D.N.Y. Mar. 2, 2017), *report and recommendation adopted*, 2017 WL 1321007 (S.D.N.Y. Mar. 30, 2017).

are "organized under the laws of the Russian Federation," First Amended Complaint (FAC) (Dkt. No. 211) ¶¶ 6, 15, 19, 21, 23, 26, and most are headquartered in Moscow. *Id*. ¶¶ 6, 23, 26. Plaintiffs produce and distribute Russian-language television programming, which is broadcast via satellite in Russia and neighboring countries. *Id*. ¶ 62.

Plaintiffs brought this action on February 19, 2016, and filed their FAC on April 5, 2017, asserting claims under the Federal Communications Act, 47 U.S.C. §§ 553 and 605, the Digital Millennium Copyright Act, 17 U.S.C. § 1201, the Lanham Act, 15 U.S.C. § 1125, and the Copyright Act, 17 U.S.C. § 101 *et seq.*, as well as related claims under New York law. In broad outline, plaintiffs allege that all defendants intercept their encrypted satellite transmissions and re-transmit the pirated content to paying subscribers in the United States through their own unlicensed internet protocol television (IPTV) streaming services. FAC ¶¶ 1, 61, 77. In addition, plaintiffs allege that the "Infomir Defendants," discussed in more detail below, "manufacture and sell set-top boxes which are configured and marketed to facilitate piracy" by others. *Id*. ¶ 1.

### A.      The Infomir Defendants

The Infomir Defendants are Infomir LLC, a New York limited liability company with its principal place of business in Brooklyn, FAC ¶ 30; Infomir GmbH, a German corporation with its principal place of business in Frankfurt, *id*. ¶ 31; Teletec, "a Ukrainian entity" with its principal place of business in Odessa, *id*. ¶ 32; A. Marahovsky, who is one of two managing directors of Infomir GmbH, and who also "owns and controls" Teletec, *id*. ¶ 33; and Levitin, who is the second managing director of Infomir GmbH. *Id*. ¶ 34.[2]   Infomir LLC was named as a defendant in the

---

[2] Plaintiffs do not allege the citizenship or residence of A. Marahovsky or Levitin. In a declaration filed in support of the pending motion to dismiss, A. Marahovsky attests that he is a citizen and resident of the Ukraine and that Levitin "was born in the Soviet Union and is now a permanent resident of Germany." A. Marahovsky Decl. (Dkt. No. 485) ¶¶ 1, 5.

original Complaint (Dkt. No. 1) and appeared, through counsel, on April 19, 2016. (Dkt. No. 43.) The other Infomir Defendants were first named in the FAC.

Plaintiffs allege that the Infomir Defendants manufacture and sell "AURA" and "MAG" set-top boxes (STBs) under the Infomir brand name. FAC ¶¶ 35, 116, 119. These STBs, according to plaintiffs, are "configured and marketed to facilitate piracy" of television programming, including plaintiffs' Programming. *Id*. ¶¶ 1, 120. The Infomir brand STBs utilize software known as "Stalker middleware," *id*. ¶ 1, "which is specifically designed to promote and exploit piracy." *Id*.[3] The AURA STBs arrive "pre-loaded" with "software 'apps' that permit subscribers to launch browsers from the [STB] permitting subscribers to view Broadcasters' channels over streaming services," *id*. ¶¶ 1, that is, unauthorized IPTV services which are operated by other defendants herein (the Streaming Defendants) or by "John Doe pirates." *See id*. ¶¶ 115, 117, 119. The MAG STBs are not "preloaded" with software, but the Infomir Defendants also use them to "encourage piracy," by (a) marketing them to "other John Doe pirates" and encouraging "such John Does to set up piracy operations," and (b) encouraging consumers who own the MAG STBs to purchase "subscriptions to unauthorized streams" from the Streaming Defendants or the John Doe pirates. *Id*. ¶ 116.

According to plaintiffs, the Infomir brand STBs are "primarily of assistance in the unauthorized decryption of satellite cable programming," FAC ¶ 218, and "primarily designed for the purposes of circumventing the Broadcasters' technological measures controlling access to Broadcasters' copyrighted works," *id*. ¶ 256, such that the manufacture and sale of these products, in and of itself, violates the Federal Communications Act, 47 U.S.C. § 605(e)(4), and the Digital

---

[3] The Stalker middleware has since been renamed "Ministra," *see* 10/19/17 Rowley Decl. (Dkt. No. 385) Ex. YY, but will be referred to herein, for consistency, as Stalker.

Millennium Copyright Act, 17 U.S.C. § 1201(b). FAC ¶ 256.Other than alleging that both Teletec and Infomir GmbH are controlled by A. Marahovsky, the FAC does not detail the corporate relationships among the Infomir Defendants. *See* FAC ¶¶ 31-32 (alleging, on information and belief, that Infomir LLC is "affiliated with" Infomir GmbH and Teletec). Nor, for the most part, do plaintiffs otherwise distinguish between or among them, frequently attributing the conduct at issue to the "Infomir Defendants" as a group. *See, e.g., id.* ¶¶ 1, 2, 36, 37, 115-17, 119, 125, 155. Plaintiffs adopt the same "group pleading" approach to personal jurisdiction, alleging that all defendants (including the Infomir Defendants) are subject to personal jurisdiction in New York "because they are located in (or within 100 miles of) this judicial district, conduct business in this judicial district, and have engaged in tortious conduct outside the jurisdiction causing damage within the jurisdiction making long arm jurisdiction appropriate under New York law." FAC ¶ 59.

Plaintiffs clearly allege, however, that it is Teletec (the Ukrainian entity) that manufactures the STBs, *see* FAC ¶¶ 35 ("Teletec manufactures the AURA and MAG set-top boxes for Infomir GMBH"), 113, 259 & Ex. 6, and it is Infomir LLC (the New York entity) that developed, distributes, owns, and controls the Stalker middleware, which is the "key component" that "transforms the MAG box into a vehicle for large-scale infringement." *Id.* ¶¶ 126-27.[4] Plaintiffs further allege that both Infomir LLC and Infomir GmbH sell STBs manufactured by Teletec, including through their websites. *Id.* ¶ 123.

**B.      The Infomir Websites**

The Infomir Defendants promote the Infomir brand STBs through a number of websites, including www.infomir.eu (the EU Website), www.infomirusa.com, and www.infomir.us (the US

---

[4] The FAC defines "Infomir," when used alone, to mean Infomir LLC. *See* FAC at 1; *id.* ¶ 30.

Website). FAC ¶¶ 30, 123. The FAC alleges that Infomir LLC owns and operates all three websites. *Id.* ¶ 30; *see also id.* ¶¶ 134, 136, 138 & Ex. 13 (attributing the content of the EU Website to Infomir LLC). It also alleges that Infomir GmbH operates all three websites. *Id.* ¶ 123.  More recently, plaintiffs have asserted, through their attorneys, that the EU Website is "owned by Infomir GmbH." *See* 1/12/18 Pl. Mem. (Dkt. No. 499) at 6. Although not mentioned in the FAC, there is also a "global" website at infomir.com (the Global Website), which contains information about the "Infomir Group."[5]

    As of 2017, when the FAC was filed, the "Contact Us" page of the US Website named "Infomir LLC" and listed its Brooklyn address and telephone number. *See* 10/19/17 Rowley Decl. ¶ 42 & Ex. P. The "Contact" page of the EU Website, as of 2017, listed four "Infomir" entities: "Infomir, Ukraine" (providing Teletec's address in Odessa), "Infomir, USA" (providing Infomir LLC's address in Brooklyn), "Infomir, Germany," and "Infomir, UAE." *Id.* ¶¶ 60-62 & Ex. Y.[6]

---

[5] According to the Global Website, the Infomir Group is "a group of companies," with "years of experience in [the] hi-tech devices manufacturing field," led by Traian Triboi, "CEO of Infomir Group." *See* https://infomir.com/en/about (last visited September 4, 2018). Triboi states that the Infomir Group has "R&D departments, factories, logistics and sales centers all around the world," but assures readers that "[a]ll the production stages[,] Market Analysis, Product Design, Industrial Design, Software Development, Production, Integration Assistance, After Sales Service and Support are implemented in-house, at our offices and manufacturing facility – TeleTec, Odessa, Ukraine." *See* https://infomir.com/en/international-infomir (last visited September 4, 2018).

[6] Substantially the same "Contact" information appears on the EU Website today. *See* https://www.infomir.eu/eng/contact/ (last visited September 4, 2018). Similarly, the "Contacts" page of the Global Website invites visitors to "Get in touch with Infomir" (for "IPTV/OTT Solutions") in the Ukraine (at Teletec's address in Odessa), in the United States (at Infomir LLC's address in Brooklyn), in Frankfurt, Germany, or in Dubai, United Arab Emirates. *See* https://infomir.com/en/contacts (last visited September 4, 2018). According to the Global Website, the Infomir Group's "Head Office," as well as all of the company's major departments, "are located in Odessa, Ukraine. Development, engineering, design, sales and talent recruitment are carried out here." *Id.*

### C.      Attempted Service in New York

As noted above, Infomir LLC appeared in this action on April 19, 2016. Since then it has fully participated in all phases of the litigation, including discovery. Among other things, it has produced documents, answered interrogatories, and made its Chief Executive Officer Gregory Goldfedib available for deposition pursuant to Fed. R. Civ. P. 30(b)(6).[7] Born in the Ukraine, Goldfedib immigrated in 1999, settled in Brooklyn, and is now a U.S. citizen. *See* 2/16/18 Dowd Decl. (Dkt. No. 527) Ex. L (Goldfedib Dep. Tr.), at 10-11; *id*. Ex. P.

On October 17, 2017, plaintiffs served the summons and the FAC on Goldfedib while he was in the "Infomir" booth at a National Association of Broadcasters (NAB) trade show at Jacob Javits Center in New York City. In their affidavits of service, filed on November 7, 2017, plaintiffs asserted that they had thereby served all four Moving Defendants: Infomir GmbH, Teletec, A. Marahovsky, and Levitin. (Dkt. Nos. 404-407.)

