```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 05/24/2019
```

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

JOINT STOCK COMPANY CHANNEL ONE RUSSIA WORLDWIDE, et al.,

               Plaintiffs,

    -against-

INFOMIR LLC, et al.,

              Defendants.

16-CV-1318 (GBD) (BCM)
**ORDER**

**BARBARA MOSES, United States Magistrate Judge**

    For the reasons stated below, the Court awards plaintiffs Joint Stock Company Channel One Russia Worldwide, Closed Joint Stock Company CTC Network, Closed Joint Stock Company TV DARIAL, Closed Joint Stock Company "New Channel," Limited Liability Company "Rain TV-Channel," and Limited Liability Company "Comedy TV" a total of $91,147.75 in attorneys' fees and expenses, as sanctions pursuant to Fed. R. Civ. P. 37(b) and 11, to be assessed jointly and severally against defendant Panorama Alliance, LP (Panorama), attorney Alan P. Fraade, and the Mintz Fraade Law Firm, P.C. (Mintz Fraade).

## Background

    Plaintiffs are a group of Russian television broadcasters suing to redress what they characterize as the "pirating" and resale of their programming to consumers in the United States, over the internet, without authorization or license fees. *See* First Amended Complaint (FAC) (Dkt. No. 211) ¶¶ 1, 6, 15, 19, 21, 23, 26. Plaintiffs are "organized under the laws of the Russian Federation," *id*. ¶¶ 6, 15, 19, 21, 23, 26, and most are headquartered in Moscow. *Id*. ¶¶ 6, 23, 26. Plaintiffs produce and distribute Russian-language television programming, which is broadcast via satellite in Russia and neighboring countries. *Id*. ¶ 62. Defendant Panorama, a limited partnership incorporated under the laws of the United Kingdom, allegedly sold unauthorized subscriptions to

a "pirated" version of plaintiffs' programming, through its website www.mypanorama.tv (the Website), to Russian-speaking customers in New York and elsewhere. *Id.* ¶¶ 39, 42, 96.[1]

On August 25, 2016, Panorama, represented by Fraade, filed a motion to dismiss all of plaintiffs' claims against it for lack of personal jurisdiction pursuant to Fed. R. Civ. P. 12(b)(2). (Dkt. No. 108.) Panorama argued that it could not be subject to either general or specific jurisdiction in New York because it had no agents or other contacts here and did not conduct any business in New York. *See* Panorama Mem. in Supp. filed Aug. 25, 2016 (Dkt. No. 111), at 2; Fraade Aff. filed Aug. 25, 2016 (Dkt. No. 109), ¶¶ 10-12; Zeltzer Decl. filed Aug. 25, 2016 (Dkt. No. 110), ¶¶ 8-10.

On July 22, 2016, in anticipation of the motion to dismiss, I authorized plaintiffs to conduct certain discovery "targeted to the issue of personal jurisdiction." Order dated July 22, 2016 (Dkt. No. 95), at 1-2. On September 8, 2016 – after Panorama claimed, implausibly, that it did not possess a single document relevant to the jurisdictional dispute – I issued an order directing Panorama to "conduct another search of its documents" and to produce any documents responsive to plaintiffs' requests no later than September 19, 2016. Order dated Sept. 8, 2016 (Dkt. No. 121), ¶ 2. Panorama never produced any documents. Consequently, on September 28, 2016, I authorized plaintiffs to serve a discovery subpoena on Brooklyn resident Asaf Yevdayev, who registered Panorama's Website, was listed on that website as an "authorized dealer," and appeared to be

---

[1] The factual background and procedural history relevant to the instant fee award are described in more detail in the Court's prior opinions in this action, including *Joint Stock Co. Channel One Russia Worldwide v. Infomir LLC*, 2017 WL 825482, at *1 (S.D.N.Y. Mar. 2, 2017) (the 3/2/17 Report), *report and recommendation adopted,* 2017 WL 1321007 (S.D.N.Y. Mar. 30, 2017) (the 3/30/17 Order), *Joint Stock Co. Channel One Russia Worldwide v. Infomir LLC*, 2017 WL 5067432, at *2 (S.D.N.Y. May 9, 2017) (the 5/9/17 Order), and *Joint Stock Co. Channel One Russia Worldwide v. Infomir LLC*, 2017 WL 3671036, at *2-9 (S.D.N.Y. July 18, 2017) (the 7/18/17 Order and Report), *report and recommendation adopted*, 2017 WL 4712639 (S.D.N.Y. Sept. 28, 2017) (the 9/28/17 Order). Familiarity with these opinions is assumed.

