**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

JOINT STOCK COMPANY "CHANNEL ONE RUSSIA :
WORLDWIDE," CLOSED JOINT STOCK COMPANY :
"CTC NETWORK," CLOSED JOINT STOCK
COMPANY "TV DARIAL," CLOSED JOINT STOCK :
COMPANY "NEW CHANNEL," LIMITED LIABILITY:
COMPANY "RAIN TV-CHANNEL," and LIMITED :
LIABILITY COMPANY "COMEDY TV," :

                          Plaintiffs,

          -against-

INFOMIR LLC *(www.infomirusa.com)*; PANORAMA :
ALLIANCE, LP *(www.mypanorama.tv)*; DAVID :
ZELTSER; ASAF YEVDAYEV; MHCOM GMBH; :
TELEPROM; VDALI; S.K MANAGEMENT OF NEW :
YORK, INC.; and JOHN DOES 1-50, :

                          Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

<u>MEMORANDUM DECISION</u>
<u>AND ORDER</u>

16 Civ. 1318 (GBD) (BCM)

GEORGE B. DANIELS, United States District Judge:

      Plaintiffs, a group of Russian television broadcasters, commenced this action on February

19, 2016 against various Defendants, including Infomir LLC ("Infomir"), alleging that Defendants

intercept and rebroadcast Plaintiffs' television programming over the internet without

authorization. (Verified Compl., ECF No. 1; *see also* First Am. Verified Compl. ("FAC"), ECF

No. 211.) Infomir moves pursuant to Federal Rule of Civil Procedure 37(b) and the Court's

inherent powers for discovery sanctions against Plaintiffs for their alleged repeated failure to

produce certain electronically stored information ("ESI") evidencing an investigation conducted

in May 2016 (the "Wireshark Investigation") by Christopher Vidulich, a paralegal employed by

Plaintiffs' counsel. (Notice of Mot. for Disc. Sanctions, ECF No. 692.)

      This action was referred to Magistrate Judge Barbara C. Moses for, *inter alia*, general

pretrial management. (Order of Reference, ECF No. 35; Am. Order of Reference, ECF No. 64.)

On September 26, 2019, Magistrate Judge Moses issued an Opinion and Order (the "Opinion") granting Infomir's motion for sanctions.[1] (Op., ECF No. 779.) Specifically, Magistrate Judge Moses precluded Plaintiffs from introducing or relying on Vidulich's affidavit dated June 24, 2016, in which he first described the Wireshark Investigation (the "Vidulich Affidavit"), (Vidulich Aff., ECF No. 80);[2] any report of, testimony about, or opinions based on the Wireshark Investigation; and any data or information captured during the Wireshark Investigation, including but not limited to the native format "PCAP" data (the "Channel One PCAP"). (Op. at 4, 70–71.) Magistrate Judge Moses further ordered Plaintiffs and their counsel to reimburse Infomir for its attorneys' fees, expert fees, and other costs reasonably incurred in discovering the Channel One PCAP and making its sanctions motion. (*Id* at 4, 71.) Plaintiffs filed objections to the Opinion on November 1, 2019. (Mem. of Law in Supp. of Broadcasters' Objs. to the Op. and Order of Mag. J. Barbara C. Moses Dated Sept. 26, 2019 ("Objs."), ECF No. 792.) Subsequently, on November 25, 2019, Infomir filed a response to Plaintiffs' objections. (Brief in Opp'n to Pl.'s Objs. to Sept. 26, 2019 Op. and Order ("Opp'n to Objs."), ECF No. 795.) Plaintiffs' objections are overruled, and Magistrate Judge Moses's Opinion is AFFIRMED.

## I.    FACTUAL BACKGROUND

### A.  The Wireshark Investigation and June 24, 2016 Vidulich Affidavit.

According to Plaintiffs, Defendants provide video streaming services of Russian-language television channels owned by Plaintiffs to paying subscribers throughout the United States without Plaintiffs' authorization. (FAC ¶ 1.) Specifically, Plaintiffs allege that "Defendants hack, capture

---

[1] The relevant factual and procedural background is set forth in greater detail in the Opinion and is incorporated by reference herein.

[2] Vidulich submitted several affidavits in this action. Unless otherwise indicated, references herein to the "Vidulich Affidavit" or "Vidulich Aff." are to his affidavit dated June 24, 2016. References to his affidavits dated otherwise are cited as "[date] Vidulich Aff."

2

or otherwise acquire without permission the encrypted signals of [Plaintiffs'] Channels and transmit those signals to its servers which in turn stream the wrongfully acquired signals over IPTV."[3] (*Id.* ¶ 196.)

In May 2016, Vidulich conducted the Wireshark Investigation on a firm laptop computer to try to determine the source of a video stream that he viewed through an Infomir brand IPTV receiver. (*See* Vidulich Aff.) According to the Vidulich Affidavit, he conducted this investigation on May 27, 2016 by using Wireshark, a "network protocol analyzer" that could "capture the Internet Protocol addresses of the sources sending video streaming media" to the IPTV receiver while he was using it to view Channel One, (*id.* ¶¶ 18–23), a channel owned and produced by Plaintiffs, (*id.* ¶ 15). As Infomir's expert, Christopher T. Rucinski, explained:

> Wireshark . . . is a software program that allows a user to create a record of data packets transmitted across a computer network by "capturing" the data packets in a file. Wireshark can also be utilized by a user to subsequently analyze the captured data packets, and such analysis can include identifying the source, destination, and content of the captured data packets. The file format in which Wireshark stores captured data packets is sometimes referred to as "PCAP" format, which is short for "Packet Capture," and such files typically have a file extension of ".pcap."

