UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK



USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 4/3/20

JOINT STOCK COMPANY CHANNEL
ONE RUSSIA WORLDWIDE, et al.,

     Plaintiffs,

   -against-

INFOMIR LLC, et al.,

     Defendants.

16-CV-1318 (GBD) (BCM)

**OPINION AND ORDER**

**BARBARA MOSES, United States Magistrate Judge.**

Now before the Court is plaintiffs' motion (Dkt. No. 748) for leave to file a Second Amended Complaint (SAC) (Dkt. No. 751). The motion was filed on May 24, 2019, more than three years after the commencement of this action and almost ten months after the close of fact discovery. Plaintiffs propose to "amend and supplement" their First Amended Complaint (FAC) (Dkt. No. 211) by (1) dropping eight unserved or previously-dismissed defendants; (2) dropping four of the twelve claims asserted in the FAC (two of which were previously dismissed against some but not all defendants); (3) "amending and supplementing particularized allegations" against defendant Infomir LLC (Infomir); and (4) adding three new defendants: V-Net Inc. d/b/a Infomir USA (V-Net), a defunct corporation associated with Infomir; Advanced Business Integration Network Corp. (ABI Net), a corporation associated with defendant S.K. Management of New York Inc. (S.K. Management); and Samuel Katsman, the president and owner of S.K. Management and ABI Net. *See* Pl. Mem. (Dkt. No. 750) at 1; Declaration of Raymond J. Dowd (Dowd Decl.) (Dkt. No. 749) Ex. 1 (redline comparing plaintiffs' proposed SAC with the FAC).

Infomir and S.K. Management oppose plaintiffs' motion on grounds of delay, bad faith, undue prejudice, and futility. Infomir Mem. (Dkt. No. 761) at 5-10; S.K. Management Mem. (Dkt. No. 764) at 4-7. For the reasons that follow, plaintiffs' motion will be denied.

# I.    BACKGROUND[1]

Plaintiffs Joint Stock Company "Channel One Russia Worldwide," Closed Joint Stock Company "CTC Network," Closed Joint Stock Company "TV DARIAL," Closed Joint Stock Company "New Channel," Limited Liability Company "Rain TV-Channel," and Limited Liability Company "Global Entertainment TV" (f/k/a Limited Liability Company "Comedy TV") (together, plaintiffs or Broadcasters) are a group of Russian television broadcasters. They filed this action on February 19, 2016, to redress what they characterize as the "pirating" and resale of their programming to Russian-speaking consumers in the United States, over the internet, without authorization or license fees. Compl. (Dkt. No. 1) ¶¶ 1-25.

## A.    The Complaint

Plaintiffs originally sued nine defendants, including Infomir[2] and S.K. Management,[3] charging generally that all defendants engaged in the "unauthorized interception, copying and

---

[1] The factual background and procedural history of this case are described in more detail in a series of prior opinions and orders, including *Joint Stock Co. Channel One Russia Worldwide v. Infomir LLC*, 2017 WL 696126 (S.D.N.Y. Feb. 15, 2017), *report and recommendation adopted*, 2017 WL 2988249 (S.D.N.Y. Mar. 27, 2017); *Joint Stock Co. Channel One Russia Worldwide v. Infomir LLC*, 2018 WL 2932725 (S.D.N.Y. June 12, 2018); *Joint Stock Co. Channel One Russia Worldwide v. Infomir LLC*, 2018 WL 4681616 (S.D.N.Y. Sept. 11, 2018), *report and recommendation adopted*, 2018 WL 4666069 (S.D.N.Y. Sept. 28, 2018); *Joint Stock Co. Channel One Russia Worldwide v. Infomir LLC*, 2018 WL 4907911 (S.D.N.Y. Sept. 25, 2018); *Joint Stock Co. Channel One Russia Worldwide v. Infomir LLC*, 2018 WL 6712769 (S.D.N.Y. Nov. 30, 2018); and *Joint Stock Co. Channel One Russia Worldwide v. Infomir LLC*, 2019 WL 4727537 (S.D.N.Y. Sept. 26, 2019), *objections overruled*, 2020 WL 1479018 (S.D.N.Y. Mar. 26, 2020). Familiarity with these decisions is assumed. This Opinion and Order includes only those facts most relevant to the instant motion to amend.

[2] Infomir is a New York limited liability corporation (LLC) with offices in Brooklyn. Compl. ¶ 55; FAC ¶ 30 & Ex. 5.

[3] S.K. Management was originally sued under the name "Goodzone TV" and described only as a "for profit organization," headquartered in Brooklyn, which offered a streaming TV service via its website www.gudzon.tv. Compl. ¶ 62; FAC ¶ 44. On February 9, 2018, with the consent of all parties, S.K. Management – which acknowledges that it owns and operates www.gudzon.tv – was added as a defendant in the place and stead of "Goodzone TV," and the caption of this action was updated accordingly. (Dkt. No. 523.) According to the website of the New York Department of

distribution" of plaintiffs' encrypted programming "to paying consumers in this judicial district and throughout the United States," in violation of, *inter alia*, § 605(a) of the Federal Communications Act (FCA), 42 U.S.C. § 605(a); the Copyright Act, as amended by the Digital Millennium Copyright Act (DMCA), 17 U.S.C. § 1201 *et seq.*; § 43 of the Lanham Act, 15 U.S.C. § 1125; and § 349 of the New York General Business Law (GBL). Compl. ¶¶ 6, 92-156. Plaintiffs' theory – in broad outline – was that all defendants "hack[ed]" Broadcasters' encrypted satellite transmissions and re-transmitted the pirated content to paying subscribers in the United States through their own unlicensed internet protocol television (IPTV) streaming services. *Id.* ¶ 86. In addition, plaintiffs alleged that Infomir was "selling receivers," in the form of set-top boxes (STBs), "with which it is possible to receive Plaintiffs' channels without authorization." *Id.* ¶ 56.

### B.  The First Amended Complaint

Both Infomir and S.K. Management filed motions to dismiss the Complaint pursuant to Fed. R. Civ. P. 12(b)(6). (Dkt. Nos. 63, 82.) On June 24, 2016, in response to Infomir's motion, plaintiffs filed a cross-motion (Dkt. No. 78) for leave to amend their original pleading, supported in part by an affidavit from Christopher Vidulich (Vidulich Aff.) (Dkt. No. 80), a paralegal employed by plaintiffs' counsel, containing new factual assertions about Infomir, its STBs, and the source of the unauthorized IPTV transmissions of plaintiffs' programming that Vidulich viewed using an Infomir STB.

In a Report and Recommendation dated February 15, 2017, I recommended granting plaintiffs' cross-motion to amend pursuant to Fed. R. Civ. P. 15(a)(2). *Joint Stock Co. Channel One Russia Worldwide*, 2017 WL 696126, at *24. I concluded that there was no undue delay on

---

State, Division of Corporations, S.K. Management is an active New York corporation with an address in Manhattan. *See* https://www.dos.ny.gov/corps/bus_entity_search.html (last visited April 3, 2020).

the part of plaintiffs or undue prejudice to defendants from permitting amendment, in part because plaintiffs filed their cross-motion merely "24 days after Infomir filed its motion to dismiss," and because "[n]o defendant has answered, no Rule 16 conference has been held, and no discovery deadlines have been established." *Id.*, at *2. I also noted that plaintiffs sought to amend "in order to strengthen their existing claims with additional factual allegations, rather than to add new claims or parties." *Id.* On March 27, 2017, the Hon. George B. Daniels, United States District Judge, adopted my Report and Recommendation and granted plaintiffs leave to amend. *Joint Stock Co. Channel One Russia Worldwide*, 2017 WL 2988249, at *1-2.

