```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 5/15/20
```

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

JOINT STOCK COMPANY CHANNEL ONE RUSSIA WORLDWIDE, et al.,

        Plaintiffs,

-against-

INFOMIR LLC, et al.,

        Defendants.

16-CV-1318 (GBD) (BCM)

**ORDER**

**BARBARA MOSES, United States Magistrate Judge.**

For the reasons stated below, the Court awards defendant Infomir LLC (Infomir) a total of $254,116.45 in attorneys' fees, expert fees, and expenses, as sanctions pursuant to Fed. R. Civ. P. 37(b), assessed jointly and severally against plaintiffs Joint Stock Company "Channel One Russia Worldwide," Closed Joint Stock Company "CTC Network," Closed Joint Stock Company "TV DARIAL," Closed Joint Stock Company "New Channel," Limited Liability Company "Rain TV-Channel," and Limited Liability Company "Global Entertainment TV" (f/k/a Limited Liability Company "Comedy TV") and their counsel, Dunnington Bartholow & Miller LLP (Dunnington).

**Background**

On November 5, 2018, Infomir filed a motion (Dkt. No. 692) seeking discovery sanctions pursuant to Fed. R. Civ. P. 37(b) as a remedy for plaintiffs' violations of this Court's discovery orders, including orders dated April 25, 2018 (the 4/25/18 Order) (Dkt. No. 569) and July 3, 2018 (the 7/3/18 Order) (Dkt. No. 617). Infomir's motion was the culmination of its vigorous efforts, beginning in 2017, to seek the data and documents underlying the June 24, 2016 affidavit of Christopher Vidulich (Vidulich Affidavit) (Dkt. No. 80) and evidencing the "Wireshark" network protocol analyzer investigation (Wireshark Investigation) that Vidulich performed in May 2016

and described in his affidavit.[1] Relying on the Wireshark Investigation and its results, Vidulich concluded – erroneously, as it turned out – that Infomir "streamed" unlicensed content, including plaintiffs' copyrighted broadcasting, from "freetvstat.infomir.com.ua," with an internet protocol address "located in the United States," to consumers in New York and elsewhere. Vidulich Aff. ¶¶ 19-25, 30. Plaintiffs attached the Vidulich Affidavit to their pleadings, *see* First Am. Compl. (Dkt. No. 211) Ex. 15, and relied on it to support two (later withdrawn) summary judgment motions against Infomir. (Dkt. No. 269 at 14; Dkt. No. 552 at 6.) However, they did not produce any electronically stored information (ESI) underlying the Wireshark Investigation until 2018, and did not produce the native-format electronic "packet capture" file (PCAP File) that constituted the "only complete record" of that investigation until October 12, 2018, after representing repeatedly that it did not exist – and deleting it from Vidulich's laptop shortly before they turned the laptop over for analysis by Informir's digital forensics experts at Stroz Friedberg, LLC (Stroz Friedberg). *See Joint Stock Co. Channel One Russia Worldwide,* 2019 WL 4727537, at *1-2, *16. Once produced, the PCAP File established (and plaintiffs ultimately conceded) that "'freetvstat.infomir.com.ua' was *not* the source of any of the video content that Vidulich viewed" during the Wireshark Investigation. *Id*. at *16 (emphasis added).

On September 26, 2019, after receiving extensive briefing and conducting an evidentiary hearing at which both Infomir and plaintiffs presented expert testimony, the Court granted Infomir's motion, concluding that plaintiffs violated the 4/25/18 Order and the 7/3/18 Order directing them to produce the ESI underlying the Wireshark Investigation, and that they and their

---

[1] The Vidulich Affidavit and the Wireshark Investigation, as well as the factual background and procedural history of the sanctions motion, are described in more detail in my Opinion and Order granting the sanctions motion. *See Joint Stock Co. Channel One Russia Worldwide v. Infomir LLC*, 2019 WL 4727537, at *2-17 (S.D.N.Y. Sept. 26, 2019) (hereafter the Sanctions Order), *objections overruled*, 2020 WL 1479018 (S.D.N.Y. Mar. 26, 2020).

