## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

Ronald D. Coleman, Esq. (RC 3875)
Dhillon Law Group, Inc.
8 Hillside Avenue
Montclair, NJ 07042
973-298-1723
rcoleman@dhillonlaw.com

Marcus A. Nussbaum, Esq. (MN 9581)
P.O. Box 245599
Brooklyn, NY 11224
201.956.7071
marcus.nussbaum@gmail.com
*Attorneys for Defendant*
*SK Management of New York, Inc.*

| | |
|---|---|
| JOINT STOCK COMPANY "CHANNEL ONE RUSSIA WORLDWIDE," *et al.*,<br><br>    Plaintiffs,<br><br>- vs. -<br><br>INFOMIR LLC, *et al.*,<br><br>    Defendants. | CIVIL ACTION NO.<br><br>1:16-cv-01318-GBD-BCM |

## COUNTER-STATEMENT OF MATERIAL FACTS OFFERED BY DEFENDANT SK MANAGEMENT OF NEW YORK, INC. IN OPPOSITION TO THE MOTION FOR SUMMARY JUDGMENT BY PLAINTIFF JOINT STOCK COMPANY CHANNEL ONE RUSSIA WORLDWIDE

Defendant SK Management of New York, Inc. ("SKM") hereby responds to Plaintiff Joint

Stock Company "Channel One Russia Worldwide" ("Channel One's") Statement of Undisputed

Material Facts as follows:

## UNDISPUTED FACTS RELATING TO CHANNEL ONE

1.     Plaintiff Channel One is a joint stock company located in and organized under the laws of the Russian Federation with its headquarters located at 19 Akademika Koroleva St. Moscow, 127427 Russian Federation. (Plaintiffs' First Amended Verified Complaint, ECF 211 ("Complaint") ¶ 6.) **Pursuant to L. Civ. R. 56.1 (c), SKM does not dispute this paragraph for purposes of plaintiff Channel One's pending motion.**

2.     Channel One's predecessor began broadcasting in Russia on April 1, 1995. (Declaration of Alexander Shprekher executed on July 12, 2021 ("Shprekher Decl.") ¶ 7.) **Pursuant to L. Civ. R. 56.1 (c), SKM does not dispute this paragraph for purposes of plaintiff Channel One's pending motion.**

3.     Channel One produces its main channel known as Perviy Kanal in the Russian Federation. (Shprekher Decl. ¶ 8.) **Pursuant to L. Civ. R. 56.1 (c), SKM does not dispute this paragraph for purposes of plaintiff Channel One's pending motion.**

4.     Perviy Kanal is first broadcast via satellite in the Russian Federation. (Shprekher Decl. ¶ 9.) **Pursuant to L. Civ. R. 56.1 (c), SKM does not dispute this paragraph forpurposes of plaintiff Channel One's pending motion.**

5.     Channel One produces a modified version of its programming (the "Programming") for international audiences. (Shprekher Decl. ¶ 10.) **It is not disputed that Channel One makes separate broadcasts of its programming for its Russian and International audiences. However, Perviy Kanal ("Channel One Russia") and Channel One-US are legally identical for purposes of Copyright law, as the only 'differences' (time shifting, removal of unlicensed programming and local commercials) are trivial and dictated by commercial necessity. See March 7, 2018 Declaration of Alexander Shprehker, ("Shprekher 2018 Decl."), previously filed by plaintiffs as ECF 550, at Pars. 15-18, Exhibit B to the Declaration of Evan Silagi**

2

(Silagi Decl.") as ECF 929.

6.      One modified international version of the Programming that Channel One produces for the United States is Channel One-US. (Shprekher Decl. ¶ 11). **Not disputed, subject to the clarifications set forth in response to ¶5.**

7.      Channel One-US is broadcast by Channel One licensees in the United States. (Shprekher Decl. ¶¶ 11,13.) **Not disputed, subject to the clarifications set forth in response to ¶5.**

8.      Channel One also produces thematic channels Dom Kino, Muzika Pervogo, Vremya:dalekoe i blizkoe, Telekafe, and Carousel International ("Thematic Channels"). (Complaint ¶ 6; Shprekher Decl. ¶¶ 12.) **Pursuant to L. Civ. R. 56.1 (c), SKM does not dispute this paragraph for purposes of plaintiff Channel One's pending motion.**

9.      Channel One's television channels have the largest audience in the Russian Federation and the Commonwealth of Independent States. Channel One broadcasts a wide range of news, documentary and feature film productions as well as entertainment programs that attract over 250 million viewers worldwide. (Shprekher Decl. ¶ 14; Complaint ¶ 6.) **Pursuant to L. Civ. R. 56.1 (c), SKM does not dispute this paragraph for purposes of plaintiff Channel One's pending motion.**

10.     The Programming available on Channel One-US is time-shifted so that programs originally broadcast in the morning in Russia will be seen in the morning in the United States. (Shprekher Decl. ¶ 18). Similarly, Programming originally broadcast in the evening in Russia is time-shifted to the evening in the United States. (*Id.*) **Pursuant to L. Civ. R. 56.1 (c), SKM does not dispute this paragraph for purposes of plaintiff Channel One's pending motion.**

11.     Channel One-US has different Programming from Perviy Kanal due to license agreements Channel One has with television and film producers. (Shprekher Decl. ¶ 19.)**Disputed. Perviy Kanal ("Channel One Russia") and Channel One-US are legally identical for purposes of Copyright law, as the only 'differences' (time shifting, removal of unlicensed programming and local commercials) are trivial and dictated by commercial necessity. [See Shprehker 2018 Decl. at Pars. 15-18]. To the extent that Channel One now claims or asserts that it possesses a copyrighted interest in any of the Programming, SKM disputes this because no plaintiff has established by competent admissible evidence that it owns such copyrights. To the contrary, all of the plaintiffs affirmatively withdrew all claims based upon any particular copyright or trademark registration. [See ECF 891-3, March 6, 2018 letter, Exhibit A to the Declaration of Evan Silagi ("Silagi Declaration") at ECF 929]. In addition, SKM objects to this paragraph, which refers to and relies upon "licenses", because plaintiffs refused to produce any of their licensing agreements for the broadcasts of plaintiffs' programming. See ECF 891-3 at 2. Because plaintiffs have refused to produce licenses, this purported statement of fact is improper pursuant to Fed. R.Civ. P. 56(c)(2) as the material cited to support or dispute it cannot be presented in a form that would be admissible in evidence and, pursuant to Fed. R. Civ. P. 56(d)(1), the court should deny plaintiff's motion.**

12.     Channel One-US also does not have the same advertising as Perviy Kanal. (Shprekher Decl. ¶ 20). Instead, Channel One-US inserts into commercial breaks advertising from local small businesses in the United States that cater to Russian speakers. (*Id.*). **SKM does not dispute the first sentence of this paragraph. The second sentence, which purports to explain the reasons for the variance in commercial breaks, involves license issues and is therefore improper. See response to ¶11.**

4

## **UNDISPUTED FACTS RELATING TO SKM OF NEW YORK INC.**

13.    SKM is a New York domestic corporation that Sam Katsman ("Katsman") incorporated on April 7, 2006. (Exhibit 9 to July 29, 2021 Declaration of Hardin P. Rowley ("Rowley Decl."); ECF 384-8; ECF 384-9 at 13–14). **Pursuant to L. Civ. R. 56.1 (c), SKM does not dispute this paragraph for purposes of plaintiff Channel One's pending motion.**

14.    SKM's office is located at 2610 E 18th St, Office #1, Brooklyn, NY 11235. (Rowley Ex. 6, Deposition Transcript of Sam Katsman dated December 21, 2017 and April 13, 2018 ("Katsman Tr.") at 43:11–18; Rowley Decl. Exs. 52, 53). **Pursuant to L. Civ. R. 56.1 (c), SKM does not dispute this paragraph for purposes of plaintiff Channel One's pending motion.**

15.    New York Department of State Records list SKM's principal executive office as 390 Fifth Ave, New York, NY 10018. (Rowley Decl. Ex. 9.) **Pursuant to L. Civ. R. 56.1 (c), SKM does not dispute this paragraph for purposes of plaintiff Channel One's pending motion.**

16.    Katsman owns SKM. (Rowley Decl. Ex. 9) **Pursuant to L. Civ. R. 56.1 (c), SKM does not dispute this paragraph for purposes of plaintiff Channel One's pending motion.**

17.    Katsman is SKM's chief executive officer. (ECF 384-10 at 7-8)(SKM answer to Interrogatory No. 9). **Pursuant to L. Civ. R. 56.1 (c), SKM does not dispute this paragraph for purposes of plaintiff Channel One's pending motion.**

18.    SKM owns gudzon.tv ("Goodzone"). (Katsman Tr.at 29:17-20; ECF 384-10 at 8)(SKM answer to Interrogatory No. 14). **Pursuant to L. Civ. R. 56.1 (c), SKM does not dispute this paragraph for purposes of plaintiff Channel One's pending motion.**

19.    SKM created the Goodzone service to engage in the sale of programming via IPTV in 2014 or 2015.  (Katsman Tr. at 9:21-23; 36:12–15.)  **Pursuant to L. Civ. R. 56.1 (c), SKM does not dispute this paragraph for purposes of plaintiff Channel One's pending motion.**

20.    Goodzone subscribers pay SKM for the Goodzone service.  (Katsman Tr. at 101:21-102:10).  **Pursuant to L. Civ. R. 56.1 (c), SKM does not dispute this paragraph for purposes of plaintiff Channel One's pending motion.**

21.    According to Katsman, Goodzone is SKM's only business.  (Katsman Tr. at 30:18-21).  **Pursuant to L. Civ. R. 56.1 (c), SKM does not dispute this paragraph for purposes of plaintiff Channel One's pending motion.**

22.    Katsman testified that SKM has no money. (Katsman Tr. at 44:17–24). **Pursuant to L. Civ. R. 56.1 (c), SKM does not dispute this paragraph for purposes of plaintiff Channel One's pending motion.**

### UNDISPUTED FACTS RELATING TO THE GOODZONE WEBSITE

23.    SKM distributes the Programming through the Goodzone service. (Rowley Decl. ¶¶ 29-31 Exs. 25-27 (Vidulich Affidavits); Rowley Decl. ¶ 32 Ex. 28 (July 13, 2021 Declaration of Maksim Kalameyets ¶ 16.) **Disputed. Attorney Rowley and paralegal Vidulich are not competent to offer testimony as admissible evidence. The "Declaration of Maksim Kalameyets", ECF 919-28, constitutes an improper attempt to introduce an untimely expert's report, in violation of this Court's orders [See ECF 837 and 796 as amended] and therefore should be precluded and not permitted as admissible evidence.**

