**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

JOINT STOCK COMPANY "CHANNEL ONE RUSSIA : 
WORLDWIDE," CLOSED JOINT STOCK COMPANY :
"CTC NETWORK," CLOSED JOINT STOCK             :
COMPANY "TV DARIAL," CLOSED JOINT STOCK   :
COMPANY "NEW CHANNEL," LIMITED LIABILITY :
COMPANY "RAIN TV-CHANNEL," and LIMITED     :
LIABILITY COMPANY "COMEDY TV,"                      :
                                                                            :
                                           Plaintiffs,            :          MEMORANDUM DECISION
                                                                            :             AND ORDER
                         -against-                                   :
                                                                            :          16 Civ. 1318 (GBD) (BCM)
INFOMIR LLC *(www.infomirusa.com)*; PANORAMA :
ALLIANCE, LP *(www.mypanorama.tv)*; DAVID    :
ZELTSER; ASAF YEVDAYEV; MHCOM GMBH;     :
TELEPROM; VDALI; S.K MANAGEMENT OF NEW :
YORK, INC.; and JOHN DOES 1-50,                       :
                                                                            :
                                           Defendants.         :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

GEORGE B. DANIELS, United States District Judge:

Plaintiffs, a group of Russian television broadcasters, bring this lawsuit alleging that

Defendants pirate and rebroadcast Plaintiffs' television programming over the internet without

authorization. (First Am. Verified Compl. ("FAC"), ECF No. 211, ¶ 2.) Plaintiff Joint Stock

Company Channel One Russia Worldwide ("Channel One") moves, pursuant to Federal Rule of

Civil Procedure 56, for partial summary judgment as to Defendant SK Management of New York

Inc.'s ("SKM") liability under the Federal Communications Act ("FCA"), 47 U.S.C. § 605, and

SKM's affirmative defenses. (Channel One's Notice of Mot. for Summ. J. ("Channel One's

Motion"), ECF No. 913, at 1.) The remaining Plaintiffs, Closed Joint Stock Company "CTC

Network" ("CTC"), Limited Liability Company "Global Entertainment TV" ("GETV"), Closed

Joint Stock Company "TV DARIAL" ("Darial"), Closed Joint Stock Company "New Channel"

("New Channel"), and Limited Liability Company "Rain TV-Channel" ("Rain") (together, the

"Broadcaster Plaintiffs"), also move for partial summary judgment against SKM as to its alleged violations of the FCA and the Copyright Act, 17 U.S.C. §§ 101, *et seq.*, and its affirmative defenses. (Mot. for Partial Summ. J. ("Broadcaster Plaintiffs' Motion"), ECF No. 924, at 2.)

Before this Court is Magistrate Judge Barbara C. Moses's March 9, 2022 Amended Report and Recommendation to (1) grant Channel One's motion for partial summary judgment against SKM on its FCA claim, (2) grant the Broadcaster Plaintiffs' motion for partial summary judgment against SKM as to SKM's affirmative defenses, and (3) deny summary judgment on the Broadcaster Plaintiffs' FCA and copyright claims. (Am. R. & R. ("Report"), ECF No. 997, at 43.) With respect to relief, Magistrate Judge Moses recommends that this Court award Channel One $3,666,000 in damages and issue a permanent injunction against SKM. (*Id.*) Both the Broadcaster Plaintiffs and SKM filed timely objections. (Pl. Broadcasters' Obj. to Am. R. & R. ("Broadcaster Plaintiffs Objections"), ECF No. 1012; Br. on R. & R. ("SKM Objections"), ECF No. 1013.)

Having reviewed the objected-to portions of the Report *de novo* and the remainder of the Report for clear error, this court ADOPTS the Report in full. Channel One's motion for partial summary judgment, (ECF No. 913), is **GRANTED**. The Broadcaster Plaintiffs' motion for partial summary judgment, (ECF No. 924), is **DENIED** as to their FCA and copyright claims, and **GRANTED** as to SKM's affirmative defenses.

## I.    FACTUAL AND PROCEDURAL BACKGROUND[1]

Plaintiffs filed the FAC initially as a single collective action alleging that Defendants pirated certain of their original and licensed content (the "Programming") by "provid[ing] video

---

[1] This Court assumes familiarity with the background set forth in the Report and several other preceding opinions, and recounts here only those facts necessary for resolution of the issues before it. The relevant factual and procedural background is set forth in greater detail in the Report and is incorporated by reference herein. (*See* Report at 2–11.)

streaming services of Russian-language television channels to paying subscribers throughout the United States without" their permission.    (FAC ¶ 1.)    Plaintiffs allege that Defendants accomplished this pirating through "intercept[ing] [Plaintiffs'] encrypted foreign satellite transmissions, transform[ing] the transmissions into digital data, then re-transmit[ting] the channels over the internet to paying subscribers in the U.S. using password-protected streaming services." (*Id.*)

With respect to their direct copyright claims, Plaintiffs allege in the FAC that their Programming is afforded protection "by the intellectual property laws of" Russia "and are therefore entitled to the protection of United States copyright and trademark laws pursuant to international conventions, including 'neighboring rights'. . . ." (FAC ¶ 179.) They point to the Berne Convention for the Protection of Literary and Artistic Works[2] as such an "international convention." (*See* FAC ¶¶ 175–179.) According to Plaintiffs, "neighboring rights" protect (1) "the selection and arrangement of" their Programming and (2) "rights a broadcaster has in its broadcasts including the rights to re-broadcast its broadcasts." (*Id.* ¶¶ 179, 182 (citing Art. 1330.2 of the Russian Civil Code for Paragraph 182).)