### D.      The Motion to Dismiss and the A. Marahovsky Declaration

On December 22, 2017, Infomir GmbH, A. Marahovsky, Levitin, and Teletec filed the instant motion, arguing that all claims against them should be dismissed pursuant to Fed. R. Civ. P. 12(b)(5), for insufficient service of process, and Fed. R. Civ. P. 12(b)(2), for lack of personal jurisdiction. In an accompanying declaration, A. Marahovsky acknowledged that he and Levitin are managing directors of Infomir GmbH but asserted that all of the German company's "offices, documents, and personnel are in Germany." 12/22/17 A. Marahovsky Decl. ¶¶ 5, 9.  Infomir GmbH has no offices, personnel, equipment, assets, sales, or revenue in New York; does not manufacture or distribute STBs for New York customers through any New York distributor or retailer; does not

---

[7] Goldfedib testified twice, once on January 16, 2018, for a full day, and again on April 20, 2018, for four additional hours. *See* Order dated February 13, 2018 (Dkt. No. 526), ¶ 1.c.

advertise in New York; and is not "interested in selling its products" in New York. *Id.* ¶¶ 7-9. A. Marahovsky specifically denied that Infomir GmbH "transfer[s] any product" for Goldfedib or Infomir LLC to sell in the United States. *Id.* ¶ 14. Further, A. Marahovsky attested, Infomir LLC is not a subsidiary or agent of Infomir GmbH; Goldfedib is not the German company's agent and was not authorized to accept service on its behalf; and "[t]he booth at the Javits Center trade show was not registered in Infomir GmbH's name." *Id.* ¶¶ 10-12.[8] A. Marahovsky added that Infomir GmbH does not "instruct, govern, provide business support, or otherwise tell [Goldfedib or Infomir LLC] what to do in any capacity," and does not "pay Mr. Goldfedib a salary." *Id.* ¶¶ 14-15.

According to A. Marahovsky, "Infomir GmbH has a similar name to Infomir LLC because I believe that they sell similar products belonging to one trademark. But they do so in different markets: Infomir GmbH targets Germany and, as far as I know, Infomir LLC operates in the United States. They have nothing else in common." *Id.* ¶ 13.

### E.    Plaintiffs Dismiss and Cross-Move

On January 3, 2018, plaintiffs voluntarily dismissed their claims against Teletec, A. Marahovsky, and Levitin. (Dkt. No. 492.) On January 12, 2018, they filed their papers in opposition to Infomir GmbH's motion to dismiss, together with a cross-motion seeking an order "declaring service on Infomir GmbH effective," or in the alternative more time to effect service, and jurisdictional discovery. *See* 1/12/18 Pl. Mem. at 18-20.[9] In their brief, plaintiffs argue that the German company is subject to this Court's specific jurisdiction, in accordance with N.Y. C.P.L.R.

---

[8] A. Marahovsky did not say who or what entity registered the booth.

[9] Plaintiffs did not specify the jurisdictional discovery they sought. However, six weeks earlier, in a November 29, 2017 email to Infomir GmbH's counsel, plaintiffs' counsel requested a postponement of the briefing schedule on the Rule 12(b)(2) motion until after Goldfedib testified at deposition. Plaintiffs explained that this would allow the parties to "present the Court with all the relevant jurisdictional facts." 1/26/18 Hargis Decl. (Dkt. No. 508), Ex. A, at ECF page 6.

(CPLR) § 302(a)(1), because (i) the "Infomir Defendants" distribute software and sell STBs which "allow" consumers in New York to access plaintiffs' programming without authorization, *see id.* at 14-16; (ii) Infomir GmbH attended three trade shows at Javits Center (including the 2017 show at which Goldfedib was served), *id.* at 16-17; and (iii) Infomir GmbH entered into a contract with a New York-based advertising company. *Id.* at 8. Plaintiffs further argue that, even if Infomir GmbH did not do these things itself, it is nonetheless subject to jurisdiction in New York through the actions of "its agent, Goldfedib, and its alter ego and agent, Infomir LLC." *Id.* at 4.

### F.      The Goldfedib Deposition and Related Discovery

On January 16, 2018, Goldfedib sat for deposition on behalf of Infomir LLC. Much of the questioning – some by plaintiffs' counsel and some by Infomir GmbH's counsel – was about the relationships among the various "Infomir Defendants" and the Infomir "brand."

Goldfedib testified that he created Infomir LLC in 2013 to sell Infomir brand STBs in North and South America. *Id.* at 54, 61. He was familiar with the product as a result of his previous employment with Master Call Communications, which provided IPTV service and sold various brands of STBs. *Id.* at 67, 103. Before forming the new company, Goldfedib discussed the proposition at a meeting in Odessa with Victor Artushenko, Pavel Marahovsky (P. Marahovsky), and Dmitriy Adamovskiy. *Id.* at 69-70, 84-86. Artushenko worked in Odessa for the "Infomir brand" (by which Goldfedib meant Teletec and other entities in Odessa that designed and built the STBs, *see id.* at 97, 136, 158); however, Goldfedib could not identify "exactly" which company employed Artushenko. *Id.* at 70, 100-01.[10] While in Odessa, Goldfedib entered into a verbal

---

[10] Similarly, Goldfedib testified that P. Marahovsky "works in Odessa," but "I can't tell you exactly who pays his salary."  Goldfedib Dep. Tr. at 81. According to the "Management" page of the Global Website (as of October 19, 2017), Artushenko was "Head of the marketing and sales of

agreement to become the exclusive distributor for Infomir brand STBs in North and South America (including the Caribbean), to provide "warranty replacements" to customers as necessary, and to "register and protect the trademark." *Id.* at 84-88, 94-95, 253-54.

Infomir LLC was formed in New York on March 27, 2013 by Goldfedib, P. Marahovsky, and Adamovskiy. Goldfedib Dep. Tr. at 53-54; *see also* 2/16/18 Dowd Decl. Ex. C. Other than Goldfedib himself, Infomir LLC has two full-time and three part-time employees. Goldfedib Dep. Tr. at 63-66. Although Goldfedib is the CEO – and testified that he has authority to make all decisions on its behalf, Goldfedib Dep. Tr. at 196 – he only owns 1% of Infomir LLC. *Id.* at 193. The remaining 99% is owned by P. Marahovsky and Adamovskiy. *Id.* P. Marahovsky is the son of A. Marahovsky, one of the two managing directors of Infomir GmbH. *Id.* at 259.

According to a shareholders' list filed by Infomir GmbH with the Commercial Register in Frankfurt, P. Marahovsky (a resident of Odessa) and Adamovskiy (a resident of Toronto) are also two of the three shareholders of Infomir GmbH, collectively owning 80% of its shares. 2/16/18 Dowd Decl. Ex. E. The third shareholder of the German company, with 20%, is Aurika Vranchanu (a resident of Odessa). *Id.* Infomir GmbH and Infomir LLC are therefore affiliates, in that the same two shareholders (P. Marahovsky and Adamovskiy) own a majority interest in each entity.

Goldfedib testified that the STBs sold by Infomir LLC are manufactured by Teletec or "Jabil Circuit" in Ukraine, *id.* at 55-59, 71-72, and invoiced by "Progressive Technologies" in the

---

broadband solutions department" of the "Infomir Group," while Adamovskiy was "Deputy head" of the same department.  10/19/17 Rowley Decl. Ex. BBB. P. Marahovsky was not listed.

United Arab Emirates. Goldfedib Dep. Tr. at 74-76.[11] To order product for sale in the United States, Goldfedib contacts Artushenko in Odessa. *Id*. at 77-78.

Asked about Infomir GmbH, Goldfedib described it as "a company who sell[s] Infomir brand boxes in Germany." *Id*. at 72; *see also id*. at 261 (explaining that Infomir GmbH sells the same products in Germany that Infomir LLC sells in the United States). Goldfedib denied that he had ever "earned any money" from Infomir GmbH, denied that Infomir GmbH gave him instructions or oversaw his work, and testified (over objection) that he was not Infomir GmbH's agent. *Id*. at 262, 279-81.

On April 9, 2013, Infomir GmbH registered the trademark "INFOMIR" in Germany. 2/16/18 Dowd Decl. Ex. F. On January 21, 2014, Infomir, LLC registered the service mark "INFOMIR" with the United States Patent and Trademark office. Goldfedib Dep. Tr. at 113; *see also* 10/19/17 Rowley Del. Ex. R. On February 18, 2016, Infomir LLC registered the mark in Canada. Goldfedib Dep. Tr. at 246; *see also* 2/16/18 Dowd Decl. Ex. G.

On April 28, 2016, Goldfedib registered the copyright for the Stalker middleware in the United States in the name of Infomir LLC. Goldfedib Dep. Tr. at 183, 189; *see also* 10/18/17 Rowley Decl. Ex. T. Goldfedib testified, however, that he did not write the code for Stalker or play any role in its creation, and does not know who did. Goldfedib Dep. Tr. at 154, 159. Goldfedib registered the copyright, with the knowledge of Artushenko, "to prevent someone else to do

---

[11] This testimony was consistent with Infomir LLC's previously-served discovery responses, *see* 10/19/17 Dowd Decl. (Dkt. No. 384) Ex. C (Infomir LLC Interrog. Ans.), ¶ 1, and has since been corroborated by Infomir LLC's production of hundreds of invoices and waybills reflecting the shipment of STBs to Infomir LLC in New York from either Teletec or Jabil Circuit in Ukraine, with payment due to Progressive Technology, FZC in the UAE. *See* 3/23/18 Dowd. Decl. (Dkt. No. 548) Exs. 9-19.

unauthorized things." *Id*. at 170-71. This occurred after another company started claiming "that it's their middleware" and providing it "with their set-top boxes." *Id*.

Asked about the EU Website (which he referred to as the "Infomir brand website"), Goldfedib testified that he did not know who "owns that website" or who registered its domain name. Goldfedib Dep. Tr. at 93-94, 180-81.[12]  He also did not know who registered the domain name of the Global Website (infomir.com). *Id*. at 191. Goldfedib readily acknowledged using an email address ending in "@infomir.com," which he asked Artushenko to create for him. *Id*. Goldfedib identified the US Website as "the Infomir LLC website," *id*. at 127. Goldfedib registered the US Website. *Id*. at 242.