2

actively engaged in selling Panorama subscriptions in New York. Order dated Sept. 28, 2016 (Dkt. No. 126), ¶ 2. Yevdayev (represented by Fraade) appeared for deposition on October 20, 2016, *see* 7/18/17 Order and Report, 2017 WL 3671036, at *8-9, after which the parties filed additional briefs and presented oral argument concerning the motion to dismiss. On March 2, 2017, I recommended that Panorama's Rule 12(b)(2) motion be denied, *see* 3/2/17 Report, 2017 WL 825482, at *16, and on March 30, 3017, the District Judge adopted my recommendation and denied the motion. *See* 3/30/17 Order, 2017 WL 1321007, at *1.

Meanwhile, plaintiffs moved for discovery sanctions against Panorama, Fraade and Mintz Fraade pursuant to Rule 37(b) (Dkt. No. 127), citing their misconduct during the jurisdictional discovery period, and for sanctions against Panorama and its counsel, pursuant to Rule 11 (Dkt. No. 134), for filing a frivolous Rule 12(b)(2) motion.

On July 18, 2017, I granted plaintiffs' motion for discovery sanctions and ordered Panorama, Fraade, and Mintz Fraade, jointly and severally, to "pay the reasonable expenses, including attorneys' fees and out-of-pocket costs, caused by Panorama's failure to obey this Court's discovery orders issued orally and in writing on September 8, 2016, including plaintiffs' expenses incurred in (i) seeking and obtaining additional jurisdictional discovery as to Panorama, formally or informally, from September 8, 2016 through March 30, 2017; and (ii) preparing and pursuing their Rule 37(b) motion." 7/18/17 Order and Report, 2017 WL 3671036, at *34.

In the same opinion I recommended that the District Judge grant plaintiffs' motion for Rule 11 sanctions against Panorama and its counsel. 7/18/17 Order and Report, 2017 WL 3671036, at *1.[2] Specifically, I recommended that the Court require "Panorama, Fraade, and Mintz Fraade,

---

[2] The law in this Circuit is unsettled as to whether a Magistrate Judge has the authority to impose (rather than recommend) Rule 11 sanctions. *See Houston v. Manheim-N.Y.*, 475 Fed. App'x 776, 779 (2d Cir. 2012) (summary order) ("we have not yet resolved" whether Magistrate Judges have

3

jointly and severally, to pay the reasonable expenses, including attorneys' fees and out-of-pocket costs, incurred by plaintiffs in opposing Panorama's motion to dismiss for lack of personal jurisdiction, including: (i) plaintiffs' expenses incurred in briefing and arguing the Rule 12(b)(2) motion; (ii) their expenses incurred in seeking and obtaining jurisdictional discovery as to Panorama, formally or informally, from August 25, 2016 through March 30, 3017 (except to the extent that such expenses have previously been reimbursed in accordance with my Rule 37(b) sanctions order); and (iii) their expenses incurred in preparing and pursuing their Rule 11 motion." *Id*. at *34. I further recommended that, as an additional sanction, "Panorama should not be permitted (through its agent Yevdayev or otherwise) to deny or contest the agency relationship that it improperly concealed from plaintiffs in its motion papers." *Id*. The District Judge adopted my recommendation in full and granted plaintiffs' motion for Rule 11 sanctions on September 28, 2017. 9/28/17 Order, 2017 WL 4712639, at *3.