(Decl. of Stewart M. Leviss in Supp. of Def. Infomir LLC's Mot. for Disc. Sanctions ("Leviss Decl."), Ex. A (Rucinski Report), ECF No. 694-1, at 1–2.) Plaintiffs' expert Dmitri Dietrich similarly described Wireshark as "a software program that allows a user to record data transmission across computer networks by capturing data in a file. The file format in which Wireshark stores captured data is the 'PCAP' format with file extension '.pcap' or '.pcapng.'" (Decl. of Dmitri Dietrich in Opp'n to Sanctions ("Dietrich Decl."), ECF No. 708, ¶ 7.) The only complete record of the Wireshark Investigation is the native format Channel One PCAP that

---

[3] IPTV, or internet protocol television, is "distribution of television programming over a network running the IP protocol." Ray Horak, *Webster's New World Telecom Dictionary* 252 (1st ed. 2008). IPTV software permits a consumer to "access a unique Internet Protocol ('IP') address from which the consumer can access a stream" of the programming. (*Id.* ¶ 98.)

Vidulich saved on the laptop computer on which he conducted the investigation. (Tr. of Feb. 6, 2019 Hr'g, ECF No. 733, at 16, 25–26, 81, 117–18.)

Vidulich described the Wireshark Investigation in the Vidulich Affidavit, attesting that he "scanned through the activity that was captured while the Channel One stream was active," and saw that the IPTV receiver "connected to 'freetvstat.iptv.infomir.com.ua'" at the IP address 66.234.224.2, (Vidulich Aff. ¶ 24), as well as to a "stalker portal" at the IP address 37.58.59.33, (*id.* ¶ 26). Vidulich further attested that after consulting a different website, IPlocation.net, he learned that the IP address 66.234.224.2 is "located within the United States." (*Id.* ¶ 25.) He noted that Infomir states on its website that it is "not involved in any content distribution activity," but that "[t]his assertion appears to be incorrect in light of the fact that he was able to trace the source of Channel One to freetvstat.iptv.infomir.com.ua." (*Id.* ¶ 30.) Vidulich also noted that Infomir's website allows users to download "Free Stalker Middleware," which enables them to "view IPTV with '[n]o payments, no contracts, no tricks.'" (*Id.* ¶ 28 (alteration in original).)

Vidulich attached to the Vidulich Affidavit two screenshots (the "Channel One Screenshots") allegedly of the Wireshark "readouts" displaying the IPTV receiver's "connection" with Infomir and the "stalker portal." (*Id.* ¶¶ 24, 26, Exs. 14, 16.) The bottom-right corners of the Channel One Screenshots display the date on which the screenshots were taken—May 27, 2016— and the top left-hand corners indicate the name of the PCAP file that was open while the screenshots were taken: "Channel One Capture.pcapng." (*Id.* Exs. 14, 16.)

Plaintiffs filed the Viduluch Affidavit in support of their successful motion for leave to amend their original complaint. (Mem. of Law in Opp'n to Mot. to Dismiss and in Supp. of Cross Mot. to Amend ("Mot. to Amend Mem."), ECF No. 81, at 5–8 (citing Vidulich Affidavit in support of claim that investigation revealed that Infomir is distributing Plaintiffs' programming).) They

4

have since continued to rely on the Vidulich Affidavit in support of their assertion that Infomir unlawfully streams an unauthorized version of Plaintiffs' television programing over the internet. (*See, e.g.*, FAC, Ex. 15 (Vidulich Aff.), ECF No. 211-15 (attaching Vidulich Affidavit to first amended complaint); Mem. of Law in Supp. of Mot. for Summ. J. ("Summ. J. Mem."), ECF No. 552, at 6 (relying on Vidulich Affidavit in support of claim that Plaintiffs "have tracked U.S. video streams of pirated Channel One programming viewed on Infomir STBs to an Infomir affiliated server, freetvstat.iptv.infomir.com.ua"); Statement of Undisputed Material Facts, ECF No. 551, ¶¶ 143, 145–46, 148 (citing Vidulich Affidavit and describing Wireshark Investigation).)

## B. The Discovery Conferences, Discovery Orders, and Vidulich Deposition.

Plaintiffs did not produce to Infomir the Channel One PCAP, or any other ESI in connection with the Wireshark Investigation, as part of their automatic disclosures pursuant to Federal Rule of Civil Procedure 26(a)(1)(A). (Op. at 13.) Nor did they produce such materials in response to Infomir's May 3, 2017 document requests, which asked for documents "relating to any inspection, test or examination of any device alleged to be originating from or the responsibility of Infomir." (*Id.* (citing Infomir Ltr. dated Feb. 6, 2018, ECF No. 516, at 2; *id.* Ex. A, Doc. Req. No. 56.).)

At a discovery conference on April 19, 2018, Infomir expressly requested "all of the data that came out of [the Wireshark Investigation]" and the "data file that was generated when Mr. Vidulich used what you called a network analyzing program." (Tr. of Apr. 19, 2018 Conf., ECF No. 570, at 97:2–5.) Infomir reiterated several times during the conference that they believed they were "entitled to see the full data file that was generated," (*id.* at 97:9–10), and that they wanted "to see the full data set," (*id.* at 98:4).