On March 30, 2017, the parties filed a joint pre-conference report pursuant to Fed. R. Civ. P. 26(f). (Dkt. No. 206.) Under the heading, "Proposed Deadline for Moving to Join Additional Parties or to Further Amend the Pleadings," the parties proposed "that Broadcasters shall file an Amended Complaint including any additional parties on or by April 17, 2017 which is twenty-one (21) days after the issuance of District Court's Memorandum and Order[.]" (*Id.* at 4.) In the event, plaintiffs filed their FAC on April 5, 2017.

The FAC names a total of thirteen defendants, including Infomir, S.K. Management, and four other defendants (not previously sued) allegedly affiliated with Infomir: Infomir GmbH, Alexander Marahovsky, Evgeni Levitin, and Telecommunications Technologies Ltd. (Teletec) (together with Infomir, the Infomir Defendants). FAC ¶¶ 30-34.[4] The amendment doubled the

---

[4] Infomir GmbH is a German corporation headquartered in Frankfurt. FAC ¶ 31. Teletec is a Ukranian entity headquartered in Odessa. *Id.* ¶ 32. Marahovsky and Levitin allegedly manage Infomir GmbH and/or control Teletec. *Id.* ¶¶ 33-34. On January 3, 2018, plaintiffs voluntarily dismissed their claims against Marahovsky, Levitin, and Teletec. (Dkt. No. 492.) On September 28, 2018, acting on my recommendation, Judge Daniels dismissed plaintiffs' claims against Infomir GmbH for lack of personal jurisdiction, *see Joint Stock Co. Channel One Russia Worldwide*, 2018 WL 4666069, at *1, leaving only one "Infomir Defendant" – the New York LLC – as a party to this action.

length of plaintiffs' pleading, from 29 pages (containing 156 paragraphs and ten causes of action) to 59 pages (containing 316 paragraphs and twelve causes of action).

According to the FAC, all defendants:

intercept Broadcasters' encrypted foreign satellite transmissions, transform the transmissions into digital data, then re-transmit the channels over the internet to paying subscribers in the U.S. using password-protected streaming services.

FAC ¶ 1. In addition, the Infomir Defendants allegedly "manufacture and sell set-top boxes which are configured and marketed to facilitate piracy," including "a version of the set top boxes sold with pre-loaded software 'apps' that permit subscribers to launch browsers from the set-top boxes permitting subscribers to view Broadcasters' channels over streaming services." *Id*. Thus, according to plaintiffs, the Infomir Defendants "both operate a pirate streaming service *and* manufacture and sell equipment and software designed to assist and profit from other pirates, essentially a 'piracy startup kit.'" *Id*. (emphasis in the original).

The FAC contains detailed allegations concerning Infomir's "piracy startup kit," including its "Aura" and "MAG" STBs, which according to plaintiffs are "designed primarily to facilitate U.S. subscribers of Infomir and others to receive versions of [plaintiffs'] Programming that have been intercepted from satellite communications without authorization." FAC ¶¶ 30, 35-36, 113-159. The Aura STBs allegedly arrive "pre-loaded" with "software 'apps' that permit subscribers to launch browsers from the set-top boxes permitting subscribers to view Broadcasters' channels over streaming services." FAC ¶ 1; *see also id*. ¶ 119 ("The Infomir Defendants also sell set-top boxes under the AURA brand name that are pre-loaded with apps that connect directly to unauthorized

versions of the Programming supplied by the Infomir Defendants that have been intercepted and retransmitted from decrypted satellite communications.").[5]

The MAG STBs are not "pre-loaded," but the Infomir Defendants use them to "encourage piracy," (a) by marketing them to other "pirates" (including the fifty "John Doe" defendants listed in the FAC) and encouraging "such John Does to set up piracy operations," and (b) by encouraging consumers who own the MAG STBs to purchase "subscriptions to unauthorized streams" from the so-called Streaming Defendants (such as S.K. Management) or from John Doe pirates. FAC ¶ 116. Infomir also "design[s] Stalker middleware and servers that are primarily designed to assist large scale infringers in re-transmitting unauthorized satellite communications to U.S. consumers by providing a means by which infringers can issue passwords, bill consumers, and provide access to streamed content to [STBs] sold by Infomir." *Id.* ¶¶ 37-38. The same "Stalker middleware" allows pirates to "efficiently put Broadcasters' content behind a paywall and to bill for it on a large commercial scale[.]" *Id.* Plaintiffs allege that all of Infomir's products – including its STBs and software – lack "industry-standard antipiracy measures," *id.* ¶ 1, and assert that those products are

---

[5] Plaintiffs' allegations concerning the Aura STBs and Infomir's "pirate streaming service" are based largely on the Vidulich Affidavit, which is attached to the FAC as an exhibit. *See* FAC ¶ 197 & Ex. 15. In his affidavit, Vidulich attests that on May 13, 2016, using an Aura STB, he was "able to view several Russian Language television broadcasts," including Channel One and other channels owned by plaintiffs. FAC Ex. 15, ¶¶ 11-15. Vidulich further attests that on May 27, 2016, he "analyze[d] the source of the content being streamed into the AURA HD box" using a "network protocol analyzer" known as "Wireshark," and was able to determine that the Channel One video stream was coming from "freetvstat.iptv.infomir.com.ua," with an IP address "located within the United States." *Id.* ¶¶ 18-25, 30. On September 26, 2019, after finding that plaintiffs improperly withheld the electronically stored information (ESI) underlying the Vidulich Affidavit from discovery – and that the withheld ESI showed Vidulich's key factual assertions to be "inaccurate" – the Court sanctioned plaintiffs by, *inter alia*, precluding them from relying on the Vidulich Affidavit or any other evidence concerning the underlying Wireshark investigation. *See Joint Stock Co. Channel One Russia*, 2019 WL 4727537, at *2, *34.

"primarily designed for the purposes of circumventing the Broadcasters' technological measures controlling access to Broadcasters' copyrighted works." FAC ¶ 256.

The FAC asserts claims for (1) unauthorized publication or use of communications in violation of the FCA, 47 U.S.C. § 605(a); (2) sales of devices primarily for the use of obtaining access to unauthorized satellite communications in violation of the FCA, 47 U.S.C. § 605(e)(4); (3) unauthorized interception, reception, and assistance in intercepting or receiving broadcasts in violation of 47 U.S.C. § 553; (4) unauthorized decryption or circumvention of technological measures in violation of the DMCA, 17 U.S.C. § 1201; (5) trafficking in decryption technology in violation of the DMCA, *id.*; (6) trademark infringement in violation of § 43(a) of the Lanham Act, 15 U.S.C. § 1125(a); (7) false advertising in violation of § 43(a) of the Lanham Act, *id.*; (8) copyright infringement in violation of the Copyright Act, 17 U.S.C. § 101 *et seq.*; (9) secondary copyright infringement; (10) deceptive business acts and practices in violation of GBL § 349; (11) unfair competition in violation of New York common law; and (12) a declaratory judgment. FAC ¶¶ 204-316. Plaintiffs assert each of their 12 causes of action against all defendants, except for Count II (alleging sales of devices primarily for the use of obtaining access to unauthorized satellite communications, in violation of the FCA), which runs only against the Infomir Defendants. *Id.*[6]

On May 3 and 4, 2017, Infomir and S.K. Management, respectively, answered the FAC. (Dkt. Nos. 251, 253.)