counsel made a series of false statements (many under oath), in bad faith, "about the Wireshark Investigation, the ESI evidencing that investigation, and their discovery compliance." *Joint Stock Co. Channel One Russia Worldwide v. Infomir LLC*, 2019 WL 4727537, at *21-28. As a sanction, the Court precluded plaintiffs "from introducing or relying on the June 24, 2016 Vidulich Affidavit, any other report of, testimony about, or opinions based on the May 2016 Wireshark Investigation, and any data or information captured during that Wireshark Investigation . . . except in response to any use of the same evidence by Infomir." *Id*. at *34. In addition, the Court concluded, in accordance with Fed. R. Civ. P. 37(b)(2)(C), that plaintiffs "and their counsel" must pay Infomir's "attorney's fees, expert fees, and other costs reasonably incurred in obtaining and enforcing the 4/25/18 Order and the 7/3/18 Order," including fees and costs incurred in connection with the deposition of Christopher Vidulich on August 29, 2018, "as well as the expenses reasonably incurred in litigating the instant sanctions motion." *Id.* at *29.

On October 11, 2019, Infomir filed the declaration of its lead attorney Stewart M. Leviss (Leviss Decl.) (Dkt. No. 783), seeking an award of (1) $220,446 in attorneys' fees, based on 458.3 hours expended by Leviss his associate Evan Silagi in 2018, and 156.4 hours expended by them in 2019, and (2) $87,889.99 in other expenses, consisting of $85,889.36 in expert and consultant costs and $2,000.63 in court reporting and similar costs. Leviss Decl. ¶¶ 24, 38-40; *see also id.* Ex. A (partially-redacted time sheets and invoices from Infomir's counsel); *id*. Exs. B & C (partially-redacted invoices from Stroz Friedberg).[2] On October 25, 2019, plaintiffs filed an opposition memorandum (Pl. Opp.) (Dkt. No. 789), together with the declaration of their lead attorney

---

[2] The Leviss Declaration seeks $**9**7,889.99 in expenses, which the Court understands to be a typographical error. *See* Leviss Decl. ¶ 40 ("The expenses incurred and for which reimbursement is sought, including expert and consultant costs of $85,889.36 and the additional disbursements of $2,000.63 described at paragraph 24 herein, total $97,889.99.").

3

Raymond J. Dowd (Dowd Decl.) (Dkt. No. 788). Plaintiffs argue that the Court should deny Infomir's request entirely or reduce the amount of fees and expenses significantly, arguing principally that Infomir's redactions prohibit plaintiffs from determining the reasonableness of Infomir's fee request, that some of Infomir's expenses "clearly exceed the scope of the Sanctions Order," and that "the materials attached to the [Leviss] Declaration are deficient to substantiate Infomir's total request for reimbursement." Pl. Opp. at 1-4.[3]

## Analysis

As noted above, this Court has found that Infomir is entitled to an award of fees and expenses against plaintiffs and their counsel pursuant to Fed. R. Civ. P. 37(b)(2)(C), which provides for reimbursement of "reasonable expenses, including attorneys' fees, caused by" an opposing party's violations of court orders. Consequently, the Court must now determine whether defendants' requested award is reasonable and whether the expenses for which reimbursement is sought were caused by plaintiffs' violations.

"In determining the amount of reasonable attorneys' fees, '[t]he most useful starting point . . . is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate.'" *S.E.C. v. Yorkville Advisors, LLC,* 2015 WL 855796, at *10 (S.D.N.Y. Feb. 27, 2015) (quoting *Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of Albany,* 522 F.3d 182, 186 (2d Cir. 2008)); *see also Romeo & Juliette Laser Hair Removal, Inc. v. Assara I, LLC*, 2013 WL 3322249, at *4 (S.D.N.Y. July 2, 2013) ("To determine the amount of attorneys' fees to which a prevailing party in a discovery dispute is entitled, the Court must calculate the 'presumptively

---

[3] Plaintiffs also requested that I "refrain from deciding this fee application" pending resolution of their objections to the Sanctions Order. Pl. Opp. at 1. The Hon. George B. Daniels, United States District Judge, overruled plaintiffs' objections on March 26, 2020. *Joint Stock Co. "Channel One Russia Worldwide" v. Infomir LLC*, 2020 WL 1479018, at *11.

4

reasonable fee,'" which "is calculated by multiplying the reasonable number of hours that the case requires by the reasonable hourly rate.") (citations omitted), *aff'd,* 679 F. App'x 33 (2d Cir. 2017).

"District courts have broad discretion to determine a fee award based on the circumstances of a case." *Ramgoolie v. Ramgoolie*, 2019 WL 5722033, at *2 (S.D.N.Y. Apr. 5, 2019); *Au New Haven, LLC v. YKK Corp.*, 2018 WL 333828, at *7 (S.D.N.Y. Jan. 5, 2018) (same).