24.    SKM owns, operates, and manages the Goodzone Website. (Katsman Tr. at 29:17–20; 113:10–15). **Pursuant to L. Civ. R. 56.1 (c), SKM does not dispute this paragraph for purposes of plaintiff Channel One's pending motion.**

25.    SKM advertises the Goodzone service's compatibility with desktop computers and set-top boxes ("STB"). (Rowley Decl. ¶¶ 33-35, Exs. 29-31). **Pursuant to L. Civ. R. 56.1 (c), SKM does not dispute this paragraph for purposes of plaintiff Channel One's pending motion.**

26.    The Goodzone Website hosts a manual for the Infomir MAG 254 STB. (Rowley Decl. ¶ 36, Ex. 32 & ECF 268-9, 385-13.) **Pursuant to L. Civ. R. 56.1 (c), SKM does not dispute this paragraph for purposes of plaintiff Channel One's pending motion, except notes that Infomir LLC does not sell set top boxes to SK Management and SK Management does not sell Infomir-brand set top boxes to deliver its content. [Katsman Tr. at 120:18-121:14 (Q: Are you still selling MAG 254 boxes? A: Did we ever sell them? ...we are not selling them as of now, that's for sure ... they are expensive.)] Infomir LLC also does not sell MAG 254 STBs. ECF 879 at brief page 7 N. 11.**

27.    The Goodzone website advertises compatibility with Goodzone Apps. (Rowley Decl. ¶¶ 36-37, Exs. 33-35.) **Pursuant to L. Civ. R. 56.1 (c), SKM does not dispute this paragraph for purposes of plaintiff Channel One's pending motion.**

28.    Katsman testified that he registered the Goodzone domain on behalf of SKM. (Katsman Tr. at 76:1-4; 105:5–12.). **Pursuant to L. Civ. R. 56.1 (c), SKM does not dispute this paragraph for purposes of plaintiff Channel One's pending motion.**

29.    According to Whois, the "creation date" of the Goodzone website is June 22, 2014. (ECF 260-1.) **Pursuant to L. Civ. R. 56.1 (c), SKM does not dispute this paragraph for purposes of plaintiff Channel One's pending motion.**

30. The Goodzone website's registration was updated on June 22, 2015. (ECF 260-1.) That registration stated:

- Registrant Name: Gregory Davidzon
- Registrant Organization: CALL-O-CALL, Inc.
- Registrant Street/City/State: 390 Fifth Avenue, Suite 511, New York, New York, 10018
- Registrant Email: greg@abinet.com.

(*Id.*) **Pursuant to L. Civ. R. 56.1 (c), SKM does not dispute this paragraph for purposes of plaintiff Channel One's pending motion.**

31. Gregory Davidzon ("Davidzon") was the only administrative and technical contact listed for the Goodzone Website. (ECF 260-1; 207-7.) **Pursuant to L. Civ. R. 56.1 (c), SKM does not dispute this paragraph for purposes of plaintiff Channel One's pending motion.**

32. On March 27, 2017, someone with administrative credentials updated the Goodzone website to list Sergey Nerzov and Lebrai Management LP ("Lebrai"), with an address of 272 Bath Street, Glasgow, Scotland, G2 4JR, [United Kingdom], as the Registrant Contact. (ECF 260-16.) **Pursuant to L. Civ. R. 56.1 (c), SKM does not dispute this paragraph for purposes of plaintiff Channel One's pending motion.**

33. On August 14, 2017, someone with administrative credentials updated the Goodzone website registration to list only Lebrai as the Registrant Contact. (Rowley Decl. Ex. 51.) **Pursuant to L. Civ. R. 56.1 (c), SKM does not dispute this paragraph for purposes of plaintiff Channel One's pending motion.**

34. On June 11, 2020, someone with administrative credentials updated the Goodzone website registration. Lebrai remains the registrant of the Goodzone Website. (Rowley Decl. Ex. 48). **Pursuant to L. Civ. R. 56.1 (c), SKM does not dispute this paragraph for purposes of plaintiff Channel One's pending motion.**

35.    Verisign, Inc. owns the .tv domain that SKM uses for the Goodzone Website. *See* https://www.verisign.com/en_US/domain-names/tv-domain-names/index.xhtml. **Pursuant to L. Civ. R. 56.1 (c), SKM does not dispute this paragraph for purposes of plaintiff Channel One's pending motion.**

## UNDISPUTED FACTS RELATING TO SK MANAGMENT'S AFFILIATES

### A. Lebrai Management LP

36.    Lebrai was a United Kingdom limited partnership formed on September 10, 2014 in Edinburgh, United Kingdom. (Rowley Decl. Ex. 16; ECF 430-2.) **Pursuant to L. Civ. R. 56.1 (c), SKM does not dispute this paragraph for purposes of plaintiff Channel One's pending motion.**

37.    Lebrai filed a certificate of dissolution with Companies House in the United Kingdom on January 28, 2019. (Rowley Decl. Ex 16). **Pursuant to L. Civ. R. 56.1 (c), SKM does not dispute this paragraph for purposes of plaintiff Channel One's pending motion.**

38.    As of June 2, 2021, Whois still lists the dissolved Lebrai as the registrant of the Goodzone Website. (Rowley Decl. Ex. 48) **Pursuant to L. Civ. R. 56.1 (c), SKM doesnot dispute this paragraph for purposes of plaintiff Channel One's pending motion.**

39.    In 2017, SKM received a television signal from Lebrai. (Katsman Tr. at 37:19–38:1.) **Pursuant to L. Civ. R. 56.1 (c), SKM does not dispute this paragraph for purposes of plaintiff Channel One's pending motion.**

40.    SKM produced a document evidencing payments of $1,800 and $4,100 from Bravo Price Corp to Lebrai Management in January and March 2017. (Rowley Decl. Ex 37 (DEF0001).) **Pursuant to L. Civ. R. 56.1 (c), SKM does not dispute this paragraph for purposes ofplaintiff Channel One's pending motion.**

9

41. Katsman testified that Lebrai "vanished" after the January and March 2017 payments. (Katsman Tr. at 62:13–20; 111:3–19). Yet, Katsman swore that he searched Lebrai's business records in May 2017. (May 30, 2017 Declaration of Sam Katsman (ECF 276-2) ¶ 10). **Pursuant to L. Civ. R. 56.1 (c), SKM does not dispute this paragraph for purposes ofplaintiff Channel One's pending motion.**

42. SKM claims to be an agent of Lebrai. (Katsman Tr. at 93:23-95:22; May 30, 2017 Declaration of Sam Katsman (ECF 276-2) ¶¶ 2-4; May 30, 2017 Declaration of Marcus Nussbaum, Esq. (ECF 276-3) ¶ 1.) SKM has produced no agreement evidencing an agency relationship. **Pursuant to L. Civ. R. 56.1 (c), SKM does not dispute this paragraph for purposes ofplaintiff Channel One's pending motion.**

43. "Sven Prees" is listed in UK Companies House filings as the managing partner of Lebrai. (ECF 284-1.) **Pursuant to L. Civ. R. 56.1 (c), SKM does not dispute this paragraph for purposes of plaintiff Channel One's pending motion.**

44. Katsman does not know Sven Prees. (Katsman Tr. at 103:20–24.) **Pursuant to L. Civ. R. 56.1 (c), SKM does not dispute this paragraph for purposes of plaintiff Channel One's pending motion.**

45. In 2018, SKM obtained its signal for programming directly from a company in the Ukraine. (Katsman Tr. at 62:13–20.) **Pursuant to L. Civ. R. 56.1 (c), SKM does not dispute this paragraph for purposes of plaintiff Channel One's pending motion and adds that the signal is for Channel One Russia only. See, Declaration of Sam Katsman (ECF 276-2) at ¶¶ 13-18).**

**B. Bravo Price Corp**

46. Bravo Price Corp shares the same 2610 E 18th St, Office #1, Brooklyn, NY 11235 office address as SKM. (Katsman Tr. at 43:19–44:9.) **Pursuant to L. Civ. R. 56.1 (c), SKM does not dispute this paragraph for purposes of plaintiff Channel One's pending motion.**

47.    Bravo Price Corp has six employees: Dimitri Dudkin, Suzanna Wizman, Anna Goshina, Alexandra Sudzilovskaya, Guili Safieva, and Timur Dorranov. (Katsman Tr. at 18:5–9; Rowley Decl. Ex. 12.) **Pursuant to L. Civ. R. 56.1 (c), SKM does not dispute this paragraph for purposes of plaintiff Channel One's pending motion.**

48.    SKM employees also work for Bravo Price Corp. (Katsman Tr. at 36:9–19.) **Pursuant to L. Civ. R. 56.1 (c), SKM does not dispute this paragraph for purposes of plaintiff Channel One's pending motion.**

49.    Bravo Price Corp. paid $1,800 and $4,100 to Lebrai Management in 2017. (Rowley Decl. Ex 37 (DEF0001). **Pursuant to L. Civ. R. 56.1 (c), SKM does not dispute this paragraph for purposes of plaintiff Channel One's pending motion.**

50.    Katsman testified that Bravo Price Corp as a technical department for the Goodzone service, orders set top boxes for the Goodzone Service and "also works and sends invoices, and S.K. Managament pays for it." (Katsman Tr. at 13:6-15; 29:11–16.) **Pursuant to L. Civ. R. 56.1 (c), SKM does not dispute this paragraph for purposes of plaintiff Channel One's pending motion.**

51.    Katsman owns 90% of Bravo Price Corp. (Rowley Decl. Ex. 13 (DEF0128).) **Pursuant to L. Civ. R. 56.1 (c), SKM does not dispute this paragraph for purposes ofplaintiff Channel One's pending motion.**

52.    Katsman and "Gregory Davidson" are listed in business records as the President and Vice President of Bravo Price Corp. (ECF 385-7.) **Pursuant to L. Civ. R. 56.1 (c), SKM does not dispute this paragraph for purposes of plaintiff Channel One's pending motion.**

53.    Katsman testified that Bravo Price Corp was the only other company providing services for the Goodzone Website. (Katsman Tr. at 15:25–16:2.) **Pursuant to L. Civ. R. 56.1 (c),**

SKM does not dispute this paragraph for purposes of plaintiff Channel One's pending motion.