Channel One[3] produces a number of television channels, including its primary channel, Perviy Kanal ("Channel One Russia"). (Channel One R. 56.1 Stmt., ECF No. 920, ¶¶ 120–122 (citing Decl. of Alexander Shprekher ("Shprekher Decl."), ECF No. 917, ¶¶ 8–9, 26, 29, Ex. 2.)

---

[2] This Court hereinafter refers to the Berne Convention for the Protection of Literary and Artistic Works Sept. 9, 1886, S. Treaty Doc. No. 99-27, entered into force Dec. 5, 1887 (revised at Paris July 24, 1971; amended 1979) as the "Berne Convention."

[3] In December 2020, Plaintiff Channel One split from the other plaintiffs and retained separate counsel. (Order for Substitution of Counsel, ECF No. 865.)

GETV is the successor to a previous plaintiff, Comedy TV.  (FAC ¶ 23.)  Darial and New Channel claim that they, respectively, "produce[], own[] the copyrights of, and [are] the authorized broadcaster[s] of" the CHE Channel and Domashny Channel.  (Broadcaster Pls.' R. 56.1 Stmt., ECF No. 926-1, ¶¶ 8, 11.)  SKM disputes the copyright ownership of GETV, Darial, and New Channel.  (Broadcaster Pls.' R. 56.1 Stmt. ¶¶ 8, 11.)

Rain makes claim to the copyright ownership of Dohzd channel.  (Broadcaster Pls.' R. 56.1 Smt. ¶ 14 (citing Aff. of Kublanovsky, Ex. F ("Sindeeva Dep."), ECF No. 925-6, at 90).)  When Rain's chief executive officer, Natalya V. Sindeeva, was asked during her deposition if Rain holds "copyrights to any of the programming it broadcasts," Sindeeva responded, "I'm not sure I'm very good with all of the legal terms here, but everything that we produce we are the authors of that. Everything belongs to Rain TV."  (Sindeeva Dep. at 90.)  Moreover, she noted, "Well, I don't know how to put it but everything is ours because we have a media license."  (*Id.*)  SKM does not dispute Rain's claims that it produces and broadcasts Dohzd, but SKM does dispute its copyright ownership.  (*See* SKM Counter 56.1 Stmt. to Broadcaster Pls.' R. 56.1 Stmt. ("SKM Counter to BPs' 56.1 Stmt."), ECF No. 940-2, ¶ 14).

Plaintiffs Channel One, GETV, Darial, New Channel, and Rain all accuse SKM of illegally broadcasting their Programming without authorization to do so.  (*See* Broadcaster Pls.' R. 56.1 Stmt. ¶ 7, 10, 13, 16; Channel One R. 56.1 Stmt. ¶ 23.)

SKM operates in Brooklyn, NY and owns and manages Gudzon.tv, (*see* Channel One R. 56.1 Stmt. ¶¶ 14, 18–19, 24), a website through which SKM sells programming via Internet Protocol Television (IPTV).  (Channel One R. 56.1 Stmt. ¶ 19 (citing Affirmation of Rowley, Ex. 6 ("Katsman Dep."), ECF No. 914-6)  Samuel Katsman is SKM's sole owner and chief executive. (Katsman Dep. at 17.)  SKM has accessed the signals to Plaintiffs' Programming through multiple

third parties, including United Kingdom-based Lebrai Management LP and an individual from

Ukraine, Oleg (or Oleh) Horbatjuk. (Channel One R. 56.1 Stmt. ¶¶ 36–37, 39, 41, 147, 151–52;

Broadcaster Pls.' R. 56.1 Stmt. ¶ 24.) SKM provides its customers access to 140 to 150 Russian-

language TV channels, including at least some of Plaintiffs' channels, in exchange for a monthly

subscription fee beginning at $19.99 (plus tax). (Katsman Dep. at 31–32, 37–39, 102, 121, 130,

138–39, 143.)

## II.    LEGAL STANDARDS

### A. Review of a Magistrate Judge's Report and Recommendation

A reviewing court "may accept, reject, or modify, in whole or in part, the findings or

recommendations" made within a magistrate judge's report. 28 U.S.C. § 636(b)(1)(C). The court

must review *de novo* the portions of a magistrate judge's report to which a party properly objects.

*Id.* "[S]pecific written objections to a report's proposed findings and recommendations," including

an objection to a "specific legal conclusion," are proper. *Miller v. Brightstar Asia, Ltd.*, 43 F.4th

112, 121 (2d Cir. 2022) (quoting Fed. R. Civ. P. 72(b)(2)).

Portions of a magistrate judge's report to which no or improper objections have been made

are reviewed for clear error. *Edwards v. Fischer*, 414 F.Supp.2d 342, 346–47 (S.D.N.Y. 2006);

Fed. R. Civ. P. 72(b) advisory committee's note to 1983 addition. Objections that "ignore [a

r]eport and simply reiterate arguments made to the magistrate judge" are not proper. *Rodriguez v.

Colvin*, No. 12-CV-3931, 2014 WL 5038410, at *4 (S.D.N.Y. Sept. 29, 2014). Clear error is

present when "upon review of the entire record, [the court is] left with the definite and firm

conviction that a mistake has been committed." *Brown v. Cunningham*, No. 14-CV-3515, 2015

WL 3536615, at *4 (S.D.N.Y. June 4, 2015) (quoting *United States v. Snow*, 462 F.3d 55, 72 (2d

Cir. 2006)).