Goldfedib has attended various trade shows on behalf of Infomir LLC, including the 2017 NAB show at Javits Center. Goldfedib Dep. Tr. at 155. Asked who registered the "Infomir" booth at that show, Goldfedib replied, "people from Odessa." *Id*. at 262. The other people in the booth were "people who provide product support." *Id*. at 157. Goldfedib "never saw their paychecks," but knew that "they live in Ukraine, they work in the Ukraine." *Id*. at 157-58.[13]

### G.    Post-Deposition Filings

By letter dated February 7, 2018 (Dkt. No. 518), plaintiffs moved to strike Infomir GmbH's jurisdictional defenses as a penalty for the "uninvited" attendance of its counsel at the January 16

---

[12] Plaintiffs report that the domain name for the EU Website is registered to Panoramicbit, Ltd., of Cypress. 10/19/17 Rowley Decl. ¶ 70 & Ex. GG.  Triboi, the CEO of the "Infomir Group," is a director of Panoramicbit, Ltd.  *Id.* Ex. II.

[13] Goldfedib identified the personnel at the 2017 NAB show as Alexey Kasyanenko, Vladimir Sorokin, and Anatoliy Filatkin. Goldfedib Dep. Tr. at 158-59. He was also shown a photograph of the "Infomir" booth at a 2013 trade show in Las Vegas, Nevada. He identified the individuals in that photo as Artushenko, Adamovskiy, Kasyanenko, Sergey Grib – all "from the Ukraine" – and himself. Goldfedib Dep. Tr. at 226-27, 270-72.

Goldfedib deposition. They withdrew that application on February 9, 2018 (*see* Dkt. No. 526), but revived a version of the argument in their reply papers in support of their cross-motion for jurisdictional discovery, filed on February 16, 2018. *See* 2/16/18 Pl. Mem. (Dkt. No. 528) at 5.[14]

Plaintiffs also contend, in their reply brief, that it is "improper" for Infomir GmbH to rely on Goldfedib's testimony in connection with this motion. *See* 2/16/18 Pl. Mem. at 6.[15] According to plaintiffs, the Court should not consider that evidence. Instead, it should rely solely on plaintiffs' "well-pleaded allegations," including what they characterize as their allegations that Infomir GmbH "violated multiple laws by selling STBs and middleware into New York," and plaintiffs' documentary evidence. *Id*. at 6-7[16] In the alternative, plaintiffs ask for additional (but still unspecified) jurisdictional discovery, which – they contend – will likely permit them to establish either that Goldfedib is a "mere department" of a "highly-integrated enterprise committing torts in

---

[14] Plaintiffs concede that Infomir GmbH's counsel was entitled to attend the Goldfedib deposition, but argue that by making "disruptive" objections to questions that did not directly involve the German company, counsel "waived and forfeited" its personal jurisdiction defense. 2/16/18 Pl. Mem. at 10-11. Plaintiffs cite no authority for their waiver argument. Moreover, while Infomir GmbH's counsel did object to the form of a number of questions – including some not directly related to his client – he voiced his objections succinctly and (for the most part) without argument, typically saying nothing more than "objection to form," or "objection, foundation." These objections did not obstruct the questioning. Moreover, on February 13, 2018, I granted plaintiffs' request to continue the questioning of Goldfedib for a further four hours. Since plaintiffs' waiver theory lacks any basis in law or fact, it furnishes no ground for the denial of Infomir GmbH's motion.

[15] Plaintiffs do not mention their earlier position that the Goldfedib deposition would allow the parties to "present the Court with all the relevant jurisdictional facts." 1/26/18 Hargis Decl. Ex. A, at ECF page 6.

[16] As discussed in more detail in Part III(B)(1) of this Report, *infra*, plaintiffs do not actually allege in the FAC that Infomir GmbH (as opposed to Infomir LLC or another "Infomir Defendant") "sell[s] STBs and middleware into New York." They make that claim only in their briefs. *See*, *e.g*., 1/12/18 Pl. Mem. at 11, 14; 2/16/18 Pl. Mem. at 6.

New York," *id*. at 7-8, or, alternatively, that Infomir LLC is a "mere shell, instrumentality, or alter

ego" of Infomir GmbH. *Id*. at 10.

On June 6, 2018, while Infomir GmbH's motion to dismiss was pending, plaintiffs filed a

Declaration of Service, signed by its German attorney Gernot Schmitt-Gaedke, stating that he had

been informed by letter from the Higher Regional Court in Frankfurt (in German, "Amtsgericht

Frankfurt am Main," hereafter the Frankfurt Court) that service upon Infomir GmbH was

completed on April 26, 2018, in accordance with the Hague Convention. *See* 6/6/18 Schmitt-

Gaedke Decl. (Dkt. No. 596), ¶ 12 & Ex. C. The attached letter from the Frankfurt Court read, in

its entirety: "Service was officially effected on 26 April in that the documents were handed over

to the employee [in German, "Angestellte"] Ms. Bozhena Zemann." *Id*. Ex. C.[17]

After I permitted limited additional briefing as to the effect of this development on the

motion to dismiss (Dkt. No. 599), Infomir GmbH submitted a declaration signed by Levitin (Dkt.

No. 604), stating that neither he "nor anyone else at Infomir GmbH" received the documents that

were supposedly served on April 26, 2018, or at any other time; that Zemann "does not work at

Infomir GmbH"; and that Infomir GmbH "never designated her to be its agent to accept service of

process." Levitin Decl. (Dkt. Nos. 604, 614) ¶¶ 3-4. If Levitin knew who Zemann was, he did not

reveal it.

Thereafter, Schmitt-Gaedke received the Frankfurt Court's handwritten Protocol of

Service, *see* 6/13/18 Schmitt-Gaedke Decl. (Dkt. No. 608) ¶¶ 6-8 & Ex. A (Dkt. Nos. 608-1, 613)

---

[17] Schmitt-Gaedke also explained that this was plaintiffs' third attempt to serve Infomir GmbH in
Germany under the Hague Convention. On November 8, 2017 and March 5, 2018, the Frankfurt
Court rejected service – and sent all of the service documents back to plaintiffs' counsel in New
York – because of defects in the translation or copying of those documents. 6/6/18 Schmitt-Gaedke
Decl. ¶¶ 5-9. On April 16, 2018, Schmitt-Gaedke "delivered the documents to the Frankfurt Court
for the third time," properly translated and copied, and asked for expedited service. *Id*. ¶ 11.

(spelling the employee's last name "Zeman"), and plaintiffs' United States counsel received the Frankfurt Court's formal Certificate in conformity with Article 6 of the Hague Convention (the Article 6 Certificate). 6/13/18 Dowd Decl. (Dkt. No. 607), ¶ 4 & Ex. 1. The Article 6 Certificate is dated May 28, 2018, and states (in German, French, and English) that Infomir GmbH was served on April 26, 2018 at "Kaiserstrasse 56 in 60329 Frankfurt am Main" (Infomir GmbH's registered address, *see* 2/16/18 Dowd Decl. Ex. F), by delivery to "Frau Bozhena Zemann (Angestellte). *Id.*

Undeterred, Infomir GmbH continued to argue that it had not been properly served, reasoning that since the Protocol of Service indicated service on an "employee" of the "addressee" rather than on the "addressee" itself (that is, Infomir GmbH), the document reflects, "at most," that she "was on the premises when service was attempted." 6/20/18 Def. Letter (Dkt. No. 614), at 1. Infomir GmbH did not discuss or dispute the authenticity of the Article 6 Certificate. Nor did it suggest that the service documented by the Protocol was inadequate under the Hague Convention or German law.

## II.   LEGAL STANDARDS

### A.   Rule 12(b)(5)

"Before a federal court may exercise personal jurisdiction over a defendant, the procedural requirement of service of summons must be satisfied." *Dynegy Midstream Servs. v. Trammochem,* 451 F.3d 89, 94 (2d Cir. 2006) (quoting *Omni Capital Int'l v. Rudolf Wolff & Co.*, 484 U.S. 97, 104 (1987)). Where a defendant challenges service pursuant to Fed. R. Civ. P. 12(b)(5), "the plaintiff bears the burden of establishing that service was sufficient." *Khan v. Khan*, 360 Fed. App'x 202, 203 (2d Cir. 2010) (citing *Burda Media, Inc. v. Viertel*, 417 F.3d 292, 298 (2d Cir. 2005)). *Accord Cassano v. Altshuler*, 186 F. Supp. 3d 318, 320 (S.D.N.Y. 2016); *Mende v. Milestone Tech., Inc.*, 269 F. Supp. 2d 246, 251 (S.D.N.Y. 2003). How the plaintiff discharges that

burden depends on the method of service employed. When service is made abroad pursuant to the Hague Convention, as permitted by Fed. R. Civ. P. 4(f)(1) and 4(h)(2), the adequacy of that service must be proved "as provided in the applicable convention or treaty." Fed. R. Civ. P. 4(*l*)(2)(A).

Article 6 of the Hague Convention states that when the Central Authority of a signatory nation has served a document or caused it to be served, it "shall complete a certificate" which "shall state that the document has been served and shall include the method, the place and the date of service and the person to whom the document was delivered." *See* Convention on Service Abroad of Judicial and Extrajudicial Documents in Civil and Commercial Matters, Nov. 15, 1965, 20 U.S.T. 361, Feb. 10. 1969, art. 6. "It is well settled that the return of a completed certificate of service by a Central Authority establishes prima facie evidence that the Central Authority's service on Defendants was made in compliance with the convention," *Unite Nat'l Ret. Fund v. Ariela, Inc.*, 643 F. Supp. 2d 328, 334 (S.D.N.Y. 2008) (citing *Resource Trade Finance, Inc. v. PMI Alloys, LLC,* 2002 WL 1836818, at *4 (S.D.N.Y. Aug. 12, 2002)), and in compliance with local law. *Unite Nat'l Ret. Fund*, 643 F. Supp. 2d at 335 (declining to "look behind the certificate of service" even though the defendant never physically received the documents and the parties submitted "conflicting expert statements" as to underlying issues of Mexican procedural law).