The only remaining task as to the sanctions motions, therefore, is to determine plaintiffs' reasonable fees and expenses. On August 1, 2017, following my 7/18/17 Order and Report, plaintiffs submitted a declaration from their attorney, Raymond Dowd of Dunnington Bartholow & Miller (Dunnington), requesting attorney's fees and costs totaling $81,505.91 for "(i) seeking and obtaining jurisdictional discovery and (ii) preparing and pursuing the Rule 37 motion." Dowd Decl. filed Aug. 1, 2017 (8/1/17 Dowd Decl.) (Dkt. No. 330), ¶ 4. Along with his declaration,

---

the authority under 28 U.S.C. § 636(b)(1)(A) and Rule 72(a) to deny motions for Rule 11 sanctions). Consequently, it is the practice of many Magistrate Judges to issue reports, rather than orders, on such motions. *See*, *e.g*., *Gelicity UK Ltd. v. Jell-E-Bath, Inc.*, 2014 WL 1330938, at *1 n.1 (E.D.N.Y. Apr. 1, 2014) (Mann, M.J.) ("Because the Second Circuit has not resolved the issue of a magistrate judge's authority to sanction under Rule 11, its inherent powers, or 28 U.S.C. § 1927, this Court, out of an abundance of caution, addresses [plaintiff's motion for sanctions] in a report and recommendation.").

Dowd submitted time records (Dkt. No. 330-1) and receipts for costs (Dkt. Nos. 330-2, 330-3, 330-4) totaling $1,386.15.

On November 2, 2017, following the District Judge's 9/28/17 Order granting Rule 11 sanctions, plaintiffs submitted a revised application for attorney's fees, including their lawyers' time spent briefing and arguing the Rule 12(b)(2) motion and their own Rule 11 motion, as well as expenses incurred in seeking and obtaining jurisdictional discovery from Panorama from August 25, 2016, through March 30, 2017, that were not included in the original application. Dowd Decl. dated Nov. 2, 2017 (11/2/17 Dowd Decl.) (Dkt. No. 396), ¶ 4. In their revised application, plaintiffs request an additional $39,562.37 in attorney's fees, for a total of $119,682.13 in attorneys' fees and $1,386.15 in costs with respect to both sanctions awards. *Id*. ¶ 9. Dowd states that Dunnington has "received payment in full" for the charges submitted to this Court. *Id*. ¶ 10.

Fraade and his law firm oppose plaintiffs' applications. *See* Fraade Decl. dated Sept. 18, 2017 (9/18/17 Fraade Decl.) (Dkt. No. 355); Fraade Mem. in Opp. dated Sept. 18, 2017 (Fraade Mem. in Opp.) (Dkt. No. 356); Fraade Decl. dated Nov. 17, 2017 (11/17/17 Fraade Decl.) (Dkt. No. 428). Fraade argues that Dunnington's records are vague, that its work was inefficient, and that it seeks fees for time spent on tasks "outside the scope of sanctioned conduct." Fraade Mem. in Opp. at 5. He asks the Court to reject plaintiff's fee application altogether or substantially reduce the overall award. *Id*. at 13.

Panorama, which defaulted shortly after the District Judge denied its Rule 12(b)(2) motion, did not submit any opposition to plaintiffs' fee applications.

## **Analysis**

Having previously found that plaintiffs are entitled to recover their attorney's fees and costs as sanctions for Rule 37(b) and Rule 11 violations by Panorama, Fraade, and Mintz Fraade, the

Court must now determine whether plaintiffs' requested award is reasonable. To calculate a "presumptively reasonable fee," the Court begins by multiplying the hours counsel reasonably spent on the litigation by a reasonable hourly rate. *Millea v. Metro-N. R. Co.*, 658 F.3d 154, 166 (2d Cir. 2011) (citing *Arbor Hill Concerned Citizens Neighborhood Assoc. v. Cnty. of Albany,* 522 F.3d 182, 183 (2d Cir. 2008)). "The presumptively reasonable fee boils down to what a reasonable, paying client would be willing to pay, given that such a party wishes to spend the minimum necessary to litigate the case effectively." *Simmons v. New York City Transit Auth.*, 575 F.3d 170, 174 (2d Cir. 2009) (internal quotations omitted).