5

Following this conference, Magistrate Judge Moses issued a Discovery Order dated April 25, 2018 (the "April 2018 Discovery Order"). (Apr. 2018 Disc. Order, ECF No. 569.) In this Order, Magistrate Judge Moses directed Plaintiffs to produce Vidulich for deposition, noting that he could be examined about "the facts concerning the websites, apps, and software he accessed or utilized, the observations he made when he did so, and the information and data he acquired as a result of these activities." (*Id.* at 4.) She further directed Plaintiffs to produce by May 31, 2018 "any additional documents in their possession, custody, or control (beyond those attached as exhibits to the witness's various declarations) constituting or recording the information and data that Vidulich acquired as a result of his investigatory activities." (*Id.* at 5, 12.) Magistrate Judge Moses noted in the April 2018 Discovery Order that "[t]hese documents are responsive to Infomir's Document Request No. 56 and are not themselves privileged." (*Id.* at 5.)

On June 22, 2018—three weeks past the deadline set forth in the April 2018 Discovery Order—Plaintiffs produced a document that they described as an "output data file . . . in the XPS data format" "for a Wireshark search that Christopher Vidulich completed on May 24, 2016" (the "Channel One XPS"). (Leviss Decl., ECF No. 694, ¶ 5.) They also produced a version of the same document in Portable Document Format (the "Channel One PDF"). (*See id.* ¶ 6.) Plaintiffs did not comment on the fact that the Vidulich Affidavit described a Wireshark search conducted three days later, on May 27, 2016. Nor did they explain why the "output data" was produced as XPS and PDF files rather than as a PCAP file, which is the native format for Wireshark.

During a discovery conference on June 26, 2018, Infomir noted that the Channel One XPS and Channel One PDF appeared to relate to a Wireshark search conducted on May 24, 2016, rather than the May 27, 2016 search described in the Vidulich Affidavit. (*See* Tr. of June 26, 2018 Conf., ECF No. 694-7, at 136:9–10.) Infomir stated that Plaintiff did not "clarify whether there were

other investigations, whether they're going to give [Infomir] the data from the May 27th investigation, whether this is exclusive, or why [Infomir] can't get the Wireshark data" for the investigation described in the Vidulich Affidavit. (*Id.* at 136:11–14.) Plaintiffs' counsel insisted that "[a]ll the documents [Vidulich] created have been produced," (*id.* at 137:8–9); that it was able to extract only "one file" from the firm laptop, presumably referring to the Channel One XPS and Channel One PDF, (*id.* at 137:12); and that "that's all we were able to get," (*id.* at 137:12–13).

Magistrate Judge Moses subsequently issued an Order dated July 3, 2018 (the "July 2018 Discovery Order"), directing Plaintiffs to "conduct a further search of their records, including ESI, and . . . produce any additional documents constituting or recording the information and data that Vidulich acquired as a result of his investigatory activities." (July 2018 Disc. Order, ECF No. 617, ¶ 7.) She noted in the July 2018 Order that, "according to Infomir, [P]laintiffs have not produced any data from 'any "network protocol analyzer," "Wireshark," or similar investigative process' employed by Vidulich on April [*sic*] 27, 2016." (*Id.*) Magistrate Judge Moses ordered Plaintiffs to produce all remaining documents by July 10, 2018. (*Id.*) Noting that Plaintiffs had offered Vidulich's firm laptop to Infomir for examination, and that Infomir had accepted such offer, Magistrate Judge Moses expressly warned Plaintiffs that Infomir's forensic analysis of the laptop "does not relieve plaintiffs of their obligation, set forth above, to produce any additional documents constituting or recording the information and data that Vidulich acquired as a result of his investigatory activities no later than July 10, 2018." (*Id.* ¶ 8.)

On August 29, 2018, Vidulich testified at deposition that the Wireshark Investigation described in the Vidulich Affidavit occurred on May 27, 2016, (Leviss Decl., Ex. B (Tr. of Vidulich Dep.), ECF No. 694-2, at 32:1–3); that he "never did Wireshark" other than for that investigation, (*id.* at 32:18–19; *see also id.* 28:10–13, 32:10–25); that he did not "save the

7

Wireshark capture data" except "[a]s a screen shot," (*id.* at 28:14–19); and that he personally took the Channel One Screenshots, (*id.* at 25:18–20). When asked whether he "delete[d] any of the Wireshark information" from the firm laptop on which he conducted the Wireshark Investigation, (*id.* at 98:19–22), Vidulich testified that he "didn't delete anything," (*id.* at 98:23), and that the Wireshark data described in the Vidulich Affidavit "wasn't saved," (*id.* at 98:24–99:4).

## C. The Channel One PCAP and October 12, 2018 Vidulich Affidavit.

By letter dated September 14, 2018, Infomir claimed that "Plaintiffs, or their counsel, destroyed critical evidence – the data from the network protocol analyzer, a/k/a the 'wireshark' [–] arising from the investigation" conducted by Vidulich. (Infomir Ltr. dated Sept. 14, 2018, ECF No. 657, at 1.) Infomir reported that the Channel One XPS and Channel One PDF that Plaintiffs had produced on June 22, 2018, despite being dated May 24, 2016, contained data "matching the network protocol analysis and investigation that Vidulich claims to have engaged in on May 27, 2016." (*Id.* at 3.) In addition, "[t]he forensic examination of the laptop confirms that wireshark data, in native .pcap format, was at one time saved to the laptop and was subsequently deleted before the laptop was produced for [Infomir's] examination." (*Id.*) Infomir further asserted that Vidulich's testimony "that the wireshark data he captured on the laptop was never saved . . . is demonstrably false," and that, in fact, the native format Wireshark data "*was saved*, converted to a non-native format, 'cleansed' by being saved to a fixed format (pdf/xps) and then deleted." (*Id.*)

Plaintiffs insisted that Vidulich conducted the Wireshark Investigation on May 27, 2016; that he did not save any data from that investigation, aside from the Channel One Screenshots; that Plaintiffs had produced "everything that was retained"; and that "[n]othing was spoliated." (Pl. Ltr. dated Sept. 21, 2018, ECF No. 666, at 3.) They further claimed that the Channel One XPS was created during an "unrelated preliminary Wireshark investigation" that was conducted on May

8

24, 2016, (Sept. 21, 2018 Vidulich Aff., ECF No. 666-2, ¶ 14), and that was "irrelevant" to the validity of the Vidulich Affidavit or the May 27, 2016 investigation described therein, (Pl. Ltr. dated Sept. 21, 2018 at 3).