---

[6] On June 24 and July 11, 2016, while Infomir's motion to dismiss plaintiffs' Complaint was pending, plaintiffs filed Notices of Voluntary Dismissal, pursuant to Fed. R. Civ. P. 41(a)(1)(A)(i), dismissing Counts 8 and 9 of the original Complaint (for violations of GBL § 349 and unfair competition in violation of New York common law) as against Infomir and S.K. Management. (Dkt. Nos. 77, 87.) Nevertheless, plaintiffs repleaded those claims as Counts 10 and 11 of the FAC, which are asserted against "all defendants." FAC ¶¶ 303-13.

### C. Discovery

Fact discovery in this action was protracted and contentious. The Court's Initial Case Management and Scheduling Order, dated April 20, 2017 (Case Management Order) (Dkt. No. 236), directed the parties to complete fact depositions by October 6, 2017, and complete all fact discovery by November 17, 2017. Thereafter:

1.  By Order dated October 13, 2017, I extended the deadline for fact depositions to November 20, 2017, and for all fact discovery to January 2, 2017 (Dkt. No. 378);

2.  By Order dated November 20, 2017, I extended the deadline for fact depositions to February 16, 2018, and for all fact discovery to March 16, 2018 (Dkt. No. 429);

3.  By Order dated February 13, 2018, I extended the deadline for fact depositions to April 15, 2018, and for all fact discovery to May 15, 2018 (Dkt. No. 525);

4.  By Order dated April 25, 2018, I extended the deadline for fact discovery to May 31, 2018, primarily so that the parties could complete four enumerated outstanding depositions (Dkt. No. 569 at 12); and

5.  By Order dated July 3, 2018, I extended the deadline for fact discovery to July 31, 2018, for the limited purpose of completing certain discovery authorized by that Order. (Dkt. No. 617 at 7.)

During fact discovery, plaintiffs took the deposition of S.K. Management's president and owner, Katsman, twice: on December 21, 2017, and again on April 13, 2018. Dowd Decl. Exs. 13, 14. As relevant here, Katsman testified during his December 21, 2017 deposition that ABI Net was a company he co-created that "grew into other businesses." Dowd Decl. Ex. 13 at 81:10-21. Asked whether ABI Net was still active as of the date of his deposition, Katsman responded: "It's a good question. It's probably, as you called it – as you used the word, dormant." *Id*. at 81:22-82:1. Asked whether ABI Net led "to the formation of any other corporations or LLCs," he replied that it did not. *Id*. at 82:9-12. During his April 13, 2018 deposition, when presented with a document from

the New York State Division of Corporations showing that ABI Net was still an active corporation, Katsman testified: "But it's not active. It has not been closed, but it's not doing anything." Dowd Decl. Ex. 14 at 187:4-14. Katsman also testified that ABI Net does not "do anything" with "the Goodzone project," that is, S.K. Management's streaming service offered through www.gudzon.tv. *Id.* at 187:20-23.

Infomir's CEO, Grigoriy Goldfedib, also sat for deposition twice: on January 16 and again on April 20, 2018. *See* Dowd Decl. Ex. 7 (limited excerpts of Jan. 16, 2018 deposition); Goldfedib Jan. 16, 2018 Dep. Tr. (Dkt. No. 527-12); Goldfedib April 20 Dep. Tr. (Dkt. No. 574-8). As relevant here, Goldfedib testified during his January 16, 2018 deposition that V-Net was a small business he ran between 2002 and a "[c]ouple of years ago," with no employees, which "bought stuff on eBay and Amazon and then resold it on eBay and Amazon." Goldfedib Jan. 16, 2018 Dep. Tr. at 36:6-37:19, 40:4-5. Goldfedib also testified that, though there was no legal entity called "Infomir USA," he sometimes "put Infomir USA to specify this is an entity in the United States of America." *Id.* at 166:2-9. When asked, "So when you used the term 'Infomir USA,' is that the equivalent of Infomir LLC?" Goldfedib responded: "This is correct." *Id.* at 166:10-12.

During fact discovery, plaintiffs filed – and then withdrew – three separate motions for partial summary judgment. On May 17, 2017, they sought partial summary judgment against S.K. Management. (Dkt. Nos. 259-64.) On May 23, 2017, they sought partial summary judgment against Infomir. (Dkt. Nos. 266-69.) On February 9, 2018, plaintiffs withdrew both motions "without prejudice to plaintiffs' rights to seek summary judgment after additional discovery has been conducted." (Dkt. No. 522.) On March 23, 2018, plaintiffs filed another motion for partial summary judgment, against Infomir (Dkt. Nos. 547-52), only to request the withdrawal of that motion during a discovery conference on October 5, 2018. By Order dated October 9, 2018, the

Court noted that each of the withdrawn summary judgment motions "imposed unnecessary burdens and costs on the opposing parties," and concluded, "In order to minimize such inefficiencies going forward, future summary judgment motions must await the close of all discovery." (Dkt. No. 679.)

Expert discovery, like fact discovery, has been protracted. Originally scheduled to close on February 28, 2018 (Dkt. No. 236), the expert discovery period has been extended (Dkt. Nos. 617, 626, 658), stayed (during and for a short period after the pendency of Infomir's successful motion for discovery sanctions against plaintiffs, described in more detail below) (Dkt. Nos. 679, 796), and extended further, both in response to the parties' requests and, most recently, due to the COVID-19 national health emergency. (Dkt. Nos. 798, 800, 806, 807, 811.) As of the date of this Order, the expert discovery period is scheduled to close on June 1, 2020. (Dkt. Nos. 806, 811.)

### D.  The Vidulich Affidavit and Infomir's Motion for Sanctions

Beginning in late 2017, Infomir sought – and this Court repeatedly ordered plaintiffs to produce – the data and documents, including ESI, underlying the May 2016 Wireshark investigation first described in the Vidulich Affidavit. As noted above, Vidulich concluded that Infomir unlawfully "streamed" unlicensed content, including Channel One, from "freetvstat.infomir.com.ua," through its Aura STBs, to consumers in the United States. Vidulich Aff. ¶¶ 19-25, 30. Plaintiffs attached the Vidulich Affidavit to their amended pleading, *see* FAC Ex. 15, and relied on it to support both of their summary judgment motions against Infomir. (Dkt. No. 269 at 14; Dkt. No. 552 at 6.) However, they did not produce the native-format electronic "packet capture" file (PCAP File) that constituted the "only complete record" of the Wireshark investigation until October 12, 2018, after representing repeatedly that it did not exist. *See Joint Stock Co. Channel One Russia Worldwide,* 2019 WL 4727537, at *1-2, *16. Once produced, the

PCAP File established that "'freetvstat.infomir.com.ua' was *not* the source of any of the video content that Vidulich viewed" during the Wireshark investigation. *Id*. at *16 (emphasis added).