### A. Hourly Rate

To arrive at a reasonable fee award, I must first determine the reasonable hourly rate for each timekeeper for whom fees are sought. "A fee applicant bears the burden of 'produc[ing] satisfactory evidence' that its requested rates are 'in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation.'" *In re Terrorist Attacks on Sept. 11, 2001*, 2015 WL 6666703, at *4 (S.D.N.Y. Oct. 28, 2015) (quoting *Pearson Educ., Inc. v. Vergara*, 2010 WL 3744033, at *6 (S.D.N.Y. Sept. 27, 2010)), *report and recommendation adopted*, 2015 WL 9255560 (S.D.N.Y. Dec. 18, 2015). This inquiry properly includes a court's own knowledge of private firm hourly rates. *In re Terrorist Attacks on Sept. 11, 2001*, 2015 WL 6666703, at *4 (citing *Miele v. N.Y.S. Teamsters Conference Pension & Ret. Fund*, 831 F.2d 407, 409 (2d Cir. 1987)).

Infomir seeks fees for the work of two attorneys, both employed at Berkowitz Lichtstein Kuritsky Giasullo & Gross, LLC (Berkowitz Lichtstein): partner Leviss, as to whom it seeks fees at hourly rates of $500 and $550 for work he performed in 2018 and 2019, respectively, Leviss Decl. ¶ 30; and associate Silagi, as to whom it seeks fees at hourly rates of $300 and $350 for work he performed in 2018 and 2019, respectively. *Id*. ¶ 31. Leviss has nearly three decades of experience in civil litigation; Silagi has approximately nine years of experience. *Id.* ¶¶ 32-36. Berkowitz Lichtstein is a firm of eighteen attorneys based in Roseland, New Jersey. *Id.* ¶ 29.

Plaintiffs do not challenge Infomir's hourly rates. Moreover, the Court has twice approved comparable hourly rates for work performed by plaintiffs' own attorneys at Dunnington. *See* Order dated June 13, 2019 (Dkt. No. 758), at 7-8 (approving hourly rates of $550 for attorney Dowd, $400 for a more junior partner, and $325 for an associate, for work performed by Dunnington in 2017); Order dated May 24, 2019 (Dkt. No. 747), at 6-7 (approving hourly rates of $550 for attorney Dowd, $350 for a more junior partner, and $325 for associates, for work performed by Dunnington in 2016 and 2017). I therefore conclude that the hourly rates sought by Infomir, for the work of its attorneys, are consistent with the prevailing market rates in this District charged by legal professionals of comparable experience and expertise. *See* Order dated June 13, 2019, at 9; Order dated May 24, 2019, at 7; *Barcroft Media, Ltd. v. Fashion In Me Inc.*, 2018 WL 4565889, at *5 (S.D.N.Y. June 5, 2018) (collecting copyright and trademark infringement cases awarding $425-$570 for partners at small to mid-sized law firms, and $200-$390 for associates), *report and recommendation adopted*, 2018 WL 4568727 (S.D.N.Y. July 25, 2018).

### B.   Number of Hours Expended

At the second stage of the analysis, I multiply each timekeeper's reasonable hourly rate by the reasonable number of hours expended. *Romeo & Juliette*, 2013 WL 3322249, at *4. Hours that are "excessive, redundant, or otherwise unnecessary" may be excluded from an attorneys' fee award. *Infinity Headwear & Apparel v. Jay Franco & Sons*, 2016 WL 6962541, at *5 (S.D.N.Y. Nov. 28, 2016) (citing *Gierlinger v. Gleason*, 160 F.3d 858, 876 (2d Cir. 1998)). Moreover, the Court should not award fees for hours that were not "caused by" the opposing party's violations of court orders. Fed. R. Civ. P. 37(b)(2)(C). However, "[a] request for attorney's fees should not result in a second major litigation," *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983), and "[t]he essential goal in shifting fees (to either party) is to do rough justice, not to achieve auditing perfection." *Fox*

*v. Vice*, 563 U.S. 826, 838 (2011). A court therefore has "broad discretion to determine the amount of time reasonably expended." *Hiciano v. Apfel*, 2002 WL 1148413, at *1 (S.D.N.Y. May 29, 2002); *see also Rivera v. Astrue*, 2010 WL 8971795, at *2 (E.D.N.Y. Apr. 5, 2010) ("[A] district court has broad discretion to determine the appropriate number of hours reasonably expended.").