54.    Bravo Price Corp also has business related to Davidzon Phone Cards and a vitamin business. (Katsman Tr. at 19:21–20:8; 24:20–25:10.) **Pursuant to L. Civ. R. 56.1 (c), SKM does not dispute this paragraph for purposes of plaintiff Channel One's pending motion.**

55.    Bravo Price Corp pays Davidzon Radio to advertise its products. (Katsman Tr. at 22:7–19.) **Pursuant to L. Civ. R. 56.1 (c), SKM does not dispute this paragraph for purposes of plaintiff Channel One's pending motion.**

56.    Bravo Price Corp was a service company for Call-O-Call, Inc. (Katsman Tr.at 26:11–27:4.) **Pursuant to L. Civ. R. 56.1 (c), SKM does not dispute this paragraph for purposes of plaintiff Channel One's pending motion.**

57.    Katsman testified that Bravo Price Corp stopped doing business with Call-O-Call, Inc. four to five years ago. (Katsman Tr. at 27:25–28:4.)  **Pursuant to L. Civ. R. 56.1 (c), SKM does not dispute this paragraph for purposes of plaintiff Channel One's pending motion.**

**C. Call-O-Call, Inc.**

58.    Call-O-Call is a Domestic Business Corporation with an address of 390 Fifth Ave., #511, New York, NY 10018. (Rowley Decl. Ex. 15.) **Pursuant to L. Civ. R. 56.1 (c), SKM does not dispute this paragraph forpurposes of plaintiff Channel One's pending motion.**

59.    Call-O-Call has the same corporate address as SKM. (Compare Rowley Decl. Ex. 15 with ECF 384-8.) **Pursuant to L. Civ. R. 56.1 (c), SKM does not dispute this paragraph for purposes of plaintiff Channel One's pending motion.**

60.    SKM produced 13 documents evidencing monthly bills of approximately $5,000 from Webair Internet Development Inc. ("Webair") of Garden City, New York to Call-O-Call with a contact email of tech@abinet. (Rowley Decl. Ex. 50). Webair issued these invoices between

12

February 1, 2017 and February 1, 2018. (*Id.*) **Pursuant to L. Civ. R. 56.1 (c), SKM doesnot dispute this paragraph for purposes of plaintiff Channel One's pending motion.**

      61.    Katsman claims that Call-O-Call had a contract with Webair. (Katsman Tr. at 159:8-24.) **Pursuant to L. Civ. R. 56.1 (c), SKM does not dispute this paragraph for purposes of plaintiff Channel One's pending motion.**

      62.    Katsman testified that Call-O-Call is bankrupt and no longer exists. (Katsman Tr. at 27:14–15; 84:1–4.) **Pursuant to L. Civ. R. 56.1 (c), SKM does not dispute this paragraph for purposes of plaintiff Channel One's pending motion.**

      63.    Katsman and Davidzon used to work for Call-O-Call. (Katsman Tr. at 60:20–25.) **Pursuant to L. Civ. R. 56.1 (c), SKM does not dispute this paragraph for purposes ofplaintiff Channel One's pending motion.**

      64.    Andrey Tovstashy is the CEO of Call-O-Call. (Katsman Tr. at 93:20–22.) **Pursuant to L. Civ. R. 56.1 (c), SKM does not dispute this paragraph for purposes ofplaintiff Channel One's pending motion.**

      65.    Attorney Marcus Nussbaum (Mr. Nussbaum") is currently representing Call-O-Call and its CEO Andrey Tovstashy. See Call-O-Call, Inc. and Andrey Tovstashy v. Quicktrak, Inc. Index No. 652548/2017 (Sup. Ct. N.Y. Co.). **SKM disputes this allegation which fails to cite to any admissible evidence in support thereof. In any event, and to the extent that the Court takes judicial notice of Court records, that matter was marked disposed in 2018.**

      66.    Tovstashy provided an address of 565 Faletti Way, River Vale NJ 07675 in the lawsuit. *Id.* Channel One was unsuccessful at serving Tovstashy at the same address. (Rowley Decl. Ex. 4) **Pursuant to L. Civ. R. 56.1 (c), SKM does not dispute this paragraph forpurposes of plaintiff Channel One's pending motion.**

67.     On March 3, 2018, Andrey Tovstashy filed for Chapter 7 Bankruptcy. *See In Re Andrey Tovstashy* 18-14450. **Pursuant to L. Civ. R. 56.1 (c), SKM does not dispute this paragraph for purposes of plaintiff Channel One's pending motion.**

**D. Advanced Business Integration Network Corp**

68.     Advanced Business Integration Network Corp ("ABIN") is a registered New York corporation with an address of 390 5th Ave., Suite #511, New York, NY 10018. (Rowley Decl. Ex. 14.) **Pursuant to L. Civ. R. 56.1 (c), SKM does not dispute this paragraph for purposes of plaintiff Channel One's pending motion.**

69.     Katsman has an ownership interest in ABIN and served as the President of ABIN. (Katsman Tr. at 81:15-21, 93:3-10; Rowley Decl. Ex. 19 at FN 13.) **Pursuant to L. Civ. R. 56.1 (c), SKM does not dispute this paragraph for purposes of plaintiff Channel One's pending motion.**

70.     Katsman, Dmitry Dudkin, and Davidzon have used email addresses with the domain @abinet.com (ECF 260-1, 385-54; Katsman Tr. at 81:10-20, 161:24-162:7). **Pursuant to L. Civ. R. 56.1 (c), SKM does not dispute this paragraph for purposes of plaintiff Channel One's pending motion.**

71.     Katsman testified that ABIN is dormant. (Katsman Tr. at 81:22-82:1). **Pursuant to L. Civ. R. 56.1 (c), SKM does not dispute this paragraph for purposes of plaintiffChannel One's pending motion.**

72.     However, ABIN was receiving payments for the Goodzone service in 2019. (ECF 749-11 at 3) (February 24, 2019 credit card processing receipt for Goodzone service). **SKM denies this allegation as it is not based upon admissible evidence but rather, upon the inadmissible and grossly improper testimony of attorney Raymond Dowd as to what the subject**

documents are. Mr. Dowd is not competent as a witness in this matter.

### E. Dmitry Dudkin

73.    Dudkin runs the technical department at SKM.    (Katsman Tr. at 63:12–17). **Pursuant to L. Civ. R. 56.1 (c), SKM does not dispute this paragraph for purposes of plaintiff Channel One's pending motion.**

74.    Katsman instructed Dudkin to develop the software that operates STBs sold by SKM.  (Katsman Tr. at 34:11–18; 62:11–12.) **Pursuant to L. Civ. R. 56.1 (c), SKM does not dispute this paragraph for purposes of plaintiff Channel One's pending motion.**

75.    Dudkin developed the software that enables customers to view Channel One Programming. (Katsman Tr. at 33:16–34:10.) **Pursuant to L. Civ. R. 56.1 (c), SKM does not dispute this paragraph for purposes of plaintiff Channel One's pending motion.**

76.    Dudkin loads SKM software onto STBs sold by SKM. (Katsman Tr. at 34:5–7.) **Pursuant to L. Civ. R. 56.1 (c), SKM does not dispute this paragraph for purposes of plaintiff Channel One's pending motion.**

77.    Dudkin worked with Lebrai to obtain the Programming signal. (Katsman Tr. at 62:5–10.) **Pursuant to L. Civ. R. 56.1 (c), SKM does not dispute this paragraph for purposes of plaintiff Channel One's pending motion and adds that the signal is for Channel One Russia only. See, Declaration of Sam Katsman (ECF 276-2) at ¶¶ 13-18).**

78.    Between June 2014 and June 2015, SKM or an affiliate ordered computer equipment and shipped that equipment to Dudkin at 390 Fifth Ave #511, New York, NY 10018 and 137 Hett Ave., Staten Island, NY 10306-5727.  (Rowley Decl. Ex. 49 (DEF0081–90) Katsman Tr. at 172:6-14;). **Pursuant to L. Civ. R. 56.1 (c), SKM does not dispute this paragraph for purposes of plaintiff Channel One's pending motion.**

79.     Dudkin has worked for Bravo Price Corp for approximately 15 years. (ECF 385-10)(Dudkin LinkedIn page). **SKM disputes the allegation in this paragraph which cites to inadmissible evidence, to wit: a printout of Dudkin's LinkedIn page from the internet and the inadmissible testimony of Mr. Rowley who is not competent as a witness in this matter.**

80.     Dudkin also worked for Call-O-Call. (Katsman Tr. at 34:16–18.) **Pursuant to L. Civ. R. 56.1 (c), SKM does not dispute this paragraph for purposes of plaintiff Channel One's pending motion.**

81.     Channel One attempted to serve Dudkin in October and November 2017. (Rowley Decl. Ex. 3.) **Pursuant to L. Civ. R. 56.1 (c), SKM does not dispute this paragraph forpurposes of plaintiff Channel One's pending motion.**

82.     One attempt at service was made at 2610 E 18th St, Office #1, Brooklyn, NY 11235. (Rowley Decl. Ex. 3.) The process server was told by two employees of Bravo Price Corp that Dudkin did not work at that address. (Id.) **Pursuant to L. Civ. R. 56.1 (c), SKM does not dispute this paragraph for purposes of plaintiff Channel One's pending motion.**

83.     The processer served made two attempts to serve Dudkin at 60 Fletcher Street, Staten Island, New York 10305. (*Id.*) **Pursuant to L. Civ. R. 56.1 (c), SKM does not dispute this paragraph for purposes of plaintiff Channel One's pending motion.**

84.     During Channel One's process servers' third attempt at service, a man claiming to be Dudkin's father informed the process server that Dudkin had died in a motor vehicle accident. (Id.) **Pursuant to L. Civ. R. 56.1 (c), SKM does not dispute this paragraph for purposes of plaintiff Channel One's pending motion.**

85.     Dudkin—not his estate—filed a lawsuit against Nissan of America on January 11, 2018 in the Eastern District of New York. *See Dmitry Dudkin v. Nissan North America, Inc*. No. 1:18-cv-00187. **Pursuant to L. Civ. R. 56.1 (c), SKM does not dispute this paragraphfor**

purposes of plaintiff Channel One's pending motion.