## B. Motions for Summary Judgment

To prevail on a motion for summary judgment, the movant must "show[] that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is material "if it 'might affect the outcome of the suit under the governing law.'" *Roe v. City of Waterbury*, 542 F.3d 31, 35 (2d Cir. 2008) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). A dispute of fact is genuine "if 'the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Nick's Garage, Inc. v. Progressive Cas. Ins. Co.*, 875 F.3d 107, 113 (2d Cir. 2017) (quoting *Anderson*, 477 U.S. at 248). The movant bears the initial burden of demonstrating the absence of a dispute of material fact. *Holcomb v. Iona Coll.*, 521 F.3d 130, 137 (2d Cir. 2008).

If the movant meets its initial burden, "the nonmoving party must come forward with admissible evidence sufficient to raise a genuine issue of fact for trial in order to avoid summary judgment." *Jaramillo v. Weyerhaeuser Co.*, 536 F.3d 140, 145 (2d Cir. 2008). "[A] party may not rely on mere speculation or conjecture as to the true nature of the facts . . . ," and "conclusory allegations or denials . . . cannot by themselves create a genuine issue of material fact where none would otherwise exist." *Hicks v. Baines*, 593 F.3d 159, 166 (2d Cir. 2010) (citation omitted). In assessing whether there is a genuine issue of material fact, the court must "resolve all ambiguities and draw all permissible factual inferences in favor of the party against whom summary judgment is sought." *Johnson v. Killian*, 680 F.3d 234, 236 (2d Cir. 2012) (citing *Terry v. Ashcroft*, 336 F.3d 128, 137 (2d Cir. 2003)).

When a movant seeks summary judgment on a non-movant's affirmative defenses and therefore "the non-moving party bears the burden of proof at trial, the moving party 'may satisfy its Rule 56 burden by showing that there is an absence of evidence to support an essential element

of the non-moving party's case.'" *Dollar Dry Dock Sav. Bank v. Hudson St. Dev. Assocs.*, No. 92 CIV. 3737 (SAS), 1995 WL 412572, at *5 (S.D.N.Y. July 12, 1995) (quoting *DiCola v. SwissRe Holding (North America), Inc.*, 996 F.2d 30, 32 (2d Cir. 1993)) (cleaned up).  The court will award "summary judgment striking an affirmative defense if *de novo* review of the record in a light most favorable to the defendant reveals the absence of evidence supporting an essential element of the defense." *F.D.I.C. v. Giammettei*, 34 F.3d 51, 55 (2d Cir. 1994).

### C. The FCA

Section 605(a) of the FCA provides that "[n]o person not being entitled thereto shall receive or assist in receiving any interstate or foreign communication by radio and use such communication . . . for the benefit of another not entitled thereto."  The FCA is a strict liability statute insofar as it confers liability regardless of a violator's intent.  *Joint Stock Company "Channel One Russia Worldwide" v. Russian TV Co.*, No. 18 Civ. 2318, 2021 WL 4341053, at *4 (S.D.N.Y. Sept. 22, 2021).  Liability is established "if a plaintiff can show that the defendant 'received a satellite-originated signal and then retransmitted that signal to third parties (for example, via IPTV) without authorization and for financial gain.'" *Id.* at *3 (quoting *Joint Stock Co. Channel One v. Infomir, LLC*, No. 16-CV-1318, 2019 WL 8955234, at *11 (S.D.N.Y. Oct. 25, 2019)).

"Any person aggrieved by a violation of [§ 605(a)] may bring a civil action" for actual or statutory damages for each violation. 47 U.S.C. § 605(e)(3)(C). An "aggrieved person" is "any person with proprietary rights in" the communications at issue.  47 U.S.C. § 605(d)(6).  This includes distributors of satellite cable programming. *Id.*

### D. The Copyright Act

A copyright claim comprises two elements: "(1) ownership of a valid copyright and (2) unauthorized copying or a violation of one of the other exclusive rights afforded copyright owners pursuant to the Copyright Act." *Wolk v. Kodak Imaging Network, Inc.*, 840 F.Supp.2d 724, 741 (S.D.N.Y. 2011) (quoting *Byrne v. British Broad Corp.*, 132 F. Supp.2d 229, 232 (S.D.N.Y. 2001)). "The word 'copying' is shorthand for the infringing of any of the copyright owner's 'exclusive rights' prescribed in [17 U.S.C.] § 106". *Arista Records LLC v. Doe 3*, 604 F.3d 110, 117 (2d Cir. 2010) (citation omitted).

#### 1. Choice of Law

In international copyright suits, the Second Circuit has instructed lower courts to perform separate choice of law inquiries for copyright ownership and infringement. *Itar-Tass Russian News Agency v. Russian Kurier, Inc.*, 153 F.3d 82, 90–92 (2d Cir. 1998). To determine which country's laws control regarding ownership, the court looks to the country "with the most significant relationship to the property and the parties." *Id.* (citing Restatement (Second) of Conflict of Laws § 222); *accord C.D.S., Inc. v. Zetler*, 288 F.Supp.3d 551, 561 (S.D.N.Y. 2017).

Because the Programming at issue here was created by Russian entities, broadcast from Russia, and copyright ownership is claimed in Russia, Russia has the most significant relationship to the property and parties and thus Russian law governs the issue of ownership. *See Itar-Tass*, 153 F.3d at 90 ("Since the works at issue were created by Russian nationals and first published in Russia, Russian law is the appropriate source of law to determine issues of ownership of rights.").