"Service of process is not intended to be a game of cat and mouse." *Unite Nat'l Ret. Fund.*, 643 F. Supp. 2d at 336. The Hague Convention "should be read together with Rule 4, which stresses actual notice, rather than strict formalism." *Burda Media*, 417 F.3d at 301 (internal quotation marks and citation omitted). Thus, even where the Central Authority itself has failed to "comply strictly with the Hague Convention," that defect "is *not* automatically fatal to effective service," *id*. (emphasis in the original), particularly where the party served had actual knowledge of the lawsuit and thus was not prejudiced by the technical failure. *See*, *e.g*., *Persh v. Petersen*,

15

2015 WL 5326173, at *6 (S.D.N.Y. Sept. 14, 2015) ("as Plaintiff received a certificate of service from the Central Authority of Denmark and Defendant does not allege a failure to receive actual notice of this action, service is proper."); *Sikhs for Justice v. Nath*, 893 F. Supp. 2d 598, 627 (S.D.N.Y. 2012) (deeming service valid where "Plaintiffs have demonstrated that they complied with the Hague Convention procedures," such that "any failure of compliance was solely on the Central Authority to participate in the process," and the foreign defendant "was aware of the litigation and had actual notice of the suit").

### B.   Rule 12(b)(2)

#### 1.   Plaintiffs' Burden

"To survive a motion to dismiss for lack of personal jurisdiction under Rule 12(b)(2) of the Federal Rules of Civil Procedure, the plaintiff has the burden of making a prima facie showing that personal jurisdiction over the defendant exists." *In re Terrorist Attacks on Sept. 11, 2001*, 295 F. Supp. 3d 416, 424 (S.D.N.Y. 2018) (Daniels, J.) (citing *Licci ex rel. Licci v. Lebanese Canadian Bank, SAL*, 673 F.3d 50, 59 (2d Cir. 2012)); *see also MacDermid, Inc. v. Deiter*, 702 F.3d 725, 727 (2d Cir. 2012); *BWP Media USA Inc. v. Hollywood Fan Sites, LLC*, 69 F. Supp. 3d 342, 349 (S.D.N.Y. 2014); *Channel One Russia Worldwide*, 2017 WL 825482, at *5. In deciding such a motion, a district court "has considerable procedural leeway. It may determine the motion on the basis of affidavits alone; or it may permit discovery in aid of the motion; or it may conduct an evidentiary hearing on the merits of the motion." *Dorchester Fin. Sec., Inc. v. Banco BRJ, S.A.*, 722 F.3d 81, 84 (2d Cir. 2013) (quoting *Marine Midland Bank, N.A. v. Miller*, 664 F.2d 899, 904 (2d Cir. 1981)).

The showing that plaintiffs are required to make is a "sliding scale" that "varies depending on the procedural posture of the litigation." *Dorchester Fin. Sec.*, 722 F.3d at 84 (quoting *Ball v.*

*Metallurgie Hoboken-Overpelt, S.A.*, 902 F.2d 194, 197 (2d Cir. 1990)). Before discovery, a plaintiff need only plead, in good faith, "legally sufficient allegations of jurisdiction." *Ball*, 902 F.2d at 197. At that stage, the plaintiff's *prima facie* showing of jurisdiction may be established by allegations alone. *Id.* Where jurisdictional discovery has taken place, "the *prima facie* showing must be factually supported." *Id.; see also In re Terrorist Attacks on Sept. 11, 2001*, 840 F. Supp. 2d 776, 779 (S.D.N.Y. 2012) (Daniels, J.) ("Where, as here, jurisdictional discovery has taken place, plaintiffs have the burden to make a factually supported *prima facie* showing which includes an averment of facts that, if given credit by the ultimate trier of fact, would be sufficient to establish jurisdiction over the defendant.")

 This case does not fit neatly into either category. Plaintiffs have had no discovery from Infomir GmbH directly, but they have had robust party discovery from its alleged agents, Infomir LLC and Goldfedib. Under these circumstances, while I will apply the lower, pre-discovery standard to plaintiffs' allegations concerning Infomir GmbH's own activities in New York, plaintiffs' efforts to impute the local conduct of Infomir LLC and Goldfedib to Infomir GmbH on an agency theory must be "factually supported." *Ball*, 902 F.2d at 197.

 Regardless of which standard is applied, the district court must "construe the pleadings and the affidavits in the light most favorable to plaintiffs, resolving all doubts in their favor." *Dorchester Fin. Sec.*, 722 F.3d at 85 (quoting *S. New England Tel. Co. v. Global NAPS Inc.*, 624 F.3d 123, 138 (2d Cir. 2010)). However, the court is not required to "draw argumentative inferences in the plaintiff's favor." *Mende*, 269 F. Supp. 2d at 251 (quoting *Robinson v. Overseas Military Sales Corp.,* 21 F.3d 502, 507 (2d Cir. 1994)) (internal quotation marks omitted). Nor must it "accept as true a legal conclusion couched as a factual allegation." *Jazini v. Nissan Motor Co., Ltd.,* 148 F.3d 181, 185 (2d Cir. 1998) (citation omitted); *accord In re Terrorist Attacks on*

*Sept. 11, 2001*, 295 F. Supp. 3d at 424; *Ingenito v. Riri USA*, *Inc.*, 89 F. Supp. 3d 462, 473 (E.D.N.Y. 2015). "Conclusory allegations alone are insufficient to satisfy a plaintiff's burden as to personal jurisdiction." *Telfair v. Le Pain Quotidien U.S.*, 2017 WL 1394384, at *1 (S.D.N.Y. Mar. 8, 2017), *report and recommendation adopted,* 2017 WL 1405754 (S.D.N.Y. Apr. 18, 2017); *see also Jazini*, 148 F.3d at 185 ("conclusory non-fact-specific jurisdictional allegations" are insufficient to establish personal jurisdiction over a foreign defendant).

The court may, of course, consider matters outside the pleadings in making its jurisdictional determination. *See Dorchester Fin. Sec.*, 722 F.3d at 86 (a court does not "convert[ ] a motion to dismiss for lack of personal jurisdiction into a motion for summary judgment" by "considering materials outside the pleadings"). Plaintiffs' assertion that Rule 12(d) prevents this Court from considering Goldfedib's deposition testimony, *see* 2/16/18 Pl. Mem. at 6, is meritless.

### 2.    Analytical Framework

Determining whether a court may properly exercise personal jurisdiction over a non-resident defendant is a two-stage inquiry. "The court must first determine whether there is a statutory basis for exercising personal jurisdiction and then decide 'whether the exercise of personal jurisdiction . . . comports with the Due Process Clause of the United States Constitution.'" *Channel One Russia Worldwide*, 2017 WL 825482 at *6 (quoting *Sonera Holding B.V. v. Çukurova Holding A.Ş.*, 750 F.3d 221, 224 (2d Cir. 2014)).

At the first stage, "the court 'applies the forum state's personal jurisdiction rules,' unless a federal statute 'specifically provide[s] for national service of process.'" *Channel One Russia Worldwide*, 2017 WL 825482 at *6 (quoting *PDK Labs, Inc. v. Friedlander*, 103 F.3d 1105, 1108 (2d Cir. 1997)). Since no federal statute provides for nationwide service here, New York law provides the relevant jurisdictional rules. *See Id*. at *6 n.8. At the second stage, the court considers

18

whether the exercise of personal jurisdiction over the foreign defendant would comport with the Due Process Clause. At this point the plaintiff must show that "the defendant has 'certain minimum contacts with [the state] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice.'" *Daimler AG v. Bauman*, 571 U.S. 117, 126 (2014) (quoting *Goodyear Dunlop Tires Ops., S.A. v. Brown*, 564 U.S. 915, 923 (2011)) (alteration in original).

## III.   ANALYSIS

### A.   Service of Process

#### 1.   The Hague Convention

The Hague Convention "provides simple and certain means by which to serve process on a foreign national." *Volkswagenwerk Aktiengesellschaft v. Schlunk*, 486 U.S. 694, 706 (1988). Here, those means were employed, ultimately producing a facially valid Article 6 Certificate from the Frankfurt Court. Infomir GmbH makes no claim that plaintiffs failed to comply with the Hague Convention. It makes no claim that the Certificate was inadequate under Article 6. It makes no claim that the service on Ms. Zemann, at its premises in Frankfurt, violated local law. And of course it makes no claim that it was unaware of this lawsuit (either before or after the service on Ms. Zemann). Under these circumstances, Infomir GmbH has no basis on which to ask this Court to "look behind" the Article 6 Certificate. *Persh*, 2015 WL 5326173, at *6 (accepting certificate from Danish Central Authority where "Defendant does not allege a failure to receive actual notice of this action"); *Unite Nat'l Ret. Fund.*, 643 F. Supp. 2d at 335 (finding service valid, even where "the summons and complaint were not actually delivered," where proper certificate of service from Mexican Central Authority was received and where defendants had actual notice of the lawsuit "and thus the ability to defend the claims presented in the Complaint"); *Res. Trade Fin., Inc. v. PMI Alloys, LLC*, 2002 WL 1836818, at *4 (S.D.N.Y. Aug. 12, 2002) (refusing to "look behind"

certificate of service from Swiss Central Authority where foreign party "has not argued that it lacked actual knowledge"). Service on Infomir GmbH should therefore be deemed valid.

### 2. Timeliness

I next consider whether the service on Infomir GmbH, although compliant with the Hague Convention, was "inexcusably late under Rule 4(m)," as defendant contends. *See* 6/11/18 Def. Letter (Dkt. No. 602) at 3. That rule, which ordinarily requires service to be made within 90 days after the complaint is filed, "does not apply to service in a foreign country" under the Hague Convention. Fed. R. Civ. P. 4(m). Defendant has cited no authority – and I have found none – for the proposition that a plaintiff loses the benefit of this exception when service on the foreign defendant is first "attempted domestically, as it was here." 6/11/18 Def. Letter at 4.[18]

The lack of specified time limit for service in a foreign country does not mean that there are no limits at all. "[C]ourts have leave to dismiss for failure to serve abroad when a plaintiff is dilatory." *Feliz v. MacNeill*, 493 F. App'x 128, 132 (1st Cir. 2012) (Souter, J.) (affirming dismissal of claims against Irish defendant 426 days after complaint was filed, at which point plaintiff, who still had not effected service, unsuccessfully sought a third extension of time within which to do so); *see also Nylok Corp. v. Fastener World Inc.,* 396 F.3d 805, 807 (7th Cir. 2005) ("[T]he amount of time allowed for foreign service is not unlimited.").