### A.    Hourly Rate

To arrive at a reasonable fee award, I must first determine the reasonable hourly rate for each timekeeper for whom fees are sought. "A fee applicant bears the burden of 'produc[ing] satisfactory evidence' that its requested rates are 'in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation.'" *In re Terrorist Attacks on Sept. 11, 2001*, 2015 WL 6666703, at *4 (S.D.N.Y. Oct. 28, 2015) (quoting *Pearson Educ., Inc. v. Vergara*, 2010 WL 3744033, at *6 (S.D.N.Y. Sept. 27, 2010)), *report and recommendation adopted*, 2015 WL 9255560 (S.D.N.Y. Dec. 18, 2015). This inquiry properly includes a court's own knowledge of private firm hourly rates. *Id.* at *4 (citing *Miele v. N.Y.S. Teamsters Conference Pension & Ret. Fund,* 831 F.2d 407, 409 (2d Cir.1987)).

Plaintiffs seek fees for six Dunnington timekeepers involved in this matter:

| | |
|---|---|
| Raymond Dowd: | Partner<br>$495 per hour through December 31, 2016;<br>$550 per hour as of January 1, 2017; |
| Samuel Blaustein: | Senior Associate, Partner (as of January 1, 2017)<br>$350 per hour through December 31, 2016;<br>$400 as of January 1, 2017; |
| David Hoffman: | Of Counsel |

6

|                      | $450 per hour;               |
|----------------------|------------------------------|
| Hardin Rowley:       | Associate $325 per hour;     |
| Brian Mangan:        | Associate $325 per hour; and |
| Christopher Vidulich:| Paralegal $175 per hour.     |

11/2/17 Dowd Decl. ¶ 11. Dunnington is a small firm by Manhattan standards. According to its website (available at https://www.dunnington.com) it comprises 26 attorneys as of this writing. Attorney Dowd, who serves as lead counsel for plaintiffs in this action, was admitted to practice in 1993 and since then has focused primarily on litigation, including litigation on behalf of international television broadcasters. 11/2/17 Dowd Decl. ¶¶ 12-13.  He has written extensively on litigation topics and is the author of a copyright litigation handbook. *Id.* ¶ 14.

I find that Dunnington's rates, as set out above, are consistent with the prevailing market rates in this District charged by legal professionals of comparable experience and expertise. *See Barcroft Media, Ltd. v. Fashion In Me Inc.*, 2018 WL 4565889, at *5 (S.D.N.Y. June 5, 2018), *report and recommendation adopted*, 2018 WL 4568727 (S.D.N.Y. July 25, 2018) (collecting copyright and trademark infringement cases awarding $425-$570 for partners at small to mid-sized law firms, and $200-$390 for associates); *Pyatt v. Raymond*, 2012 WL 1668248, at *6 (S.D.N.Y. May 10, 2012) (collecting copyright and trademark infringement cases in which partners were awarded $400-650). *See also Genger v. Genger*, 2015 WL 1011718, at *2 (S.D.N.Y. Mar. 9, 2015) ("New York district courts have also recently approved rates for law firm associates in the range of $200 to $450 per hour . . . and for law firm paralegals in amounts of approximately $200 per hour.").

B.     **Number of Hours Expended**

At the second stage of the analysis, I multiply each timekeeper's reasonable hourly rate by the reasonable number of hours expended. *Reilly v. Plot Commerce*, 2016 WL 6837895, at *12 (S.D.N.Y. Oct. 31, 2016). Hours that are "excessive, redundant, or otherwise unnecessary" may be excluded from an attorney's fee award. *Infinity Headwear & Apparel v. Jay Franco & Sons*, 2016 WL 6962541, at *5 (S.D.N.Y. Nov. 28, 2016) (citing *Gierlinger v. Gleason*, 160 F.3d 858, 876 (2d Cir. 1998)). Additionally, where the description of the work performed is vague, or the timekeepers use block-billing, the Court must determine "whether the time records submitted permit 'a meaningful review of the hours requested.'" *We Shall Overcome Found. v. Richmond Org., Inc.*, 330 F. Supp. 3d 960, 973 (S.D.N.Y. 2018) (quoting *Restivo v. Hessemann*, 846 F.3d 547, 591 (2d Cir. 2017)).