During a conference on October 5, 2018, Infomir maintained that Vidulich had saved, and then deleted, a native format Wireshark file called "Channel One Capture.pcapng" from the firm laptop. (Tr. of Oct. 5, 2018 Conf., ECF No. 682, at 48:4–52:21.) Plaintiffs' counsel continued to deny that any such file existed, and reiterated that Plaintiffs had turned over "[e]verything that was saved or screen shotted." (*Id.* at 67:13–15.)

Shortly thereafter, on October 12, 2018, Plaintiffs produced the Channel One PCAP, "which consists of a .pcapng file dated May 24, 2016." (Pl. Ltr dated Oct. 18, 2018, Ex. B (Parties' Oct. 12, 2018 Correspondence), ECF No. 686-2, at 7.) In a letter to Infomir, Plaintiffs stated that its earlier "omission" of the Channel One PCAP was "inadvertent." (*Id.* at 2.) They claimed that they "only learned of the purportedly missing .pcap file in [Infomir's] September 14, 2018 letter . . . and only understood its purported significance during the October 5, 2018 conference." (*Id.*) Plaintiffs further claimed that the "purported 'spoliation' issue was created by Infomir's refusal to accept [Plaintiffs'] offer to inspect the laptop" earlier than it did. (*Id.*)

Plaintiffs attached to their letter to Infomir an affidavit from Vidulich dated October 12, 2018. (Oct. 12, 2018 Vidulich Aff., ECF No. 686-2.) According to Vidulich, in connection with Plaintiffs' June 22, 2018 production, he had used a USB flash drive to transfer from the firm laptop to his desktop computer "all data relating to [his] 2016 investigations" in order to produce such data to Infomir. (*Id.* ¶¶ 4–5.) The transferred files included the Channel One PCAP. (*See id.* ¶ 10.) Vidulich attested that he "did not delete any information" during this process, (*id.* ¶ 6), but could not explain why the Channel One PCAP "was not on the laptop" when it was turned over to

9

Infomir for inspection, (*id.* ¶ 11). The Channel One PCAP was somehow overlooked until Vidulich "again reviewed the files that [he] had transferred to [his] desktop computer" and located it. (*Id.* ¶ 10.)

On November 5, 2018, Infomir moved for sanctions pursuant to Rule 37(b) and the Court's inherent powers, arguing that Plaintiffs and their counsel violated multiple discovery orders, made a series of false representations, and engaged in obstructive tactics in order to prevent Infomir from discovering that the Channel One PCAP "fundamentally contradicts" Vidulich's sworn descriptions of the Wireshark Investigation. (Br. in Supp. of Def. Infomir LLC's Mot. for Sanctions, ECF No. 693, at 1–2.) Infomir argues that Plaintiffs' "longstanding pattern of discovery misconduct . . . has irreparably prejudiced [its] ability to take discovery and to prepare its defense," (*id.* at 1), and therefore seeks preclusion of "any aspect" of the Wireshark Investigation, (*id.* at 2).

## II. LEGAL STANDARD

For "nondispositive pretrial matters," the "magistrate . . . may issue orders." *Thomas E. Hoar*, 900 F.2d at 525. "The district court reviews such orders under the 'clearly erroneous or contrary to law' standard." *Id.* (citing § 636(b)(1)(A); Fed. R. Civ. P. 72(a)). Clear error is present when, "upon review of the entire record, [the court is] 'left with the definite and firm conviction that a mistake has been committed.'" *United States v. Snow*, 462 F.3d 55, 72 (2d Cir. 2006) (citation omitted). "A magistrate's ruling is contrary to law if it 'fail[s] to apply or misapplies relevant statutes, case law, or rules of procedure[.]'" *Thai Lao Lignite (Thailand) Co. v. Gov't of Lao People's Democratic Republic*, 924 F. Supp. 2d 508, 512 (S.D.N.Y. 2013) (first alteration in original) (citation omitted). "[M]agistrate judges are afforded broad discretion in resolving nondispositive disputes and reversal is appropriate only if their discretion is abused." *Winfield v. City of New York*, No. 15 Civ. 5236 (LTS), 2017 WL 5054727, at *2 (S.D.N.Y. Nov. 2, 2017)

(alteration in original) (citation omitted). "[A] party seeking to overturn a magistrate judge's decision thus carries a heavy burden." *U2 Home Entm't, Inc. v. Hong Wei Int'l Trading Inc.*, No. 04 Civ. 6189 (JFK), 2007 WL 2327068, at *1 (S.D.N.Y. Aug. 13, 2007).

## III. THE RULING ON INFOMIR'S MOTION FOR SANCTIONS WAS NOT DISPOSITIVE

Plaintiffs argue, as a preliminary matter, that the Opinion is subject to *de novo* review because it, unlike "ordinary discovery orders," is dispositive of certain of Plaintiffs' claims. (Objs. at 1.) Specifically, Plaintiffs assert that the Opinion "excludes all evidence of Infomir's direct streaming of [Plaintiffs'] content from a May 24, 2016 investigation," and therefore "has the same practical effect as a dismissal of [Plaintiffs'] direct infringement claims." (*Id.*) They allege that following the Wireshark Investigation, "Infomir began masking the IP address showing the IP address of the source of video streaming," such that Plaintiffs are unable to replicate the investigation and "obtain further Wireshark captures confirming Infomir to be the source of the illegal streaming." (*Id.* at 3.)