On November 5, 2018, Infomir moved for sanctions (Dkt. No. 692), and on September 26, 2019, after an evidentiary hearing, the Court granted that motion, concluding that plaintiffs violated two Court orders directing them to produce the ESI underlying the Wireshark investigation and made a series of false statements (many under oath), in bad faith, "about the Wireshark Investigation, the ESI evidencing that investigation, and their discovery compliance." *Joint Stock Co. Channel One Russia Worldwide,* 2019 WL 4727537, at *21-28. The Court awarded monetary sanctions to Infomir and precluded plaintiffs "from introducing or relying on the June 24, 2016 Vidulich Affidavit, any other report of, testimony about, or opinions based on the May 2016 Wireshark Investigation, and any data or information captured during that Wireshark Investigation . . . except in response to any use of the same evidence by Infomir." *Id*. at *34.

### E.  Plaintiffs' Previous Motions for Leave to Amend

By letter-motion dated October 3, 2018 (Dkt. No. 677), plaintiffs sought leave to amend the FAC to add Goldfedib and V-Net as party defendants. They argued, "based on newly-discovered evidence from third-parties," that Goldfedib had "emerged as the 'active moving force' directing the infringing activities of Infomir LLC and various John Does"; that Goldfedib had "misled Broadcasters about his key role in the manufacture of Infomir set-top boxes"; and that "the dissolved VNET [sic]," for which Goldfedib had served as president, "sold Infomir MAG STBs and paid royalties related to the manufacture of those STBs while doing business as Infomir USA." (*Id.* at 1-4.) Along with their letter-motion, plaintiffs submitted a proposed amended caption (Dkt. No. 677-1), but did not present any new substantive allegations or otherwise alter the body of the FAC. Infomir opposed the letter-motion. (Dkt. No. 678.)

On May 3, 2019, while their October 3, 2018 letter-motion remained pending, plaintiffs filed another letter-motion for leave to amend (Dkt. No. 735), accompanied by a proposed Second Amended Complaint (the First SAC). (Dkt. No. 736.) The First SAC was similar – but not identical – to the proposed SAC that is the subject of the present motion. Among other things, the First SAC would have (1) dropped certain unserved or previously-dismissed defendants; (2) dropped four of the twelve claims asserted in the FAC; (3) added "particularized allegations" against defendant Infomir; and (4) added four new defendants: Goldfedib, V-Net, Katsman, and ABI Net.

On May 7, 2019, the Court denied plaintiffs' May 3 letter-motion, without prejudice to re-filing the request for leave to amend as a formal motion, concluding that "[p]laintiffs cannot proceed by letter-motion where, as here, they propose to file a significantly expanded pleading against, *inter alia*, four newly-named defendants." (Dkt. No. 739 at 2-3.) Later that day, plaintiffs also withdrew their October 3, 2018 letter-motion as moot. (Dkt. No. 740.)

## II. THE INSTANT MOTION TO AMEND

Two weeks later, on May 24, 2019, plaintiffs filed their formal motion for leave to amend the FAC, together with the proposed SAC, a memorandum of law (Pl. Mem.) (Dkt. No. 750), and the Dowd Declaration. In addition to dropping various unserved or previously dismissed defendants, the SAC would drop plaintiffs' Lanham Act claims (for trademark infringement and false advertising), as well as their claims for violations of GBL § 349 and common-law unfair competition; add V-Net, Katsman, and ABI Net as new defendants; and expand and "particularize" plaintiff's factual allegations against Infomir. The proposed SAC does not assert any claims against Goldfedib, who died in May 2019 (Dkt. Nos. 744, 745-1), but – like the FAC – it lists 50 "John Doe" defendants, which it describes as the "agents" and "accomplices" of the named defendants. SAC ¶ 5. Plaintiffs state that they are still unable to identify the John Doe defendants and cannot

do so "until discovery is had." *Id.*[7] The proposed SAC is 83 pages long (exclusive of its 31 exhibits), and contains 452 paragraphs and eight causes of action. Like the FAC, it relies on the Vidulich Affidavit to support its allegations concerning the Aura STB, which plaintiffs now describe as providing "plug and play access to Broadcasters' Programming." *Id.* ¶¶ 37, 52, 59(m); *see also id.* ¶ 249 & Ex. 27.

### A. Allegations Regarding Katsman, ABI Net, and V-Net

The SAC alleges that Katsman – the president and owner of S.K. Management and ABI Net – together with nonparty Gregory Davidzon, operates and directs a "customer-facing service" that plaintiffs call "Goodzone," through "multiple entities," including S.K. Management, ABI Net, and non-parties Bravo Price Corp. and Call-o-Call, Inc. SAC ¶¶ 5, 69. "Under Katsman's direction, ABI Net develops software for Goodzone and processes infringement proceeds from customer payments for access to the Programming broadcast by Goodzone." *Id.* ¶¶ 6, 68, 208, 210. According to plaintiffs, Katsman is personally liable to them under the FCA and the Copyright Act "because he personally oversees [S.K. Management's] activities constituting direct, vicarious and contributory infringement under the FCA and Copyright Act." *Id.* ¶ 7.

The SAC alleges that V-Net, doing business as Infomir USA, was a New York corporation which "commenced operations on [or] around October 2002," and "ceased operations on [or] around August 2017," in order to "conceal the infringements" alleged by plaintiffs. SAC ¶¶ 1, 49. Before it ceased operations, V-Net "distributed Infomir brand STBs," including STBs "capable of streaming Broadcasters' Programming." *Id.* ¶¶ 50-51, 184, 186. V-Net also "advertised Infomir and Infomir brand set-top boxes on its website at vnetny.com," and sold the Aura and Mag STBs,

---

[7] As noted above, fact discovery closed on July 31, 2018, almost ten months before plaintiffs submitted the proposed SAC.

among other products, "to customers in this district." *Id.* ¶¶ 184-86; *see also id.* ¶ 52 (alleging that V-Net "sold the Aura HD STB that provided plug and play access to Broadcasters' Programming"). Additionally, V-Net "paid royalties related to the manufacture of the Infomir brand STBs" on behalf of Infomir. *Id.* ¶¶ 53, 182, 183. In plaintiffs' brief (although not in the SAC itself), they further assert that they "believe that V-Net's assets merged with Infomir after the filing of the Complaint in February 2016 in order to hide Goldfedib and V-Net's sales of the AuraHD plug and play STB." Pl. Mem. at 14.

### B. Amended and Supplemental Allegations Concerning Infomir

The SAC also amends and supplements plaintiffs' allegations against Infomir. SAC ¶¶ 36-47, 54, 58-59, 174-203, 267-74, 288-301, 321-23, 347-53, 376-81, 407-15, 438-41. In plaintiffs' characterization, these amendments and supplements "(1) conform[ ] the pleadings to the evidence revealed in discovery; (2) amplif[y] allegations against Infomir relating back to the period of the FAC (February 2013 to April 2017); and (3) add[ ] allegations post-dating the FAC showing continued wrongdoing since the filing of the FAC in April 2017." Pl. Reply Mem. (Dkt. No. 765) at 2-3. Plaintiffs' "amended and supplemental" allegations against Infomir are explained in more detail in § IV(B), below.