Infomir seeks reimbursement for 597.1 hours expended by attorneys Leviss (293.2 hours, of which 217.9 were expended in 2018) and Silagi (303.9 hours, of which 240.4 were expended in 2018) to obtain and enforce the 4/25/18 Order and the 7/3/18 Order, to prepare for and conduct the Vidulich deposition, and to litigate Infomir's sanctions motion, Leviss Decl. ¶¶ 6-17, 24, 38, as well as 17.6 hours incurred in preparing Infomir's fee application. *Id.* ¶ 39. In support of its application, Infomir submits the attorney time sheets and invoices on which its request is based (*id.* Ex. A), from which Leviss redacted, in black, "time charges . . . not specifically or exclusively incurred for the purpose of the subjects identified by the Court." *Id.* ¶ 20.[4] While some of the remaining entries are "block-billed" together with redacted, non-reimbursable entries, Infomir has reduced its request for reimbursement as to those hours (which amount to 352.2 of the total hours for which Infomir seeks reimbursement) by twenty-five percent. *Id.* ¶¶ 22-23, 28. Finally, attorney Leviss attests that "[a]ll of the time charges and expenditures for which reimbursement is being sought were actually billed to and paid for by Infomir LLC." *Id.* ¶ 18.

As noted above, plaintiffs assert three principal challenges to Infomir's request for reimbursement of its attorneys' fees: that "the [Leviss] Declaration seeks reimbursement for fees and expenses exceeding the scope of the Sanctions Order," Pl. Opp. at 2, 4, 9-10, Dowd Decl. ¶¶ 14-27 & Ex. C; that the redactions on the exhibits to the Leviss Declaration prohibit plaintiffs

---

[4] Attorney Leviss also redacted, in blue, "information which is subject to attorney client privilege and the attorney work-product privilege." *Id.* ¶ 21.

and the Court from evaluating the reasonableness of Infomir's fee request, Pl. Opp. at 2-3, 9-10; Dowd Decl. ¶¶ 17-18; and that the hours expended by Infomir's counsel were miscalculated or excessive in other respects. Pl. Opp. at 10; Dowd Decl. ¶¶ 28-32.

The Court agrees that some of the time entries for which Infomir seeks reimbursement appear to relate predominantly to tasks outside the scope of the award contemplated by the Sanctions Order. For example, plaintiffs identify hours expended by Infomir's counsel in the first half of 2018 that had relatively little to do with obtaining information about the Wireshark Investigation, Dowd Decl. ¶¶ 20, 21, and entries between September 11 and 14, 2018, billed for drafting papers in opposition to one of plaintiffs' later-withdrawn summary judgment motions – a task the Court explicitly excluded from the scope of the award. *Joint Stock Co. Channel One Russia Worldwide v. Infomir LLC*, 2019 WL 4727537, at *29 n.36 (excluding from Infomir's fee award any expenses incurred responding to "plaintiffs' motions to amend and for summary judgment," notwithstanding that Infomir's argument that plaintiffs' discovery violations "permeated all aspects of this case" had "some force"). However, Infomir has already reduced its requested hours by twenty-five percent for all block-billed entries containing tasks both within and without the scope of the Court's order. Based on my review of Infomir's time records, I conclude that an additional five percent across-the-board reduction of Infomir's requested award will adequately address its inclusion of certain tasks beyond the scope of the Sanctions Order.

Plaintiffs' second challenge – that the redactions on counsel's invoices prevent this Court from confirming the reasonableness of Infomir's requested hours – fares less well. The vast majority of Infomir's redactions (in black) merely remove references to (and requests for reimbursement of) tasks which were "not specifically or exclusively incurred for the purpose of the subjects identified by the Court," Leviss Decl. ¶ 20, and the remaining minimal redactions (in

blue) for privilege do not impede the Court's analysis. *See Protoons Inc. v. Reach Music Publ'g, Inc.*, 2016 WL 680543, at *13 (S.D.N.Y. Feb. 19, 2016) ("The Court has reviewed every invoice submitted in this case, and agrees that the redactions and block-billing complicate efforts to comprehensively assess the reasonableness of the fees and expenses in this case. . . . However, in these invoices the examples of redactions and block-billing are certainly the exception, rather than the rule. The large majority of the entries are detailed, specific, and fully disclosed. The Court therefore concludes that the combined effects of redaction and block-billing in this case are appropriate[ly] captured by reducing the final award by five percent."), *aff'd*, 718 F. App'x 8 (2d Cir. 2017). While the redactions and block-billing in this case are more extensive than in *Protoons Inc.*, Infomir has already reduced its requested hours significantly – by twenty-five percent – to address precisely those issues. Leviss Decl. ¶¶ 23, 38. I therefore conclude that the redactions warrant no further reduction to Infomir's requested award.[5]