### F. Davidzon Radio Inc.

86.     Davidzon Radio Inc. ("Davidzon Radio") is a Domestic Business Corporation located at 2508 Coney Island Avenue, Brooklyn, New York 11223. (ECF 260-4)(Davidzon Radio NY DOS Search results). **Pursuant to L. Civ. R. 56.1 (c), SKM does not dispute this paragraph for purposes of plaintiff Channel One's pending motion.**

87.     Goodzone advertises on Davidzon Radio. (Katsman Tr. at 15:4–17). **Pursuant to L. Civ. R. 56.1 (c), SKM does not dispute this paragraph for purposes of plaintiff Channel One's pending motion.**

88.     Katsman and Davidzon are 50% owners of Davidzon Radio. (Katsman Tr. at 54:14-16). **SKM disputes the allegations in this paragraph to the extent that it mischaracterizes the testimony of Mr. Katsman. Mr. Katsman explains that he is an equal partner with Mr. Davidzon in a project pertaining to "Volna" 620 AM.** (Katsman Tr. at 52-54).

89.     Davidzon is President and Katsman is Vice President of Davidzon Radio. (ECF 385-8.) **SKM disputes the allegation in this paragraph which cites to inadmissible evidence, to wit: a printout of a web page from the internet and the inadmissible testimony of Mr. Rowley who is not competent as a witness in this matter.**

90.     Davidzon Radio is available on the Goodzone Website and App. (ECF 281-1; Katsman Tr.at 23:17–24:8). **Pursuant to L. Civ. R. 56.1 (c), SKM does not dispute this paragraph for purposes of plaintiff Channel One's pending motion.**

91.     SKM does not have a contract with Davidzon Radio to stream radio content on the Goodzone app. (Katsman Tr. at 23:17–22). **Pursuant to L. Civ. R. 56.1 (c), SKM does not dispute this paragraph for purposes of plaintiff Channel One's pending motion.**

92.     Rather, SKM takes Davidzon Radio programming "off the Internet." (Katsman Tr. at 23:23–24:8.) **Pursuant to L. Civ. R. 56.1 (c), SKM does not dispute this paragraphfor purposes of plaintiff Channel One's pending motion.**

93.     On March 31, 2015, Full Circle Capital Corporation loaned SKM, Bravo Price Corp., ABIN, Davidzon Radio, Davidzon Media, and other entities $10,974,473.00 to purchase the Davidzon radio frequency. (Rowley Decl. ¶ 24, Ex 20.) **Pursuant to L. Civ. R. 56.1 (c), SKM does not dispute this paragraph for purposes of plaintiff Channel One's pending motion.**

94.     Katsman and Davidzon agreed to personal guarantees of approximately $1 million. (*Id.*; Katsman Tr. at 53:1-54:19; Rowley Decl. ¶ 24, Ex 20.) **Pursuant to L. Civ. R. 56.1 (c), SKM does not dispute this paragraph for purposes of plaintiff Channel One's pending motion.**

95.     In 2018, Katsman conceded that the frequency purchasers owe "$10 million. That's what is due or we'll lose [the frequency]." (Katsman Tr. at 54:6-7.) **Pursuant to L. Civ. R. 56.1 (c), SKM does not dispute this paragraph for purposes of plaintiff Channel One's pending motion.**

96.     Katsman testified that if "If I had this money [for the loan guarantee], I wouldn't have started the [Goodzone] TV project." (Katsman Tr. at 54:17-19.) **Pursuant to L. Civ. R. 56.1 (c), SKM does not dispute this paragraph for purposes of plaintiff Channel One's pending motion.**

97.     On March 11, 2020, Great Elm Capital Corporation, an entity that merged with Full Circle Capital Corporation, filed a Notice of Motion for Summary Judgment In Lieu of Complaint in New York Supreme Court against Katsman for payment of the loan guarantee. *See Great Elm Capital Corporation v. Sam Katsman,* Index No. 651612/2020 (Sup. Ct. N.Y. Co.). **Pursuant to L. Civ. R. 56.1 (c), SKM does not dispute this paragraph for purposes of plaintiff Channel**

One's pending motion.

98.     On October 29, 2020, Great Elm Capital Corporation filed a Notice of Motion for Summary Judgment In Lieu of Complaint in New York County Supreme Court against Gregory Davidzon for payment of the loan guarantee. *See Great Elm Capital Corporation v. Gregory Davidzon,* Index No. 655787/2020. (Sup. Ct. N.Y. Co.). **Pursuant to L. Civ. R. 56.1 (c), SKM does not dispute this paragraph for purposes of plaintiff Channel One's pending motion.**

99.     On January 13, 2021 Katsman filed a petition for Chapter 11 Bankruptcy in the Eastern District of New York. *In re Sam Katsman* Dkt. No: 1-21-40081. **Pursuant to L. Civ. R. 56.1 (c), SKM does not dispute this paragraph for purposes of plaintiff Channel One's pending motion.**

100.    On January 13, 2021 Davidzon filed for Chapter 11 Bankruptcy in the Eastern District of New York. *In re Grigory Davidzon* Dkt. No: 1-21-40078. **Pursuant to L. Civ. R. 56.1 (c), SKM does not dispute this paragraph for purposes of plaintiff Channel One's pending motion.**

101.    On January 15, 2021 Davidzon Radio filed for Chapter 11 Bankruptcy in the Eastern District of New York. *In re Davidzon Radio, Inc.* Dkt. No: 1-21-40782. **Pursuant to L. Civ. R. 56.1 (c), SKM does not dispute this paragraph for purposes of plaintiff Channel One's pending motion.**

G. Gregory Davidzon

102.    Davidzon appeared as the registrant for the Goodzone Website (Rowley Decl. Ex. 45). **Pursuant to L. Civ. R. 56.1 (c), SKM does not dispute this paragraph for purposes of plaintiff Channel One's pending motion.**

103.    Davidzon has evaded ten attempts at service by Channel One.   (ECF 432).
**SKM disputes this allegation inasmuch as it misquotes the Court's words. The Order authorizing service specifically uses the words "Plaintiffs attest that they have unsuccessfully attempted personal service on Mr. Davidzon ten times…". Plaintiffs' defective service does not equate to Mr. Davidzon allegedly having "evaded" service.**

## UNDISPUTED FACTS RELATING TO THE PROCEDURAL HISTORY OF THE CASE

104.    On February 19, 2016, Channel One and other Russian broadcasters ("Broadcasters") filed a Verified Complaint seeking to "restrain the unauthorized interception and re-broadcasts of valuable foreign language television programming over the internet," and named "Goodzone" as a defendant. (ECF 1.) **Admitted that the complaint was filed on February 19, 2016 and that Goodzone was named as a defendant. The remaining characterizations and allegations of this paragraph are disputed as set forth in ECF 251**

105.    On April 28, 2016, Mr. Nussbaum accepted service on behalf of Goodzone TV. (ECF 59.) **Pursuant to L. Civ. R. 56.1 (c), SKM does not dispute this paragraph for purposes of plaintiff Channel One's pending motion.**

106.    On May 17, 2016, Mr. Nussbaum filed a Notice of Appearance on behalf of "Goodzone TV." (ECF 60). **Pursuant to L. Civ. R. 56.1 (c), SKM does not dispute this paragraph for purposes of plaintiff Channel One's pending motion.**

107.    On June 27, 2016, Mr. Nussbaum filed a motion to dismiss on behalf of Goodzone. Mr. Nussbaum specified that he represented "www.gudzon.tv." (ECF 82, ECF 83 ECF 260-10.) **Pursuant to L. Civ. R. 56.1 (c), SKM does not dispute this paragraph for purposes ofplaintiff Channel One's pending motion.**

108.    On May 21, 2017 Ronald Coleman, Esq. filed a Notice of Appearance on behalf of Goodzone TV. (ECF 265). **Pursuant to L. Civ. R. 56.1 (c), SKM does not dispute this**

paragraph for purposes of plaintiff Channel One's pending motion.

109.    On May 4, 2017, "Goodzone" filed an Answer to the First Amended Verified Complaint. (ECF 253.). **Pursuant to L. Civ. R. 56.1 (c), SKM does not dispute this paragraph for purposes of plaintiff Channel One's pending motion.**

110.    On May 8, 2017, "Goodzone" provided Plaintiffs with Initial Disclosures, which listed only one person, an individual named "Dzintars Stasulis", as possessing discoverable information on behalf of "Goodzone." (ECF 384-5). "Goodzone" failed to provide an address, phone number, or any other information for "Dzintars Stasulis." (ECF 260-13.) **Pursuant to L. Civ. R. 56.1 (c), SKM does not dispute this paragraph for purposes of plaintiff Channel One's pending motion.**

111.    On May 12, 2017, Channel One's counsel, Raymond Dowd, contacted attorney Nussbaum and wrote as follows:

> "Our research appears to show that Dzintars Stasulis is a fake name. Can you please verify the address and telephone number of Mr. Stasulis as required by Rule 26(a), let us know what his relationship is with Goodzone and what your good faith basis for providing this information to us is? We believe that Gregory Davidzon is the principal of Goodzone and ask that you please confirm this."

(ECF 260-15.)

**Pursuant to L. Civ. R. 56.1 (c), SKM does not dispute this paragraph for purposes ofplaintiff Channel One's pending motion.**

112.    On May 16, 2017, Mr. Dowd again requested that Mr. Nussbaum disclose his clients' identity. (ECF 260-18.) On May 16, 2017, Plaintiffs' counsel served Mr. Nussbaum with a demand pursuant to Local Rule 26.1 to disclose information about his client(s). (ECF 260-19.) **Pursuant to L. Civ. R. 56.1 (c), SKM does not dispute this paragraph for purposes ofplaintiff Channel One's pending motion.**

113. SKM served amended disclosures on May 23, 2017 to disclose SKM and Katsman. (Rowley Decl. Ex. 53.) **Pursuant to L. Civ. R. 56.1 (c), SKM does not dispute this paragraph for purposes of plaintiff Channel One's pending motion.**

114. On February 9, 2018, the Court replaced Goodzone TV in the caption with SKM. (ECF 523.) **Pursuant to L. Civ. R. 56.1 (c), SKM does not dispute this paragraph forpurposes of plaintiff Channel One's pending motion.**

115. SKM has produced 222 pages of documents. (Rowley Decl. ¶. 12.) **Pursuant to L. Civ. R. 56.1 (c), SKM does not dispute this paragraph for purposes of plaintiff Channel One's pending motion.**

## UNDISPUTED FACTS RELATING TO CHANNEL ONE'S RIGHTS TO THE PROGRAMMING[1]

116. Channel One's programming department arranges the schedule of the Programming. (Shprekher Decl. ¶ 22.) **Pursuant to L. Civ. R. 56.1 (c), SKM does not dispute this paragraph for purposes of plaintiff Channel One's pending motion and adds that the signal is for Channel One Russia only. See, Declaration of Sam Katsman (ECF 276-2) at ¶¶ 13-18).**

117. Channel One does not own the copyright to every individual program that it broadcasts. (Shprekher Decl. ¶ 23.) **Admitted. In fact, plaintiffs have not established by competent admissible evidence that they own copyrights to any of the programming. To the contrary, all plaintiffs affirmatively withdrew all claims based upon any particular copyright or trademark registration. [See ECF 891-3].**

---

[1] SKM uses the same point header as Channel One but for reasons set forth herein disputes that Channel One has established any "rights" to any "Programming".