Although copyright ownership is determined by Russian law, United States law allows suit only by holders of "an exclusive right under a copyright." 17 U.S.C. § 501(b). Accordingly, the court "must first determine whether . . . [a] plaintiff[] own[s] an exclusive right" as "determined by Russian law." *Itar-Tass*, 153 F.3d at 92. This determination is a question of law reserved for

the court. Fed. R. Civ. P. 44.1; *Itar-Tass*, 153 F.3d at 92. However, the party seeking application of foreign law must still "carr[y] the burden . . . of proving foreign law to enable the district court to apply it in a particular case." *Mindspirit, LLC v. Evalueserve Ltd.*, 346 F.Supp.3d 552, 573 n.7 (S.D.N.Y. 2018) (quoting *Jonas v. Estate of Leven*, 116 F.Supp.3d 314, 330 (S.D.N.Y. 2015)). Expert testimony "remains the basic mode of proving foreign law," but "the court may also 'rely on the decisions of other courts' in determining foreign law." *Jonas*, 116 F.Supp.3d at 330 (quoting *Panam Mgmt. Grp.*, 2011 WL 3423338, at *4). The court may "consider any relevant material or source, including testimony, whether or not submitted by a party or admissible under the Federal Rules of Evidence." Fed. R. Civ. P. 44.1.

As for infringement, however, the choice of law analysis boils down to *lex loci delicti*—the law of the place of the wrong or tort. *Itar-Tass*, 153 F.3d at 84; *accord Creazioni Artistiche Musicali, S.r.l. v. Carlin Am., Inc.*, No. 14-cv-9270, 2016 WL 7507757, at *3 (S.D.N.Y. Dec. 30, 2016). The Broadcaster Plaintiffs allege that the infringement by SKM—a United States corporate entity—took place in the United States through SKM's provision of video streaming services to its customers throughout the United States. (*See* FAC ¶ 1.) Thus, United States law governs infringement issues. *Itar-Tass Russian News Agency*, 153 F.3d at 91 (holding that United States law applies because "not only is [the United States] the place of the tort, but also the defendant is a United States corporation").

### 2. Standing under the Copyright Act

Pursuant to 17 U.S.C. § 411(a), a plaintiff must establish either (1) the works are *not* "United States works" or (2) "preregistration or registration of the copyright" has been made. Because Russia was (and remains) a signatory to the Berne Convention, Plaintiffs are exempt from the registration requirement and may bring suit to the extent their works are not United States works.

A United States work is one which, with respect to "a published work," is first published: (1) "in the United States," (2) "simultaneously in the United States and another treaty party or parties, whose law grants a term of copyright protection that is the same as or longer than the term provided in the United States," (3) "simultaneously in the United States and a foreign nation that is not a treaty party," or (4) "in a foreign nation that is not a treaty party, and all of the authors of the work are nationals, domiciliaries, or habitual residents of, or in the case of an audiovisual work legal entities with headquarters in, the United States. . . ." 17 U.S.C. § 101. Alternatively, an "unpublished work" qualifies as a United States work if "all the authors of the work are nationals, domiciliaries, or habitual residents of the United States, or, in the case of an unpublished audiovisual work, all the authors are legal entities with headquarters in the United State. . . ." *Id.*

### III.    CHANNEL ONE'S PARTIAL MOTION FOR SUMMARY JUDGMENT IS GRANTED

Channel One must demonstrate the following to establish SKM's liability under the FCA: (1) that it has proprietary rights in the signal for Channel One Russia; (2) that the signal originated by satellite; and that SKM (3) received the signal and (4) retransmitted it to third parties (5) without authorization (6) for financial gain. *See Russian TV Company*, 2021 WL 4341053, at *3; *Joint Stock Co. Channel One*, 2019 WL 8955234, at *11; *Joint Stock Co. Channel One*, 2017 WL 696126, at *7–10.

The Report recommends granting summary judgment for Channel One. (Report at 28–30.) The Report further recommends awarding $3,666,000 in damages and issuing a permanent injunction "narrowly tailored to protect [Channel One's] interests rather than broadly aimed at shutting down" Gudzone.tv in its entirety. (Report at 41, 43.) SKM does not object to the Report's finding of liability or injunction recommendation, and only challenges the Report's conclusion

10

that SKM's conduct was willful and its recommendation for enhanced damages as a consequence thereof.

This Court agrees that no genuine dispute of material fact exists as to any element of Channel One's claim and that a permanent injunction is appropriate.    Accordingly, SKM's objections are overruled, and that recommendation is adopted in full.

### A. SKM's Objections Relating to Channel One Are Overruled

SKM takes issue with the Report's finding that its conduct in violation of the FCA was willful.  Without citing to any legal authority, SKM argues that its conduct was not willful because it did not have "any reasonable basis to believe" Channel One owned proprietary rights in the audiovisual works composing Channel One Russia.  (SKM Objections at 5 (quoting Report at 42).) This is because, according to SKM, Channel One's signal for Channel One Russia was "free to air" within Russia (*i.e.*, available to Russian viewers free of charge) and Channel One purportedly failed to establish its ownership of proprietary rights in the works transmitted via the Channel One U.S. signal.  (*Id.* at 5.)  SKM thus claims that its ignorance as to both the identity of the proprietary-rights owner in the works composing Channel One U.S.'s signal and Channel One's purported failure to substantiate such rights together provided it with "a reasonable basis to believe that it could continue to broadcast the signal," and consequently preclude any finding of willfulness.  (*Id.*)

SKM next challenges the Report's weighing of the willfulness factors and resulting enhanced damages award.  (*Id.* at 6–7.)  Magistrate Judge Moses relied upon SKM's repeated, financially driven FCA violations and the goal of general deterrence.  She found these factors to outweigh SKM's alleged lack of substantial monetary gain from its violative conduct and Channel One's purported failure "to provide any evidence of its lost revenue, subscribers, prestige, and goodwill as a result of SKM's activity."  (*Id.* at 6 (citing Report at 27–28).)  SKM then argues that

the Report's recommendation of a $1,833,000 enhanced damages award is inappropriate. Magistrate Judge Moses arrived at that conclusion by assessing $1,000 in damages for each of SKM's 1,833 subscribers. SKM argues that Channel One purportedly lacks evidence of its lost revenue and that "[t]here is also no evidence on the record establishing that each of the 1,833 alleged subscribers had continued the Gudzon TV service for a time certain." (*Id.* at 7.)