---

[18] The case that Informir GmbH cites for this point, *USHA (India), Ltd. v. Honeywell Int'l, Inc.*, 421 F.3d 129 (2d Cir. 2005), holds no such thing. In *USHA*, the plaintiff named a Japanese corporation as a defendant, which arguably destroyed diversity jurisdiction. However, no party raised the issue in the district court, which dismissed the case on other grounds. On appeal, the Second Circuit noted that plaintiff had never made *any* attempt to serve the Japanese corporation with process, either domestically or abroad, and on that basis dismissed all claims against it, *sua sponte*, thereby preserving subject-matter jurisdiction over the appeal. *Id*. at 134.

In this Circuit, the district courts typically apply a "flexible due diligence" standard, under which "the court assesses the reasonableness of the plaintiff's efforts and the prejudice to the defendant from any delay." *In re Bozel S.A.*, 2017 WL 3175606, at *2 (S.D.N.Y. July 25, 2017) (collecting cases); *see also Burda Media, Inc. v. Blumenberg*, 2004 WL 1110419, at *6 (S.D.N.Y. May 18, 2004) (holding that an 10-month delay in completing service under the Hague convention was not unreasonable, particularly where it was "uncertain," at the outset, "whether service would take place domestically or internationally"), *aff'd sub nom. Burda Media*, 417 F.3d 292.

Here, as in *Bozel*, plaintiffs "began the process" of serving under the Hague convention within the time allotted for domestic service. *See* 12/5/17 Vidulich Aff. (Dkt. No. 449) ¶ 2 (in June 2017, plaintiffs sent the necessary materials to their German counsel in order to serve under the Hague Convention). Next, in October 2017, they attempted to serve Infomir GmbH at the NAB show in New York. Thereafter – in November 2017 and March 2018 – the German authorities declined plaintiffs' request for Hague Convention service on the ground that some of the documents to be served (including this Court's Electronic Case Filing Rules & Instructions) had not been translated into German. *Id.* ¶ 5 & Ex. A; *see also* 6/6/18 Schmitt-Gaedke Decl. ¶¶ 5-9. On April 16, 2018,  Schmitt-Gaedke "delivered the documents to the Frankfurt Court for the third time," *id.* ¶ 11, which proved to be the charm, and they were served on Infomir GmbH ten days later. *See* 6/13/18 Dowd Decl. Ex. 1.

In *Bozel*, the court held that the failure to serve a complaint within 25 months of filing it "precluded a finding of diligence," particularly given the "gaping periods of inactivity" during that time, including one ten-month stretch for which the plaintiff "advanced no explanation." 2017 WL 3175606, at *3. Here, the overall delay was considerably shorter, and while there were "periods of inactivity," most of them occurred while the German authorities had plaintiffs' papers under

review, and thus cannot be attributed to sloth on plaintiffs' part. *See In re S. African Apartheid Litig.*, 643 F. Supp. 2d 423, 433 (S.D.N.Y. 2009) ("Once documents have been properly transmitted to a Hague Convention Central Authority, the period for completion of service of process may be extended, as the timing of service is out of a plaintiff s control.") (internal quotation marks omitted).[19]

While plaintiffs' failure to translate *all* of the necessary documents (even the ECF Rules) into German the first time is regrettable, it is not wholly inexcusable, particularly given that they retained a German attorney to assist them, and presumably obtained what they, and he, believed to be sound advice at the time. *Cf. In re Vivendi Universal, S.A. Sec. Litig.*, 2009 WL 691920, at *2 (S.D.N.Y. Mar. 17, 2009) (dismissing claims against foreign defendant where plaintiffs failed "to even attempt service" within the first 120 days and failed to request more time when it became apparent that they would be unable to serve by the court-ordered deadline of June 1, 2008).

In this case, Infomir GmbH identifies no prejudice flowing from the delay in service – and no particular benefit flowing from a Rule 12(b)(5) dismissal, which would "be without prejudice, allowing plaintiffs to refile." *S. African Apartheid Litig.*, 643 F. Supp. 2d at 437. Having successfully served Infomir GmbH once under the Hague Convention, plaintiffs could presumably do it again if necessary. Under these circumstances, I respectfully recommend that Infomir GmbH's motion to dismiss be DENIED insofar as it is brought pursuant to Rule 12(b)(5), for insufficient service of process, and that the Court proceed to consider the branch of the motion brought pursuant to Rule 12(b)(2).

---

[19] *S. African Apartheid Litig.* also noted that "service via the Central Authority is the *only* means by which an American plaintiff may serve a German defendant." 643 F. Supp. 2d at 432 (emphasis in the original).

### B.   Personal Jurisdiction

At the first stage of the personal jurisdiction analysis, the Court must determine whether there is a statutory basis for the assertion of jurisdiction over Infomir GmbH under New York's long-arm statute. Plaintiffs invoke CPLR § 302(a)(1), which permits courts in New York to assert specific jurisdiction over a non-domiciliary defendant which, "in person or through an agent," "transacts any business within the state" or "contracts anywhere to supply goods or services in the state." Specific jurisdiction under § 302(a)(1) "is limited to causes of action 'arising from' the enumerated acts." *Channel One Russia Worldwide*, 2017 WL 825482 at *7; *see also Realuyo v. Abrille*, 93 F. App'x 297, 299 (2d Cir. 2004) ("As a specific jurisdiction statute, section 302(a)(1) 'authorizes [New York] courts to exercise personal jurisdiction over a foreign [defendant only] if . . . the cause of action asserted against it is one arising from the transaction of such business.'") (quoting *Frummer v. Hilton Hotels Int'l, Inc.*, 19 N.Y.2d 533, 535, 281 N.Y.S.2d 41, 43 (1967)).

A defendant "transacts business" in New York, for purposes of the long-arm statute, when it "purposefully avails itself of the privilege of conducting activities within New York." *Ehrenfeld v. Bin Mahfouz,* 9 N.Y.3d 501, 508, 851 N.Y.S.2d 381, 386 (2007) (alteration omitted); *accord Minnie Rose LLC v. Yu*, 169 F. Supp. 3d 504, 513-14 (S.D.N.Y. 2016) (quoting *Fischbarg v. Doucet*, 9 N.Y.3d 375, 380, 849 N.Y.S.2d 501, 505 (2007)). A defendant "need not be physically present in New York to transact business there within the meaning of the first clause of section 302(a)(1)." *Chloe v. Queen Bee of Beverly Hills, LLC*, 616 F.3d 158, 169 (2d Cir. 2010). Nor must it conduct any particular quantity of business in New York. "Section 302 'is a 'single act statute' and proof of one transaction in New York is sufficient to invoke jurisdiction," *id.* at 170 (quoting *Kreutter v. McFadden Oil Corp.*, 71 N.Y.2d 460, 466, 527 N.Y.S.2d 195, 198 (1988)), so long as that transaction shows "purposeful availment" of the New York form, which is the "overriding

criterion" necessary to establish personal jurisdiction pursuant to § 302(a)(1), and requires more than "random, fortuitous, or attenuated contacts." *Capitol Records, LLC v. VideoEgg, Inc*., 611 F. Supp. 2d 349, 358 (S.D.N.Y. 2009) (quoting *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 475 (1985)); *accord Chloe*, 616 F.3d at 169. "Purposeful activities are those with which the defendant, through volitional acts, avails itself of the privilege of conducting activities within [New York], thus invoking the benefits and protections of its laws." *Fischbarg,* 9 N.Y.3d 375, 380, 849 N.Y.S.2d 501, 505 (internal quotation and citations omitted).

Similarly, where a plaintiff seeks to assert personal jurisdiction based on a contract to "supply goods or services" within the state, the defendant need not have physically entered New York, *see Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez,* 171 F.3d 779, 789 (2d Cir. 1999); however, "[t]he contract must be to send goods specifically into New York; mere knowledge that [goods] were likely to end up in New York is insufficient." *Boyce v. Cycle Spectrum, Inc.*, 148 F. Supp. 3d 256, 265 (E.D.N.Y. 2015) (internal quotation omitted). Thus, where a foreign defendant maintains a "fully interactive" website and uses it to "purposefully direct[ ] activity into a forum state – for example, by making sales of goods or services to New York resident – those activities can be sufficient to trigger jurisdiction under section 302(a)(1)." *Franklin v. X Gear 101, LLC*, 2018 WL 4103492, *5 (S.D.N.Y. Aug. 28, 2018) (Daniels, J.) (quoting *Alibaba Grp. Holding Ltd. v. Alibabacoin Found*., 2018 WL 2022626, at *4 (S.D.N.Y. Apr. 30, 2018)). However, even a "fully interactive" website is an insufficient predicate for personal jurisdiction in the absence of a showing "that any New York resident actually engaged in any such transactions." *Royalty Network v. Dishant.com, LLC*, 638 F. Supp. 2d 410, 420 (S.D.N.Y. 2009) (dismissing copyright infringement case for lack of personal jurisdiction where plaintiff alleged that New Yorkers could download files from Indian music website but failed to

24

demonstrate that any New Yorkers actually did so, or that defendants "did anything" to "purposely" target New Yorkers "for business"). *See also Freeplay Music, Inc. v. Cox Radio, Inc.,* 2005 WL 1500896, at *7 (S.D.N.Y. June 23, 2005) ("It stretches the meaning of 'transacting business' too far to subject defendants to personal jurisdiction in any state merely for operating a website . . . without some evidence or allegation that commercial activity in that state actually occurred or was actively sought.").