Plaintiffs rely on their revised time records – correcting earlier mistakes and accounting for the total time spent on their Rule 11 motion and their opposition to Panorama's Rule 12(b)(2) motion – to seek renumeration for a total of 314.55 hours. 11/2/17 Dowd Decl. ¶¶ 5-9 & Ex. 1. However, their time records contain numerous block-billed entries which reflect time spent on multiple activities, not all of them compensable as sanctions. For many entries, moreover, a portion of the task description has been redacted precisely because it includes activities which were "unrelated to the order at hand." 8/1/17 Dowd Decl. ¶ 9. For example, on September 8, 2016, attorney Dowd spent a total of 2.80 hours (for which he billed $1,386) on the following tasks:


address issues re Panorama conference,

11/2/17 Dowd Decl. Ex. A, at ECF page 1. Plaintiffs have highlighted these entries in green and state that they have discounted them by 15 percent. 8/1/17 Dowd Decl. ¶ 9.

Although Fraade does not object to the hourly rates requested by Dunnington timekeepers, he does object to plaintiffs' calculation of their hours. *See* 9/18/17 Fraade Decl. ¶ 14-19; 11/17/17 Fraade Decl. ¶ 5. Fraade complains that Dunnington's use of block-billing makes it impossible to determine if the hours spent were reasonable, and "by itself, defeats the integrity of any alleged nexus between the billing and the specific task rendered with respect to Panorama." 11/17/17 Fraade Decl. ¶ 4. Fraade also questions whether the time records were made contemporaneously (due to several mistakes in the original records submitted on August 1, 2017). *Id.* Additionally, Fraade objects to time billed in connection with the preparation for the deposition of Yevdayev, *id.* ¶ 13, the review of the Yevdayev deposition transcript, *id.*, and Dunnington's failure "to allocate work to the proper level of experience." *Id.* ¶ 13.C.

Given that Panorama resisted meaningful jurisdictional discovery for months, and persisted in its motion to dismiss even after plaintiffs presented evidence demonstrating that the motion lacked merit, *see* 7/18/2017 Order and Report, 2017 WL 3671036, at *5-6, the Court finds that most of the attorney hours billed by plaintiffs in litigating the Rule 12(b)(2), Rule 37(b) and Rule 11 motions were in fact reasonable, including their time spent in connection with the Yevdayev deposition. Plaintiffs suspected (and the Court ultimately agreed) that Yevdayev was Panorama's agent in New York. *See* 7/18/17 Order and Report, 2017 WL 3671036, at *27. Indeed, notwithstanding Panorama's repeated denials that it had any "formal relationship" with Yevdayev, the evidence adduced in connection with the Rule 12(b)(2) motion (including Yevdayev's deposition testimony) revealed that the relationship was "long-standing and substantial," 3/2/17 Report, 2017 WL 825482, at *8. That relationship, which included Yevdayev's purchases of "multiple subscriptions to Panorama's PTV Services" for resale in New York and his listing as an "authorized dealer" for Panorama on its Website, also supported the Court's finding that

9

"Panorama's sales *to Yevdayev* were purposeful contacts with New York." *Id*., 2017 WL 825482, at *10 (emphasis in the original). Thus, plaintiffs appropriately sought and took his deposition in connection with their opposition to Panorama's Rule 12(b)(2) motion. Moreover, although it is possible that plaintiffs would have taken Yevdayev's deposition eventually, for other reasons, their decision to examine him when they did was directly related to Panorama's failure to produce documents and other Court-ordered discovery that would have revealed its ties to Yevdayev. *See* Order dated Sept. 28, 2016 (authorizing plaintiffs to subpoena Yevdayev as a remedy for Panorama's failure to produce "any responsive documents" in response to a prior court order). Therefore, plaintiffs are entitled to recover their reasonable expenses incurred in preparing for and taking Yevdayev's deposition.

While most of plaintiffs' fees appear reasonable, the Court is concerned by their frequent use of block-billing, which makes it impossible to assess how much time was spent on each individual task. The Court's difficulty is compounded by the fact that part of each green-highlighted entry has been redacted precisely *because* it relates to a task outside the scope of the sanctions orders, making it impossible even to guess at the likely time allocation based on the nature of the non-compensable tasks. The Court therefore has no confidence that the 15% discount already applied to the partially-redacted green-highlighted entries adequately accounts for the amount or proportion of their non-compensable time.