Plaintiffs' argument is without merit. "A ruling is 'dispositive' if it resolves substantive claims for relief rather than mere issues in the litigation." *Am. Stock Exch., LLC v. Mopex, Inc.*, 215 F.R.D. 87, 92 (S.D.N.Y. 2002) (citation omitted). Here, Plaintiffs never previously argued that their direct infringement claims are premised solely upon the Wireshark Investigation. Instead, as Magistrate Judge Moses observed in her Opinion, Plaintiffs consistently asserted that they have "'overwhelming' evidence that Infomir is responsible for 'a massive IPTV streaming operation,'" (Op. at 64 (quoting Dietrich Decl. ¶ 71)), and that they "have much more" than the Vidulich Affidavit and Wireshark Investigation to show that Infomir is a "streaming defendant," (*id.* (quoting Tr. of Oct. 5, 2018 Conf. at 61:15–62:2)). Moreover, the main evidence to be excluded are the Channel One PCAP, which Plaintiffs had initially failed to recognize as

11

probative and falsely claimed until 2018 to be nonexistent, and the Vidulich Affidavit, which Plaintiffs concede to be inaccurate in several material respects. Because the sanction imposed under the Opinion does not prevent Plaintiffs from arguing or presenting other evidence to demonstrate that Infomir engaged in unlawful streaming of Plaintiffs' programming, the Opinion is nondispositive for purposes of 28 U.S.C. § 636(b)(1)(A) and Rule 72(a). Accordingly, the appropriate standard of review of Magistrate Judge Moses's Opinion is the "clearly erroneous or contrary to law" standard.

## IV.    THE OPINION IS AFFIRMED

In the Opinion, Magistrate Judge Moses concluded that discovery sanctions against Plaintiffs and their counsel are warranted, given their "unjustified failure" to obey the April 2018 Discovery Order and July 2018 Discovery Order, (Op. at 60), and their "numerous false statements of fact" about the Wireshark Investigation, the ESI evidencing that investigation, and their discovery compliance, (*id.* at 52).

Plaintiffs appeal Magistrate Judge Moses's Opinion on three primary grounds. First, they argue that they fully complied with Magistrate Judge Moses's discovery orders and their other discovery obligations by producing the Channel One XPS, which they contend is a "reasonably usable form" of the Wireshark data. (Objs. at 21–28.) Second, they assert that Magistrate Judge Moses erred in characterizing Plaintiffs' mistaken recollection of the date of the Wireshark Investigation as "false statements made in bad faith," and in then imposing sanctions based simply on a "dating error." (*Id.* at 30–31.) Finally, Plaintiffs argue that preclusion of the Channel One PCAP, Channel One XPS, and Vidulich Affidavit is an unduly harsh sanction that tips the scale in Infomir's favor. (*Id.* at 32–35.)

12

Magistrate Judge Moses, in a proper exercise of discretion, correctly imposed monetary and preclusion sanctions against Plaintiffs and their counsel.

## A. The Magistrate Judge's Finding that Plaintiffs Violated the Discovery Orders Was Not an Abuse of Discretion.

Magistrate Judge Moses found that Plaintiffs violated the April 2018 Discovery Order and July 2018 Discovery Order by failing to timely produce the Channel One PCAP. (Op. at 44.) The April 2018 Discovery Order required Plaintiffs to produce "any additional documents in their possession, custody, or control (beyond those attached as exhibits to the witness's various declarations) constituting or recording the information and data that Vidulich acquired as a result of his investigatory activities." (Apr. 2018 Disc. Order at 5.) The July 2018 Discovery Order was, according to Magistrate Judge Moses, "even more precise." (Op. at 50.) Issued after Plaintiffs' counsel moved the Wireshark files from the firm laptop to another computer but produced only the Channel One XPS, this order directed Plaintiffs to "conduct a further search of their records, including ESI, and . . . produce any additional documents constituting or recording the information and data that Vidulich acquired as a result of his investigatory activities." (July 2018 Disc. Order ¶ 7.) Magistrate Judge Moses found that the terms of both orders "were abundantly clear for attorneys of ordinary intelligence and minimal technological competence" to understand, (Op. at 44), and that "[t]here can be no genuine dispute . . . that the Channel One PCAP falls squarely within [their] mandate," (*id.* at 46).

Plaintiffs object to Magistrate Judge Moses's finding, arguing that they satisfied their discovery obligations by producing the Channel One XPS, which they assert is a "reasonably usable form" of the Wireshark data. (Objs. at 21–28.) In making this argument, they rely on Federal Rule of Civil Procedure 34(b)(2)(E)(ii), which provides that "[i]f a [discovery] request does not specify a form for producing electronically stored information, a party must produce it in

13

a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms." Fed. R. Civ. P. 34(b)(2)(E)(ii). According to Plaintiffs, because Infomir never requested any particular form of ESI, (Objs. at 21), and because the Channel One XPS is a "version" of the Channel One PCAP with "substantially similar information," (*id.* at 24), Plaintiffs fully complied with their Rule 34 obligations by producing the XPS file, (*id.* at 21–22).