### C. Dropped Claims and Dropped Parties

The proposed SAC also makes a number of less controversial revisions. Plaintiffs propose to formally drop their claims alleging violations of the Lanham Act (Counts Six and Seven of the FAC), GBL § 349 (Count 10 of the FAC), and common-law unfair competition (Count 11 of the FAC). They also drop eight individuals and entities – Infomir GmbH, Marahovsky, Levitin, Teletec, Moidom LLC, Teleprom, Vdali, and Mhcom GmbH – that were listed as defendants in

the FAC but were never served or no longer have any claims pending against them.[8] The SAC also makes a number of inconsequential stylistic changes, such as by referring to "set top boxes" as "STBs." *Compare* FAC ¶ 1 *with* SAC ¶ 1.

## III.  LEGAL STANDARD

### A.  Fed. R. Civ. P. 15(a)(2)

Fed. R. Civ. P. 15(a)(2) provides that a party "may amend its pleading only with the opposing party's written consent or the court's leave," which is to be "freely give[n] [ ] when justice so requires." As the Supreme Court has explained: "In the absence of any apparent or declared reason – such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc. – the leave sought should, as the rules require, be 'freely given.'" *Foman v. Davis*, 371 U.S. 178, 182 (1962). Thus, "[m]ere delay," absent "a showing of bad faith or undue prejudice, does not provide a basis for the district court to deny the right to amend." *Ruotolo v. City of New York*, 514 F.3d 184, 191 (2d Cir. 2008) (quoting *State Teachers Ret. Bd. v. Fluor Corp.*, 654 F.2d 843, 856 (2d Cir. 1981)).

A party opposing leave to amend under Rule 15(a)(2) must generally establish bad faith or a dilatory motive on the part of the movant, or some prejudice from the delay. *State Teachers Ret. Bd.*, 654 F.2d at 856. The degree of prejudice necessary to defeat a motion for leave to amend is not absolute; "the longer the period of an unexplained delay, the less will be required of the nonmoving party in terms of a showing of prejudice." *Evans v. Syracuse City Sch. Dist.*, 704 F.2d 44, 46-47 (2d Cir. 1983) (quoting *Advocat v. Nexus Industries, Inc.*, 497 F. Supp. 328, 331 (D.

---

[8] On June 19, 2017, plaintiffs voluntarily dismissed their claims against Moidom LLC. (Dkt. No. 298.) There is no indication in the record that plaintiffs ever served Teleprom, Vdali, or Mhcom GmbH.

Del. 1980)) (noting that "[a]s practical matter . . . any delay in asserting an affirmative defense for a significant period of time will almost invariably result in some 'prejudice' to the nonmoving party," and holding that "the proper standard is one that balances the length of the delay against the resulting prejudice").

The movant bears the burden of explaining any delay in seeking leave to amend. *U.S. ex rel. Kester v. Novartis Pharm. Corp.*, 2015 WL 1650767, at \*5 (S.D.N.Y. Apr. 10, 2015). The burden to show prejudice, bad faith, or futility is on the party opposing leave. *Contrera v. Langer*, 314 F. Supp. 3d 562, 567 (S.D.N.Y. 2018) ("While the party seeking to amend its pleading must explain any delay, the party opposing the amendment 'bears the burden of showing prejudice, bad faith, and futility of the amendment.'") (citations omitted).

### B.    Fed. R. Civ. P. 16(b)(4)

Notwithstanding Rule 15(a)(2), a court may also deny a motion for leave to amend a pleading pursuant to Fed. R. Civ. P. 16(b)(4) if the motion was made "after the deadline set in the scheduling order" and "the moving party has failed to establish good cause." *Parker v. Columbia Pictures Indus.*, 204 F.3d 326, 340 (2d Cir. 2000); *accord Presbyterian Church of Sudan v. Talisman Energy, Inc.*, 582 F.3d 244, 267 (2d Cir. 2009); *see also* Fed. R. Civ. P. 16(b)(4) ("A schedule may be modified only for good cause and with the judge's consent."). A finding of "good cause" depends on the diligence of the moving party. *Presbyterian Church of Sudan*, 582 F.3d at 267 (citing *Parker*, 204 F.3d at 340). "The party must show that, despite its having exercised diligence, the applicable deadline [set in the court's scheduling order] could not reasonably have been met." *Sokol Holdings, Inc. v. BMB Munai, Inc.*, 2009 WL 3467756, at \*2 (S.D.N.Y. Oct. 28, 2009).

Even where, as here, the Court's previous scheduling orders did not explicitly provide a deadline by which the parties must amend their pleadings, Rule 16 may still apply "where the record contains some indication that the court and the parties understood that the pleadings would not be further amended." *Point 4 Data Corp. v. Tri–State Surgical Supply & Equipment, Ltd.*, 2012 WL 2458060, at *5 (E.D.N.Y. June 27, 2012). *See also Moore v. Publicis Groupe SA*, 2012 WL 2574742, at *2 (S.D.N.Y. June 29, 2012). In some circumstances, "[t]he absence of a deadline to amend" in the Court's scheduling orders "merely demonstrates that no such deadline could be imposed because the deadline had [ ] passed[.]" *AT Engine Controls Ltd. v. Goodrich Pump & Engine Control Sys., Inc.*, 2014 WL 810825, at *3 (D. Conn. Feb. 28, 2014).

This is such a case. Here, the Court issued an Order on March 7, 2017 (Dkt. No. 200), scheduling an initial case management conference for April 6, 2017, and directing the parties to file a joint pre-conference statement, pursuant to Fed. R. Civ P. 26(f)(2), containing, among other items, "[a] proposed deadline for moving to join additional [parties] or to further amend the pleadings." In their Joint Pre-Conference Statement filed March 30, 2017 (after plaintiffs' cross-motion to file an amended complaint had been granted), the parties "propose[d] that [plaintiffs] shall file [their] Amended Complaint including any additional parties on or by April 17, 2017[.]" (Dkt. No. 206 at 4.)

Plaintiff met that deadline by filing their FAC on April 5, 2017. By the time the Court held the case management conference two weeks later, and issued its April 20, 2017 Case Management Order, the parties' jointly-proposed deadline for amendment or joinder had come and gone, and the FAC had been filed. There was therefore no need for the Court to include an explicit deadline to amend or join additional parties (as would otherwise have been required under Fed. R. Civ. P. 16(b)(3)(A) ("The scheduling order *must* limit the time to join other parties, amend the pleadings,

complete discovery, and file motions.") (emphasis added)) in its scheduling order in order to trigger the application of Rule 16(b)'s "good cause" standard to subsequent motions to join and amend. *See AT Engine Controls*, 2014 WL 810825, at *3 ("[t]he absence of a deadline to amend" in the Court's prior scheduling order "merely demonstrates that no such deadline could be imposed because the deadline had long since passed"). *Accord Point 4 Data*, 2012 WL 2458060, at *5 ("In analogous contexts, courts within the Second Circuit have applied Rule 16 to motions to amend, even though the scheduling orders were otherwise silent as to amendments.").