Plaintiffs' third category of challenges warrants a further modest discount. Plaintiffs reviewed and recalculated the total hours expended by attorneys Leviss and Silagi in 2018 and came to a different conclusion than Leviss did.[6] Plaintiffs further contend that the Court should eliminate or discount Leviss's and Silagi's hours spent traveling, *id*. ¶ 31, and "conferring with each

---

[5] The Court notes that Infomir has offered to submit unredacted version of its time records for *in camera* review. Leviss Decl. ¶¶ 21, 28. "Given that the Second Circuit has held that a reviewing Court need not review every line of every entry in making a determination on attorneys' fees . . . the Court declines to review [Infomir's] unredacted entries." *Safeco Ins. Co. of Am. v. M.E.S., Inc.*, 2018 WL 2766139, at *8 n.12 (E.D.N.Y. June 8, 2018) (citing *Lunday v. City of Albany*, 42 F.3d 131, 134 (2d Cir. 1994)), *aff'd*, 790 F. App'x 289 (2d Cir. 2019).

[6] *See* Dowd Decl. ¶¶ 28-29 ("I totaled the hours found in the invoices attached to the [Leviss] Declaration. Our math shows the following: 2018 – Silagi: 184.1 total hours; 2018 – Leviss: 183.1 total hours. However the [Leviss] Declaration at paragraph 38 shows 2018 – Silagi: 217.5 total hours; 2018 – Leviss: 240.4 total hours."). In fact, paragraph 38 of the Leviss Declaration reflects a total of 240.4 hours expended by attorney Silagi, and 217.9 hours expended by attorney Leviss, in 2018.

other." *Id*. ¶ 32. The Court calculates the hours expended by attorneys Leviss and Silagi in 2018, for which Infomir seeks reimbursement in Exhibit A to the Leviss Declaration, to total 201.9 and 195.6, respectively, and accordingly will reduce Infomir's compensable hours in 2018 by a further fifteen percent. Similarly, the Court will reduce Infomir's fee award by an additional five percent, across the board, to correct for counsel's billing of travel time at full hourly rates (*see* Leviss Decl. Ex. A at ECF pages 5, 13, 37) and any excessive internal conferencing. *See Dancy v. McGinley*, 141 F. Supp. 3d 231, 242 n.4 (S.D.N.Y. 2015) ("In the Southern District, travel hours are customarily compensated at one-half (.5) of the usual hourly rate."); *Congregation Rabbinical Coll. of Tartikov, Inc. v. Vill. of Pomona*, 188 F. Supp. 3d 333, 342 (S.D.N.Y. 2016) (collecting cases discounting attorneys' fee awards due to excessive internal conference or overstaffing).

For the reasons stated above, the Court will award Infomir $174,815.40 out of its requested $220,446 in attorneys' fees:

|  | **Infomir Request Leviss Decl. ¶¶ 38-39** | **Reduction** | **Award** |
| --- | --- | --- | --- |
| **2018 Fees** | $157,240 | 25% | $117,930 |
| **2019 Fees** | $54,054 | 10% | $48,648.60 |
| **Fees Incurred on Fees Application** | $9,152 | 10% | $8,236.80 |
| **Total** | $220,446 |  | $174,815.40 |

C.   **Expert Fees**

Infomir also seeks to recover $85,889.36 in expert and consultant fees. Leviss Decl. ¶ 40. These fees are reflected in Exhibits B and C to the Leviss Declaration. Exhibit B contains "copies of relevant pages from invoices reflecting time charges by the employees of Stroz Friedberg" who provided "technical forensic services" in June, July, and August 2018, "for tasks associated with