118.    Channel One owns or licenses all of its content. **Disputed. Plaintiffs withdrew and do not base any of their claims in this action on their rights (legal or beneficial) to the individual works comprising the subject programming.  ECF 569 at 6 ("Plaintiffs do not base any of their claims in this action on their rights [legal or beneficial] to the individual works comprising the Programming."). Defendant also objects to this paragraph, which refers to and relies upon "licenses", because plaintiffs refused to produce any of their licensing agreements for the broadcasts of plaintiffs' programming. See ECF 891-3 at 2. Because plaintiffs have refused to produce licenses, this purported statement of fact is improper pursuant to Fed. R. Civ. P. 56(c)(2) as the material cited to support or dispute it cannot be presented in a form that would be admissible in evidence and, pursuant to Fed. R. Civ. P. 56(d)(1), the court should deny plaintiff's motion.**

119.    A representative sample of 2021 Channel One-US programming is attached to the Shprekher Declaration as Exhibit 1 and current schedules are also available at https://www.directv.com/Channels/C1RW-99R-2140?format=SD   (Shprekher Decl.  ¶ 24.) **SKM disputes that this is a material fact because Channel One has affirmatively represented that SKM is broadcasting Russian Programming (Previy Kanal) and not Channel One-US Programming.  Shprekher 2018 Decl., ECF 550 ¶¶48-49 and ECF 917 ¶55("If Goodzone were intercepting satellite communications in the U.S. and streaming those programs to U.S. subscribers, this content would be Channel One-US content, not Channel One programming first broadcast in the Russian Federation.").**

## UNDISPUTED FACTS RELATING TO CHANNEL ONE'S BROADCAST OF THE PROGRAMMING VIA SATELLITE

120.    Channel One's main channel, Perviy Kanal, is first broadcast in the Russian Federation via satellite. (Shprekher Decl. ¶¶ 9, 26; Ex.2) **Pursuant to L. Civ. R. 56, for purposes of plaintiff Channel One's pending motion, SKM does not dispute this paragraph.**

121.    Perviy Kanal and modified Channel One-US Programming consists of data that originates as "over the air" satellite communications and is subsequently transmitted by cable. (ECF 211. ¶¶ 61–70, 85, Ex. 10.) **Disputed. The citation to Plaintiffs' Complaint and an exhibit attached to the Complaint are insufficient and not competent as admissible evidence to establish the facts claimed in this Paragraph. Channel One's 30(b)(6) representative Alexander Shprekher, who affirmed the Complaint, admits he has only "limited understanding" of technical issues, being neither an engineer nor an expert. [Shprekher dep., Exh. C to Silagi Decl. at 14:12; 15:11; 46:25 and 77:21]. As such, Shprekher's testimony and declarations are insufficient to establish these facts. Fed. R. Civ. P. 56 (c) (2) and (c) (4).**

122.    Perviy Kanal is a "must carry" in the Russian Federation (Shprekher Decl. ¶ 26.) **Pursuant to L. Civ. R. 56.1 (c), SKM does not dispute this paragraph for purposes of plaintiff Channel One's pending motion.**

123.    Perviy Kanal is unmodified original Channel One Programming.  (Shprekher Decl. ¶ 29.) **Pursuant to L. Civ. R. 56.1 (c), SKM does not dispute this paragraph for purposes of plaintiff Channel One's pending motion.**

124.    Channel One's Thematic Channels are not free-to-air and are always encrypted. (Shprekher Decl. ¶ 27.) **Disputed. Channel One's 30(b)(6) witness, Shprekher, testified that the broadcasts which Plaintiffs claim are being distributed without authorization are broadcast "terrestrial" and unencrypted which is the equivalent of "free to air". Shprekher T. 64:17; 113:18. In addition, Kartina executive Dmitry Dietrich testified that Kartina broadcasts IPTV content globally, including the plaintiffs' content, without encryption. ECF 879 at 27 (brief page 23 and notes 142-43). See Exhibit L to Silagi Decl. (ECF 929) at 22:25-23:4; 39:25-40:9; 80:20-23.**

125.   Channel One makes no free-to-air broadcasts of its content in the United States. (Shprekher Decl. ¶ 30.) **Disputed. Mr. Dietrich's testimony regarding Kartina's global broadcasts of the plaintiffs' content without encryption or any type of Digital Rights Management refutes this paragraph. See ¶124 supra.**

126.   There is no authorized simultaneous broadcast in the United States of Perviy Kanal or the Thematic Channels. (Shprekher Decl. ¶ 28.) **Disputed. Perviy Kanal ("Channel One Russia") and Channel One-US are legally identical for purposes of Copyright law, as the only 'differences' (time shifting, removal of unlicensed programming and local commercials) are trivial and dictated by commercial necessity. [See Shprehker 2018 Decl., ECF 550 Pars. 15-18]. Plaintiffs have represented that the Russian and United States broadcasts are transmitted within hours of each other. ECF 917 at ¶18; ECF 920 at ¶10.**

127.   Perviy Kanal is not licensed for broadcast in the United States by any means and is not available via satellite with a footprint covering the United States. (Shprekher 2018 Decl. ¶¶ 34, 35.) **Pursuant to L. Civ. R. 56.1 (c), SKM does not dispute this paragraph for purposes of plaintiff Channel One's pending motion.**

128.   Modified Channel One Programming intended for broadcast in the United States is Channel One-US. (Shprekher Decl. ¶ 33.) **Disputed. Perviy Kanal ("Channel One Russia") and Channel One-US are legally identical for purposes of Copyright law, as the only 'differences' (time shifting, removal of unlicensed programming and local commercials) are trivial and dictated by commercial necessity. [See Shprekher 2018 Decl., ECF 550, Pars. 15-18]. To the extent that Channel One now claims or asserts that it possesses a copyrighted interest in any of the Programming, SKM disputes this because no plaintiff has established by competent admissible evidence that it owns such copyrights. To the contrary, all of the plaintiffs affirmatively withdrew all claims based upon any particular copyright or trademark**

25

registration.  **See ECF 891-3; EFC 569 at 5-6.**

129.    Channel One directs satellites at the United States to broadcast Channel One-US Programming. (Shprekher Decl. ¶ 34; Ex. 2.) **Disputed. The statement is not material as plaintiffs do not allege piracy of "Channel One-US Programming". See Shprekher 2018 Decl., ECF 550 at par. 48. Additionally, plaintiffs' citation to Shprekher's new declaration, ECF917 at ¶34, does not provide support for this statement. Further, Shprekher does not have personal knowledge regarding the information set forth here but rather provides in his new declaration, at ¶32, that the information reported in exhibit 2 is merely hearsay he (or Channel One's counsel) found on "public websites". Shprekher admits he has only "limited understanding" of technical issues as he is neither an engineer nor an expert (Shprekher dep., Exh. C to Silagi Decl. (ECF 929) at 14:12, 15:11, 46:25, 77:21 and 135:15). Additionally, Channel One licenses its Channel One-US content via IPTV distribution by Matvil and Kartina. ECF550, ¶ 53. As such, this statement is not established by competent admissible evidence. FRCP 56(c)(2) and (c)(4) and (d)(1).**

130.    Channel One's open satellite signal for Channel One-U.S. is available in the standard "C-Band" format and reception of the signal requires a dish bigger than 2 meters (6.56 FT) and professional equipment. (Shprekher Decl. ¶ 34.) **Admitted that Sphrekher says this in his new declaration but disputed that this provides competent admissible evidence. See response to 129. Further disputed that the distribution of Channel One-US is material or relevant to this action, given plaintiffs' representations and assertions that the programming that is the subject of this action is the programming "first broadcast in the Russian Federation" and not the "Channel One-US Content".  ECF 550 at par. 48.**

131.    The C-Band is used for open satellite communications for receive-only or "big dishes" (Shprekher Decl.¶ 36.) Receiving antennas range in size from 7.5 to 12 feet. (*Id.*)

Disputed. The referenced paragraph in Shprekher's new declaration simply recites a statement from "Wikipedia" which is not of itself competent admissible evidence. FRCP 56(c)(2) and (c)(4) and (d)(1). See also response to paragraph 130.

132.    An ordinary satellite television consumer cannot access the Channel One-U.S. content without a professional intermediary. (Shprekher Decl. ¶ 35.) **Disputed. The citation to Shprekher's new declaration does not support this statement because Shprekher admits he has only "limited understanding" of technical issues as he is neither an engineer nor an expert. Shprekher dep. at 14:12; 15:11; 46:25; 77:21; and 135:15. Further, the testimony from Channel One representative Shprekher is that distribution and security of broadcast streams is delegated to plaintiffs' licensed broadcasters by Channel One's license agreements. Shprekher dep. at 15:11; 135:15. Plaintiffs have refused to disclose any of their licensing agreements or to disclose their IPTV distribution security standards. ECF 891-3. As such, "facts" or statements regarding what the undisclosed license agreements provide may not be considered established for purposes of this motion. FRCP 56(c)(2) and (c)(4) and (d)(1). See also response to paragraph 130.**

133.    Only a professional intermediary, broadcaster, or cable company licensed by Channel One can lawfully distribute the Channel One-U.S. Content. (*Id.*) **Disputed. The citation to Shprekher's new declaration does not support this statement because Shprekher admits he has only "limited understanding" of technical issues as he is neither an engineer nor an expert. Shprekher dep. at 14:12; 15:11; 46:25; 77:21; and 135:15. Further, the testimony from Channel One representative Shprekher is that distribution and security of broadcast streams is delegated to plaintiffs' licensed broadcasters by Channel One's license agreements. Shprekher dep. at 15:11; 135:15. Plaintiffs have refused to disclose any of their licensing agreements or to disclose their IPTV distribution security standards. ECF 891-3.**

As such, "facts" or statements regarding what the undisclosed license agreements provide may not be considered established for purposes of this motion. FRCP 56(c)(2) and (c)(4) and (d)(1)