In response, Channel One contends that SKM did not assert this willfulness argument in its summary judgment briefing and therefore waived it. (Channel One's Mem. of Law in Opp'n. to SKM Objs., ECF No. 1015, at 9 (citing *Piligian v. Icahn Sch. of Med. at Mount Sinai*, 490 F.Supp.3d 707, 716 (S.D.N.Y. 2020).) As to the merits, Channel One contends that SKM has failed to identify any factual or legal error in Magistrate Judge Moses's willfulness analysis. (*Id.* at 10.) She "carefully weighed the willfulness factors" and ultimately "used her discretion to give more weight to SKM's repeated violations over an extended period of time than other factors." (*Id.*)

Although SKM did not previously raise certain aspects of what it now argues, SKM asserted Channel One's alleged failure to "pro[ve] . . . ownership in any 'content' or programming'" composing Channel One Russia's signal as a basis to deny summary judgment. (*See e.g.,* SKM's Mem. of Law in Opp'n. to Summ. J. ("SKM Opp."), ECF No. 958, at 6–7, 10.) This Court therefore declines to find that SKM waived its arguments, as it did not "utter[ly] fail[] to raise" them. *United States v. Gladden*, 394 F.Supp.3d 465, 480 (S.D.N.Y. 2019); *see also Norris v. Goldner*, No. 19CIV5491PAESN, 2023 WL 5477229, at *6 n.9 (S.D.N.Y. Aug. 24, 2023). However, Channel One is correct that SKM fails to raise any cognizable basis for this Court to overrule Magistrate Judge Moses's finding that SKM acted willfully. The willfulness inquiry is focused on whether the violative actions were undertaken deliberately; it is of no consequence here

that SKM had no knowledge of Channel One's proprietary rights when it acted. *See, e.g.*, *Kingvision Pay-Per-View Ltd. v. Zalazar*, 653 F.Supp.2d 335, 342 (S.D.N.Y. 2009) (finding that the plaintiff "clearly demonstrate[d] willfulness" because "[t]he acquisition of an encrypted signal by defendants undoubtedly required some affirmative action on their part") (citation omitted). SKM does not proffer a "reasonable basis" for its purposeful pirating of Channel One's broadcasts for financial gain, nor does the broadcast's free-to-air status.

Magistrate Judge Moses's willfulness analysis was sound and without clear error, rightfully finding that SKM acted willfully in its brazen, repeated pirating for commercial gain. Indeed, SKM concedes that its purposeful, illegal conduct "persist[ed] for years even after this litigation was commenced . . . ." (SKM Objections at 5.) SKM admits that it obtained the signal from an individual in Ukraine, retransmitted the signal to the U.S., and for years impermissibly provided the signal to U.S.-based customers in exchange for a monthly subscription fee. (Katsman Dep. at 31–32, 37–39, 102, 121, 130, 138–39, 143.) SKM knew that the Russian-based programming it diverted to the United States comprised local Russian programming broadcasted exclusively in Russia, which differed from the international versions produced and licensed for broadcast outside Russia. (*See* Report at 19–20, 29.) SKM even continued its conduct notwithstanding Magistrate Judge Moses's warning in 2018 that it stop doing so to avoid falling on the "wrong side of a permanent injunction and a hefty damages award." (*See* Disc. Hr'g Tr., ECF No. 570, 140:5–15.)

Both the nature of SKM's yearslong FCA violations done for financial gain and the goal of general deterrence warrant a finding that SKM acted willfully and therefore overcome any lack of evidence of the amount of SKM's unlawful monetary gains.[4]

---

[4] This Court rejects SKM's incorrect assertion that "the R&R explains that Channel One has failed to *provide any evidence* of its lost revenue, subscribers, prestige, and goodwill as a result of SKM's activity," which purportedly contradicts the Report's recommendation of enhanced damages. (SKM Objections at 6 (citing Report at 27–28).) This conveniently distorts the Report's much different observation that "Channel

The Report's recommendation of enhanced damages in an amount equal to the statutory damages is well within the acceptable bounds of such awards in this Circuit—indeed, it falls on the lower end of the spectrum. *See, e.g., Joe Hand Promotions, Inc. v. Batista*, No. 20CIV6460JPCSLC, 2021 WL 3855315, at \*9 (S.D.N.Y. July 23, 2021), *report and recommendation adopted*, No. 20-CV-6460 (JPC), 2021 WL 3855311 (S.D.N.Y. Aug. 27, 2021) (awarding an enhanced damages award three times that of the statutory damages—*i.e.*, a total award that is four times the statutory amount); *J & J Sports Prods. Inc. v. Onyx Dreams Inc.*, No. 12-CV-5355, 2013 WL 6192546, at \*1 (E.D.N.Y. Nov. 26, 2013) (awarding enhanced damages two times the statutory amount, totaling an award of three times the statutory amount); *J & J Sports Prods. Inc. v. Orellana*, No. 18-CV-2052, 2019 WL 1177719, at \*5–6 (S.D.N.Y. Mar. 13, 2019) (awarding enhanced damages equal to the statutory damages, for a total of two times the statutory amount). SKM's argument to the contrary, lacking any citation to legal authority, therefore fails.