Where the basis for personal jurisdiction over a foreign defendant is its supply of "services in the state," the defendant must "project itself into New York" to perform those services, rather than simply contract with a New York resident to supply services from afar. *Bank Brussels Lambert*, 171 F.3d at 789. *See also Bissonnette v. Podlaski*, 138 F. Supp. 3d 616, 622-25 (S.D.N.Y. 2015) (services performed "from Indiana" for New York clients were insufficient to confer personal jurisdiction over foreign service provider).

Where the foreign defendant is alleged to have transacted business in New York through an agent, the plaintiff must show that the agent acted "for the benefit of and with the knowledge and consent" of the foreign principal, and that the principal "exercised some control" over the agent with respect to that matter. *Kreutter*, 71 N.Y.2d at 467, 527 N.Y.S.2d at 199. Each of these factors must be established. *See Hill v. HSBC Bank plc*, 207 F. Supp. 3d 333, 341 (S.D.N.Y. 2016) ("to establish an agency relationship for jurisdictional purposes, Plaintiffs must show that the [alleged foreign principal] both received a benefit from, and exercised control over" the alleged agent); *Karabu Corp. v. Gitner*, 16 F. Supp. 2d 319, 324 (S.D.N.Y. 1998) (granting motion to dismiss where plaintiff "failed to satisfy the 'control' prong of the agency test). For purposes of the *Kreutter* test, agency cannot be inferred from ownership. Even where an in-state subsidiary is 100% owned by the alleged principal, the plaintiff must establish that "the nondomiciliary parent

corporation knew of and consented to the acts of its in-state subsidiary that gave rise to the cause of action, and 'exercised some control over [the subsidiary] in the matter.'" *Ingenito*, 89 F. Supp. 3d 462, 477 (E.D.N.Y. 2015) (quoting *EFCO Corp. v. Nortek, Inc*., 205 F.3d 1322, 2000 WL 254047, at *1 (2d Cir. 2000)) (alteration in the original).

After carefully examining the briefs, declarations, transcripts, written discovery responses, and other papers submitted in support of and in opposition to Infomir GmbH's motion, I conclude that plaintiffs have not made a *prima facie* showing that Infomir GmbH is subject to personal jurisdiction in this Court in accordance with New York's long-arm statute.

### 1. Plaintiffs Have Neither Alleged Nor Shown That Infomir GmbH Transacts Business in New York or Supplies Goods or Services to New York

Neither the well-pleaded allegations in the FAC nor the documents presented by plaintiffs make out a *prima facie* case that Informir GmbH itself has "transacted business" in New York or "contracted anywhere to supply goods or services" in New York.  Plaintiffs advance three principal arguments under § 302(a)(1): first, that Infomir GmbH supplies STBs to Infomir LLC (and through it, to its customers) in New York; second, that Infomir GmbH attended trade shows at the Javits Center in Manhattan; and third, that Informir GmbH contracted with a New York-based advertising company, VertaMedia LLC (VertaMedia), to promote its business. I address each claim in turn.

#### a.   *Manufacturing and Distributing Set-Top Boxes*

In their briefs, plaintiffs assert repeatedly that Infomir GmbH "sells products in New York," *see*, *e.g*., 1/12/18 Pl. Mem. at 11, or "into New York," *see, e.g.,* 2/16/18 Mem. at 6. The

FAC, however, includes no such allegations.[20] The closest plaintiffs come to such an allegation is their averment that the "Infomir Defendants" are "manufacturing, importing, and selling" equipment that "U.S. subscribers" use to watch pirated versions of plaintiff's programming. FAC ¶ 36. Personal jurisdiction under CPLR § 302(a)(1), however, requires that "[e]ach defendant's contacts with the forum" be "assessed individually." *AmTrust Fin. Servs., Inc. v. Lacchini*, 260 F. Supp. 3d 316, 326-27 (S.D.N.Y. 2017) (quoting *Calder v. Jones,* 465 U.S. 783, 790 (1984)). Plaintiffs therefore cannot rely on their allegations as to the conduct of the "Infomir Defendants" to save their claims against Infomir *GmbH*. Moreover, sales into the United States, or to United States subscribers, are insufficient under New York's long-arm statute; the defendant must have transacted business or supplied goods or services "in New York."  CPLR § 302(a)(1).

Nor, of course, can assertions by lawyers, in briefs, make up for the well pleaded facts or the "factually supported *prima facie* showing," *In re Terrorist Attacks on Sept. 11, 2001*, 840 F. Supp. 2d at 789, required to overcome a motion to dismiss for lack of personal jurisdiction. *Wallert v. Atlan*, 141 F. Supp. 3d 258, 276 (S.D.N.Y. 2015) (rejecting arguments of counsel as to defendant Hoffman's presumed control over his alleged licensee UMP France where "the FAC has not alleged that Hoffman exercised any control over UMP France . . . as would be necessary to establish that Hoffman is subject to personal jurisdiction").

Plaintiffs' evidentiary showing is no better. The declarations of their attorneys show that (i) counsel purchased an Infomir brand MAG STB from Amazon.com (not from any of "Infomir" websites) and had it delivered to New York, 1/12/18 Dowd Decl. ¶ 11; (ii) the same or a similar product was also available for sale online from Markertek.com, based in Saugerties, New York,

---

[20] Infomir GmbH is named in only eight of the 316 numbered paragraphs of the FAC. *See id.* ¶¶ 1, 31, 33-35, 113, 118, 123. None of these paragraphs alleges that it sold anything in or to New York.

*id*. Ex. 7; and (iii) the STB purchased through Amazon.com was "made in the Ukraine." *Id*. Ex. 6. This evidence is wholly consistent with Goldfedib's testimony that Infomir LLC gets its stock from Teletec and/or Jabil Circuit, both of which are in the Ukraine and neither of which is Infomir GmbH. *See* Goldfedib Dep. Tr. at 55-56; 73-76; *see also* 6/19/17 Goldfedib Aff. (Dkt. No. 300) ¶ 55 (Infomir LLC purchases its STBs from Teletec, "a Ukranian corporate entity"); Infomir LLC Interrog. Ans. ¶ 1 (identifying Teletec and Jabil Circuit as the "manufacturer of Infomir's set-top boxes"). Plaintiffs themselves acknowledge that the Infomir brand STB they ordered online "was manufactured in the Ukraine by Telecommunications Technologies Ltd ('Teletec')." 1/12/18 Pl. Mem. at 9.

Infomir GmbH may well sell the same or similar STBs in Germany (or elsewhere). *See* Goldfedib Dep. Tr. at 72 (Infomir GmbH "is a company who sell Infomir brand boxes in Germany"). If those sales violate the laws of Germany or the European Union, thereby causing harm to plaintiffs in Russia, those plaintiffs are free to initiate litigation in the appropriate local courts. However, selling STBs in Germany – even STBs that are produced by the same Ukrainian manufacturers who supply similar products to Infomir LLC – cannot subject Infomir GmbH to personal jurisdiction in New York. *See Capitol Records*, 611 F. Supp. 2d at 358 ("purposeful availment" requires more than "random, fortuitous, or attenuated contacts").

Nor can plaintiffs turn Infomir GmbH into Teletec – and thereby hail Infomir GmbH into this Court for the sins of Teletec – by arguing that they have "the same address," 1/12/18 Pl. Mem. at 9,[21] or by misreading a translated Russian interview to conclude that Jabil "is a contract

---

[21] Infomir GmbH has an address in Frankfurt (where it was served). Teletec has an address in Odessa. *See* 10/19/17 Rowley Decl. Ex. Y.

manufacturer for Infomir GmbH." *Id*.[22] These assertions – again, made only in plaintiffs' briefs – are wholly unsupported by either the FAC or the documents presented to the Court. Thus, even construing the FAC and the evidence in the light most favorable to plaintiffs, as required, I could not conclude, on the present record, that Infomir GmbH manufactures, sells, or otherwise supplies Infomir brand STBs in or to New York, either directly or through its affiliate Infomir LLC.

### b.  *Attending Trade Shows in New York*

Plaintiffs next assert that Infomir GmbH has attended "a minimum of three" trade shows in New York, including the 2017 NAB show at the Javits Center (where plaintiffs attempted service upon Infomir GmbH through Goldfedib). 1/12/18 Pl. Mem. at 2; *see also id*. at 8 (asserting that "Infomir GmbH participated" in the 2015 "Content and Communication World" (CCW) trade show at the Javits Center, and that Goldfedib appeared in a photograph of "Infomir GmbH's 2016 NAB Trade Show booth"). Much like the claim that Infomir GmbH sells products in New York, however, these assertions are made only in plaintiffs' briefs (and accompanying attorney declarations). The FAC alleges that Infomir LLC (not Infomir GmbH) "attends certain trade shows," FAC ¶ 136, but does not specify the location.

It is undisputed that there was an "Infomir" booth, promoting Infomir brand products, at the New York trade shows. *See* 1/12/18 Dowd Decl. Exs. 2, 3, 8, 9, 13. Such a booth can indeed

---

[22] On July 19, 2012, a Russian-language website printed an interview with A. Marahovsky in which he stated (according to the certified translation provided by plaintiffs) that "[w]e" have "delegated part of our production plan" to Jabil. *See* FAC Ex. 11, at 4. There is no mention of Infomir *GmbH* (established just a few months earlier) anywhere in the interview. On the contrary: A. Marahovsky is introduced as a director of "Infomir," which is described as a "Ukrainian phenomenon" which "has built its own factory in Odessa" to manufacture STBs and related hardware. *Id*. at 1. In their briefs, however, plaintiffs claim that A. Marahovsky "stated that Jabil is a contact manufacturer for Infomir *GmbH*" (emphasis added), and therefore that "Infomir, LLC distributes Infomir GmbH boxes." 1/12/18 Pl. Mem. at 9.

subject a foreign corporation to subject-matter jurisdiction in New York. *See*, *e.g.*, *Millennium, L.P. v. Dakota Imaging Co.*, 2003 WL 22940488, at *3 (S.D.N.Y. Dec. 15, 2003) (where Maryland corporation attended two trade shows in New York City at which it "offered its infringing goods," court could assert personal jurisdiction under § 302(a)(1)). In *Millennium*, however, there was no dispute as to who (or what) attended the trade shows and displayed the goods. In this case, it is plaintiffs' burden to make a *prima facie* showing that Infomir *GmbH* – as opposed to Infomir LLC, which admittedly sells those products in New York, or Teletec, which admittedly manufactures them – was present at those shows.