The same is true with respect to the non-highlighted entries included in the revised timesheets submitted on November 2, 2017, which reflect work done "exclusively" on the Rule 11 and Rule 12 motions. *See* 11/2/17 Dowd Decl. ¶ 8. Some of these entries are also heavily redacted – without explanation – but have not been discounted. For example, on March 27, 2017, attorney Dowd spent 4.8 hours (for which he billed for $2,640) on:

10

███████████████████████████████████████████████ receipt/review Judge Daniels' order accepting R&R, ████████████████████████ 11/2/17 Dowd Decl. Ex. A, at ECF page 4. Plaintiffs seek to recover the full $2,640 in sanctions, although it seems unlikely that it took 4.80 hours to review the District Judge's 3/27/17 Order.

To ameliorate any concerns about Dunnington's many block-billed entries – some of which were discounted at 15% and some of which were not discounted at all – the Court will reduce the overall award by a further 25%. *See John Wiley & Sons, Inc. v. Book Dog Books, LLC*, 327 F. Supp. 3d 606, 640 (S.D.N.Y. 2018) (quoting *McDonald* ex rel. *Prendergast v. Pension Plan of the NYSA-ILA Pension Tr. Fund*, 450 F.3d 91, 96 (2d Cir. 2006)) ("A court may 'use a percentage deduction as a practical means of trimming fat from a fee application.'")

Thus, plaintiffs will be awarded $89,761.60 for attorneys' fees, including $60,089.82 as sanctions under Rule 37(b) and $29,671.78 as additional sanctions under Rule 11.

**C.  Costs**

To support their request for $1,386.15 in costs – all pursuant to Rule 37(b) – plaintiffs submitted receipts for (i) the transcript of the September 8, 2016 telephonic discovery conference (Dkt. No. 330-2); (ii) the deposition of Yevdayev (Dkt. No. 330-3); and (iii) their document subpoena to Domains by Proxy (Dkt. No. 330-4) regarding the Panorama Website. These costs are reasonable and are within the scope of the award outlined in the 7/18/17 Order and Report, 2017 WL 3671036, at *27. Plaintiffs do not seek any additional costs in connection with their Rule 11 award.

## Conclusion

For the reasons stated above, it is hereby ORDERED that plaintiffs are awarded sanctions of $91,147.75, including $60,089.82 in attorneys' fees and $1,386.15 in costs pursuant to Rule

37(b) and $29,671.78 in attorneys' fees pursuant to Rule 11.[3] Panorama, Fraade, and Mintz Fraade are jointly and severally liable for these sums. Payment is to be made within thirty days of this Order.

Dated: New York, New York
       May 24, 2018

**SO ORDERED**.

_____
**BARBARA MOSES**
**United States Magistrate Judge**

---

[3] It is well-settled that a Magistrate Judge has the authority to assess – and not merely to recommend – a monetary award as a discovery sanction pursuant to Fed. R. Civ. P. 37. *See*, *e.g.*, *Shanghai Weiyi Int'l Trade Co. v. Focus 2000 Corp.*, 2017 WL 2840279, at *9 (S.D.N.Y. June 27, 2017) (quoting *Thomas E. Hoar, Inc. v. Sara Lee Corp.*, 900 F.2d 522, 525 (2d Cir. 1990)) ("[M]onetary sanctions pursuant to Rule 37 for noncompliance with discovery orders usually are committed to the discretion of the magistrate [judge]."). Whether a Magistrate Judge has the same authority to determine the amount of a Rule 11 award – in this case, after the District Judge has granted the underlying motion – is less clear, in light of the unsettled state of the law in this Circuit regarding Rule 11 motions generally. *See Houston v. Manheim-N.Y.*, 475 Fed. App'x at 779. If and to the extent that this Order could be considered a dispositive ruling with respect to plaintiffs' Rule 11 motion, therefore, I hereby recommend, for the reasons stated above, that plaintiffs be awarded Rule 11 sanctions in the amount of $29,671.78 against Panorama, Fraade, and Mintz Fraade, jointly and severally.