Contrary to Plaintiffs' assertions, although neither the April 2018 Discovery Order nor the July 2018 Discovery Order directed Plaintiffs to produce any PCAP file specifically, it is clear from the language of the orders that Plaintiffs were required to do so. Magistrate Judge Moses issued the April 2018 Discovery Order following the April 19, 2018 discovery conference, during which Infomir expressly requested "the *full data file* that was generated" from the Wireshark Investigation. (Tr. of Apr. 19, 2018 Conf. at 97:9–10 (emphasis added).) By the time she issued the July 2018 Discovery Order, Plaintiffs were aware that the Channel One PCAP existed, given that Vidulich had located and moved the PCAP file, but failed to include it with Plaintiffs' June 22, 2018 production of the Channel One XPS. Plaintiffs were also aware at that time that Infomir's position remained that Plaintiffs had yet to produce "any data from 'any "network protocol analyzer," "Wireshark," or similar investigative process' employed by Vidulich," (July 2018 Disc. Order ¶ 7), and that the XPS file was insufficient.[4]

Moreover, the Channel One XPS is not a "reasonably usable form" of the Channel One PCAP because the XPS file does not contain all of the data recorded during a Wireshark capture. As Magistrate Judge Moses noted, "[t]he 'full data payload,' including 'the actual text and video data that was received during the Wireshark capture,' is preserved only in the native format PCAP

---

[4] Notably, until October 5, 2018, Plaintiffs insisted that the Channel One XPS was created during an "unrelated preliminary Wireshark investigation," (Sept. 21, 2018 Vidulich Aff. ¶ 14), and was "irrelevant" to the accuracy of the Vidulich Affidavit, (Pl. Ltr. dated Sept. 21, 2018 at 3).

file created when the capture occurs." (Op. at 17 n.9 (quoting Leviss Decl., Ex. A (Rucinski Report), at 9).) Plaintiffs, in fact, concede that "a .PCAP file has more information," (Objs. at 24), that "the .XPS does not contain the actual video stream that Vidulich viewed," (*id.* at 25), and that "the video stream is not extractable in the .XPS as it is in the .PCAP," (*id.*) Plaintiffs' expert testified that the PCAP file is "the most important evidence" of a Wireshark investigation, and that "if [he] wanted to have all of the information available from the Wireshark, [he] would produce the PCAP." (Tr. of Feb. 6, 2019 Hr'g at 117:25 – 118:2). Plaintiffs try to argue that the Channel One XPS "contained the IP address necessary to confirm Vidulich's conclusion that Infomir was the source of the illegal stream," (Objs. at 4), and that "[a]ny additional features do not help Infomir's case," (*id.* at 19). However, whether any "additional features" would help Infomir's case was not for Plaintiffs to decide. Instead, as set forth in the two discovery orders and made clear during the April 19, 2018 conference, Plaintiffs were obligated to produce the *full* Wireshark data.[5]

Accordingly, Magistrate Judge Moses acted well within her broad discretion in finding that Plaintiffs violated the April 2018 Discovery Order and July 2018 Discovery Order.

## B. The Magistrate Judge's Finding that Plaintiffs Made False Statements in Bad Faith Was Neither Cleary Erroneous nor Contrary to Law.

In the Opinion, Magistrate Judge Moses held that Plaintiffs made a series of false statements in bad faith that "significantly delayed . . . and nearly derailed" Infomir's efforts to obtain "highly probative ESI" pertaining to the Wireshark Investigation. (Op. at 53.) She found that Plaintiffs misrepresented, *inter alia*, that (1) the Wireshark Investigation was conducted on

---

[5] Moreover, even assuming, *arguendo*, that the Channel One XPS is a reasonably usable form of the Wireshark data, Plaintiffs produced the Channel One XPS on June 22, 2018—three weeks after the deadline set by the April 2018 Discovery Order. Accordingly, Plaintiffs failed to comply fully, at the very least, with the April 2018 Discovery Order.

May 27, 2016, when it was actually conducted three days earlier; (2) Vidulich did not save any Wireshark data other than the Channel One Screenshots, when in fact, he manually saved all of the data captured by Wireshark on May 24, 2016 to the firm laptop in native PCAP format, and named the file "Channel One Capture.pcapng"; and (3) Plaintiffs' counsel had produced, prior to October 12, 2018, "everything" in connection with the Wireshark Investigation, when, in reality, Vidulich had moved the Channel One PCAP from the firm laptop to a firm desktop computer on or around June 22, 2018 and left it there, unproduced, for nearly another four months. (*Id.* at 53– 54.) Magistrate Judge Moses found that these misstatements rose to the level of bad faith because many of them "related to 'simple but material factual matters[]' that required no 'specialized technical knowledge' to report accurately (or to correct if initially misstated)," (*id.* at 53 (citation omitted)), and because Plaintiffs continued to profess full compliance with their discovery obligations without making reasonable inquiries into the explanation for the inconsistencies, (*id.* at 54–57).

Although Plaintiffs admit that the Vidulich Affidavit contained errors, including, among other things, the date of the Wireshark Investigation, they claim that such errors were "harmless." (Objs. at 5.) They assert that Magistrate Judge Moses mischaracterizes the "mistaken memory" of Vidulich and Plaintiff's counsel, and the "subsequent representations to the Court based on those defective memories," as statements made in bad faith. (*Id.* at 30.) They further contend that Infomir suffered no prejudice since Infomir's experts "identified the dating error from the .XPS file." (*Id.* at 31.)