Moreover, even if the filing of the proposed SAC would not directly contravene the Case Management Order, permitting a significant amendment at this late stage – particularly adding three new defendants – would inevitably require the Court to "modify" its prior scheduling orders in order to permit additional fact discovery, *see* Infomir Mem. at 5-6; Pl. Reply Mem. at 6, a request for which plaintiffs would independently need to establish "good cause" under Rule 16. *Wega v. Ctr. for Disability Rights Inc.*, 395 F. App'x 782, 786 (2d Cir. 2010) (affirming denial of request to extend discovery for lack of good cause shown); *Dumann Realty, LLC v. Faust*, 2011 WL 2749523, at *2 (S.D.N.Y. July 8, 2011) ("Luk failed to establish good cause for extending discovery"). I therefore conclude that Rule 16(b)(4), as well as Rule 15(a)(2), applies to the instant motion.

## IV.    ANALYSIS

### A.    Addition of Defendants Katsman, ABI Net, and V-Net

Under either Rule 15 or 16, I conclude that plaintiffs' motion to amend to add Katsman, ABI Net, and V-Net as additional defendants should be denied.

### 1.    Katsman and ABI Net

Plaintiffs first sought leave to add Katsman and ABI Net as defendants in their letter-motion dated May 3, 2019. This was more than two years after the Court issued its Case Management Order; almost eighteen months after the expiration of the original November 17, 2017 deadline for the completion of fact discovery; almost seventeen months after plaintiffs first questioned Katsman at deposition, including questions about ABI Net; and almost ten months after the final expiration of the many-times-extended fact discovery deadline on July 31, 2018.

Plaintiffs have not shown good cause for their delay in seeking to add Katsman and ABI Net as defendants. In support of their argument that their amendment is timely, plaintiffs assert:

> [N]ewly discovered evidence regarding the use of ABI Net to transfer funds and hide assets for entities streaming Broadcasters' content without authority was concealed by Katsman in his deposition. Dowd Decl. Ex. 11, 13-14 (records of transactions between ABI Net and Goodzone and Katsman deposition excerpts). ABI Net's wrongdoing was only discovered in February 2019. Dowd Decl. Ex. 11 (showing February 22 transaction date). Similarly, Katsman's concealments prevented Broadcasters from adding Katsman and ABI Net as infringing parties to this action at an earlier date. Dowd Decl. Ex. 13-14 (Katsman deposition excerpts).

Pl. Mem. at 16. *See also id.* at 4 ("[N]ewly-discovered evidence regarding Katsman's use of ABI Net to transfer funds and hide assets for entities streaming Broadcasters' content without authority was concealed by Katsman in his deposition.").

Plaintiffs' "explanation for the delay is unpersuasive and unavailing." *Evans*, 704 F.2d at 47. Katsman's deposition testimony is not "newly-discovered evidence" sufficient to show "good cause," because his deposition began on December 21, 2017 and ended on April 13, 2018, more than one year before plaintiffs sought leave to amend to add him and ABI Net as defendants. Neither is Exhibit 11 to the Dowd Declaration, which consists of one page printed out from a godaddy.com webpage reflecting a Visa account with the organization "SK Management," and the email address "greg@abinet.com," which was "[l]ast charged" on August 11, 2016; and one

screenshot from a mobile device reflecting the "transaction details" of a $19.99 "sale" on February 22, 2019, involving "ADVANCED BUSINESS INTEGR." The former is not new: plaintiffs asked about the "greg@abinet.com" email address during Katsman's December 21, 2017 deposition. Dowd Decl. Ex. 13 at 81:1-14. The latter was "discovered in February 2019," Pl. Mem. at 16, at least two months before plaintiffs' May 3, 2019 letter-motion. Even assuming that it was Exhibit 11 that ultimately alerted plaintiffs to Katsman's and ABI Net's alleged wrongdoing (an assumption about which the Court expresses some doubt, given the long list of older evidence they marshal), they should have brought it to the Court's attention immediately, rather than waiting more than two months to do so, given the long-running nature of this litigation and the close of fact discovery nine months earlier.[9]

The SAC also alleges that "Katsman shifted Goodzone's customer billing after the commencement of this litigation in order to hide payments for the Goodzone service from detection by Broadcasters[.]" SAC ¶ 209. *See also* Pl. Mem. at 8 ("Under Katsman's direction, ABI Net develops software for Goodzone and processes infringement proceeds from customer payments for access to the Programming broadcast by Goodzone."). Even assuming the truth of that allegation, however, plaintiffs had ample opportunity to question Katsman about S.K. Management's customer billing during his depositions in December 2017 and April 2018, by which time they already had in their possession a declaration from Katsman, dated May 30, 2017, describing how S.K. Management receives payment for the streaming services of Gudzon TV. (Dkt. No. 276-2 ¶ 5.)

---

[9] Since the second page of Exhibit 11 appears to have been created in February 2019, it could not have been "concealed by Katsman in his deposition" in 2017 or 2018. Pl. Mem. at 16.

I therefore conclude that plaintiffs' motion for leave to amend to add Katsman and ABI Net as defendants fails under Rule 16(b).

I reach the same conclusion under Rule 15(a), because of plaintiffs' delay in seeking to amend, as discussed above, and because of the undue prejudice that would result from the addition of new defendants at this late stage. Infomir concedes (and plaintiffs agree) that the proposed SAC would require a re-opening of discovery, thereby prejudicing those defendants "already in the action and those newly added." Infomir Opp. at 5-6. Courts routinely deny motions to amend to add new defendants where those additions would risk reopening discovery. *See e.g., Shi Ming Chen v. Hunan Manor Enter., Inc.*, 2020 WL 520854, at *3 (S.D.N.Y. Feb. 3, 2020) ("[T]hese proposed new defendants are not before the Court and reopening the case to add them would certainly risk a re-do of the entire discovery process inasmuch as each new defendant would be entitled to obtain discovery from the plaintiffs and potentially from co-defendants."); *Bromfield v. Bronx Lebanon Special Care Ctr., Inc.*, 2019 WL 1873156, at *4 (S.D.N.Y. Apr. 26, 2019) ("Plaintiff's proposed amendment would require the reopening of discovery . . . The resulting expenditure and delay of the resolution of this matter would unduly prejudice defendants, and plaintiff has offered no compelling explanation for her delay."), *reconsideration denied*, 2019 WL 2324568 (S.D.N.Y. May 30, 2019). I note, again, that fact discovery was closed long before plaintiffs filed the motion now before me.

Because I conclude that plaintiffs' motion for leave to add ABI Net and Katsman should be denied for lack of good cause, undue delay, and undue prejudice, I do not reach defendants' alternative arguments, *see* Infomir Mem. at 6-8; S.K. Mem. at 4-6, that it should also be denied on grounds of futility and bad faith. *See, e.g., Zucker v. Porteck Glob. Servs., Inc.*, 2015 WL 6442414, at *8 (E.D.N.Y. Oct. 23, 2015) ("The Court will not reach the issue of the alleged futility of

Plaintiff's proposed claims against Gelfand and Medina in light of the inordinate delay, prejudice, and current procedural posture.").

## 2. V-Net

I reach the same conclusions as to proposed defendant V-Net. Indeed, given that V-Net is a defunct corporation whose sole known principal is deceased, there is even less "cause" supporting this portion of plaintiffs' motion.