the retrieval and analysis of information from the laptop computer used by Vidulich for his investigation, which resulted in the sanctions application and plaintiffs' production of the native-data PCAP." Leviss Decl. ¶¶ 8, 25 & Ex. B. Infomir has "redacted, by blackline, portions of those invoices involving charges by consultants who were not involved in the retrieval or analysis of the laptop and reimbursement of those charges is not sought." *Id.* ¶ 25 & Ex. B. Exhibit C contains "copies of the invoices from Stroz Friedberg reflecting time charges for [Stroz Friedberg employees] Christopher Rucinksi and Jake Cohen, for the period October, 2018 through February, 2019." *Id.* ¶ 26 & Ex C. Mr. Rucinski signed the Stroz Friedberg reports submitted to the Court in connection with Infomir's sanctions motions and testified at the evidentiary hearing on February 6, 2019. Mr. Cohen "assisted Mr. Rucinski in the analysis and preparation of the reports that were necessary for the sanctions motion and the evidentiary hearing." *Id.* ¶ 25. Leviss further attests "[a]ll of the charges by Mr. Rucinski and Mr. Cohen were incurred exclusively for work performed as part of the sanctions motion, including Mr. Rucinski's testimony at the February 6, 2019 evidentiary hearing." *Id.* ¶ 26.

As plaintiffs note, Pl. Opp. at 2, Infomir has heavily redacted the portion of the Stroz Friedberg invoices describing the work performed. Plaintiffs contend that these redactions "prevent[ ]" the Court from "conducting a lodestar analysis and understanding the scope of the work, the reasonableness of the work, and whether it was the type of expert work necessary for this action." *Id.* Nonetheless, they "concede that Stroz Friedberg performed the work" and therefore that, "under the Sanctions Order, reasonable compensation is warranted," *id.* at 3, and argue in the alternative that such compensation should be limited to $39,524.15, consisting of $12,746.25 in "fees for the forensic examination of the laptop total in preparing for the [Vidulich] deposition" and $26,777.90 for fees incurred "for the preparation and appearance at the hearing."

11

*Id.* Plaintiffs contend that this amount, although less than half of the fees submitted, would sufficiently compensate Infomir under the Sanctions Order because plaintiffs "cannot clearly classify the work done by Stroz Friedberg and because the many names on the Stroz Friedberg invoices suggest that duplication and inefficiencies occurred." *Id.*

I disagree. While Infomir's redactions prevent this Court from reviewing the text of Stroz Friedberg's individual time entries, Infomir has submitted admissible evidence, in the form of the Leviss Declaration and Exhibits B and C thereto, of the expert expenses it incurred as a direct result of plaintiffs' discovery violations. Infomir's redactions do not prohibit this Court from weighing that evidence. *See, e.g.*, *Innis Arden Golf Club v. Pitney Bowes, Inc.*, 2010 WL 11561319, at *18 (D. Conn. May 21, 2010) (awarding reimbursement of expert fees based on redacted invoices where the party seeking fees had already reduced the expert's fees "across the board . . . to account for the fact that only one of his four opinions was related to [the other party's] discovery abuses"), *objections overruled*, 2012 WL 1108527 (D. Conn. Mar. 30, 2012). Moreover, the Court concludes – based on its own familiarity with this case, its observations of Mr. Rucinski during the evidentiary hearing, and the extent to which the Sanctions Order relied on Rucinski's expert opinion – that the hours Stroz Friedberg expended in connection with the retrieval and analysis of information from the Vidulich laptop and the preparation for and presentation at the February 6, 2019 hearing were reasonable in light of the scope and importance of the issues presented. Therefore, as in *Skanga Energy & Marine Ltd. v. Arevenca S.A.*, 2014 WL 2624762, at *7 (S.D.N.Y. May 19, 2014) – a case relied on by plaintiffs, Pl. Opp. at 9 – I conclude that a modest ten percent reduction to Infomir's requested expert expenses will accommodate any "duplication and inefficiencies" in Stroz Friedberg's time records. *Id.* Consequently, Informir will be awarded $77,300.42 out of its requested $85,889.36 for expert and consultant fees.

### D. Other Expenses

Infomir also seeks $2,000.63 in other expenses, comprising $948.48 for court transcription services, $221.50 for parking and tolls, and $830.65 for court reporting services at the Vidulich deposition. Leviss Decl. ¶¶ 24, 40. Plaintiffs do not oppose inclusion of these amounts in the award, and the Court finds them reimbursable under Fed. R. Civ. P. 37(b)(2)(C) and the Sanctions Order.

### Conclusion

For the reasons set forth above, it is hereby ORDERED that Infomir is awarded monetary sanctions in the amount of $254,116.45 (consisting of $174,815.40 in attorneys' fees, $77,300.42 in consultant fees, and $2,000.63 in other expenses) against plaintiffs and their counsel, jointly and severally. Payment is to be made within thirty days of this Order.

Dated: New York, New York
       May 15, 2020

**SO ORDERED**.

_____
**BARBARA MOSES**
**United States Magistrate Judge**

13