134.    All Channel One-U.S. content broadcast in the "Ku-band" format used for standard satellite TV is encrypted by Channel One's licensees and authorized partners. (Shprekher Decl. ¶ 40.) **Disputed. The citation to Shprekher's new declaration does not support this statement because Shprekher admits he has only "limited understanding" of technical issues as he is neither an engineer nor an expert. Shprekher dep. at 14:12; 15:11; 46:25; 77:21; and 135:15. Further, the testimony from Channel One representative Shprekher is that distribution and security of broadcast streams is delegated to plaintiffs' licensed broadcasters by Channel One's license agreements. Shprekher dep. at 15:11; 135:15. Plaintiffs have refused to disclose any of their licensing agreements or to disclose their IPTV distribution security standards. ECF 891-3. As such, "facts" or statements regarding what the undisclosed licenseagreements provide may not be considered established for purposes of this motion. FRCP 56(c)(2) and (c)(4) and (d)(1). The statement also conflicts with the testimony of Channel One's expert, Dmitri Dietrich, that Kartina TV's global broadcasts of plaintiffs' programming is unencrypted. See response to par. 124, supra, and also 130, that this statement is not material or relevant because plaintiffs do not allege piracy of "Channel One-US Programming".**

135.    Satellite dishes that receive the Ku Band transmissions are smaller than dishes for the C-Band because Ku-band transmissions use a more powerful and focused beam than C-Band transmissions. (Shprekher Decl. ¶ 37.) **Disputed. Paragraph 37 of Shprekher's new declaration does not say this. See also response to ¶129.**

136.    Channel One provides conditional access to the Programming and only authorized viewers may lawfully access the Programming. (Shprekher Decl. ¶ 43; ECF 211 ¶¶ 71, 238.) **Disputed. Dmitri Dietrich's testimony regarding Kartina TV's global broadcasts of the plaintiffs' content without encryption or any type of Digital Rights Management refutes this paragraph. See ¶124 supra.**

## UNDISPUTED FACTS RELATING TO CHANNEL ONE'S LICENSING AND LICENSED DISTRIBUTION OF THE PROGRAMMING TO THE UNITED STATES

137.    Channel One licenses Channel One-US Programming to the United States to reach the Russian-speaking diaspora that settled in New York after the fall of the Soviet Union. (Shprekher Decl. ¶¶ 15-16.) **Pursuant to L. Civ. R. 56.1 (c), SKM does not dispute this paragraph for purposes of plaintiff Channel One's pending motion.**

138.    Channel One-US Programming is licensed to, among others, DIRECTV, Altice (Optimum), Charter Communications (Spectrum), Comcast Cable (Xfinity) and Matvil TV directly or through authorized agents. (Shprekher Decl. ¶ 40.) **Disputed. SKM objects to this paragraph, which refers to and relies upon "licenses", because plaintiffs refused to produce any of their licensing agreements for the broadcasts of plaintiffs' programming. SeeECF 891-3 at 2 and ECF 569 at 9. Because plaintiffs have refused to produce licenses, this purported statement of fact is improper pursuant to Fed. R. Civ. P. 56(c)(2) as the material cited to support or dispute it cannot be presented in a form that would be admissible in evidence and, pursuant to Fed. R. Civ. P. 56(d)(1), the court should deny plaintiff's motion.**

139.    Channel One has entered into license agreements with providers like Matvil TV to distribute its modified Programming via IPTV in the United States. (Complaint ¶ 12; Shprekher Decl. ¶ 53.) **Disputed. Defendant objects to this paragraph, which refers to and relies upon "licenses", because plaintiffs refused to produce any of their licensing agreements for the**

broadcasts of plaintiffs' programming. See ECF 891-3 at 2 and ECF569 at 9. Plaintiffs have testified that distribution and security of broadcast streams governed by the terms of individual license agreements. Dietrich dep. at page 15. Because plaintiffs have refused to produce licenses, this purported statement of fact is improper pursuant to Fed. R. Civ. P. 56(c)(2) as the material cited to support or dispute it cannot be presented in a form that would be admissible in evidence and, pursuant to Fed. R. Civ. P. 56(d)(1), the court should deny plaintiff's motion.

140.    Kartina World LLP was a Channel One licensee from when the lawsuit commenced in February 2016 until September 2018. (Shprekher Decl. ¶¶ 41-42.). **Admitted that Kartina was, for some period of time, licensed to broadcast some or all of Plaintiffs' programming although the terms of the license(s) have not been produced. See response to the preceding paragraph. Disputed as to the specific dates on which Kartina was licensed to broadcast plaintiffs' programming. Kartina executive Dietrich, presented as plaintiffs' designee and called by plaintiffs' counsel, testified under oath in court in this action that Kartina was broadcasting plaintiffs' programming in February, 2019.  2/6/19 T 110:5-10, Exh. L to Silagi Decl. (ECF 929).**

141.    Any Channel One-U.S. Programming available via Channel One's cable, satellite, and IPTV licensees was first broadcast via satellite in the Russian Federation and later modified for the U.S. Market. (Shprekher Decl. ¶ 38.) **Disputed. Defendant objects to this paragraph, which refers to and relies upon "licenses", because plaintiffs refused to produce any of their licensing agreements for the broadcasts of plaintiffs' programming. See ECF 891-3 at 2. Because plaintiffs have refused to produce licenses, this purported statement of fact is improper pursuant to Fed. R. Civ. P. 56(c)(2) as the material cited to support or dispute it cannot be presented in a form that would be admissible in evidence and, pursuant to Fed. R.**

Civ. P. 56(d)(1), the court should deny plaintiff's motion .

## UNDISPUTED FACTS RELATING TO SKM AND/OR ITS AFFILIATES LACK OF A LICENSE TO DISTRIBUTE CHANNEL ONE PROGRAMMING

142.    Channel One has not authorized SKM, Katsman Advanced Business Integration Network Corp, Bravo Price Corp. Call-O-Call, Inc., Dmitri Dudkin, Gregory Davidzon, Lebrai Management LP, Sven Prees, Sergei Nerzov, Dzintars Stsulis, Oleh Horbatjuk, or Cosmonova, LLC to publish, republish, transmit or stream the Programming of Channel One (e.g. Perviy Kanal,Channel One-US, Dom Kino, Carousel International, Muzika Pervogo, Telekafe, or Vremya:dalekoe i blizkoe) in the United States or elsewhere. (Shprekher Decl. ¶¶ 45-52.) **Pursuant to L. Civ. R. 56.1 (c), SKM does not dispute this paragraph for purposes of plaintiff Channel One's pending motion and adds that such authorization is not required in order for the named individuals and/or entities to legally engaged in the publishing, republishing, transmitting and/or streaming described herein and further adds that the signal is for Channel One Russia only. See, Declaration of Sam Katsman (ECF 276-2) at ¶¶ 13-18.**

143.    Licensees of Channel One-US protect the Programming by employing conditional access systems to prevent unauthorized redistribution. (Shprekher Decl. ¶ 43.) **Disputed. Dmitri Dietrich's testimony regarding Kartina TV's global broadcasts of the plaintiffs' content without encryption or any type of Digital Rights Management refutes this paragraph. See #124 supra. The statement is also improper and defendant objects to this paragraph, which refers to and relies upon "licenses", because plaintiffs refused to produce any of their licensing agreements for the broadcasts of plaintiffs' programming. See ECF 891-3 at 2. Because plaintiffs have refused to produce licenses, this purported statement of fact is improper pursuant to Fed. R. Civ. P. 56(c)(2) as the material cited to support or dispute it cannot be presented in a form that would be admissible in evidence and, pursuant to Fed. R.**

Civ. P. 56(d)(1), the court should deny plaintiff's motion.

144.    Any Channel One Programming available via the Goodzone website or App is not authorized and the result of a third party bypassing Channel One's licensing regime. (Shprekher Decl. ¶ 46.) **Disputed. SKM objects to this paragraph, which refers to and relies upon "licenses", because plaintiffs refused to produce any of their licensing agreements for the broadcasts of plaintiffs' programming. See ECF 891-3 at 2. Because plaintiffs have refused to produce licenses, this purported statement of fact is improper pursuant to Fed. R. Civ. P. 56(c)(2) as the material cited to support or dispute it cannot be presented in a form that would be admissible in evidence and, pursuant to Fed. R. Civ. P. 56(d)(1), the court should deny plaintiff's motion. SKM further adds that the signal is for Channel One Russia only. See, Declaration of Sam Katsman (ECF 276-2) at ¶¶ 13-18).**

## UNDISPUTED FACTS RELATED TO SKM'S ACQUISITION OF UNAUTHORIZED CHANNEL ONE PROGRAMMING

145.    All unauthorized streaming of the Programming by SKM consists of data from intercepted "over the air" satellite communications belonging exclusively to Channel One through a process substantially illustrated below. The illustration when read clockwise demonstrates how SKM and its affiliates, process, transmit, bill and ultimately profit from their operation.



(ECF 211 ¶¶ 85-86). **Disputed. The citation to plaintiffs' complaint, affirmed by Channel One representative Shprekher, does not support this statement because Shprekher admits he has only "limited understanding" of technical issues as he is neither an engineer nor an expert. Shprekher dep. at 14:12; 15:11; 46:25; 77:21; and 135:15. Further, the testimony from Channel One representative Shprekher is that distribution and security of broadcast streams is delegated to plaintiffs' licensed broadcasters by Channel One's license agreements. Shprekher dep. at 15:11; 135:15. Plaintiffs have refused to disclose any of theirlicensing agreements or to disclose their IPTV distribution security standards. ECF 891-3. "Facts" or statements regarding what the undisclosed license agreements provide may not be considered established for purposes of this motion.  FRCP 56(c)(2) and (c)(4) and (d)(1).**

33

### UNDISPUTED FACTS RELATING TO SKM'S ILLEGAL INTERCEPTION AND RETRANSMISSION OF BROADCASTERS' PROGRAMMING

#### A. SKM Obtains a Signal with an Unauthorized Version of Perviy Kanal

146.    SKM admits that it does not know if its signal providers have a license to broadcast Channel One's Programming that it broadcasts via the Goodzone Website, STBs and Apps. (Katsman Tr. at 61:16–23; 155:13-157:4.) **Pursuant to L. Civ. R. 56.1 (c), SKM does not dispute this paragraph for purposes of plaintiff Channel One's pending motion and adds that the signal is for Channel One Russia only. See, Declaration of Sam Katsman (ECF 276-2) at ¶¶ 13-18).**