Finally, this Court adopts the Report's recommendation to issue a permanent injunction against SKM. The FCA lists injunctive relief as a tool at the court's disposal "on such terms as it may deem reasonable to prevent or restrain violations. . . ." 47 U.S.C. § 605(e)(3)(B)(i). The court analyzes four factors to determine whether an injunction should lie: "(1) [the plaintiff] has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction." *Salinger v. Colting*, 607 F.3d 68, 77 (2d Cir. 2010) (quoting *eBay, Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006)).

---

One has not provided any *calculation or estimate* of" the damage from SKM's pirating, (*see* Report at 28), and SKM provides no authority supporting the notion that such a calculation or estimate is necessary to award enhanced damages.

The Report persuasively articulates how these factors have been satisfied and why this Court should exercise its discretion to issue an injunction. (*See* Report at 40–41.) There is no clear error in Magistrate Judge Moses's analysis.

## IV.    THE BROADCASTER PLAINTIFFS' PARTIAL MOTION FOR SUMMARY JUDGMENT IS GRANTED IN PART AND DENIED IN PART

### A.    The Broadcaster Plaintiffs are Not Entitled to Summary Judgment on Their FCA Claims

The Broadcaster Plaintiffs also move for summary judgment on their FCA claims against SKM, but the Report recommends denying this portion of their motion because of GETV's failure to establish that it has any proprietary rights in TNT-Russia and, as to the others, for failing to establish that their Programming originated by satellite. (Report at 30–31.) For the reasons set forth below, this Court adopts the Report in full: the Broadcaster Plaintiffs' motion for summary judgment as to their Copyright Act and FCA claims is denied, except with respect to SKM's affirmative defenses, which are dismissed.

#### 1.    GETV's Purported Ownership of Proprietary Rights in TNT-Russia

With respect to GETV, it entered this action in replacement of an original plaintiff, now-defunct Comedy TV, and claims that "it owns all of the rights, copyrights, and assets of, and is the authorized broadcaster of, Comedy TV" as its corporate successor. (Broadcaster Pls.' R. 56.1 Stmt. ¶ 5.) What is included in these "rights, copyrights, and assets" has yet to be proved, including any proprietary rights in TNT-Russia.

Notably, before exiting this action, Comedy TV alleged in the FAC that it produced *TNT-International* only, not TNT-Russia. (*See* FAC ¶ 23.) Moreover, successor-GETV's Deputy Director of Sales has made clear that GETV's involvement is similarly limited to just TNT-International, as GETV "clearly does not produce or 'play any role' in the 'domestic broadcast' or

'distribution' of TNT-Russia." (Silagi Decl., Ex. E ("Chistov Dep."), ECF. No. 929-5, at 89–90; *see also id.* at 31 ("[GETV] distributes international versions of the channels. It does distribution internationally only.") However, GETV's FCA claim accuses SKM of pirating TNT-Russia only. Chistov explains in his declaration that "this action alleges that the TNT-Russia programming intended *only* for distribution in the Russian Federation has been" pirated by SKM. (*See* Chistov Decl., ECF No. 925-4, at 31; *see also id.* at 8 ("SK Management Stream[s] TNT-Russia Programming Without Authorization into the United States.").)

Consequently, the Report concluded that, without demonstrating that it inherited any copyrights or other proprietary rights in TNT-Russia from Comedy TV, GETV has not met its burden of production as to the first element of its FCA claim. (Report at 21–22, 30.) The Broadcaster Plaintiffs object to the Report by simply reasserting that "[Chistov's] testimony that [GETV] owns the copyrights is evidence sufficient to make GETV's prima facie case." (Broadcaster Plaintiffs' Objections at 8.) They incorrectly insist that SKM must submit "evidence that GETV does not own the copyrights" to avoid summary judgment. (*Id.*)

The Report was correct to reject this hollow claim of copyright ownership in TNT-Russia. The Broadcaster Plaintiffs do not point to any evidence substantiating that Comedy TV owned any copyrights in TNT-Russia in the first instance, which is obviously a prerequisite to demonstrating that GETV subsequently inherited any such copyrights from Comedy TV. As for the Broadcaster Plaintiffs' remaining argument, it is well-established that the movant seeking summary judgment must first demonstrate "the absence of a dispute of material fact," *Holcomb v. Iona Coll.*, 521 F.3d 130, 137 (2d Cir. 2008), such that its "own submissions in support of the motion must entitle it to judgment as a matter of law." *Xue Ming Wang v. Abumi Sushi, Inc.*, 262 F.Supp.3d 81, 86 (S.D.N.Y. 2017). The Broadcaster Plaintiffs' own submissions fail to establish an absence of

material fact as to whether GETV owns any copyrights (or proprietary rights) in TNT-Russia, jettisoning any need for SKM to come forward with evidence of its own to raise a genuine dispute of material fact. This objection is overruled, and the Broadcaster Plaintiffs' motion for partial summary judgment is denied as to GETV.