The 2017 NAB catalog is of no help to plaintiffs: it identified the booth as belonging simply to "Infomir." 1/12/18 Dowd Decl. Ex. 9. Similarly, the press releases posted to the EU Website report only that "Infomir" went to the trade shows. *See*, *e.g.*, *id.* Ex. 3 ("Q&A" with Aleksey Kasianenko, identified as "Head of Technical Support Department, Infomir," about his impressions of the 2016 NAB show).[23] Nor do plaintiffs have any evidence that the individuals who staffed the booths were officers, directors, managing agents, or employees of Infomir GmbH.[24]

In order to bridge the gap between what these documents say and what plaintiffs want them to mean, they ask this Court to make a double assumption: first, that the EU Website is "the website of Infomir GmbH," 10/19/17 Rowley Decl. ¶ 60; *see also* 1/12/18 Pl. Mem. at 6, 10-11 (asserting, without citation, that the EU Website is "owned by Infomir GmbH"), and second, that whenever

---

[23] This is presumably the same individual identified by Goldfedib as "Alexey Kasyanenko," from "the Ukraine." Goldfedib Dep. Tr. at 158, 227, 271.

[24] Adamovsky, who has an ownership interest in both Infomir LLC and Infomir GmbH, was apparently in the "Infomir" booth at a 2013 trade show in Las Vegas. *See* Goldfedib Dep. Tr. at 272. The Court need not spend time trying to determine which corporate hat he was wearing on that occasion, however, since Las Vegas is in Nevada, not New York.

the EU Website refers to "Infomir," it must be referring to Infomir *GmbH* rather than (for example) Teletec. Plaintiffs themselves repeatedly rely on both of these assumptions to attribute to Infomir "GmbH" various statements, actions, and personnel that are not so attributed on the EU Website itself, or in any of plaintiffs' other underlying exhibits. For example, in a declaration submitted by plaintiffs' counsel, Kasianenko has become "Infomir *GmbH's* head of Technical Support," 1/12/18 Dowd Decl. ¶ 7, and Egor Maliarov, who identifies himself as a "Business Development Director with Infomir Group in UAE," has become "director of business development for Infomir *GmbH*." *Id*. ¶ 9 (emphases added). Using the same brand of reasoning, plaintiffs assert that Traian Triboi, the Odessa-based CEO of the "Infomir Group," *see* 10/19/17 Rowley Decl. Ex. BBB, "works for Infomir *GmbH*." *Id*. ¶ 73 (emphasis added).[25] In effect, therefore, plaintiffs seek to bootstrap their way into personal jurisdiction by assuming the very conclusion they wish this Court to draw.

In a sense, of course, plaintiffs are correct when they describe the EU Website as "the website of" Infomir GmbH." *See*, *e.g.*, 10/19/17 Rowley Decl. Ex. AA (page from EU website giving information about Infomir GmbH). But it is also "the website of" other entities using the Infomir trade name – most significantly Teletec, which manufactures the STBs sold by Infomir LLC in New York (and therefore would have good reason to showcase those products at a New York trade show). Moreover, other evidence, including Goldfedib's testimony (under questioning by plaintiffs' counsel) that the Infomir booth at the 2017 NAB show was staffed with personnel

---

[25] Other than the fact that Triboi's biography uses the word "Infomir," the only evidence plaintiffs cite in support of their conclusion that he works for Infomir *GmbH* is a 2015 press release, issued by a company called Ekioh, which stated that "Infomir" had selected an Ekioh product to use in its MAG STBs – and included a complementary quote from Triboi "at Infomir." 10/19/17 Rowley Decl. Ex. JJ, at 1. Once again, there is no mention of Infomir GmbH, and no reason to believe, from the context of the release, that "Infomir" meant the German distributor of the STBs rather than the Ukrainian manufacturer.

from the Ukraine, *see* Goldfedib Dep. Tr. at 157-58, strongly suggests that those personnel were in fact representing Teletec. *See also* 1/12/18 Dowd Decl. Ex. 1 (press release on EU Website announcing that "Infomir" was the "first Ukranian company at NAB").

In short, plaintiffs' insistence that it was Infomir GmbH at the New York trade shows asks this Court not merely to make an "argumentative inference," which it cannot do, *see Mende*, 269 F. Supp. 2d at 251, but to credit assertions of fact that are made only by plaintiffs' counsel and that have been drawn, by those counsel, from documents which do not easily yield the interpretation they champion. On this record – and given the lack of any relevant factual allegations in plaintiffs' pleading – I cannot conclude that Infomir GmbH was present at the trade shows in New York.

c.      *Contracting with a New York-Based Company*

Once again assuming that "Infomir" always means Infomir *GmbH*, plaintiffs contend that this Court can assert personal jurisdiction over Infomir GmbH because a 2016 press release on the EU Website announced a contract between "Infomir" and VertaMedia, which is "a New York headquartered company," 1/12/18 Pl. Mem. at 8. 1/12/18 Dowd Decl. Ex. 11 & 12. For the same reasons outlined above, this Court cannot simply assume that the contracting party was the same German company that plaintiffs served through the Hague Convention last April. Even if that issue were conceded, however, the reported contract would be insufficient to confer jurisdiction over Infomir GmbH, because there is no evidence that it required "Infomir" to supply any services in or to New York, much less to "project" itself into the state, as required by *Bank Brussels Lambert*, 171 F.3d at 789.[26] It is well-settled that a foreign defendant does not subject itself to jurisdiction

---

[26] It is not at all clear, from the evidence presented to the Court, what either party to the VertaMedia-Infomir was actually required to do. The VertaMedia press release announced, somewhat opaquely, that "[t]he partnership between VertaMedia & Infomir leverages the rapid expansion of IPTV and OTT video viewership and is opening up fresh opportunities for

in New York merely by "purchas[ing] goods or services *from* New York." *Arbitron Co. v. E.W. Scripps, Inc.,* 559 F. Supp. 400, 403 (S.D.N.Y. 1983) (holding that out-of-state newspaper publisher was not subject to general jurisdiction in New York even though, among other things, it used two New York-based agencies to solicit advertising and purchased computer services from a third New York-based business). Moreover, plaintiffs have made no showing that their claims in this action "arise out of that . . . contract." *Gordon v. Invisible Children, Inc.*, 2015 WL 5671919, at *5 (S.D.N.Y. Sept. 24, 2015).

> **2.      Plaintiffs Have Neither Alleged Nor Shown that Infomir GmbH Transacts Business in New York Through an Agent**

Alternatively, plaintiffs argue that Infomir LLC and Goldfedib are Infomir GmbH's agents, such that such that their presence and conduct in New York can be attributed to the German company for jurisdictional purposes. *See* 1/12/18 Pl. Mem. at 4, 17. Under *Kreutter* and its progeny, a plaintiff seeking to assert personal jurisdiction over a foreign principal through an in-state agent need not show the existence of a formal agency relationship, but must establish (i) that the agent acted "for the benefit of" the principal, (ii) with its "knowledge and consent," and (iii) that the foreign principal exercised some "control" over the agent with respect to that matter. *Kreutter*, 71 N.Y.2d at 467, 527 N.Y.S.2d at 199; *see also Hill v. HSBC Bank plc*, 207 F. Supp. 3d at 341; *Karabu*, 16 F. Supp. 2d at 324; *Ingenito*, 89 F. Supp. 3d at 477.

In their opposition brief, plaintiffs recite the *Kreutter* factors, *see* 1/12/18 Pl. Mem. at 19, but make little attempt to satisfy them. The FAC does not allege, even in conclusory terms, the existence of an agency relationship between Infomir GmbH and its New York affiliate (or that

---

advertisers, seeking new targeted audiences, and for IPTV and OTT providers need for additional monetization opportunities and utilization of advanced video advertising revenue optimization technologies."  1/12/18 Dowd Decl. Ex. 11. No further detail is provided.

affiliate's CEO), much less that the New York distributor or its CEO were acting for the benefit or under the control of the German distributor. Plaintiffs therefore cannot rely on their pleadings to make a *prima facie* showing of jurisdiction on an agency theory. *See Hau Yin To v. HSBC Holdings, PLC*, 700 F. App'x 66, 68 (2d Cir. 2017) ("Plaintiffs failed to allege that any of the foreign defendants exercised control over [the alleged agent] sufficient to establish agency for the purposes of jurisdiction."); *Wallert*, 141 F. Supp. 3d at 275 (rejecting agency theory of jurisdiction under CPLR § 302(a) where plaintiff failed to allege control by principal). Nor have plaintiffs made a factually supported showing that Infomir LLC or Goldfedib is an agent of Infomir GmbH. Instead, they resort to circular logic[27] and long lists detailing the interconnections between the German and the U.S. businesses.[28]

      To be sure, there are many such interconnections. It can no longer be disputed that Infomir LLC and Infomir GmbH are affiliates. They have overlapping ownership; they sell the same or similar "Infomir" brand products under the same or similar trademarks; and they appear to obtain those products from the same sources: Teletec and Jabil Circuit. Moreover, the various "Infomir" websites are vague – no doubt intentionally so – about the formal legal relationships among and between the various entities. Both the EU website and the Global Website create the impression of a worldwide integrated enterprise with regional sales offices or affiliates in (among other places) the United States and Germany. Moreover, the US Website links to the EU Website for service queries. None of this, however, shows that Infomir LLC or its CEO is the New York agent of Infomir GmbH.

---

[27] For example, they assert that Goldfedib must be an agent of Infomir GmbH because ("upon information and belief") he appeared at the October 2017 NAB trade show at the Javits Center "as a representative of both Infomir Defendants." 1/12/18 Pl. Mem. at 18.

[28] *See*, *e.g.*, 2/16/18 Pl. Mem. at 1-5.