Plaintiffs' argument is unavailing. The various false statements that Plaintiffs made in connection with the Wireshark Investigation were not merely "a dating error," as so they describe. (*See* Objs. at 30.) Instead, their misrepresentations pertained to key factual assertions on which

16

Plaintiffs relied throughout this action, including to support their motion for leave to amend their original complaint and two separate motions for summary judgment. (*See* Mot. to Amend Mem. at 5–8; Summ. J. Mem. at 6; Mem. of Law in Supp. of Pls.' Mot. for Summ. J. Against Infomir LLC, ECF No. 269, at 14.) In particular, as Magistrate Judge Moses noted in the Opinion, "both sides' experts agree that the key factual assertion in the Vidulich Affidavit – that he 'trace[d] the source' of an unauthorized IPTV stream of one of plaintiffs' channels to a specific domain, 'freetvstat.iptv.infomir.com.ua,' affiliated with Infomir, with an IP address located in the United States – was inaccurate." (Op. at 4 (alteration in original).) Rather, the "long-withheld Channel One PCAP shows that 'freetvstat.iptv.infomir.com.ua' was not the source of the unauthorized video stream." (*Id.*) Moreover, even if Plaintiffs' misrepresentations began as innocent errors, rather than take timely and meaningful steps to consider the alleged errors once brought to Plaintiffs' attention, Plaintiffs persistently insisted that they were in full compliance with their discovery obligations. As such, Magistrate Judge Moses did not err in finding that "these statements were made so cavalierly, with so little regard for counsel's duties of candor and diligence, 'as to rise to the level of bad faith.'" (Op. at 54 (quoting *Metro. Opera Ass'n, Inc. v. Local 100, Hotel Emps. & Rest. Emps. Int'l Union*, 212 F.R.D. 178, 224 (S.D.N.Y. 2003), *adhered to on reconsideration*, No. 00 Civ. 3613 (LAP), 2004 WL 1943099 (S.D.N.Y. Aug. 27, 2004)).) It was not unreasonable for Magistrate Judges Moses to consider the representations to be deliberate, or at a minimum, reckless.

## C. Preclusion Was Properly Considered as the Appropriate Sanction.

Magistrate Judge Moses concluded that the appropriate sanction for Plaintiffs' discovery violations are monetary sanctions and preclusion of the Vidulich Affidavit, any other report of, testimony about, or opinions based on the Wireshark Investigation, and any data or information

17

captured during the Wireshark Investigation. (Op. at 70–71.) In making this determination, Magistrate Judge Moses reviewed the four factors that courts typically consider when exercising their discretion to impose Rule 37 sanctions: "(1) the willfulness of the non-compliant party or the reason for noncompliance; (2) the efficacy of lesser sanctions; (3) the duration of the period of noncompliance, and (4) whether the non-compliant party had been warned of the consequences of . . . noncompliance." *Agiwal v. Mid Island Mortg. Corp.*, 555 F.3d 298, 302 (2d Cir. 2009) (citation omitted). (Op. at 65–70.) She also considered "the prejudice that would be occasioned to the discovered party's case by the proposed preclusion." (*Id.* at 65 (quoting *Louis Vuitton Malletier v. Dooney & Bourke, Inc.*, No. 04 Civ. 5316 (RMB) (MHD), 2006 WL 3476735, at *8 (S.D.N.Y. Nov. 30, 2006)).)

Magistrate Judge Moses found that all five factors weigh in favor of preclusion here. (Op. at 65–70.) With respect to the first *Agiwal* factor—Plaintiffs' willfulness and reasons for noncompliance—Magistrate Judge Moses determined that the April 2018 Discovery Order and July 2018 Discovery Order were clear, that Plaintiffs understood them, and that Plaintiffs' noncompliance with the orders was not due to factors beyond their control. (*Id.* at 66.) As to the second *Agiwal* factor—the efficacy of lesser sanctions—Magistrate Judge Moses found that neither a monetary award alone, nor, per Plaintiffs' suggestion, a second deposition of Vidulich, is likely to adequately deter future misconduct by Plaintiffs or sufficiently ameliorate the prejudice that Infomir has suffered. (*Id.* at 66–68.) She found that the third factor—the duration of the period of noncompliance—also favors preclusion, considering that Plaintiffs were noncompliant with their discovery obligations for more than two years. (*Id.* at 69.) As to the fourth *Agiwal* factor, Magistrate Judge Moses observed that Plaintiffs were adequately warned about the consequences of noncompliance, given that they are "no strangers to discovery sanctions" and

18

have "frequently moved for severe penalties" against Defendants. (*Id.* at 70.) Finally, she concluded that Plaintiffs would not be unduly prejudiced by preclusion of the Vidulich Affidavit, which Plaintiffs concede is "inaccurate in several key respects," or of the Channel One Screenshots, which Plaintiffs admit "to be non-probative of their claims." (*Id.* at 65.) She further observed that Plaintiffs have made "no serious effort" to demonstrate that exclusion of the Channel One PCAP would prejudice them, and "no effort at all to show prejudice disproportionate to the gravity of their misconduct." (*Id.*)

Plaintiffs argue that Magistrate Judge Moses "overlooked the four factors in considering preclusion: (1) the party's explanation for the failure to comply; (2) the importance of the excluded evidence; (3) the prejudice suffered by the opposing party; and (4) the possibility of a continuance." (Objs. at 8); *see also Softel, Inc. v. Dragon Med. & Sci. Commc'ns, Inc.*, 118 F.3d 955, 961 (2d Cir. 1997) (listing factors).[6] First, they claim that the Opinion ignored Plaintiffs' explanation, "supported fully in the record," that they complied with the April 2018 Discovery Order and July 2018 Discovery Order by producing the Channel One XPS. (Objs. at 8–9.) Second, they argue that the Opinion "overlooked that the evidence is so important to the direct infringement claim that its exclusion would result in dismissal of the direct infringement claim." (*Id.* at 9.) Third, Plaintiffs insist that because "Infomir had previously been provided with all it asked for in the .XPS version," Infomir will suffer no prejudice absent preclusion. (*Id.*) Finally, according to Plaintiffs, the Opinion disregarded the fact that all expert discovery has been stayed and that no such discovery has yet taken place. (*Id.*)

---

[6] Aside from a one-line assertion that the Opinion "erroneously imposes legal fees and costs on [Plaintiffs] and [Plaintiffs' counsel]," (Objs. at 3), Plaintiffs do not specifically object to the imposition of monetary sanctions.