Plaintiffs first sought leave to amend to add V-Net as a defendant on October 3, 2018, more than two months after the final close of fact discovery on July 31, 2018. At that time, plaintiffs relied on three pieces of "newly-discovered" evidence: (1) V-Net's Certificate of Dissolution filed September 25, 2017 (Dkt. No. 663-24); (2) a "Way Back Machine" archive of V-Net's website from 2015 (Dkt. No. 677-2); and (3) a December 20, 2012 email from Andrey Gavrushenko, on behalf of former defendant Teletec and "Infomir, LLC (Ukraine)," in which Gavrushenko "informed HDMI Licensing, LLC [ ] that royalty payments for a contract between Infomir, LLC (Ukraine) and HDMI 'were remitted from our US partner V-NET inc (Infomir USA).'" (Dkt. No. 667 at 1; Dkt. No. 663-23.)[10]

None of these documents furnishes "good cause" sufficient to overcome plaintiffs' delay in seeking leave to add V-Net as a defendant. Plaintiffs have known about V-Net since at least January 16, 2018, when they first deposed Goldfedib. V-Net's 2017 Certificate of Dissolution and the "WayBack Machine" archives of V-Net's website in 2015 were available to plaintiffs even before that, and certainly could have been discovered before their October 3, 2018 letter-motion. As to the third document plaintiffs cite – the Gavrushenko email dated December 20, 2012 – they

---

[10] The instant motion relies principally on the same three pieces of evidence as to V-Net. *See* Dowd Decl. ¶¶ 7, 9, 12.

do not state when it was produced, but their counsel has previously declared that plaintiffs subpoenaed non-party HDMI on April 10, 2018, "and received a response on May 4, 2018." (Dkt. No. 663 ¶ 78.). Moreover, plaintiffs attached a copy of the same December 20, 2012 email to a letter dated May 11, 2018 (Dkt. No. 611-1 at 13), nearly five months before their October 3, 2018 letter-motion to amend.

Even assuming that the Gavrushenko email furnished "good cause" to add V-Net as a defendant (another assumption about which the Court has doubts), plaintiffs have not shown good cause for waiting another nearly five months (after they first used the letter in this litigation, on May 11, 2018) to seek to so amend. Under the specific circumstances of this litigation, plaintiffs' motion for leave to add V-Net as a defendant must be denied under Rule 16(b).

Once again, I again reach the same conclusion under Rule 15(a), for substantially the same reasons of undue delay and undue prejudice. *See Shi Ming Chen*, 2020 WL 520854, at *3; *Bromfield*, 2019 WL 1873156, at *4. The addition of a V-Net, a defunct corporation with a deceased principal, would likely lead to service difficulties, questions of successor liability, and ancillary discovery into V-Net's dissolution and related matters, all of which would likely involve further party and non-party discovery and entail further delays, with little or no prospect for materially strengthening plaintiffs' case as to either liability or damages. On the specific facts of this case, this risk constitutes undue prejudice to the existing defendants, compelling denial of plaintiffs' motion under Rule 15(a). *See Aries Ventures Ltd. v. Axa Fin. S.A.*, 696 F. Supp. 965, 970 (S.D.N.Y. 1988) (denying motion to amend to add non-diverse defendants because "a remand to state court and the unnecessary delays and costs inherent in the belated addition of one dissolved corporation (Acor) and another corporation that is in all likelihood defunct (Axa Capital) will severely prejudice defendants.").

## B. Amended and Supplemental Allegations Against Infomir

Plaintiffs also seek leave to amend and supplement their factual allegations against Infomir. *See* SAC ¶¶ 36-47, 54, 58-59, 174-203, 267-74, 288-301, 321-23, 347-53, 376-81, 407-15, 438-41. In this regard, plaintiffs argue that the proposed SAC "(1) conforms the pleadings to the evidence revealed in discovery; (2) amplifies allegations against Infomir relating back to the period of the FAC (February 2013 to April 2017); and (3) adds allegations post-dating the FAC showing continued wrongdoing since the filing of the FAC in April 2017." Pl. Reply Mem. at 2-3. Plaintiffs do not seek to assert any new legal claims against Infomir.

Many of plaintiffs' proposed amended and supplemental factual allegations are duplicative of their prior allegations. For instance, "new" paragraphs 45 and 46 of the SAC are substantively identical to paragraphs 37 and 38 of the FAC, which remain – largely unchanged – at paragraphs 56 and 57 of the SAC. *Compare* SAC ¶ 45 ("Upon information and belief, Infomir designs Stalker and operates servers that are primarily designed to assist large scale infringers in re-transmitting unauthorized satellite communications to U.S. consumers by providing a means by which infringers can issue passwords, bill consumers, and provide access to streamed content on STBs sold by Infomir.") *with* SAC ¶ 56 ("Upon information and belief, the Infomir Defendants design Stalker and servers that are primarily designed to assist large scale infringers in re-transmitting unauthorized satellite communications to U.S. consumers by providing a means by which infringers can issue passwords, bill consumers, and provide access to streamed content to set-top boxes sold by Infomir."). Other purportedly "new" allegations are similarly duplicative, simply repeating the same assertions in slightly different language. *See* FAC ¶ 36; SAC ¶¶ 48, 54. *See also* FAC ¶ 116; SAC ¶¶ 130, 174.

Other "new" allegations merely elaborate on plaintiffs' prior charges, providing more detail in support of previously-articulated claims. For example, paragraphs 36 through 47 of the SAC provide additional detail about Infomir's Aura and MAG STBs, and its Stalker software, all of which were previously described in plaintiffs' FAC. FAC ¶¶ 1, 113-59. Paragraphs 36-38, 52, and 186-88 of the SAC describe some of Infomir's STBs as having "plug and play functionality," which "comes from the preinstalled 'Aura' software on the STBs," echoing and developing plaintiffs' prior allegations that Infomir's STBs were "pre-loaded" with software that permits consumers to "connect directly to unauthorized versions of the Programming supplied by the Infomir Defendants that have been intercepted and retransmitted from decrypted satellite communications." FAC ¶ 119. *See also*, *e.g.*, FAC ¶ 117 ("[T]he Infomir Defendants sell to consumers and to Streaming Defendants the 'smart set top box' that is pre-loaded with an operating system and browser that permits consumers to gain access to the Programming."). Paragraphs 188 and 289 of the SAC allege specific sales of STBs by Infomir to non-party customers, but those sales were already generally described in the FAC. *See* FAC ¶¶ 36, 116-59. Finally, paragraphs 267-74, 288-301, 321-23, 347-53, 376-81, 407-15, and 438-41 of the SAC amend, supplement, and expand on plaintiffs' allegations against Infomir under each of plaintiffs' remaining causes of action. The gist of plaintiffs' allegations against Infomir remains unchanged, however, and the proposed new language appears to go well beyond what is required for plaintiffs to satisfy their pleading burden: a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).