147.    With the assistance of Katsman's brother, SKM first obtained a signal with Channel One Programming from Lebrai. (Katsman Tr. at 36:5-38:1; 94:9-95:10.) **Pursuant to L. Civ. R. 56.1 (c), SKM does not dispute this paragraph for purposes of plaintiff Channel One's pending motion and adds that the signal is for Channel One Russia only. See, Declaration of Sam Katsman (ECF 276-2) at ¶¶ 13-18).**

148.    SKM and Bravo Price Corp. paid Lebrai for the signal. (Rowley Decl. ¶¶ 41-42, Exs. 37-38)(redacted Chase bank records). **Pursuant to L. Civ. R. 56.1 (c), SKM does not dispute this paragraph for purposes of plaintiff Channel One's pending motion.**

149.    With the assistance of Lebrai, SKM obtained Channel One Programming from a Ukrainian company that intercepts the Programming and retransmits the Programming to SKM. (Katsman Tr. at 37:19–38:20; 42:24–43:3.) **Disputed to the extent that this allegation mischaracterizes the testimony of Mr. Katsman and makes absolutely no reference to "Programming", and/or "Channel One Programming" whatsoever. The cited deposition testimony makes reference to Lebrai providing a "signal" to Goodzone from Ukraine.**

150.   SKM pays the Ukrainian company for the signal. (Katsman Tr. at 43:4–10.) **Pursuant to L. Civ. R. 56.1 (c), SKM does not dispute this paragraph for purposes of plaintiff Channel One's pending motion and adds that the signal is for Channel One Russia only. See, Declaration of Sam Katsman (ECF 276-2) at ¶¶ 13-18).**

151.   SKM also obtained a signal containing Channel One Programming from an individual, Oleh Horbatjuk. (Katsman Tr. at 139:7-16). **Disputed to the extent that this allegation mischaracterizes the testimony of Mr. Katsman and makes absolutely no reference to "Programming", and/or "Channel One Programming" whatsoever. The cited deposition testimony makes reference to Goodzone getting a "signal" to from Oleh Horbatjuk.**

152.   Horbatjuk invoiced SKM for the signal. (Rowley Decl. ¶ 47, Ex 43) (December 2017 to May 2018 invoices from Horbatjuk to SKM for "rendered computer services"). **Pursuant to L. Civ. R. 56.1 (c), SKM does not dispute this paragraph for purposes of plaintiff Channel One's pending motion.**

153.   SKM paid Horbatjuk for the signal. (Katsman Tr. at 143:8-23; Rowley Decl. ¶ 47, Ex. 43) (redacted Chase bank records). **Pursuant to L. Civ. R. 56.1 (c), SKM does not dispute this paragraph for purposes of plaintiff Channel One's pending motion.**

154.   Katsman admitted SKM does not know whether its signal providers have licenses to broadcast the channels that appear on the Goodzone Website and App. (Katsman Tr. at 42:6-18; 61:20–62:1; 156:20-157:4) **Pursuant to L. Civ. R. 56.1 (c), SKM does not dispute this paragraph for purposes of plaintiff Channel One's pending motion.**

**B. SKM's Processing of the Intercepted Signal**

155.   SKM produced documents evidencing monthly payments of $590 from SKM to a Ukrainian company named Cosmonova, LLC ("Cosmonova") from January 2016 to December 2017 (Rowley Decl. Ex. 39 (DEF0104–127.) **Pursuant to L. Civ. R. 56.1 (c), SKM does not**

dispute this paragraph for purposes of plaintiff Channel One's pending motion.

156.    Cosmonova is a datacenter. (Katsman Tr. at 149:16-150:18.) **Pursuant to L. Civ. R. 56.1 (c), SKM does not dispute this paragraph for purposes of plaintiff Channel One's pending motion.**

157. Cosmonova processed the signals provided by Horbatjuk and Lebrai. (Katsman Tr. at 155:13-157:16; 168:3-6.) **Disputed to the extent that this allegation mischaracterizes the testimony of Mr. Katsman and makes absolutely no reference whatsoever to Cosmonova allegedly "processing" signals provided by Horbatjuk and Lebrai. The cited deposition testimony makes reference to Goodzone making payment to Oleh Horbatjuk and the "signal" reaching the United States through Cosmonova.**

158.    SKM produced documents evidencing the purchase of servers, port switches, and hard drives by Call-O-Call and Dudkin. (Rowley Decl. Ex. 49 (DEF0081–90).) **Pursuant to L. Civ. R. 56.1 (c), SKM does not dispute this paragraph for purposes of plaintiff Channel One's pending motion.**

159.    Katsman admitted that SKM purchased computers and shipped them to Cosmonova in Ukraine in order to "receive the single". (Katsman Tr. at 153:4-154:3.) **Pursuant to L. Civ. R. 56.1 (c), SKM does not dispute this paragraph for purposes of plaintiff Channel One's pending motion.**

160.    Cosmonova is a Kiev, Ukraine based information technology company founded in 2004. (Rowley Decl. Ex. 40 (CHANNELONE000441–42).) **Pursuant to L. Civ. R. 56.1 (c), SKM does not dispute this paragraph for purposes of plaintiff Channel One's pending motion.**

161.    Cosmonova provides land-based television signal delivery. (Rowley Decl. Ex. 40 (CHANNELONE000437, 439, 467).) **Pursuant to L. Civ. R. 56.1 (c), SKM does not dispute this paragraph for purposes of plaintiff Channel One's pending motion.**

162.    Cosmonova provides TV and video processing services. (Rowley Decl. Ex. 40 (CHANNELONE000438).) **Pursuant to L. Civ. R. 56.1 (c), SKM does not dispute this paragraph for purposes of plaintiff Channel One's pending motion.**

163.    Cosmonova provides for content delivery throughout the world.  (Rowley Decl. Ex. 40 (CHANNELONE000449–50). **Pursuant to L. Civ. R. 56.1 (c), SKM does not dispute this paragraph for purposes of plaintiff Channel One's pending motion.**

164.    Cosmonova, and Infomir (UA), among others, are peers of Giganet.ua. (Rowley Decl. Exs. 41-42.) **Disputed. Merely quoting from Wikipedia, as this paragraph does, does not satisfy Rule 56's requirement of competent admissible evidence.  FRCP 56(c)(2) and (c)(4) and (d)(1).  It is further disputed that Infomir LLC has any involvement or relationship with "Giganet.ua".**

165.    Giganet.ua is a Ukrainian company that describes itself as "a cost-effective service which points to reduce IP transit and network costs by aggregating all kinds of ISPs...." (Rowley Decl. Ex. 42). **Pursuant to L. Civ. R. 56.1 (c), SKM does not dispute that this paragraph repeats what is stated on the cited page which is purported to be from the Giganet.ua website but denies that this constitutes competent admissible evidence.**

166.    SKM and its affiliates pays Webair for colocation services. (Katsman Tr. at 160:22-161:2; Rowley Decl. Ex. 50 (February 2017 to 2018 invoices from Webair to Call-o-Call). **Pursuant to L. Civ. R. 56.1 (c), SKM does not dispute this paragraph for purposes of plaintiff Channel One's pending motion.**

167.    Channel One's investigator identified Webair as the host of SKM middleware that provided a programming guide and exchanged authentication keys. (Rowley Decl. Ex. 28, Kalameyets Decl. ¶¶ 36, 41, 43). SKM has admitted that "the Gudzon website does display logos

or 'marks' which plaintiffs claim to own exclusive rights in, these marks are displayed on a channel guide for informational purposes only…." (May 30, 2017 Declaration of Sam Katsman (ECF 276-2) ¶ 18). **Disputed. The "Declaration of Maksim Kalameyets", ECF 919-28, constitutes an improper attempt to introduce an untimely expert's report, in violation of this Court's orders [See ECF 837 and 796 as amended] and therefore should be precluded and not permitted as admissible evidence. Pursuant to L. Civ. R. 56.1(c), SKM does not dispute the statement attributed to Sam Katsman.**

168.    Channel One's investigator also identified the source of the video stream as OVH SAS in France. (Rowley Decl. Ex. 28, Kalameyets Decl. ¶44(b). **Disputed. The "Declaration of Maksim Kalameyets", ECF 919-28, constitutes an improper attempt to interject an untimely expert's report, in violation of this Court's orders [See ECF 837 and 796 as amended] and therefore should be precluded and not permitted as admissible evidence.**

## C. SKM Distributes Channel One Programming

169.    SKM has produced a document listing the channels it offers, including Perviy Kanal. (Rowley Decl. Ex. 21)(Goodzone Service Channel List). **Pursuant to L. Civ. R. 56.1 (c), SKM does not dispute this paragraph for purposes of plaintiff Channel One's pending motion.**

170.    Katsman testified that SKM retransmits the free-to-air version of Channel One Programming or Perviy Kanal. (Katsman Tr. at 40:17-41:25; May 30, 2017 Declaration of Sam Katsman (ECF 276-2) ¶¶ 9, 13, 17). **Pursuant to L. Civ. R. 56.1 (c), SKM does not dispute this paragraph for purposes of plaintiff Channel One's pending motion and adds that the signal is for Channel One Russia only. See, Declaration of Sam Katsman (ECF 276-2) at ¶¶ 13-18).**

171.   Channel One's investigator confirmed the Channel One Programming on the Goodzone service is Perviy Kanal programming delayed by approximately 42 seconds (Rowley Decl. Ex. 28, Kalameyets Decl. ¶ 16(b)). **Disputed. The "Declaration of Maksim Kalameyets", ECF 919-28, constitutes an improper attempt to introduce an untimely expert's report, in violation of this Court's orders [See ECF 837 and 796 as amended] and therefore should be precluded and not permitted as admissible evidence.**

172.   The Goodzone Website enables consumers located in this judicial district to purchase and receive access to the Programming. (Rowley. Decl. Ex. 23 (SKM Sample customer page). **Disputed. The "Declaration of Maksim Kalameyets", ECF 919-28, constitutes an improper attempt to introduce an untimely expert's report, in violation of this Court's orders [See ECF 837 and 796 as amended] and therefore should be precluded and not permitted as admissible evidence.**