### 2. Originated by Satellite

As for Darial, New Channel, and Rain, at issue is whether they have demonstrated that the signals to their pirated Programming originated from a satellite, a precondition to obtaining summary judgment. (*See* Report at 14–15; *see also Russian TV Co.*, 2021 WL 4341053, at *3.) Magistrate Judge Moses concluded that the Broadcaster Plaintiffs failed to make this required showing, explaining that their Local Rule 56.1 statement omitted any such assertion and that their briefing merely claimed that SKM "'received' and 'intercepted' radio communication, specifically, the Plaintiffs' TV transmissions." (Report at 30 (quoting Broadcaster Pls.' Mem. in Support of Partial Summ. J. ("Broadcaster Plaintiffs' Mem."), ECF No. 926, at 6.)

The Broadcaster Plaintiffs contend in their Objections that Magistrate Judge Moses overlooked their proffer of deposition testimony from SKM's principal, Sam Katsman, which they referenced in Paragraphs 24 and 26 of their Local Rule 56.1 statement. Of note, the Broadcaster Plaintiffs concede that they failed to cite to this testimony in their opening brief by mistakenly "cit[ing to] the wrong paragraphs of Plaintiffs' Rule 56.1 statement," which they attempted to correct in a footnote in their reply brief. (Broadcaster Plaintiffs' Objections at 8 n.4 (citation omitted).) In these paragraphs, the Broadcaster Plaintiffs state: "Gudzon obtains its TV channel signals from an individual in Ukraine named Oleg Horbatjuk," and "Mr. Katsman also testified that his TV signal supplier accesses the signal *over the air* and then transmits it over the internet to Gudzon." (Broadcaster Pls.' 56.1 Statement (emphasis added).) The Broadcaster Plaintiffs note

17

that "over the air" is a term that "implies radio transmission subject to the FCA, as opposed to transmission via a physical cable." (Broadcaster Plaintiffs' Objections at 8 (citation omitted).)

To the contrary, it appears that Magistrate Judge Moses did consider this evidence in concluding that the Broadcaster Plaintiffs failed to make the required showing. (*See* Report at 26 ("According to Katsman, SKM's signal supplier 'accesses the signal over the air and then transmits it over the Internet' to SKM, in exchange for SKM's payments.") (citations omitted).) She also considered other contradicting testimony, in which Katsman stated that he did not know how SKM's signal supplier acquired the TV signals. (*Id.* ("At another point in his deposition, Katsman testified that he did not know how Horbatjuk acquired the signal. . . .") (citing Katsman Dep. Tr. at 156–57).) Without more, the Report is correct that the Broadcaster Plaintiffs have failed to meet their requisite initial showing.

As such, Darial, New Channel, nor Rain have established that their Programming originates by satellite. Thus, their motions for summary judgment on their FCA claims are denied.

### B. The Broadcaster Plaintiffs Have Not Established That They Own Valid Russian Copyrights

The Broadcaster Plaintiffs also seek summary judgment on their copyright claims, arguing that "the undisputed material facts show that [SKM] violated [their] rights under 17 U.S.C. 106, [to] perform the copyrighted work[s] publicly" by "retransmitting and therefore publicly performing [their] works" without authorization. (Broadcaster Plaintiffs' Mem. at 7–8.) The Report offers multiple bases in support of its recommendation to deny the Broadcaster Plaintiffs summary judgment. (Report at 31–32.) This Court adopts that recommendation solely on account of the Broadcaster Plaintiffs' failure to establish that they own valid Russian copyrights.[5]

---

[5] One such basis is that "neighboring rights," an avenue through which the Broadcaster Plaintiffs' claim copyright protection, do not enjoy Berne Convention protection." (Report at 32–34.) It is important to note that the Berne Convention's alleged lack of protection of neighboring rights does not bear on whether the

The elements of a direct copyright infringement claim are "(1) ownership of a valid copyright and (2) unauthorized copying or a violation of one of the other exclusive rights afforded copyright owners pursuant to the Copyright Act." *Wolk.*, 840 F.Supp.2d, at 741.

The Broadcaster Plaintiffs argue that they own unregistered copyrights in their Programming, but offer only naked, conclusory claims of copyright ownership. Specifically, they assert that they "are the owners of valid copyrights" by virtue of their status as "the producers and broadcasters of their respective television channels. . . ." (Broadcaster Plaintiffs' Mem. at 7; Broadcaster Plaintiffs' Objections at 12.)

Notably, they fail to articulate how such ownership came to be under Russian law (or otherwise). The Broadcaster Plaintiffs have not proffered any expert witness evidence, decisions of other courts, or anything of force to meet their burden of demonstrating what Russian copyright law states, *see Mindspirit, LLC v. Evalueserve Ltd.*, 346 F. Supp. 3d 552, 573 n.7 (S.D.N.Y. 2018), let alone demonstrating that they own valid Russian copyrights. The scant evidence that purportedly establishes their ownership are a few excerpts of deposition testimony—only one of

---

Broadcaster Plaintiffs own any Russian copyrights or the nature of their ownership. As emphasized in *Itar-Tass*, copyright ownership is determined not by the terms of the Berne Convention, but according to Russian law, *Itar-Tass*, 153 F.3d at 91 ("The [Berne] Convention does not purport to settle issues of ownership . . . ."), and the Copyright Act, *id.* (cautioning courts to not "turn directly to the Berne Convention and the U.C.C." to determine ownership, because that "moves too quickly past the Berne Convention Implementation Act of 1988," *i.e.*, 17 U.S.C. § 104(c)). As an initial matter, this is because the Berne Convention is not a self-executing treaty and therefore its provisions are only enforceable to the extent of Congress's adoption thereof. As relevant here, Congress decidedly adopted a "minimalist approach" in implementing the treaty. *Garnier v. Andin Int'l, Inc.*, 36 F.3d 1214, 1226 (1st Cir. 1994) ("Congress did not intend to adopt the Berne Convention wholesale; the amended statute itself makes it clear that the United States Copyright Act, and not the Berne Convention, controls disputes arising under the copyright laws."). Indeed, as the Berne Convention Implementation Act makes clear, "[a]ny rights in a work eligible for protection under this title that derive from this title . . . shall not be expanded or reduced by virtue of . . . the provisions of the Berne Convention." 17 U.S.C. § 104(c); *see also* S.Rep. 100-352, at p. 41, reprinted in 1988 U.S.C.C.A.N. 3706, at 3738 (advising courts "to resolve issues of the existence, scope, or application of rights in works subject to copyright through the normal processes of statutory interpretation and the application of common law precedents, as appropriate, rather than by reference to the provisions of Berne or the fact of U.S. adherence to the Convention.").