Even where the alleged foreign principal is the parent company (or an officer) of the in-state agent, none of the necessary factors – benefit, consent, control – may be assumed; all must be specifically alleged or, after jurisdictional discovery, factually supported. *See Ingenito*, 89 F. Supp. 3d at 476; *Karabu*, 16 F. Supp. 2d at 324 ("control cannot be shown based merely upon a defendant's title or position within the corporation, or upon conclusory allegations that the defendant controls the corporation"); *see also Porter v. LSB Indus*., *Inc*., 192 A.D.2d 205, 213-14, 600 N.Y.S.2d 867, 873 (4th Dep't 1993) ("complete stock control" and overlapping directors and officers are "intrinsic to the parent-subsidiary relationship and, by themselves, not determinative").

In this case, given the overlapping ownership between Infomir LLC and Infomir GmbH – coupled with the fact that neither of them appears to have any business other than selling Infomir brand STBs – it may be a fair inference that Infomir GmbH *knows* of and has *consented* to Infomir LLC's business activities. But there is no allegation, and no evidence, that Infomir LLC operates for the *benefit* of Infomir GmbH. To the contrary: Goldfedib testified at deposition that Infomir LLC is in business to make a profit for itself, *see* Goldfedib Dep. Tr. at 105, and will also make money for its suppliers. *Id*. at 205-06 ("[I]t's logical that someone who manufactures, develop [sic] and create [sic] make money on the project. So, of course, if someone sells to me, they make money."). As discussed above, the evidence shows that Infomir LLC's suppliers are Teletec, Jabil Circuit, and/or Progressive Technologies (which invoices the U.S. entity), not Infomir GmbH. Similarly, there is no allegation, and no evidence, that Infomir GmbH (whether through its shareholders, its managing agents, or otherwise) has exercised actual control over Infomir LLC's business in New York.

In the absence of either well-pleaded allegations or evidence showing that Infomir LLC and its CEO have been acting for the benefit of Infomir GmbH – and have been doing so at its

direction or under its control – plaintiffs' speculation is insufficient to make even a *prima facie* showing that the German company transacted business in New York "through an agent."

Where, as here, "jurisdiction is statutorily impermissible," the Court "need not reach the question of its constitutionality." *Best Van Lines, Inc. v. Walker*, 490 F.3d 239, 244 (2d Cir. 2007). "When the defendant is not within the jurisdiction of the court according to the forum state's laws, the question of federal due process does not arise, and jurisdiction is not proper." *Gradinger v. Pioneer Life Ins. Co.*, 2004 WL 1656576, at *2 (S.D.N.Y. July 22, 2004) (Daniels, J.); *accord Glob. Gospel Music Grp. LLC v. Habukkuk Music, Inc.*, 2010 WL 4968172, at *2 (S.D.N.Y. Dec. 6, 2010) (Daniels, J.).

### C.    Cross Motion for Additional Jurisdictional Discovery

A district court "'has broad discretion in determining whether or not to permit discovery aimed at establishing personal jurisdiction.'" *Vista Food Exch., Inc. v. Champion Foodservice, LLC*, 124 F. Supp. 3d 301, 313-14 (S.D.N.Y. 2015) (quoting *Yurman Designs, Inc. v. A.R. Morris Jewelers*, 60 F.Supp.2d 241, 244 (S.D.N.Y. 1999)). "In exercising its discretion, a court must balance the need to avoid subjecting a foreign defendant to extensive jurisdictional discovery against a plaintiff's potential difficulty proving jurisdiction without discovery." *In re Terrorist Attacks on Sept. 11, 2001*, 689 F. Supp. 2d 552, 566 (S.D.N.Y. 2010). Where the plaintiffs have not made out a prima facie case for jurisdiction, the court "is typically within its discretion to deny jurisdictional discovery." *Frontera Res. Azerbaijan Corp. v. State Oil Co. of Azerbaijan Republic*, 582 F.3d 393, 401 (2d Cir. 2009); *see also Jazini*, 148 F.3d at 186 ("Since the Jazinis did not establish a prima facie case that the district court had jurisdiction over Nissan Japan, the district court did not err in denying discovery on that issue."); *Vista Food Exch.*, 124 F. Supp. 3d at 314

("Where a plaintiff does not establish a prima facie case of jurisdiction, a district court does not err in denying jurisdictional discovery.").

I see no reason to authorize additional jurisdictional discovery concerning Infomir GmbH.

First, plaintiffs have already had the benefit of substantial jurisdictional discovery, including the deposition of Goldfedib. Before they took that deposition, they described Goldfedib as "a key figure for jurisdictional discovery" whose examination under oath would "allow the parties to . . . present the Court with all the relevant jurisdictional facts." 1/26/18 Hargis Decl. Ex. A, at ECF page 6. In the event, Goldfedib apparently did not provide the evidence that plaintiffs sought.[29] Their disappointment with his testimony, however, cannot be grounds for an open-ended quest to find better or more helpful evidence elsewhere.

Second, plaintiffs' request for additional jurisdictional discovery contains no specifics. They do not describe the documents or testimony they seek, or the time they expect such discovery to take, or what they expect it to show. Instead, they apparently seek leave to conduct whatever discovery they deem necessary to pursue two sweeping theories of *general* jurisdiction over Infomir GmbH: (a) that Goldfedib is a "mere department" of a "highly integrated enterprise committing torts in New York," 2/16/18 Pl. Mem. at 7-9, or (b) that Infomir LLC is "a mere shell, instrumentality, or alter ego" of Infomir GmbH. *Id.* at 10. Both of these doctrines require complex, multi-factor analyses of the relationships among and between the domestic entity and the foreign

---

[29] To be more precise: Goldfedib did not provide evidence supporting plaintiffs' contention that Infomir *GmbH* manufactured the allegedly unlawful STBs sold by Infomir LLC in New York, or that Infomir *GmbH* staffed the "Infomir" booth at the trade shows in New York. He did provide evidence (consistent with Infomir LLC's prior interrogatory answers) that *Teletec* did those things. Goldfedib's testimony would therefore have been helpful to plaintiffs in defeating Teletec's Rule 12(b)(2) motion. However, plaintiffs mooted that motion, two weeks prior to the Goldfedib deposition, by dismissing all of their claims against Teletec.

organization of which it is alleged to be a "mere department" or alter ego. *See*, *e.g.*, *Gurvey v. Cowan, Liebowitz & Latman*, PC, 2009 WL 691056, at *2 (S.D.N.Y. Mar. 17, 2009) (4-factor test for "mere department" analysis); *Daelim Trading Co. v. Giagni Enterprises*, LLC, 2014 WL 6646233, at *6 (S.D.N.Y. Nov. 12, 2014) (10-factor test for veil piercing). Similarly, plaintiffs make no showing that such an ambitious undertaking would be "proportional to the needs of the case," as required by Fed. R. Civ. P. 26(b)(2).[30]

Third, "this is not a case in which plaintiffs had no other options for legally proceeding." *Karabu*, 16 F. Supp. 2d at 325. Infomir GmbH is amenable to suit in Germany. Plaintiffs are well-financed Russian broadcasting companies that have already retained counsel in Germany for purposes of service under the Hague Convention. Plaintiffs are not obligated to litigate in this District by statute or contract – and can hardly argue that New York is a more convenient forum for them than Frankfurt. In exercising my discretion, therefore, I find that "the need to avoid subjecting a foreign defendant to extensive jurisdictional discovery" significantly outweighs plaintiffs' "potential difficulty" in obtaining jurisdiction over Infomir GmbH. *In re Terrorist Attacks on Sept. 11, 2001*, 689 F. Supp. 2d at 566. *See also Karabu*, 16 F. Supp. 3d at 325 (denying

---

[30] Moreover, since the Supreme Court's decision in *Daimler AG*, 571 U.S. 117 (holding that a group of Argentinian plaintiffs could not obtain general jurisdiction over a German corporation in California based on the in-state contacts of its U.S. subsidiary), the continuing vitality of the "mere department" theory of general jurisdiction, "or any theory based on a local subsidiary presence," has been in doubt. *Mercer Health & Benefits LLC v. DiGregorio*, 307 F. Supp. 3d 326, 344-45 (S.D.N.Y. 2018) (collecting cases); *see also In re Aluminum Warehousing Antitrust Litig.*, 90 F. Supp. 3d 219, 227-28 (S.D.N.Y. 2015) (recognizing that both agency and "mere department" theories of general jurisdiction have "at the very least been called into doubt by *Daimler*"); *NYKCool A.B. v. Pacific Intern Servs. Inc.*, 66 F. Supp. 3d 385, 393 (S.D.N.Y. 2014) (reading *Daimler* to "express[ ] some doubt about the constitutionality of subjecting a company to general jurisdiction under the[ ] mere department or agency theory").

jurisdictional discovery where "plaintiffs could have properly obtained jurisdiction over [six foreign defendants] by suing them in the jurisdictions in which they reside").

## IV.    CONCLUSION

For the reasons stated above, I respectfully recommend that Infomir GmbH's motion to dismiss (Dkt. No. 482) be GRANTED insofar as it is brought pursuant to Rule 12(b)(2), for lack of personal jurisdiction.  By separate order I will DENY plaintiffs' cross-motion for additional jurisdictional discovery (Dkt. No. 497), which is not dispositive of any claim in this action and hence within my decisional jurisdiction pursuant to Fed. R. Civ. P. 72(a) and 28 U.S.C. § 636(b)(1)(A).

Dated:        New York, New York
              September 4, 2018

_____
**BARBARA MOSES**
**United States Magistrate Judge**

### NOTICE OF PROCEDURE FOR FILING OF OBJECTIONS
### TO REPORT AND RECOMMENDATION

The parties shall have fourteen days from this date to file written objections pursuant to 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b) to this Report and Recommendation. Any such objections shall be filed with the Clerk of the Court, with courtesy copies delivered to the Hon. George B. Daniels at 500 Pearl Street, New York, New York 10007, and to the chambers of the undersigned magistrate judge. Any request for an extension of time to file objections must be directed to Judge Daniels. Failure to file timely objections will preclude appellate review. *See Thomas v. Arn*, 474 U.S. 140 (1985); *Wagner & Wagner, LLP v. Atkinson, Haskins, Nellis, Brittingham, Gladd & Carwile, P.C.*, 596 F.3d 84, 92 (2d Cir. 2010).