Notwithstanding Plaintiffs' contentions otherwise, Magistrate Judge Moses thoroughly examined all factors relevant for evaluating whether preclusion is warranted. She considered, for example, Plaintiffs' "explanation for the failure to comply," (*see id.* at 8), which overlaps with the first *Agiwal* factor. She concluded, after a careful review of the language of the two discovery orders and the record in this case, that Plaintiffs were required to produce the Channel One PCAP but persistently failed to do so, and that such noncompliance was willful. (Op. at 65–66.) She also assessed "the importance of the excluded evidence" and "the prejudice suffered by the opposing party," (*see* Objs. at 8), and determined that Plaintiffs have not sufficiently demonstrated that they would be unduly prejudiced by the preclusion order, (Op. at 65), whereas Infomir *was* prejudiced by Plaintiffs' discovery misconduct, including by not being able to use the Channel One PCAP "to better formulate and execute its overall litigation strategy," (*see id.* 67–68). Finally, although Plaintiffs may be correct that the Opinion does not expressly discuss "the possibility of a continuance," (Objs. at 8), Magistrate Judge Moses did sufficiently consider the efficacy of sanctions lesser than preclusion, (Op. at 66–68.)

In short, that Magistrate Judge Moses rejected Plaintiffs' arguments does not mean that she "overlooked" such arguments or that she abused her discretion. Rather, given the "broad discretion [that courts have] in fashioning an appropriate sanction," *Residential Funding Corp. v. DeGeorge Fin. Corp.*, 306 F.3d 99, 113 (2d Cir. 2002), and the circumstances of this case, Magistrate Judge Moses's preclusion order was neither clearly erroneous nor contrary to law.

## V. CERTIFICATION FOR INTERLOCUTORY APPEAL IS NOT WARRANTED

Plaintiffs move pursuant to 28 U.S.C. § 1292 for certification of the Opinion for interlocutory appeal to the Second Circuit Court of Appeals. Section 1292(b) provides that a district court may certify an interlocutory appeal if the order being appealed (1) "involves a

controlling question of law," (2) "as to which there is substantial ground for difference of opinion," and (3) "an immediate appeal from the order may materially advance the ultimate termination of the litigation." 28 U.S.C. § 1292(b). "The moving party has the burden of establishing all three elements." *Adar Bays, LLC v. Aim Expl., Inc.*, 310 F. Supp. 3d 454, 456 (S.D.N.Y. 2018) (citation omitted). "[E]ven when the elements of section 1292(b) are satisfied, the district court retains 'unfettered discretion' to deny certification." *Id.* (citation omitted). The Second Circuit has "repeatedly cautioned [that] use of this certification procedure should be strictly limited because 'only "exceptional circumstances [will] justify a departure from the basic policy of postponing appellate review until after the entry of a final judgment.""" *In re Flor*, 79 F.3d 281, 284 (2d Cir. 1996) (quoting *Klinghoffer v. S.N.C. Achille Lauro*, 921 F.2d 21, 25 (2d Cir. 1990)) (second alteration in original). Here, Plaintiffs argue that certification to the Second Circuit is warranted because the Opinion "imposes the harsh sanction of preclusion on clients for law firm errors unknown to the clients where there is no evidence that [the] clients violated any court orders," and therefore "raises an important issue of first impression." (Objs. at 35.)

Certification to the Court of Appeals is not warranted because the Opinion raises no "issue of first impression." As Infomir correctly notes, courts have consistently held that sanctions may be imposed against a party based upon the misconduct of the party's counsel. (Opp'n to Objs. at 12–13); *see, e.g.*, *Link v. Wabash R.R. Co.*, 370 U.S. 626, 633–34 (1962) ("There is certainly no merit to the contention that dismissal of petitioner's claim because of his counsel's unexcused conduct imposes an unjust penalty on the client. Petitioner voluntarily chose this attorney as his representative in the action, and he cannot now avoid the consequences of the acts or omissions of this freely selected agent."); *Am. Cash Card Corp. v. AT&T Corp.*, 210 F.3d 354, 2000 WL 357670, at *5 (2d Cir. Apr. 6, 2000) (summary order) ("[A]s we have noted in reference to Rule

21

37(b) sanctions, '[a] litigant chooses counsel at his peril, and here, as in countless other contexts, counsel's disregard of his professional responsibilities can lead to extinction of his client's claim.'" (second alteration in original) (quoting *Cine Forty-Second Street Theatre Corp. v. Allied Artists Pictures Corp.*, 602 F.2d 1062, 1068 (2d Cir. 1979))); *Metro. Opera Ass'n*, 2004 WL 1943099, at *25 ("It has long been the law in this Circuit that a client may be sanctioned for his lawyer's misconduct."). "[A]cts and omissions of counsel are normally wholly attributable to the client." *Cine*, 602 F.2d at 1068 n.10 (citing *Link*, 370 U.S. 626). No "issue of first impression" is therefore raised by Magistrate Judge Moses's preclusion order. Plaintiffs' request for certification for interlocutory appeal to the Second Circuit is denied.

## VI.   CONCLUSION

Plaintiffs' objections are OVERRULED. Magistrate Judge Moses's Reconsideration Opinion, (ECF No. 779), is AFFIRMED.

Dated: New York, New York
       March 26, 2020

SO ORDERED.

*George B. Daniels*

GEORGE B. DANIELS
United States District Judge

22