While some courts have granted motions to amend to "refine" a pleading "to reflect evidence obtained during discovery," *Syntel Sterling Best Shores Mauritius Ltd. v. Trizetto Grp., Inc.*, 2016 WL 5338550, at *3 (S.D.N.Y. Sept. 23, 2016) (citation omitted), others have denied

motions to amend "to amplify facts" where, as here, such amendment does not "affect the claims to be tried," is "unnecessary," and would "needlessly [ ] require the defendant to expend time and resources drafting an answer." *Schmidt v. Stone*, 2018 WL 4522082, at *12 (E.D.N.Y. Jan. 29, 2018). *Accord Johnson & Johnson v. Guidant Corp.*, 2010 WL 571814, at *11 (S.D.N.Y. Feb. 16, 2010) (Sullivan, J.) ("Plaintiff's original complaint was filed over three years ago. The interest in closing the pleadings and continuing the discovery process outweighs any benefit in allowing Plaintiff to add unnecessary allegations to its existing cause of action."); *Ashford v. Goord*, 2009 WL 2086838, at *3 (W.D.N.Y. July 10, 2009) (collecting cases denying leave to amend where additional allegations merely echo those in a party's existing pleading); *Scottish Air Int'l, Inc. v. British Caledonian Grp., PLC.*, 152 F.R.D. 18, 31 (S.D.N.Y. 1993) (quoting *Coleman v. Ramada Hotel Operating Co.*, 933 F.2d 470, 473 (7th Cir. 1991)) ("[W]here the 'additional allegations merely reiterate and embroider the claims . . . already presented in [the] original complaint, adding little, if anything, of substance to [the] case,' justice does not require that leave to amend be granted."). *See also Brown Rudnick, LLP v. Surgical Orthomedics, Inc.*, 2015 WL 1097342, at *3 (S.D.N.Y. Mar. 12, 2015) (rejecting argument that a party need not show good cause to amend when that party merely seeks to add new facts, rather than claims, to an existing pleading).

In this case, permitting plaintiffs to amend to add greater detail to factual allegations they have already asserted would needlessly require defendants to parse through additional and often duplicative allegations in order to draft new answers (or file motion papers). *See Malcolm v. Honeoye Falls-Lima Educ. Ass'n*, 2012 WL 4509896, at *3 (W.D.N.Y. Sept. 28, 2012) (denying leave to amend where an amended pleading was "unwieldily and unnecessarily complex," and the "gist" of the party's claims could be "fairly considered and measured in the existing" pleading). Moreover, because plaintiffs assert no new legal claims against Infomir, and because their legal

theories are discernable from their prior pleading (which Infomir and S.K. Management answered rather than moved to dismiss), denial of plaintiffs' motion will not prejudice plaintiffs, who may, if they choose, present the same facts they detail in their SAC in support of their anticipated motion(s) for summary judgment. *See Berlin v. Jetblue Airways Corp.*, 2020 WL 502629, at \*16 (E.D.N.Y. Jan. 30, 2020) ("Because plaintiff's PAC does not allege new valid claims, as discussed *infra*, and merely provides additional context and detail surrounding his existing [ ] claim, plaintiff will not be prejudiced if leave to amend is denied, as he will be able to present this context and detail as part of the anticipated summary judgment briefing.").[11]

Furthermore, as noted above, the amended and supplemental allegations against Infomir continue to rely on the Vidulich Affidavit. *See* SAC ¶ 249 & Ex. 27. On September 26, 2019, the Court precluded plaintiffs from relying on that affidavit, "any other report of, testimony about, or opinions based on" Vidulich's May 2016 Wireshark investigation, or "any data or information captured" during that investigation. *Joint Stock Co. Channel One Russia Worldwide*, 2019 WL 4727537, at \*1, \*34. To permit the plaintiffs to recycle the precluded materials as part and parcel of their amended and supplemental allegations against Infomir would needlessly risk an inefficient

---

[11] Plaintiffs argue that one of the functions of their amended pleading is to add allegations "post-dating the FAC showing continued wrongdoing since the filing of the FAC in April 2017." Pl. Reply Mem. at 2-3. However, aside from wholly conclusory assertions – for example, that S.K. Management's conduct has "continued" from "April 2017 to the Present," SAC ¶ 204 – plaintiffs make few specific allegations of facts that occurred after April 2017. *See* SAC ¶¶ 178-80; Dowd Decl. ¶ 13, Ex. 9. To be sure, the SAC describes (and attaches as an exhibit) an October 2018 White Paper describing Infomir's MAG STB, and its role in the "Piracy Video Ecosystem." SAC ¶ 179, Ex. 18. Yet the FAC makes plain plaintiffs' position concerning the continuing nature of defendants' infringement, *see, e.g.,* FAC ¶ 209 ("Defendants have and continue to intentionally pirate, retransmit and publish Broadcasters' programs[.]"), and denial of plaintiffs' motion for leave to amend will not prohibit them from maintaining that position, and introducing evidence such as the White Paper, at summary judgment and/or trial.

further round of motion practice at a time when this litigation, at long last, is nearly ripe for summary judgment.[12]

### C.  Dropped Claims and Dropped Parties

Finally, plaintiffs' proposal to drop eight defendants, and to drop their two causes of action brought under the Lanham Act as well as their GBL § 349 and common-law unfair competition claims, does not justify permitting the filing of the lengthy and complex SAC. As noted above, five of those defendants are already dismissed, and the other three, who have never been served, may be dismissed pursuant to Fed. R. Civ. P. 4(m) or 41(a)(1)(A)(i) or (ii). Similarly, plaintiffs have already dismissed their GBL § 349 and common-law unfair competition claims (at least as against Infomir and S.K. Management) pursuant to Fed. R. Civ. P. 41(a)(1)(A)(i), and may do the same as to their Lanham Act claims.

## V.  CONCLUSION

For the reasons set forth above, plaintiffs' motion for leave to file their proposed Second Amended Complaint (Dkt. No. 748) is DENIED.[13] The parties are directed to promptly meet and

---

[12] On October 15, 2019, the Court offered plaintiffs an opportunity to withdraw their pending motion and submit a proposed amended pleading that "does not rely on any of the materials precluded" by the September 26, 2019 sanctions order. (Dkt. No. 784.) Plaintiffs declined to do so.

[13] "The Court of Appeals for the Second Circuit has not clearly stated whether a denial of leave to amend a pleading is dispositive or nondispositive for [Fed. R. Civ. P.] 72 purposes." *Sokol Holdings*, 2009 WL 3467756, at *3. However, "[t]he weight of opinion appears to favor treating such rulings as nondispositive, requiring a 'clearly erroneous' standard of review." *Id*. at *4 (collecting cases and reviewing magistrate judge's denial of a motion for leave to amend under "clearly erroneous" standard). *Accord Fielding v. Tollaksen*, 510 F.3d 175, 178 (2d Cir. 2007) (referring to a motion to amend a complaint as a nondispositive motion); *Kilcullen v. New York State Dep't of Transp.*, 55 F. App'x 583, 584 (2d Cir. 2003) (same); *Berrio v. City of New York*, 2018 WL 2388537, at *1 n.1 (S.D.N.Y. May 9, 2018) (same, and collecting cases). To the extent the District Judge views plaintiffs' motion to amend as "dispositive" for purposes of Fed. R. Civ. P. 72, it is respectfully recommended, for the reasons stated above, that the motion be denied.

confer concerning the dismissal of the remaining unserved defendants and unwanted causes of action, and to submit any required notices or stipulations no later than **April 17, 2020**.

Dated: New York, New York
April 3, 2020

SO ORDERED.

**BARBARA MOSES**
**United States Magistrate Judge**