173.   On August 12, 2016, a Channel One investigator visited the Goodzone Website and navigated to iptv.gudzon.tv/web. (Vidulich Aff. dated August 18, 2016, ECF 211-16 ¶ 2.) There, the investigator viewed cable-quality streams of Channel One's Programming and took screenshots of the Programming. (*Id.*, at ¶ 5, Ex. 3.) The screenshots display Channel One's marks. (*Id.*, at Ex. 3.) Channel One's logo is a stylized number "1". (*See* ECF 211 ¶¶ 74, 101; Vidulich Aff. dated August 18, 2016, ECF 211-16, Ex. 3.) **Pursuant to L. Civ. R. 56.1 (c), SKM does not dispute that the statements in this paragraph repeat statements made by paralegal Vidulich but add that the Court, in sanctioning Channel One and its attorneys for manipulating evidence, has already established Vidulich to be a proven liar, fraud, and manipulator of evidence with zero credibility.**

39

174.    On May 12, 2017, the investigator returned to the Goodzone Website and viewed Channl One's Programming. (Vidulich Aff. dated May 12, 2017, ECF 261 ¶¶ 3, 5, 7, Ex. 1.) **Pursuant to L. Civ. R. 56.1 (c), SKM does not dispute that the statements in this paragraph repeat statements made by paralegal Vidulich but add that the Court, in sanctioning Channel One and its attorneys for manipulating evidence, has already established Vidulich to be a proven liar, fraud, and manipulator of evidence with zero credibility.**

175.    On October 5, 2018, an investigator viewed Perviy Kanal and Perviy Kanal HD on the Goodzone Website. (Vidulich Aff. dated October 5, 2018, Rowley Decl. Ex. 27.) **Pursuant to L. Civ. R. 56.1 (c), SKM does not dispute that the statements in this paragraph repeat statements made by paralegal Vidulich but add that the Court, in sanctioning Channel One and its attorneys for manipulating evidence, has already established Vidulich to be a proven liar, fraud, and manipulator of evidence with zero credibility.**

176.    On July 13, 2021 another Channel One investigator confirmed SKM continues to rebroadcast Channel One Programming originally broadcast on Perviy Kanal via the Goodzone service. (Rowley Decl. Ex. 28, Kalameyets Decl. ¶ 10.) **Disputed. The "Declaration of Maksim Kalameyets" constitutes an improper attempt to introduce an untimely expert's report, in violation of this Court's orders [See ECF 837 and 796 as amended] and therefore should be precluded and not permitted as admissible evidence.**

**D. SKM Sells Subscriptions and Accepts Payments for Access to the Programming**

177.    SKM rebroadcasts the free-to-air Perviy Kanal on the Goodzone service. (Katsman Tr. at 39:12-41:11; Kalameyets Decl. ¶ 14.) **Pursuant to L. Civ. R. 56.1 (c), SKM doesnot dispute this paragraph for purposes of plaintiff Channel One's pending motion.**

178.    SKM has sold at least 1,833 subscriptions to the Goodzone service. (Rowley Decl. Ex. 22 (DEF0129–68); Katsman Tr. at 31:15-17 (recalling at least 1,700 customers). **Pursuant to L. Civ. R. 56.1 (c), SKM does not dispute this paragraph for purposes of plaintiff Channel One's pending motion.**

179.    SKM charges $19.99, $24.00, and $27.00 for monthly subscriptions for different packages to the Goodzone service. (Katsman Tr. at 32:19-23; Rowley. Decl. Ex. 24). SKM also charges around $45 for an STB. (Katsman Tr. at 32:24-33:3). **Pursuant to L. Civ. R. 56.1 (c), SKM does not dispute this paragraph for purposes of plaintiff Channel One's pending motion.**

180.    SKM sells passwords for the subscriptions that permit individual consumers to access internet protocol addresses from which the consumers can view the Programming without Channel One's authorization. (See Complaint ¶ 95; Rowley Decl. Exs. 17, 25-27 (password email, Vidulich affidavits, and Kalameyets declaration). **Pursuant to L. Civ. R. 56.1 (c), SKMdoes not dispute this paragraph for purposes of plaintiff Channel One's pending motion, except as to the improper Kalameyets declaration and add that the Court, in sanctioning Channel One and its attorneys for manipulating evidence, has already established Vidulich to be a proven liar, fraud, and manipulator of evidence with zero credibility.**

181.    SKM receives payments for the Goodzone service and retains subscriber records. (Rowley. Decl. Ex. 23)(sample SKM customer record)  **Pursuant to L. Civ. R. 56.1 (c), SKM does not dispute this paragraph for purposes of plaintiff Channel One's pending motion.**

182.    Subscribers may view the Programming on the Goodzone Website, televisions connected to STBs, or Apps. (Rowley. Decl. Exs. 31-36.) **Pursuant to L. Civ. R. 56.1 (c), SKM does not dispute this paragraph for purposes of plaintiff Channel One's pending motion and adds that the signal is for Channel One Russia only. See, Declaration of Sam Katsman (ECF**

276-2) at ¶¶ 13-18).

### E. SKM Sells STBs and Apps that Access the Programming

183.    As of October 5, 2018, SKM continued to sell STBs for $75 to $125. (Rowley. Decl. Ex. 29.) **Pursuant to L. Civ. R. 56.1 (c), SKM does not dispute this paragraphfor purposes of plaintiff Channel One's pending motion.**

184.    Goodzone's service is compatible with Infomir MAG STBs, DUNE HD STBs, Android TV Box, and Samsung Smart TVs. (Katsman Tr. at 120:16-121:19; Rowley. Decl. Ex. 31.) ."). **It is disputed that Infomir LLC ever sold any STBs for use with Goodzone's service. (Katsman T. 120:18-121:14), ECF 919-6; Exh. N to Silagi Decl.; Goldfedib T. 425:17-19, Silagi Decl., Exh. M. SKM does not dispute any device with internet connectivity, including cell phones, tablets, smart tvs, computers and IPTV STBs, can be used to receive internet protocol television signals if the content provider has provided access. See ECF 629, ¶39-42 ("Theoretically, anyone can use [Kartina's application programming interface] to permit a user to access Kartina TV."); ECF 300, ¶6 ("IPTV streams can be viewed on any device with internet connectivity and a media player"); ECF 300 ¶15 ("Just like licensed IPTV streams, any IPTV-capable device can be used to view an illegal broadcast if access is provided by the content provider, again including a Smart TV, a tablet, computer, Android and Mac cellular telephones and set top boxes.**

185.    The Goodzone website provided a video tutorial for how to configure the Goodzone service    on    an    Infomir    MAG    254    STB.    *See* https://gudzon.tv/index.php?option=com_content&view=article&id=116:prosmotr-mag-254&catid=79:site    **SKM does not dispute the existence of advertisements on the Goodzone website, in which Infomir LLC has not participated. However, Infomir LLC does not sell set top boxes to SK Management. Goldfedib T. 425:17-19. Silagi Decl., Exh M.**

Further, SKM does not sell Infomir-brand set top boxes to deliver its content. ECF 919-6, Katsman T. 120:18-121:14 ("Q. Are you still selling MAG 254 boxes? ... A. Did we ever sell them? ... we are not selling them as of now, that's for sure...They are expensive."). As such, this statement does not present a material fact.

186.    The Goodzone Website also hosts a PDF copy of a manual for the Infomir Brand MAG 254 STB. (Rowley. Decl. Ex. 32.) *See also* http://gudzon.tv/mag254.pdf **SKM does not dispute the existence of documents on the Goodzone website, in which Infomir LLC has not participated. However, Infomir LLC does not sell set top boxes to SK Management. Goldfedib T. 425:17-19, Silagi Decl. Exh. M. Further, SKM doesnot sell Infomir-brand set top boxes to deliver its content. ECF 919-6, Katsman T. 120:18-121:14 ("Q. Are you still selling MAG 254 boxes? ... A. Did we ever sell them? ... we are not selling them as of now, that's for sure...They are expensive."). As such, this statement does not present a material fact.**

187.    Goodzone's MAG 254 Manual lists contact information for Infomir in Frankfurt Germany; Odessa, Ukraine; and Brooklyn, NY. (*Id.*) **SKM does not dispute the existence of documents on the Goodzone website, in which Infomir LLC has not participated.However, Infomir LLC does not sell set top boxes to SKM. Goldfedib T. 425:17-19 Silagi Decl., Exh. M. Further, SKM does not sell Infomir-brand set top boxes to deliver its content. ECF 919-6, Katsman T. 120:18-121:14 ("Q. Are you still selling MAG254 boxes? ... A. Did we ever sell them? ... we are not selling them as of now, that's for sure...They are expensive."). As such, this statement does not present a material fact.**

188.    SKM offered an app through the GooglePlay App Store until Channel One filed a take-down notice. (Rowley. Decl. Ex. 33.) **Pursuant to L. Civ. R. 56.1 (c), SKM doesnot dispute this paragraph for purposes of plaintiff Channel One's pending motion.**

## UNDISPUTED FACTS RELEVANT TO SKM'S APPLICATIONS CAUSING IRREPARABLE HARM TO CHANNEL ONE

189.    SKM's streaming service inflicts irreparable harm on the Broadcasters every day that the streaming service remains in operation. (Complaint ¶ 106.) **Disputed. This is argument, not a statement of fact and is contradicted by the fact that plaintiff makes the programming available, free to air, at no charge across the Russian Federation.**

190.    SKM is part of a web of entities designed to hide parties directing the piracy of Channel One's Programming. (¶¶ 13-85)(description of SKM and affiliates). **Disputed. This is argument, not a statement of fact and is contradicted by the fact that plaintiff makes the programming available, free to air, at no charge across the Russian Federation.**

191.    Channel One has lost revenue, subscribers, prestige and goodwill, and has suffered damage to legitimate distribution channels in the United States. (Shprekher Decl. ¶ 79.) **Disputed. This is argument, not a statement of fact. Additionally, Shprekher's reference to "legitimate distribution channels in the United States" requires analysis and consideration of plaintiffs' license agreements with their content distributors, which documents plaintiffs have refused to produce. ECF 891-3. See response to paragraph 139.**

192.    Money damages will be insufficient to compensate Channel One. (Shprekher Decl. ¶¶ 56-58.) **Disputed. This is argument, not a statement of fact.**

Ronald D. Coleman, Esq. (RC 3875)
Dhillon Law Group, Inc.
8 Hillside Avenue
Montclair, NJ 07042
973-298-1723
rcoleman@dhillonlaw.com

Marcus A. Nussbaum, Esq. (MN 9581)
P.O. Box 245599
Brooklyn, NY 11224
201.956.7071
marcus.nussbaum@gmail.com
**Attorneys for Defendant**
**SK Management of New York, Inc.**

Dated: October 26, 2021

/s/      Marcus Aurelius Nussbaum
MARCUS A. NUSSBAUM, ESQ.
RONALD D. COLEMAN, ESQ.

45