19

which even mentions copyright ownership. (*See* Broadcaster Plaintiffs' Mem. at 7 ("Plaintiffs are the owners and/or authorized broadcasters of the TNT, CHE, Domashny, and Dozhd channels. FACTS ¶¶ 5, 8, 11, 14.").  And this single excerpt, which pertains to Rain only, is devoid of any testimony remotely establishing copyright ownership.  When asked, "Does Rain TV have copyrights to any of the programming it broadcasts?" Rain's CEO, Sindeeva, answered, "I'm not sure I'm very good with all of the legal terms here, but everything that we produce we are the authors of that. Everything belongs to Rain TV." (Sindeeva Dep. at 90–91.)  Further, when asked whether "Rain TV has registered any of its copyrights on the programming it produces," Sindeeva responded, "Well, I don't know how to put it but everything is ours because we have a media license," and that Rain TV applied for "separate copyright for a few programs" in Russia to protect the "names" of their programming.  (*Id.*)  This evidence raises more questions about copyright ownership than it answers, failing to satisfy the Broadcaster Plaintiffs' initial burden on ownership.

Accordingly, it is appropriate to deny summary judgment to the Broadcaster Plaintiffs due to their improper reliance upon "*ipse dixit* in lieu of the admissible evidence and cogent legal analysis required to obtain summary judgment on a copyright claim." (Report at 37.)

The Broadcaster Plaintiffs object to this recommendation as improperly weighing the evidence they have set forth, which purportedly defeats SKM's failure to offer any counterevidence to raise a dispute of material fact. (Broadcaster Plaintiffs' Objections at 10.)  The Broadcaster Plaintiffs are incorrect.  Their conclusory assertions of Russian copyright ownership lack the requisite evidentiary support (and reference to Russian law) to satisfy their initial burden to "come forward with evidence supporting each essential element of [their] claim." *Norris*, 2023

WL 5477229 at \*31.  Thus, this Court overrules their objection and denies their motion for summary judgment as to their copyright claims.[6]

### C.  SKM's Affirmative Defenses Are Stricken

The Broadcaster Plaintiffs move for summary judgment on SKM's affirmative defenses. The Report recommends dismissal (to which SKM did not object), concluding that (1) only a small number of SKM's defenses are actual affirmative defenses, none of which have merit, and (2) for those adequately pleaded, they fail because SKM has failed to submit any evidence to establish that there is a genuine issue of material fact.  (Report at 39.)  This Court agrees and sees no clear error.  Accordingly, the Broadcaster Plaintiffs' motion for partial summary judgment is granted as to SKM's affirmative defenses, and such affirmative defenses are stricken.

## V.    CONCLUSION

Magistrate Judge Moses's Report is **ADOPTED** in full.

Channel One's Motion for Partial Summary Judgment, (ECF No. 913), is **GRANTED**. The Broadcaster Plaintiffs' Motion for Partial Summary Judgment, (ECF No. 924), is **DENIED** as to their FCA and copyright claims, and **GRANTED** as to SKM's affirmative defenses.

SKM is hereby ordered to pay Channel One $1,833,000 in statutory damages and $1,833,000 in enhanced damages, totaling $3,666,000.  To the extent Channel One seeks attorneys' fees and costs, Channel One shall file a fee application pursuant to 47 U.S.C. § 605(e)(3)(B)(iii) within 60 days.

SKM, as well as its parents, subsidiaries, affiliates, predecessors, successors, divisions, operating units, principals, officers, directors, shareholders, employees, attorneys, members,

---

[6] Having denied the Broadcaster Plaintiffs summary judgment for failing to meet their initial burden of production, this Court declines to address the parties' remaining contentions on the Broadcaster Plaintiffs' claim.

agents, heirs, representatives, spin-offs, and future assigns, as well as any persons or entities in active concert or participation with SKM, are hereby **PERMANENTLY ENJOINED AND RESTRAINED** from:

    a) Broadcasting, re-broadcasting or otherwise transmitting Channel One's broadcasts via any medium, including, but not limited to, IPTV, Gudzone.tv, and social media;

    b) Directly or indirectly infringing or making any use of, in any manner whatsoever, Channel One's broadcasts, including the individual channels or programs;

    c) Unfairly competing with, injuring the business reputation of, or damaging the goodwill of Channel One and engaging in unfair competition that in any way injures Channel One; and

    d) Publishing or distributing any promotional materials or other communications referring to Channel One's broadcasts in any medium, including, but not limited to, the internet (including Gudzone.tv, IPTV, and social media), television, radio, newspapers, magazines, direct mail or oral communication.

The Clerk of Court is directed to close the motion at ECF No. 913 and enter judgment in favor of Channel One and against SKM.

Dated: New York, New York
December 18, 2024

SO ORDERED.

_George B. Daniels_
GEORGE B. DANIELS
United States District Judge